UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 12-CV-09033 |
| SEARS HOLDING CORPORATION, | ) ) Judge John W. Darrah |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff LoggerHead Tools, LLC ("LoggerHead") filed suit against Sears Holding Corporation ("Sears") on November 9, 2012, alleging eight separate counts against Sears.[1] Sears filed a Motion to Dismiss Counts II, III, and VIII of the Complaint, which state claims of common law fraud, tortious interference with business relations and prospective advantage, and unjust enrichment, respectively.

### BACKGROUND

The following facts are based on LoggerHead's Complaint and attached exhibits and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). LoggerHead is a corporation based in Palos Park, Illinois. (Compl. ¶ 1.) Sears is a corporation based in Hoffman Estates, Illinois. (*Id.* ¶ 2.) LoggerHead was founded by Dan Brown, Sr. ("Brown") and sells a tool invented by Brown called the Bionic Wrench. (*Id.* ¶¶ 5, 10.) LoggerHead owns United States Patent No. 6,889,579,

---

[1] LoggerHead erroneously names Count VIII of its Complaint (a claim of unjust enrichment) as Count VII. Count VII of the Complaint is already named as a claim of Illinois Common Law Trademark Violation. This opinion will refer to the Unjust Enrichment claim as Count VIII.

which covers the Bionic Wrench. (*Id*. ¶ 5.) LoggerHead has sold the tool to retailers, including Sears, Canadian Tire, QVC, Costco, Amazon, Ace Hardware, True Value, and Menards, and others. (*Id*. ¶ 17.) Sears purchased 15,000 Bionic Wrenches from LoggerHead in 2009, 75,000 in 2010, and over 300,000 in 2011. (*Id*. ¶¶ 21-23.)

In December 2011, Sears's hand-tool buyer Amanda Campana, ("Campana"), and Brown began discussing a Supply Agreement for 2012, including a Father's Day Direct Response TV ("DRTV") program and a Christmas DRTV program. (*Id*. ¶ 24.) Campana represented that Sears and LoggerHead had developed a "strategic partnership" and concurred that if LoggerHead did not sell to Home Depot or Lowes, Sears's two largest national competitors, and did not increase the price for 2012, Sears could sell 600,000 Bionic Wrenches. (*Id*. ¶¶ 23-24.) On December 21, 2011, Campana wrote to Brown, "We are very excited about the success of the Bionic wrench and we are looking forward to another successful year. As I am working through my forecast though I wanted to know if there is any chance the Bionic wrench will be in any of our competitors next year. This is something that I will need to factor in if it will be." (*Id*. ¶ 25.) Brown responded that he would work with Sears and not sell to Sears's direct competitors as long as Sears committed to a sufficient quantity. (*Id*. ¶ 26.)

In January 2012, Campana was replaced by Stephanie Kaleta ("Kaleta"). (*Id*. ¶ 27.) On February 8, 2012, Kaleta provided a Father's Day forecast of 73,000 units at LoggerHead's 2011 pricing and agreed to a Christmas DRTV Program commitment. (*Id*. ¶ 30.) Brown responded that day, requesting a 300,000 unit commitment from Sears for 2012. (*Id*. ¶ 31.) Kaleta did not confirm a 300,000 unit commitment for 2012, but confirmed a 73,000 unit Father's Day commitment. (*Id*. ¶ 32.) The following day, Brown sent Kaleta a new pricing for 2012 with a 5 percent increase over the 2011 pricing. (*Id*. ¶ 33.)

Beginning on February 10, 2012, LoggerHead began receiving order transmittals for 73,000 units at 2011 prices. (*Id*. ¶ 34.) On February 16, 2012, Brown responded that an order commitment for 73,000 units would be at 2012 prices and that without a commitment for all of 2012, LoggerHead would go to other retailers, such as Home Depot and Lowes. (*Id*. ¶ 35.) In response, Kaleta and her boss, Adam Whitney, continued negotiations with LoggerHead for the 2012 Supply Agreement, which included Christmas forecasts and a Sears DRTV program. (*Id*. ¶ 36.) Whitney and Kaleta wanted to be assured that LoggerHead had not signed an agreement with any Sears competitors, and Brown assured LoggerHead had not. (*Id*.) LoggerHead did not sell to Home Depot or Lowes in 2012. (*Id*. ¶ 38.)

On March 6, 2012, LoggerHead sent Kaleta a draft 2012 Supply Agreement, requesting a commitment of 300,000 units and standard lead times for order fulfillment. (*Id*. ¶ 39.) After receiving requested changes from Kaleta, Brown sent a revised 2012 Supply Agreement with the requested changes; this First Agreement Revision included a forecast of Sears to purchase and receive a minimum of 300,000 units in 2012. (*Id*. ¶ 40.) A week later, on March 13, 2012, Brown inquired as to the status of the 2012 Supply Agreement. (*Id*. ¶ 41.) The next day, Kaleta responded that she was waiting for the signoff, and, in a separate email, Sears communicated with LoggerHead about the DRTV program for the Bionic Wrench. (*Id*.) On March 19, 2012, Brown again inquired into the status of the 2012 Supply Agreement. (*Id*. ¶ 42.) Kaleta responded the next day with additional revisions, and Brown incorporated these changes and sent Kaleta a revised 2012 Supply Agreement. (*Id*.) None of the changes requested related to price, quantity, or lead times. (*Id.*) By April 18, Brown sent Kaleta a further revised 2012 Supply Agreement, with minor, insignificant changes incorporated at the request of Sears. (*Id*. ¶ 44.)

On April 25, 2012, Kaleta informed Brown that the 2012 Supply Agreement was being reviewed by Sears's "legal team." (*Id.* ¶ 45.)

On April 27, 2012, Kaleta sent Brown a further revised 2012 Supply Agreement (the Fourth Agreement Revision), which stated that, except for QVC and Ace Hardware, Sears would have exclusivity over the Bionic Wrench for the period Sears was running the 2012 Christmas DRTV promotion. (*Id.* ¶ 47.) The Fourth Agreement Revision also proposed a shortened lead time for production of the Bionic Wrench, from 90 days to 30 days. (*Id.*) These last minute changes were significant and not acceptable to LoggerHead. (*Id.*)

On May 15, 2012, Sears sent LoggerHead Sears's Christmas 2012 forecast of 213,519 units. (*Id.* ¶ 49.) Sears sold the Bionic Wrenches during the Father's Day season, and LoggerHead began preparing the Christmas forecast. (*Id.* ¶ 50.) On June 20, 2012, Sears sent LoggerHead a revised Christmas forecast of 2,971 units. (*Id.* ¶ 51.) LoggerHead sent several letters to Kaleta and others at Sears regarding the forecast reduction, explaining that Brown was "blindsided, astonished, and at a complete loss as to why the Christmas forecasts decreased from more than 200,000 units to less than 3,000 units." (*Id.* ¶ 52.) On July 17, 2012, Sam Solomon, Senior Vice-President of Sears, acknowledged he was aware that LoggerHead and Sears were negotiating and said he would follow up further, but Solomon did not. (*Id.* ¶ 53.)

In September 2012, Sears, through its Craftsman brand, introduced its "Max Axess Locking Wrench," which LoggerHead alleges is a "virtual copy" of its Bionic Wrench. (*Id.* ¶ 55.)

LoggerHead filed its eight-count Complaint on November 9, 2012, alleging: (I) patent infringement, (II) common law fraud, (III) tortious interference with business relations and prospective advantage, (IV) federal trademark infringement, (V) false designation of origin and

unfair competition under the Lanham Act, (VI) violations of the Illinois Deceptive Trade Practices Act, (VII) Illinois common law trademark violations, (VIII) unjust enrichment. Sears filed a Motion to Dismiss Counts II, III, and VIII of the Complaint. This Motion is fully briefed.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim "challenges the sufficiency of the complaint." *Christensen v. County of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "[a] plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). In considering a motion to dismiss for failure to state a claim, the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803-804 (7th Cir. 2008) (*Limestone*). Rule 9(b) requires allegations of fraud to be pled with "particularity." Fed. R. Civ. P. 9(b).

## ANALYSIS

### *Common Law Fraud*

Count II of the Complaint alleges a claim of common law fraud. The elements of Illinois common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP,* 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 591 (Ill. 1996)). Sears challenges the sufficiency of the Complaint as to elements 4 and 5, arguing LoggerHead failed to allege with particularity its reliance on false statements by Sears and damages resulting from this reliance. (Def.'s Mem. in Support of Mot. at 8-9.) As stated above, Fed. R. Civ. P. 9 requires claims of fraud to be pleaded with particularity.

Sears argues in support of its motion that LoggerHead did not reasonably rely on statements by Sears, as it alleges to support its claim. First, as Loggerhead concedes in its Complaint, it did sell its goods to other retailers. (Compl. ¶ 17.) Without an exclusive contract with Sears, it was not "reasonable" for LoggerHead to decide not to attempt to negotiate with other retailers, like Home Depot and Lowes.

Sears further argues LoggerHead failed to plead its detrimental reliance on statements by Sears with particularity. LoggerHead did not allege it approached Home Depot or Lowes, or that either company demonstrated an interest in buying the Bionic Wrench. Nor does LoggerHead allege why it could not have made sales to those companies prior to the 2012 Christmas season. Further, Sears argues LoggerHead cannot meet the pleadings requirements by purporting it relied on Sears's statement that the parties were "strategic partners," because such a phrase is merely

"promotional language." (Def.'s Mem. in Support of Mot. at 9) (quoting *Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693, 707 (E.D. Pa. 2008)).

In response, LoggerHead argues that the allegations in the Complaint were sufficient because Sears, as its largest customer, stated multiple times that it would sell the Bionic Wrench and wanted to determine if LoggerHead intended to sell the Bionic Wrench to any of its competitors in order to prepare its 2012 purchase forecast. (Compl. ¶ 25.) In response, LoggerHead stated it would not sell to Sears's direct competitors, provided Sears committed to purchasing a sufficient quantity of Bionic Wrenches. (*Id.* ¶ 26.) LoggerHead further alleges in the Complaint that in 2011, it "committed to Sears that it would not sell to Home Depot or Lowes . . . ." (*Id.* ¶ 23.) LoggerHead also stated in its Complaint that while negotiating the 2012 Supply Agreement, representatives from Sears wanted to be assured that LoggerHead had not signed agreements with Sears's competitors. (*Id.* ¶ 36.)

LoggerHead identifies other misrepresentations it relied upon, including: Sears's statement that it would run a Christmas DRTV campaign; Sears's initial forecast that it would sell 300,000 units in 2012; Sears's May 15, 2012 forecast of 213,519 units; Sears's statement that the 2012 Supply Agreement was with its legal team; and Sears's use of the term "strategic partner." (*Id.* ¶¶ 24, 36-42, 45, 49.)

LoggerHead argues it pleaded damages by stating that, in reliance on Sears's statements, it did not pursue sales with Home Depot or Lowes, or prepare its own DRTV program. (*Id.* ¶¶ 80-83.)

LoggerHead fails to state a claim of common law fraud because it has not sufficiently alleged reliance or damages. Reliance is generally a question of fact, but may be decided at the pleading stage; "it can be determined as a matter of law when no trier of fact could find that it

7

was reasonable to rely on the alleged statements or when only one conclusion can be drawn."

*Cozzi Iron & Metal, Inc. v. U .S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (citing

*Neptuno Treuhand–Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 819 (Ill. App.

Ct. 1998)). Moreover, in Illinois, "[g]enerally speaking, promissory fraud is not actionable . . . ."

*Shield Technologies Corp. v. Paradigm Positioning, LLC*, Case No. 11 C 6183, 2012 WL

4739263, at *4 (N.D. Ill. Oct. 3, 2012) (citing *HPI Health Care Services, Inc. v. Mt. Vernon

Hosp., Inc.*, 545 N.E. 2d 672, 682 (Ill. 1989) ("[M]isrepresentations of intention to perform

future conduct, even if made without a present intention to perform, do not generally constitute

fraud.")). False statements are not actionable where they involve future, rather than present,

conduct. The false statements made by Sears that LoggerHead alleges involve Sears's future

conduct, with respect to its future purchases.

LoggerHead does not dispute that the parties did not have an agreement for purchasing

Bionic Wrenches for Christmas 2012, and does not dispute that LoggerHead did not have an

exclusive relationship with Sears. LoggerHead itself alleges in its Complaint it rejected Sears's

proposed limitations on sales to other retailers. (Compl. ¶ 47.) The representations that

LoggerHead asserts it relied on were part of ongoing negotiations that did not result in a contract.

(Pl.'s Resp. at 6.) Accordingly, it was unreasonable for LoggerHead to rely on any statements

made in the course of negotiation to constrain LoggerHead's action. *See Berco Inv., Inc. v. Earle

M. Jorgensen Co.*, 1996 WL 388463, at *11 (N.D. Ill. July 8, 1996) (granting defendant's motion

to dismiss where plaintiff's own statement indicated that there was no finalized agreement

between the parties).

LoggerHead could not reasonably rely on statements by Sears about purchase forecasts,

future ad campaigns, or statements about contract review by legal staff. "A statement which is

merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law." *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298-99 (7th Cir. 1993) (quotations and citations omitted). Representations regarding future conduct, including conduct regarding future sales, are not actionable under Illinois law. *Id.* at 1299. Therefore, LoggerHead has not sufficiently pleaded it reasonably relied on representations from Sears to support a claim for common law fraud.

LoggerHead also failed to plead it suffered damages from its reliance on statements from Sears. Simple, conclusory allegations of fraud do not satisfy the Rule 9(b) standard. *United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 604-05 (7th Cir. 2005). Particularity under Rule 9(b) requires the plaintiff to specify, at a minimum, the "who, what, when, where, and how" of the alleged fraud. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.* 128 F.3d 1074, 1078 (7th Cir. 1997). LoggerHead has not alleged any facts that make it facially plausible that it could or would have sold Bionic Wrenches to Home Depot or Lowes, but for Sears's representations. Although Rule 9(b) imposes heightened pleading requirements, LoggerHead relies on an obsolete pleading standard to argue its allegations are sufficient. "The old formula—that the complaint must not be dismissed unless it is beyond doubt without merit—was discarded by the *Bell Atlantic* decision." *Limestone*, 520 F.3d at 803. Because LoggerHead failed to plead reliance or damages, Count II of the Complaint, the common law fraud claim, is dismissed.

*Tortious Interference with Business Relations and Prospective Advantage*

Count III of the Complaint asserts a claim of tortious interference against Sears. To state a claim for tortious interference with prospective economic advantage in Illinois, a plaintiff must

allege: "(1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (*Ali*) (citing *Fellhauer v. City of Geneva,* 568 N.E.2d 870, 877-78 (1991)). "The tort of intentional interference with prospective economic advantage requires some conduct 'directed toward a third party through which defendants purposely cause that third party not to enter into or continue' a relationship with the plaintiff." *Hackman v. Dickerson Realtors, Inc.*, 557 F. Supp. 2d 938, 949 (N.D. Ill. 2008) (quoting *McIntosh v. Magna Systems, Inc.*, 539 F.Supp. 1185 (N.D. Ill. 1982)).

Here, Sears challenges the sufficiency of the Complaint as to the first and third elements of the tortious interference claim, contending LoggerHead has failed to properly plead a reasonable expectation of a future business relationship or a purposeful interference by Sears that prevents the LoggerHead's legitimate expectations from ripening. (Def.'s Mem. in Support of Mot. at 12.)

Sears argues LoggerHead does not allege it had a reasonable expectation of a business relationship with Home Depot or Lowes and further fails to claim it had any contact whatsoever with the two companies. (*Id*. at 12.) Sears further argues that LoggerHead failed to allege an intentional and unjustified interference because LoggerHead only pleaded actions by Sears directed at LoggerHead and does not identify any actions by Sears directed toward a third party, such as Lowes or Home Depot.

LoggerHead responds that it pleaded a reasonable expectancy of entering a business relationship with Home Depot and Lowes because it claimed it sold the Bionic Wrench to other retailers and was injured by not making sales to Home Depot or Lowes. (Compl. ¶ 86.)

LoggerHead further alleged "Sears intentionally and unjustifiably interfered and prevented LoggerHead from making sales to Home Depot or Lowes . . . ." (*Id.* ¶ 87.)

The same defects in LoggerHead's common law fraud claim are present in its tortious interference claim. Rule 9(b) requires claims that include "averments of fraud," such as this one, to be pleaded with particularity. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (*Borsellino*) (finding that Rule 9(b) applies where complaint alleged a fraud that was a tortious interference with economic advantage). LoggerHead fails to plead any details of any communications with Home Depot or Lowes and, therefore, fails to demonstrate a reasonable expectancy of entering into a business relationship with either retailer.

LoggerHead also fails to allege a purposeful interference by Sears which prevented a ripening of its legitimate expectations, because it did not allege any conduct by Sears directed to Home Depot or Lowes. Actions directed toward a third party continues to be a requirement for a claim of tortious interference with prospective economic advantage. *Ali*, 481 F.3d at 946 (quoting *Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (2005) ("A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party.")). Because LoggerHead fails to plead both a reasonable expectation of a future business relationship and a purposeful interference by Sears that prevents LoggerHead's legitimate expectations from ripening, its tortious interference with business relations and prospective advantage claim, Count III of the Complaint, is dismissed.

*Unjust Enrichment*

The last claim of the Complaint, Count VIII, alleges unjust enrichment on the part of Sears. To allege unjust enrichment in Illinois, the plaintiff must allege "that the defendant has

11

unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).

Sears argues that because the detriment LoggerHead alleges is: (1) its inability to sell to Home Depot and Lowes and (2) its ability to make its own DRTV commercials because of Sears' conduct and false representations, its unjust enrichment claim is premised on fraud. (Def.'s Mem. in Support of Mot. at 13-14.) As a result, the claim is subject to the heightened pleading requirements of Rule 9(b), and LoggerHead fails to plead this "detriment" with particularity.

LoggerHead responds that the state law claim of unjust enrichment is an independent cause of action under Illinois law and, therefore, not subject to the heightened pleading requirement of Rule 9(b). (Pl.'s Resp. at 11.) Moreover, LoggerHead contends, it has still met its pleading requirement by alleging that Sears obtained a benefit by LoggerHead not selling the Bionic Wrench to its competitors, Home Depot and Lowes. LoggerHead argues it alleged detriment because the Complaint alleges Sears prevented LoggerHead from making any sales to Home Depot or Lowes due to the necessary lead times for order fulfillment. (*Id.* at 12.)

LoggerHead fails to state a claim of unjust enrichment. Whether or not unjust enrichment is an independent claim, as mentioned above, Rule 9(b) requires claims that include "averments of fraud," such as this one, to be pled with particularity. *See Borsellino*, 477 F.3d at 507. LoggerHead fails to plead this claim with sufficient particularity. LoggerHead does not allege with particularity a benefit to Sears created by LoggerHead's failure to sell the Bionic Wrench to Home Depot and Lowes. This is premised on the same insufficient allegations of "wrongful conduct" found in the common law fraud and tortious interference claims. As to the

element of detriment, LoggerHead's allegation that Sears's request for shorter lead times prevented LoggerHead from making sales to Home Depot and Lowes is not plausible. LoggerHead acknowledged in its Complaint that it did not accept Sears's request for shorter lead times because it found those terms unacceptable. (Compl. ¶ 47.) Because LoggerHead does not plead an unjust benefit to Sears that was detrimental to LoggerHead, its unjust enrichment claim, Count VIII of the Complaint, is dismissed.

## CONCLUSION

For the reasons set forth above, Sears's Motion to Dismiss Counts II, III, and VIII of the Complaint is granted, and these three counts are dismissed without prejudice. LoggerHead may amend its Complaint to replead these three counts, if it can do so consistent with Fed. R. Civ. P. 11, on or before May 31, 2013. A status hearing is set for June 12, 2013, at 9:30 a.m.

Date: May 1, 2013

JOHN W. DARRAH
United States District Court Judge