UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 12-CV-09033 |
| SEARS HOLDING CORPORATION and | ) |
| APEX TOOL GROUP, LLC, | ) Judge John W. Darrah |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff LoggerHead Tools, LLC ("LoggerHead") filed suit against Sears Holding Corporation ("Sears") on November 9, 2012, alleging eight separate counts against Sears. Sears filed a Motion to Dismiss Counts II, III, and VIII of the Complaint, which stated claims of common law fraud, tortious interference with business relations and prospective advantage, and unjust enrichment, respectively. These three counts were dismissed without prejudice on May 1, 2013, and LoggerHead was given leave to amend its Complaint to replead those three counts, if it could do so consistent with Fed. R. Civ. Pro 11. (May 1, 2013 Mem. Op. and Order at 13.) LoggerHead filed its Amended Complaint on May 31, 2013, alleging twelve separate counts against Sears, four separate counts against newly added Defendant Apex Tool Group, LLC ("Apex"), and one count of civil conspiracy against Sears and Apex jointly.

Sears moves to dismiss Counts XI, XII, XIII, and XVII of the Amended Complaint, and Apex moves separately, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), to dismiss Counts XV, XVI, and XVII of the Amended Complaint. Apex further moves to strike Paragraphs 75 and 83-89 of LoggerHead's Amended Complaint pursuant to Federal Rule of

Civil Procedure 12(f) for constituting immaterial, impertinent, and scandalous matter. These motions have been fully briefed.

## BACKGROUND

The following facts are based on LoggerHead's Amended Complaint and exhibits and are accepted as true for purposes of ruling on a motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

LoggerHead is a corporation based in Palos Park, Illinois. (Am. Compl. ¶ 1.) Sears is a Delaware corporation based in Hoffman Estates, Illinois. (*Id.* ¶ 2.) Apex is a Maryland corporation located in Sparks, Maryland. (*Id.* ¶ 3.) Apex is a supplier of hand tools and power tools and supplies Sears with its Craftsman-branded tools. (*Id.* ¶ 73.)

Daniel Brown ("Brown") invented a tool called the Bionic Wrench. (*Id.* ¶ 9.) Brown was issued two patents by the U.S. Patent and Trademark Office: U.S. Patent No. 6,889,579 and U.S. Patent No. 7,992,470, issued on May 10, 2005, and August 9, 2011, respectively. (*Id.* ¶¶ 9, 11.) These patents were assigned to LoggerHead, the company founded by Brown. (*Id.* ¶¶ 9, 11, 13.) The Bionic Wrench is a hand tool that allows "a user to complete work without the wrench slipping off and damaging the bolt." (*Id.* ¶ 18.) The Bionic Wrench permits a user to use one tool for many different sizes of nuts and bolts. (*Id.*) The Bionic Wrench is manufactured in the United States with American-made components. (*Id.* ¶ 19.) LoggerHead sells the Bionic Wrench on its website and to retailers, including Sears, Canadian Tire, QVC, Costco, Amazon, Ace Hardware, True Value, and Menards. (*Id.* ¶ 26.) Sears purchased and sold 15,000 Bionic Wrenches from LoggerHead in 2009, 75,000 in 2010, and over 300,000 in 2011. (*Id.* ¶¶ 30-31, 35.)

Following three years of growing sales, Sears's hand-tool buyer, Amanda Campana ("Campana"), informed Brown that Sears wanted to enter into a 2012 supply agreement with LoggerHead for the Bionic Wrench. (*Id.* ¶ 37.) Campana also indicated that Sears wanted to run a Direct Response TV campaign to promote the Bionic Wrench during Father's Day and Christmas of 2012. (*Id.* ¶ 38.) Between December 2011 and May 2012, Sears provided LoggerHead oral and written representations that Sears would purchase at least 300,000 Bionic Wrenches in 2012. (*Id.* ¶ 39.)[1] Additionally, Sears's employees, including Campana, repeatedly told LoggerHead that Sears would enter into a written supply agreement for 2012. (Am. Compl. at 11-12.) For example, on December 21, 2011, Campana sent Brown an email, reconfirming Sears's forecast of 73,000 Bionic Wrench units for Father's Day 2012. (*Id.* at 12.) Campana moved to another division in Sears and was replaced by Stephanie Kaleta. (*Id.*) Kaleta also told Brown that Sears was forecasting 73,000 Bionic Wrenches for Father's Day 2012, and that Sears would commit to purchasing 300,000 total Bionic Wrench units in 2012. (*Id.*) On February 10, 2012, Sears began issuing purchase orders for the 73,000 Bionic Wrenches it agreed to buy for Father's Day, and LoggerHead worked to fulfill that order. (*Id.* at 13.) Though a 2012 supply agreement had not been signed, Sears and LoggerHead produced and ran Father's Day Direct Response TV advertising for the Bionic Wrench. (*Id.* at 17.) Sales for the Bionic Wrench during the Father's Day season met or exceeded Sears's forecasts. (*Id.* at 16.)

On March 6, 2012, LoggerHead sent Kaleta a draft 2012 Supply Agreement, which indicated that Sears would purchase 300,000 units in 2012. (*Id.* at 13.) The following day,

---

[1] In the Amended Complaint, LoggerHead devotes approximately six pages of text to paragraph number 39; for the sake of clarity, citations to this portion of the Amended Complaint are indicated by page number.

3

LoggerHead sent a First Agreement Revision to Sears, based on changes requested by Sears. (*Id.*) A week later, on March 13, 2012, Brown's son, Dan Brown, Jr., inquired as to the status of the First Agreement Revision to the 2012 Supply Agreement; Kaleta advised Brown she was waiting for the signoff. (*Id.*) A Second Agreement Revision incorporating additional changes requested by Sears was prepared the following week, on March 19, 2012. (*Id.* at 14.) In April of 2012, Third and Fourth Agreement Revisions were exchanged between Sears and LoggerHead. (*Id.*) Throughout these exchanges, Sears asked LoggerHead multiple times if it was selling the Bionic Wrench to its competitors, specifically Home Depot and Lowes; LoggerHead confirmed it was not. (*Id.* at 16.)

On May 15, 2012, Sears sent LoggerHead a Christmas forecast for 213,519 Bionic Wrench units. (*Id.* at 15.) Despite the lack of a signed supply agreement, LoggerHead began to take the measures needed to ramp up production to meet Sears's forecast. (*Id.*) However, on June 20, 2012, Sears sent LoggerHead a revised Christmas forecast of 2,971 Bionic Wrench units. (*Id.* ¶ 46.) LoggerHead was surprised by this drastic reduction in the forecast. (*Id.* ¶ 48.) Sears, in an email from Kaleta, falsely stated that Sears reduced the forecast because of a purported inability to reach agreement regarding the holiday TV ad campaign. (*Id.* ¶ 49.) Sears's last communication with LoggerHead regarding the 2012 Bionic Wrench purchases was on July 19, 2012. (*Id.* ¶ 53.)

In September 2012, Sears introduced its Craftsman "Max Axess Locking Wrench," which LoggerHead asserts is a virtual copy of the Bionic Wrench. (*Id.* ¶ 54.) Sears had partnered with Apex to create the Max Axess wrench. (*Id.* ¶ 55.) LoggerHead asserts that while Sears appeared to be negotiating with LoggerHead regarding its holiday 2012 order of Bionic Wrenches, it secretly partnered with Apex to have a "knockoff" wrench made in China. (*Id.* ¶

4

57.) Due to this fraudulent omission of information and concealment of Sears's arrangement with Apex, LoggerHead lost substantial sales and profits. (*Id.* ¶ 59.) Additionally, LoggerHead asserts Sears continues to use LoggerHead's registered trademark for the Bionic Wrench in commerce, confusing customers and infringing on the trademark. (*Id.* ¶¶ 62, 67.) LoggerHead contends Sears and Apex conspired to willfully infringe LoggerHead's Bionic Wrench patents. (*Id.* ¶¶ 78-83.)

Apex filed a declaratory judgment action, seeking declarations of non-infringement and invalidity of LoggerHead's Bionic Wrench patents; this complaint was dismissed. (*Id.* ¶ 76.)

LoggerHead filed suit against Sears on November 9, 2012. In an opinion issued on May 1, 2013, this Court granted Sears's Motion to Dismiss Counts II, III and VIII of the original Complaint, which asserted claims of common law fraud, tortious interference with business relations and prospective advantage, and unjust enrichment, respectively, and these claims were dismissed without prejudice. In the May 1, 2013 Memorandum Opinion and Order, the Court provided, "LoggerHead may amend its Complaint to replead these three counts, if it can do so consistent with Fed. R. Civ. P. 11, on or before May 31, 2013." (May 1, 2013 Mem. Op. and Order at 13.)

LoggerHead filed its Amended Complaint on May 31, 2013, adding Apex as an additional defendant and asserting seventeen claims. Sears moves to dismiss Counts XI, XII, XIII, and XVII, which are claims of common law fraud, fraud in the inducement,[2] promissory

---

[2] LoggerHead's Amended Complaint contains thirteen counts against Sears, including Count XI (common law fraud) and Count XII (fraud in the inducement). However, LoggerHead conceded "there is authority for treating the claims the same," and agreed to merge those two counts into one count for common law fraud. (Pl.'s Resp. to Sears's Mot. to Dismiss at 5, n.3.)

fraud, and civil conspiracy, respectively, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 15(a)(2), for failure to state a claim.[3]

Apex filed its own Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), seeking to have dismissed Counts XV, XVI, and XVII, claims of tortious interference, aiding and abetting wrongful acts, and civil conspiracy, respectively. Apex further moves to strike Paragraphs 75 and 83-89 of LoggerHead's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) for constituting immaterial, impertinent, and scandalous matter.

## LEGAL STANDARD

"When evaluating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor." *Reger Dev.*, 592 F.3d at 763 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). In order to defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has the requisite facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

Under Fed. R. Civ. P. 9(b), alleging fraud requires a plaintiff to assert supporting facts with particularity. The Seventh Circuit has characterized the particularity requirement as "the

---

[3] In addition, Sears argues that Counts XII, XIII, and XVII should be dismissed because LoggerHead did not have permission to add these claims when it was given leave to replead its complaint. (Sears's Mot. to Dismiss ¶¶ 2-4). Dismissal on this basis is denied.

who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

"Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir 2007). "A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements." *Id.* (citations omitted).

## ANALYSIS

### *Common Law Fraud*

Counts XI and XII of the Amended Complaint allege a claim of common law fraud.[4] "To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably reply and act on the statement; and (iv) caused injury to the plaintiff." *Reger Dev.*, 592 F.3d at 766 (citing *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 331 (Ill. 1982)).

LoggerHead's initial fraud claim against Sears was dismissed for failure to state a claim of common law fraud because it had not sufficiently alleged LoggerHead's reliance or damages. (May 1, 2013 Mem. Op. and Order at 7-9.) In particular, this Court held that LoggerHead could not reasonably rely on statements from Sears regarding purchase forecasts or future ad campaigns. "A statement which is merely an expression of opinion or which relates to future or

---

[4] Because, as previously stated, LoggerHead and Sears indicated they would treat the claims of common law fraud and fraud in the inducement as one claim of common law fraud, this analysis is applicable to both Counts XI and XII.

contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law." *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (quotations and citations omitted).

In the Amended Complaint, LoggerHead asserted additional factual information regarding Sears's purported fraudulent concealment regarding the development of its own Craftsman wrench. LoggerHead contends it relied on the omission of material facts Sears had a duty to disclose and did not disclose, including Sears's plan to launch its own Craftsman wrench. LoggerHead asserts the ongoing Christmas 2012 negotiations were simply a sham to prevent LoggerHead from selling to Sears's competitors. While Sears never placed a purchase order for the Christmas 2012 season and never signed a supply agreement, it did provide LoggerHead with forecasts, and adjusted that forecast, presumably, when it had determined that it would no longer need to sell as many LoggerHead Bionic Wrenches when Sears could sell its own Craftsman wrenches. The Amended Complaint provides more detailed information that sufficiently alleges adequate factual material that LoggerHead reasonably relied on its ongoing negotiations with Sears.

Moreover, "[t]o plead [fraudulent concealment] properly, in addition to meeting the elements of fraudulent misrepresentation, a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (citing *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. 2010)). "A duty to disclose would arise if 'plaintiff and defendant are in a fiduciary or confidential relationship' or in a 'situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.'" *Wigod*, 673 F.3d at 571 (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584,

8

593 (Ill. 1996)). Here, LoggerHead has sufficiently alleged that such a duty existed. Based on the ongoing business negotiations, it is plausible LoggerHead could have reasonably relied on statements from Sears regarding the Bionic Wrench negotiations. As one of the primary vendors of its product, it is clear Sears was in a position of influence and superiority over LoggerHead, and Sears's interest in LoggerHead's other potential vendors demonstrated that LoggerHead might jeopardize its relationship with Sears if it were to enter into negotiations with Home Depot and Lowes. Accordingly, LoggerHead has sufficiently pled that a duty to disclose material information relating to the development of the Craftsman wrench arose on the part of Sears.

Furthermore, LoggerHead adequately pled in its Amended Complaint it suffered injury from its reliance on statements from Sears. LoggerHead asserts it had to forego soliciting to Sears's competitors. LoggerHead has sufficiently pled that by the time it became clear to LoggerHead that it no longer had an arrangement with Sears, LoggerHead would not have had enough time to solicit these competitors and prepare for the production of other orders.

Accordingly, LoggerHead has stated a claim of common law fraud in the Amended Complaint, and Sears's Motion to Dismiss Counts XI and XII is denied.

*Promissory Fraud*

Count XIII of the Amended Complaint asserts a claim of promissory fraud against Sears. "Promissory fraud is generally not actionable in Illinois unless the plaintiff also proves that the act was a part of a scheme to defraud." *Wigod*, 673 F.3d at 570 (internal quotations omitted). To assert that a fraudulent scheme existed, a plaintiff must allege that at the time a promise was made, the defendant did not intend to fulfill it. *Id.* (citing *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992)). Evidence of a fraudulent scheme would include a "pattern of fraudulent

9

statements, or one particularly egregious fraudulent statement." *Id.* (quoting *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011)).

Here, Sears argues LoggerHead failed to assert facts demonstrating that a scheme to defraud existed. LoggerHead contends it adequately alleges promissory fraud by asserting that Sears's false promises to and ongoing negotiations with LoggerHead were part of Sears's scheme to defraud LoggerHead.

LoggerHead's promissory fraud claim is facially plausible in ways similar to the stated claim of common law fraud. Representations regarding future conduct, including conduct regarding future sales, are not actionable under Illinois law. *Meyer*, 10 F.3d at 1298-1299. However, Sears's actions went beyond projections of sales figures. It is plausible that Sears maintained its ongoing negotiations and discussions regarding the Bionic Wrench, all while secretly developing its own wrench, in order to prevent LoggerHead from being able to sell its Bionic Wrench to other competitors in time for the holiday sales. LoggerHead has adequately stated a claim of promissory fraud under Fed. R. Civ. P. 12(b)(6) by alleging that Sears's actions were part of an ongoing scheme to defraud. Therefore, Sears's Motion to Dismiss Count XIII of the Amended Complaint is denied.

*Civil Conspiracy*

Count XVII of the Amended Complaint alleges civil conspiracy on the part of both Sears and Apex, and both Defendants moved separately to dismiss this claim. "To succeed in a claim of civil conspiracy under Illinois law, the plaintiffs must establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino*, 477 F.3d at 509. To be liable

for civil conspiracy in Illinois, a defendant must understand "the general objectives of the conspiratorial scheme, accept[] them, and agree[], either explicitly or implicitly to do its part to further those objectives . . . ." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994).

LoggerHead asserts Sears and Apex entered into a common scheme and agreement by willful infringement of LoggerHead's Bionic Wrench patents and entered into a common scheme and agreement to "maximize sales of the Max Axess Locking Wrench by unlawfully committing fraud against LoggerHead." (Am. Compl. ¶¶ 190-91.) In particular, Apex contends there is no factual allegation that Apex entered into an agreement with Sears for an unlawful purpose, or a lawful purpose by unlawful means. Beyond the basic assertions in the Amended Complaint that Apex and Sears conspired to infringe LoggerHead's patents and commit fraud, LoggerHead does not plead any factual content to state a claim of conspiracy that is plausible on its face. *Iqbal*, 129 S. Ct. at 1949. Moreover, a civil conspiracy sounding in fraud must be pled with particularity. *Borsellino*, 477 F.3d at 507. The Amended Complaint lacks any specific factual content to support a claim of civil conspiracy and, instead, simply asserts as a legal conclusion that Defendants committed civil conspiracy. Additionally, to the extent the underlying tort of the alleged civil conspiracy, fraud, is already alleged by LoggerHead, the civil conspiracy claim is rendered duplicative. "[A] conspiracy claim alleging a tort as the underlying wrongful act is duplicative where the underlying tort has been pled." *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F.Supp. 1300, 1310 (N.D. Ill. 1996).

For these reasons, the civil conspiracy claim, Count XVII of the Amended Complaint, is dismissed as to both Defendants.

*Tortious Interference with Business Relations*

Count XV of the Amended Complaint asserts a claim of tortious interference with business relations against Apex, alleging that Apex purposefully and knowingly interfered with LoggerHead's business relationship with Sears. (Am. Compl. ¶ 180.)

In Illinois, the elements of a claim of tortious interference with a business relationship or expectancy are: (1) the plaintiff reasonably expected to enter into a business relationship; (2) the defendant was aware of the plaintiff's expectation; (3) the defendant purposefully prevented the plaintiff's business relationship from developing; and (4) the plaintiff has suffered harm as a result of the defendant's interference. *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009). Here, LoggerHead fails to plead any facts which demonstrate that Apex was aware of its seemingly private, ongoing negotiations with Sears in 2012, nor any suggestion that Sears informed Apex it was continuing to negotiate with LoggerHead. At most, LoggerHead contends that Apex would have had knowledge of the negotiations between Sears and LoggerHead from "publicly available" facts. (Am. Compl. ¶ 179.) LoggerHead also fails to allege that Apex's relationship with Sears (which, as LoggerHead asserts in the Amended Complaint, went back years) was targeted at LoggerHead's business. LoggerHead does not assert anything beyond conclusory allegations that Apex was aware of its ongoing negotiations with Sears. For this reason, LoggerHead fails to plead that Apex was aware of LoggerHead's expectations and that Apex purposefully prevented LoggerHead from developing a relationship with Sears. Accordingly, Count XV of the Amended Complaint is dismissed for failure to state a claim.

*Aiding and Abetting Wrongful Acts*

Count XVI of the Amended Complaint asserts a claim against Apex of aiding and abetting wrongful acts, including aiding and abetting fraud, promissory fraud, and unfair

competition on the part of Sears. (*Id.* ¶¶ 183-84.) "Under Illinois law, to state a claim for aiding and abetting, one must allege: (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (citing *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. Ct. 2003)). Again, LoggerHead pleads only conclusory allegations to support its claim that Apex aided and abetted Sears in its purported fraud and unfair competition. Other than alleging Apex participated in Sears's concealment of its intentions to stop purchasing the Bionic Wrench, LoggerHead asserts no facts to support a claim that Apex aided and abetted Sears.

Therefore, Count XVI of the Amended Complaint for aiding and abetting is dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

*Rule 12(f)*

Fed. R. Civ. P. 12(f) provides that a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored as they typically delay litigation. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

Apex contends that paragraphs 75 and 83-89 of the Amended Complaint are "immaterial, impertinent, and scandalous, and should therefore be stricken under Rule 12(f)." (Apex's Mot. to Dismiss at 14.) Paragraph 75 notes that Bain Capital, LLC, which reportedly purchased Apex for $1.6 billion, "intimately mesh[e]"s with Apex and Sears's business models because of Bain's expertise as a "pioneer[ ] in the practice of shipping work from the United States." (Am. Compl. ¶ 75.) Paragraphs 83-98 of the Amended Complaint refer to previous lawsuits filed against Sears, some more than 30 years ago.

13

Here, the disputed material is impertinent and has no relevance to LoggerHead's remaining claims. As such, Apex's Motion to Strike paragraphs 75 and 83-89 is granted.

**CONCLUSION**

For the reasons set forth above, Sears's Motion to Dismiss Count XVII of the Amended Complaint, civil conspiracy, is granted, and this claim is dismissed with prejudice. As to Count XVII, the civil conspiracy claim alleged against Apex, Apex's Motion to Dismiss Count XVII is granted, and that claim is dismissed against Apex with prejudice. Apex's Motion to Dismiss Counts XV and XVI, the tortious interference and aiding and abetting claims, respectively, is also granted, and those claims are dismissed without prejudice and with leave to replead if LoggerHead can do so within 30 days of the entry of this Memorandum Opinion and Order consistent with Fed. R. Civ. P. 11.

Date: November 6, 2013

JOHN W. DARRAH
United States District Court Judge