UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 12-cv-9033 |
| SEARS HOLDING CORPORATION and APEX TOOL GROUP, LLC, | ) Judge John W. Darrah |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff LoggerHead Tools, LLC ("LoggerHead") filed a Second Amended Complaint against Defendants Sears Holding Corporation ("Sears") and Apex Tool Group, LLC ("Apex") (collectively, the "Defendants"), alleging, *inter alia*, various patent and trademark violations associated with United States Patents No. 6,889,579 (the "579 Patent") and No. 7,992,470 (the "470 Patent"). Defendants move to dismiss the trade-dress infringement claims (Counts XV and XVI) pursuant to Federal Rules of Civil Procedure 12(b)(6).

## **BACKGROUND**

The following is taken from the Complaint, which is assumed to be true for the purposes of a motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). Dan Brown was awarded the 579 Patent in 2005 and the 470 Patent in 2011, and is the founder and President of LoggerHead. (Dkt. 136 at ¶¶ 10, 11, 13.) Brown founded LoggerHead in 2005 and began selling the Bionic Wrench. (*Id.* at ¶ 17.) On August 26, 2008, LoggerHead received a trademark registration certificate from the United States Patent & Trademark Office ("USPTO") for the phrase "Bionic Wrench." (*Id.* at ¶ 26.) Consumers are exposed to the Bionic Wrench and to the Bionic Wrench Mark and Product Design Mark through magazines,

newspapers, television, and the internet. (*Id.* at ¶ 33.) LoggerHead's Marks are widely known and possess a strong secondary meaning among customers. (*Id.*)

In 2009, Sears placed an order for 15,000 Bionic Wrench units for sale over the Christmas season. (*Id.* at ¶ 38.) In 2010, Sears ordered 75,000 Bionic Wrench units. (*Id.* at ¶ 39.) Sears and LoggerHead entered into a one-year supply agreement, which had an effective start date of February 1, 2011, and expired February 1, 2012. (*Id.* at ¶ 40.) Sears represented that they would purchase more Bionic Wrench units in 2012. (*Id.* at ¶ 47.) In September 2012, Sears announced the "Max Axess Locking Wrench," which is a virtual copy of the Bionic Wrench. (*Id.* at ¶ 62.)

Sears and Apex also copied the Bionic Wrench packaging. (*Id.* at ¶ 94.) The Bionic Wrench packaging:

Front:



Back:



(*Id.* at ¶ 96.) The Sears packaging:



(*Id.* at ¶ 97.)  Both tools have packaging that:  (1) is clear and shows a product with two handles and six jaws, (2) exposed handles, (3) a try me feature, (4) a lifetime warranty, and (5) an illustration that the product replaces multiple wrenches.  (*Id.* at ¶ 98.)

On May 6, 2014, LoggerHead received a trademark registration certificate on the Supplemental Register for a Product Design Mark:



(*Id.* at ¶ 27.)  The USPTO determined that the Product Design Mark was nonfunctional.  (*Id.* at ¶ 29.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A complaint must allege enough facts to support a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  All well-pleaded allegations are presumed to be true, and all inferences are read in the light most favorable to the plaintiff.  *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013).  This presumption is not extended to 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'  *Alam v.*

*Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555).

## ANALYSIS

To plead a product design trademark or trade-dress infringement claim, LoggerHead must plausibly plead that: (1) its trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) a likelihood of confusion exists between its trade dress and Defendants' trade dress. *See Incredible Tech. Inc. v. Virtual Tech., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005). A trade dress acquires secondary meaning when "[t]he design or packaging of a product [acquires] a distinctiveness which serves to identify the product with its manufacturer or source*." TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001).

*Count XV - Product Design Trademark Infringement*

LoggerHead alleges that Sears has infringed on their registered product design trademark of the three-dimensional design and shape of the Bionic Wrench Product, as depicted above. LoggerHead argues that their product design trade dress is a nonfunctional design, (Dkt. 136 at ¶ 188), and maintains that the product design trade dress has acquired distinctiveness, (*Id.* at ¶ 189). LoggerHead also alleges that there is a likelihood of confusion due to the use of Bionic Wrench in its Max Axess Locking Wrench. (*Id.* at ¶ 195.) This is further supported by the allegation that Sears sold the Bionic Wrench for several years before releasing the Max Axess Locking Wrench. (*Id.*)

Defendants argue that the product design trademark is functional and therefore not subject to a trade-dress infringement claim. However, "a product whose overall appearance is distinctive can be protected under the trademark laws, even though most of the product's constituent elements serve some function." *Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722, 727 (7th Cir. 2010). LoggerHead was granted a registration certificate for the product design trademark on the Supplemental Register. (Dkt. 136 at ¶ 27.) To be placed on the Supplemental Register, the trade dress mark cannot be functional. *See* 15 U.S.C. § 1091(c). LoggerHead has sufficiently alleged that the product design trademark is not functional for the purposes of a 12(b)(6) motion to dismiss.

Defendants further argue the USPTO determined the product design had not acquired secondary meaning as of 2012. (Dkt. 140-1 at p.3; 140-2 at p.2.) Defendants claim LoggerHead has effectively admitted that the product design has not acquired secondary meaning by its failure to appeal this decision and by registering the product design on the Supplemental Register. As LoggerHead points out, its decision to register the product design on the Supplemental Register cannot constitute an admission that the mark has not acquired distinctiveness. *See* 15 U.S.C. § 1095. However, "[e]ligibility for registration on the Supplemental Register . . . requires that the term does not meet the requirements of registration on the Principal Register but is deemed capable of achieving an association with the source of the product." *In re Bush Bros. & Co.*, 884 F.2d 569, 570 (Fed. Cir. 1989). Registration on the Supplemental Register is rebuttable *prima facie* evidence that the registered mark was descriptive at the time of registration. *See In Re Future Ads LLC*, 103 U.S.P.Q.2d 1571

(T.T.A.B. July 26, 2012). However, conclusions as to the existence of secondary meaning are made on the record as a whole. *Eldon Industries, Inc. v. Rubbermaid, Inc.*, 735 F. Supp. 786, 839 (N.D. Ill. 1990) (citing *In re Hester Industries, Inc.*, 230 U.S.P.Q. 797, 798 (T.T.A.B.1986)).

Product design is "not inherently distinctive" and, therefore, "a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212, 216 (2000). "Secondary meaning can be established through 'direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying.'" *KJ Korea, Inc. v. Health Korea, Inc.*, No. 13-CV-6902, 2014 WL 4344307, at *5 (N.D. Ill. Sept. 2, 2014) (quoting *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001)). LoggerHead has pled sufficient facts to show that the product design mark has acquired secondary meaning or distinctiveness. (Compl. at ¶¶ 17, 22-25, 29-36.)

Defendants' Motion to Dismiss Count XV is denied.

*Count XVI - Packaging Trade Dress Infringement*

LoggerHead alleges that Sears has infringed on their packaging trade dress. Specifically, LoggerHead identifies these elements as protectable: "packaging trade dress that (1) has a cardboard backing with a clear coating so shows that Bionic Wrench product with two handles and six jaws, (2) exposed handles, (3) a try me feature, (4) a lifetime warranty, and (5) an illustration that the product replaces multiple wrenches in one." (Dkt. 136 at ¶ 200.)

"The focus of any trade dress claim must be on the combined effect of all facets of the plaintiff's trade dress." *Turtle Wax, Inc. v. First Brands Corp.*, 781 F. Supp. 1314, 1320 (N.D.

7

Ill. 1991). Read in the light most favorable to the plaintiff, LoggerHead has alleged that their packaging trade dress is valid and protectable as a whole.

Defendants argue that the claimed packaging trade dress is not protectable because the marks are either functional or descriptive. But, while "descriptive marks ordinarily cannot function as trademarks . . . a descriptive mark may warrant protection if it has acquired secondary meaning." *H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 759-60 (7th Cir. 2007) (citing *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 935 (7th Cir. 1986)). For example, "[a] descriptive mark acquires secondary meaning if the product name comes 'to be uniquely associated with the original seller.'" *Id.* (quoting *Custom Vehicles, Inc.*, 476 F.3d at 483). Though LoggerHead does not allege secondary meaning, "trade dress that is inherently distinctive is protectible under § 43(a) without a showing that it has acquired secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767 (1992). While Defendants are correct that each element has been found non-distinctive in other cases, the elements are plausibly alleged to be inherently distinctive as a whole.

LoggerHead has also alleged actual confusion on the part of customers who have contacted LoggerHead, believing that the Max Axess Locking Wrench is associated, affiliated, authorized, or sponsored by LoggerHead. (Dkt. 136 at ¶¶ 207-208.) Whether the confusion occurred at the time of sale or after is immaterial, as "the Lanham Act is not limited to preventing confusion at the time of sale, but also to preventing confusion which occurs after the

sale." *Storck USA, L.P. v. Farley Candy Co.*, 797 F. Supp. 1399, 1410 (N.D. Ill. 1992) (citing *Eldon Industries, Inc.*, 735 F.Supp. at 821).

LoggerHead plausibly alleged that Sears infringed on their packaging trade dress. Defendants' Motion to Dismiss Count XVI is denied.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss [139] Counts XV and XVI is denied.

Date: <u>   January 22, 2015   </u>  /s/ _____
JOHN W. DARRAH
United States District Court Judge