UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-9033 |
| v. ) | |
| ) | Judge John W. Darrah |
| SEARS HOLDINGS CORPORATION ) | |
| and APEX TOOL GROUP, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff LoggerHead Tools, LLC ("LoggerHead") filed a Second Amended Complaint against Defendants Sears Holdings Corporation ("Sears") and Apex Tool Group, LLC ("Apex") (collectively, the "Defendants"), alleging, *inter alia*, various patent and trademark violations associated with United States Patents No. 6,889,579 (the "'579 Patent") and No. 7,992,470 (the "'470 Patent"). On January 8, 2015, the Court held a claims-construction hearing, which included the argument of counsel for each party and the submissions of written summations by each party. The Court also considered the PowerPoint presentations presented by the parties at the hearing, as well as post-hearing briefs.

## BACKGROUND

Dan Brown was awarded the '579 Patent in 2005 and the '470 Patent in 2011 and is the founder and President of LoggerHead. Both Patents are titled "Adjustable Gripping Tool" and are assigned to LoggerHead. The specifications describe an "adjustable gripping tool" designed to impart work upon a workpiece.

An embodiment of the claim appears as set forth below:

**Open Position**                    **Closed Position**





The asserted claims largely relate to a specific structure of the adjustable gripping tool set, the gripping element, as set forth below:



The parties dispute the proper construction of nine terms across fourteen claims from the two patents-in-suit. The claims share the same basic framework: an "adjustable gripping tool" that includes wrench-type embodiments and other tools that have "gripping elements . . .

2

configured to score or cut a workpiece." The inventions and asserted claims present two elements, a "first element" and a "second element." The first element includes: (1) a body portion and (2) an arm portion contiguous with a force transfer element. Claim 1 of the '579 Patent claims:

> 1. An adjustable gripping tool for engaging a workpiece to impart work thereto, the tool comprising:
>
> > a first element and a second element connected for relative angular movement which generates movement of at least one gripping element;
> >
> > the first element including a gripping portion configured to engage the workpiece including a first opening, at least one guide extending from the first opening and the at least one gripping element;
> >
> > each at least one gripping element including a body portion adapted for engaging the workpiece, an arm portion configured to engage one of said at least one guide and a force transfer element contiguous with the arm portion;
> >
> > the second element including an actuation portion having a second opening concentric with the first opening and at least one slot disposed adjacent the second opening external thereto, each said at least one slot having a first section configured to engage the force transfer element of one said at least one gri[pp]ing element, such that movement of the second element with respect to the first element actuates each at least one first section to contact and move each respective force transfer element thereby actuating each said at least one gripping element along respective said at least one guide.

(JA 182-83 at 8:49-9:6.) Claim 1 of the '470 Patent claims:

> 1. An adjustable gripping tool for engaging a work piece to impart work thereto, the tool comprising:
>
> > (a) a first element and a second element connected for relative movement which generates movement of at least one gripping element;
> >
> > (b) the first element including a gripping portion configured to engage the work piece including at least one guide defined in the gripping portion and said at least one gripping element;

(c) each at least one gripping element including a body portion adapted for engaging the work piece, an arm portion configured to engage one said at least one guide and a force transfer element contiguous with the arm portion;

(d) the second element including an actuation portion having at least one slot therein, each said at least one slot having a first section configured to engage the force transfer element of one said at least one gripping element, such that movement of the second element with respect to the first element actuates each at least one first section to contact and move each respective force transfer element thereby actuating each said at least one gripping element along respective said at least one guide, wherein the first element further includes at least one aligning element such that each said at least one aligning element is disposed between an adjacent pair of guides and extends parallel to the force transfer elements.

(JA857 at 18:34-60.)

## LEGAL STANDARD

Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970 (Fed. Cir. 1995). Claim construction involves "determining the meaning and scope of the patent claims asserted to be infringed." *Id.* at 976. In construing the claim, the court does not "rewrite claims" but, rather, "give[s] effect to the terms chosen by the patentee." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999). The words of a claim are "generally given their ordinary and customary meaning"; that is, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (citations omitted.)

In interpreting claims, "the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The specification is "highly relevant to the claim construction analysis," is "usually . . . dispositive" and is "the single best guide to the meaning of a disputed term." *Id.* However, limitations from

4

the specification describing embodiments must not be imported into a claim that does not recite those limitations. *Phillips*, 415 F.3d at 1323.

The court may also consider extrinsic evidence, such as expert testimony, dictionaries and learned treatises. *Markman*, 52 F.3d at 980. However, "[e]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Id.* at 981.

## ANALYSIS

### *"Arm Portion"*

The parties dispute the proper construction of the term "arm portion." The following are the parties' proposed constructions:

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| plain and ordinary meaning (term is defined by other claim language)<br><br>Alternatively: portion of a gripping element(s) configured to engage one of the guides and contiguous with a force transfer element | portion of gripping element that projects from the body portion and to which the force transfer element is connected |

During the prosecution history, LoggerHead distinguished the '470 Patent from U.S. Patent No. 2,787,925 (the "Buchanan patent") by claiming that the '470 Patent contained an "arm portion" and a "body portion" as opposed to the Buchanan patent which only contained a "body portion." The Patent Office alleged that the Buchanan patent disclosed "each at least one gripping element (**26**) including a body portion (**24**) adapted for engaging the work piece, an arm portion (**adj. 25**) configured to engage one the at least one guide (**19**) and a force transfer element (**26**) contiguous with the arm portion." (JA744.) Later in the Office Action, the examiner identified the gripping element as (**24**). (JA745.)



Buchanan's Plunger



Applicant's Gripping Element

LoggerHead replied:

> As shown, Buchanan's plunger 24 includes a pin 26 (and a crimping portion 25). The Office Action alleges that Buchanan discloses "each at least one gripping element including a body portion (24) adapted for engaging the work piece, an arm portion configured to engage one at least one guide and a force transfer element (26) configured with the arm portion." The Examiner suggests that the arm portion is shown at "(adj. 25)." No structure is adjacent to the crimping portion 25 of Buchanan except for the pin 26.

> Applicant respectfully submits that Buchanan's gripping element does not contain an arm portion. Instead, the force transfer element (i.e., pin 26) of Buchanan is directly attached to the body portion. In contrast, as shown in the partial reproduction of Applicant's FIG. 1 above, the claimed subject matter requires, among other things, a gripping element 26 that includes a body portion 34, a force transfer element 38, and an arm portion 36. Furthermore, claim 1, for example, requires that "the force transfer element [is] contiguous with the arm portion." The force transfer element 26 of Buchanan, as best understood, however, is contiguous with the body, not an arm portion because Buchanan does not teach or suggest an arm portion.

(JA782-83.)

Defendants argue that LoggerHead's distinctions require that "arm portion" and "body portion" must be separate structures. LoggerHead responds that "arm portion" and "body portion" were used as labels for easier reference and that the word "portion" does not necessitate a separate structure. The "use of the term 'portion' does not itself require that the [gripping element] contain [another] structure." *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 F. App'x 697, 702 (Fed. Cir. 2008). Further, "[g]iven the examiner's obligation to confer the broadest reasonable interpretation on 'portion,' if the examiner wanted to hinge patentability upon [one

portion] being structurally separate from [another portion], he would have said so, and required a specific amendment to reflect the separate structures." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1347 (Fed. Cir. 2001). However, the examiner did not require a specific amendment to reflect separate arm and body structures.

Indeed, the '470 Patent specifications include: "In one embodiment of the present disclosure, *the arm portion of the gripping elements further includes a pair of arms* disposed at opposite ends of the body portion such that the gripping elements are substantially U-shaped." (JA851 at 5:37-41) (emphasis added). The same description was allowed as a dependent claim, claim 3; and the examiner did not require an amendment to claim 1. Similarly, the '470 Patent includes claim 29: "In these embodiments, each gripping element includes *an extension that projects from the gripping element* to define a second body portion adapted for engaging the work piece *such that the body portion facilitates a first range of gripping ability and the second body portion facilitates a second range of gripping ability*." (JA 855 at 13:41-43) (emphasis added).

Specifications are the "primary basis for construing the claims." *Phillips*, 415 F.3d at 1315 (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed.Cir.1985)). However, as mentioned above, limitations from the specification describing embodiments must not be imported into a claim that does not recite those limitations. Therefore, it would be improper to read separate structure and projection limitations into the claim. Further, "[t]he manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent." *Id*. (citing *Snow v. Lake Shore & M.S. Ry. Co.*, 121 U.S. 617, 630 (1887) (it was clear from the specification that there was "nothing in the context to indicate that the patentee contemplated any alternative" embodiment to the one presented)). The

specifications and claims differentiate between "arm" and "arm portion" as well as between a structure "that projects from" the "body portion" and the "arm portion. The '470 Patent also states that "[t]he gripping elements themselves may be varied in size, shape, surface finish, body configuration, arm configuration or quantity." (JA857 at 18:14-16.)

Defendants further argue that LoggerHead's distinction between "arm portion" and "body portion" was a prosecution disclaimer. "The doctrine of prosecution disclaimer promotes the public notice function of a patent's intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1098 (Fed. Cir. 2013) (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed.Cir.2003)). "[A] clear and unmistakable disavowal during prosecution overcomes the heavy presumption that claim terms carry their full ordinary and customary meaning." *Id.* (citations and quotations omitted). LoggerHead argues that they did not directly disclaim non-projecting "arm portion" during prosecution. "An applicant's silence in response to an examiner's characterization of a claim does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization." *3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003). However, in this case, the applicant, in his reply to the examiner set out above, did not remain silent as to the examiner's characterization.

LoggerHead submitted two other differentiations between their patent claim and Buchanan: (1) "Buchanan does not show the elements united in the same way as disclosed in Applicant's claims" (JA602); and (2) "Buchanan does not describe that the second element includes an actuation portion having at least one slot, as required, for example, in claim 1."

(JA604).   The examiner's acceptance of the differentiation gave a statement of reasons for allowance:

> The art of record considered as whole, alone, or in part, fails to provide, *inter alia*, at least one gripping element including *a body portion* . . . , *an arm portion* configured to engage on said at least one guide *and a force transfer element* contiguous with the arm portion; and, . . . wherein the first element further includes *at least one aligning element* such that each said at least one aligning element is *disposed between an adjacent pair of guides and extends parallel to the force transfer elements*, together in combination with the rest of the limitations of the independent claim.

(JA799).  The examiner allowed the differentiation based on the arm portion argument and the argument that Buchanan does not show the same structure of elements.

"[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) (quoting *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed.Cir.2007)).  But the Federal Circuit has "consistently declined to invoke the doctrine of prosecution disclaimer in the absence of 'an unambiguous disavowal that *clearly and unmistakably* disclaims' the plain meaning of a disputed claim term." *Biogen Idec, Inc.*, 713 F.3d at 1098 (quoting *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1342 (Fed. Cir. 2012) (emphasis added)).  The applicant posited that the examiner's characterization was incorrect as the Buchanan patent identifies 24 as the entire plunger, while the examiner characterized it as the "body portion."  Under the examiner's logic, there could be no structure to identify as an "arm portion."  Therefore, Plaintiff's differentiation of the '470 Patent from the Buchanan patent was not a clear and unmistakable prosecution disclaimer.

"A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). Plaintiff's alternate proposed construction gives more meaning to both "arm" and "portion" than the plain and ordinary meaning. In light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "arm portion" as "portion of a gripping element(s) configured to engage one of the guides and contiguous with a force transfer element."

*"Body Portion"*

The parties dispute the proper construction of the term "body portion." The following are the parties' proposed constructions:

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| plain and ordinary meaning (term is defined by other claim language)<br><br>Alternatively: portion of a gripping element(s) adapted for engaging a workpiece | main central portion of gripping element adapted for engaging a workpiece |

For the reasons discussed in the construction of "arm portion", and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "body portion" as "portion of a gripping element(s) adapted for engaging a workpiece."

*"An Adjustable Gripping Tool for Engaging a Workpiece to Impart Work Thereto"*

Both patents contain a preamble which describes the tool as "An adjustable gripping tool for engaging a workpiece to impart work thereto . . . ." The parties dispute the proper construction of the phrase, "An adjustable gripping tool for engaging a workpiece to impart work thereto." The following are the parties' proposed constructions:

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A hand tool that may be automatically sized to and engages workpieces of different sizes and dimensions and symmetrically translates the force applied to the tool onto the workpiece for an even distribution of gripping and rotational forces about the workpiece | tool (e.g., wrench, crimper, cutter) designed to contact and impart work on workpieces of different sizes and dimensions |

Generally, a preamble does not limit the claims, but the preamble may be construed as limiting "if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) (citing *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002), and *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)). The parties agree that the preamble is limiting but disagree as to the extent of the limitation.

In the background section of both patents, LoggerHead pointed to alleged problems with prior art in the area and stated:

> Therefore there exists need in the prior art for an adjustable gripping tool which, as a result of manual operation, self-energizes the tool action, may be automatically sized and resized to engage a workpiece, de-energizes upon release of actuation force, that has a broad range of dimensional capability, engages workpieces axially and radially and provides offsetting forces for stability in operation. Beyond the ability to resize the gripping range, the gripping tool of the present invention symmetrically translates the force applied to the gripping tool onto the workpiece in a symmetrically balanced and mechanically advantaged and efficient way. Thus, an even distribution of gripping and rotational force about the workpiece is achieved; whereby allowing for the most efficient distribution of mechanical stress about the workpiece.

(JA179 at 2:4-18 ; JA849 at 2:7-20). Defendants argue that LoggerHead's claim construction impermissibly reads out a specific embodiment of the patent. LoggerHead argues that Defendants' construction does not take the limitations in the preamble into account.

"When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295, 1308 (Fed. Cir. 2007). Normally, claims are not interpreted in a way that excludes embodiments disclosed in the specification; however, courts can interpret claims "to exclude embodiments of the patented invention where those embodiments are clearly disclaimed in the specification." *Oatey Co. v. IPS Corp.,* 514 F.3d 1271, 1276-77 (Fed. Cir. 2008) (citations omitted). The Federal Circuits have found disclaimers when "the patent repeatedly disparaged an embodiment as 'antiquated,' having 'inherent inadequacies,' and then detailed the 'deficiencies [that] make it difficult' to use" and "when the specification described that feature as a 'very important feature . . . in an aspect of the present invention, and disparaged alternatives to that feature.'" *GE Lighting Solutions, LLC v. AgiLight, Inc.,* 750 F.3d 1304, 1309 (Fed. Cir. 2014), reh'g denied (June 17, 2014) (citing *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC,* 677 F.3d 1361, 1372 (Fed. Cir. 2012); *Inpro II Licensing, S.A.R.L. v. T–Mobile USA Inc.,* 450 F.3d 1350, 1354–55 (Fed. Cir. 2006).

Here, the Patent disparages alternatives to the present invention; and the specifications disclose a tool that engages workpieces "axially and radially and provides offsetting forces" and that "symmetrically translates the force applied to the gripping tool" which leads to "an even distribution of gripping and rotational force." This consistent language functions as a disclaimer requiring the present invention to symmetrically apply force. The phrase regarding "an even distribution of gripping and rotational force" states the result of the symmetrical translation of force. A description of the desired results from using a device does not necessarily "impart patentability to the claim." *Application of Boling,* 292 F.2d 306, 312 (C.C.P.A. 1961). Similarly other results, such as minimal distortion of the workpiece, are not limitations.

For the reasons discussed above, and in light of light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "An adjustable gripping tool for engaging a workpiece to impart work thereto" as "A hand tool that may be automatically sized to and engages workpieces of different sizes and dimensions and symmetrically translates the force applied to the tool onto the workpiece."

*"Workpiece"*

The parties dispute the proper construction of the term "workpiece." The following are the parties' proposed constructions:

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a part that can be engaged by a gripping element(s) in a manner that evenly distributes gripping and rotational forces about the part | part (e.g., nut, bolt, wire, tube) that can be worked upon by gripping tool |

"[T]he words of a claim are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312. There is no reason why workpiece should not be given its ordinary and customary meaning. There is no evidence of a disclaimer or intent to limit the definition of workpiece in the prosecution history. For the reasons discussed above, and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "workpiece" as "part that can be worked upon by the tool."

*"First Element"*

The parties dispute the proper construction of the term "first element." The following are the parties' proposed constructions:

13

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a first grasping portion containing within and integral to one end of that grasping portion an opening for a workpiece, and at least one guide extending from the opening and gripping portion defined within one end of the first grasping portion and configured to engage the workpiece | plain and ordinary meaning (term is defined by other claim language) |

The '470 specification describes the first element: "The first element further includes a gripping portion formed substantially as and commonly referred to a head of a tool, disposed at one end of the first grasping portion and configured to engage the work piece . . . including a first opening, a plurality of guides extending radially from the first opening and the gripping elements." (JA851, 5:12-19). The parties' dispute centers on LoggerHead's suggested construction, including the phrase "containing within and integral to." LoggerHead argues that the drawings in both the '470 Patent and the '579 Patent show the gripping portion as integral to the first element. Defendants argue that the limitations from the drawings depicting the embodiments should not be read into the claims.

LoggerHead cites *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295 (Fed. Cir. 1999), which held that the term "including" required a restriction ring that was permanently attached to a cover. *Toro Co.*, 199 F.3d at 1302. However, that patent also stated that the ring was inserted and removed automatically when the cover was inserted or removed; and the specification described "the advantages of the unitary structure as important to the invention." *Id.* at 1301. There is nothing in either patent describing advantages to having an opening integral to and contained within the grasping portion, nor is there a specification that requires one automatically moving the other. Further, *Toro Co.* also holds that a "preferred embodiment does not limit broader claims that are supported by the written description." *Id.* In this case, the written

14

description of the tool does not demand that the opening for a workpiece be contained within, and integral to, the grasping portion. Limitations from the embodiments are generally not read into the claims. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

For the reasons discussed above, and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "first element" as having its plain and ordinary meaning.

*"Second Element"*

The parties dispute the proper construction of the term "second element." The following are the parties' proposed constructions:

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| '579 Patent: a second grasping portion containing within and integral to one end of that grasping portion an opening concentric with an opening within one end of a first element, and an actuation portion, and at least one slot defined within one end of the second grasping portion<br><br>'470 Patent: a second part containing a grasping portion and tool head at one end of the grasping portion, where formed within and integral to the tool head is an opening concentric with an opening within one end of a first element, and an actuation portion, and at least one slot | plain and ordinary meaning (term is defined by other claim language) |

The '579 Patent describes the second element as:

> the second element including an actuation portion having a second opening concentric with the first opening and at least one slot disposed adjacent the second opening external thereto, each said at least one slot having a first section configured to engage the force transfer element of one said at least one gri[pp]ing element, such that movement of the second element with respect to

the first element actuates each at least one first section to contact and move each respective force transfer element thereby actuating each said at least one gripping element along respective said at least one guide.

(JA182-83 at 8:63-9:6.) The '579 Patent specification describes the second element as: "The second element further includes *an actuation portion disposed at one end* of the second grasping portion and having a second opening concentric with the first opening and a plurality of slots disposed adjacent the second opening." (JA180 at 4:37-41.) (Emphasis added.)

The '470 Patent describes the second element as:

the second element including an actuation portion having at least one slot therein, each said at least one slot having a first section configured to engage the force transfer element of one said at least one gripping element, such that movement of the second element with respect to the first element actuates each at least one first section to contact and move each respective force transfer element thereby actuating each said at least one gripping element along respective said at least one guide, wherein the first element further includes at least one aligning element such that each said at least one aligning element is disposed between an adjacent pair of guides and extends parallel to the force transfer elements.

(JA 857 at 18:48-60.) The '470 Patent specification describes the second element as: "The second element further includes *an actuation portion formed substantially as and commonly referred to as a head of a tool, disposed at one end* of the second grasping portion and having a second opening preferably concentric with the first opening and a plurality of slots disposed adjacent the second opening." (JA851 at 5:61-66.) (Emphasis added.)

"[T]he same term or phrase should be interpreted consistently where it appears in claims of common ancestry." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1030 (Fed. Cir. 2002) (citing *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999); *Abtox, Inc. v. Exitron Corp.*, 131 F.3d 1009, 1010 (Fed. Cir. 1997); *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 632 (Fed. Cir. 1987)). The Federal Circuit has "permitted reliance on statements made subsequent to the issuance of a patent when construing its claims

16

where the statements were made in connection with continued prosecution of sibling applications." *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167 (Fed. Cir. 2004). However, new-matter content in a related patent cannot be used to construe claims of the older patent. *See Id.* at 1168.

The '579 second element "includes an actuation portion disposed at one end of the second grasping portion" while the '470 second element  "includes an actuation portion formed substantially as and commonly referred to as a head of a tool, disposed at one end of the second grasping portion."  The '470 Patent narrows the specification for the second element. *See US Foam, Inc. v. On Site Gas Sys., Inc.*, 735 F. Supp. 2d 535, 546 (E.D. Tex. 2010) (holding that, by defining a term in the continuation-in-part that was not defined in the parent, the patentee gave the continuation-in-part a narrower scope than the parent).  Therefore, "second element" is narrower in the '470 Patent than in the '579 Patent.

For the reasons discussed above, and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "second element" in the '470 Patent as "a second part containing a grasping portion and tool head at one end of the grasping portion, where formed within and integral to the tool head is an opening concentric with an opening within one end of a first element, and an actuation portion, and at least one slot."

The '579 Patent is not so limited.  While the drawings show a second element integrated with an actuation portion, a "preferred embodiment does not limit broader claims that are supported by the written description." *Toro Co.*, 199 F.3d at 1301. The written descriptions of the second element in the claim and the specification do not require the second element to be integrated with the actuation portion.  Limitations from the embodiments are generally not read into the claims. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir.

2014).  For the reasons discussed above, and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "second element" in the '579 Patent as "a second grasping portion containing an opening concentric with an opening within one end of a first element, and an actuation portion, and at least one slot defined within one end of the second grasping portion."

*"Actuation Portion"*

The parties dispute the proper construction of the term "actuation portion."  The following are the parties' proposed constructions:

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| '579 Patent:  an area integral to and formed within one end of the second element grasping portion<br><br>'470 Patent:  an area integral to and formed within the tool head of the second element | portion of second element opposite the grasping portion that facilitates movement of the gripping element |

For the purpose of this term, the sole difference is that the '579 Patent refers to the actuation portion as merely "disposed at one end of the second grasping portion," while the '470 Patent refers to the actuation portion as "formed substantially as and commonly referred to as a head of a tool, disposed at one end of the second grasping portion."

For the reasons discussed above in the "second element" construction, and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "actuation portion" in the '579 Patent as "portion of second element that facilitates movement of the gripping element."

For the reasons discussed above in the "second element" construction, and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase

"actuation portion" in the '470 Patent as "portion of second element integral to and formed within the tool head of the second element that facilitates movement of the gripping element."

*"Disposed on the First Element Operable to Secure the First Element and Second Element in a Desired Angular Orientation"*

The parties dispute the proper construction of the phrase "disposed on the first element operable to secure the first element and second element in a desired angular orientation." The following are the parties' proposed constructions:

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| positioned on the first element to maintain the first and second elements at a predetermined position when applying rotational force about the workpiece | connected to the first element to prevent relative movement between the first element and the second element |

Claim 2 of the '579 Patent recites: "The gripping tool as recited in claim 1, further including a lock mechanism disposed on the first element operable to secure the first element and second element in a desired angular orientation." (JA183 at 9:7-10.) The '579 specification describes: "A lock mechanism is connected to the first element such that operative movement of the lock mechanism from a first operative position to a second operative position secures the first element and second element in any desired orientation." (JA852 at 7:17-21.) When the locking mechanism is moved to the second operative position, it "binds against the second element such that the first element and second element cannot be moved relative to one another without first releasing the lock mechanism." (JA182 at 7:13-16.)

LoggerHead argues that the term "disposed" is broader than Defendants' proposed construction as connected. The term disposed is also used in a description of Figure 2 in the '579 Patent: "The lock mechanism is disposed in the second operative position securing the first

element and second element a desired angular orientation." (JA181 at 6:1-3.)  If disposed meant connected, this phrase would make no sense.   "[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." *Rexnord Corp.*, 274 F.3d at 1342.  Therefore, positioned is the more accurate construction.

The parties' other disagreement centers around whether the locking mechanism described in the '579 Patent stops the motion of the first and second element completely or whether the locking mechanism only prevents the first and second element from moving apart.  LoggerHead argues that during the prosecution history, the patentee made the locking functionality clear.



FIG.8

In distinguishing Fig. 8 of  U.S. Patent No. 3,713,322 to Fisher, the patentee stated:  "Surface 124 is a portion of stop 120 which functions to stop arm 101 during operation of the tool 39 and does not provide any locking functions as claimed by Applicant."  (JA102.)  LoggerHead claims that this functions as a disclaimer of a locking function that prevents the squeezing of the handles together.  However, the patentee specifically distinguished the prior art on the basis that the prior art "does not provide *any locking functions*."  The prior art showed a mechanism prevented the arm of the tool from moving forward but did not hold the arm in place.  The claim language in the '579 Patent clearly indicates that the locking mechanism keeps the first and second element

at a desired orientation, *i.e.*, holds the elements locked in a specific configuration. This interpretation is further supported by the specifications, which state that "the first element and second element *cannot be moved relative to one another without first releasing the lock mechanism*." (JA182 at 7:13-16.) (Emphasis added.)

For the reasons discussed above, and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "disposed on the first element operable to secure the first element and second element in a desired angular orientation" as "positioned on the first element to maintain the first and second elements at a predetermined position."

*"Circumferentially Engage the Workpiece"*

The parties dispute the proper construction of the phrase "circumferentially engage the workpiece." The following are the parties' proposed constructions:

| LoggerHead's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| encircle and facilitate contact with the workpiece | make contact with the workpiece at points around its circumference |

Dependent claim 9 in the '579 Patent claims: "The gripping tool as recited in claim 1 wherein the gripping portion and actuation portion circumferentially engage the workpiece." LoggerHead argues that the actuation portion does not make contact with the workpiece and, thus, can only facilitate contact. Defendants argue that the term engage should be construed consistently throughout the '579 Patent and that every other use of the term "engage" means make contact with. "[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." *Rexnord Corp.*, 274 F.3d at 1342. Under LoggerHead's proposed construction, the actuation portion *and* the gripping

portion, which includes the gripping elements, would only facilitate contact. This would mean that no part of the tool would actually make contact with the workpiece.

For the reasons discussed above, and in light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "circumferentially engage the workpiece" as "make contact with the workpiece at points around its circumference."

## CONCLUSION

Therefore, the disputed terms are constructed as follows:

| Term | Construction |
|---|---|
| "arm portion" | portion of a gripping element(s) configured to engage one of the guides and contiguous with a force transfer element |
| "body portion" | portion of a gripping element(s) adapted for engaging a workpiece |
| "An adjustable gripping tool for engaging a workpiece to impart work thereto" | A hand tool that may be automatically sized to and engages workpieces of different sizes and dimensions and symmetrically translates the force applied to the tool onto the workpiece |
| "workpiece" | part that can be worked upon by the tool |
| "first element" | plain and ordinary meaning (term is defined by other claim language) |
| "second element" | '579 Patent: a second grasping portion containing an opening concentric with an opening within one end of a first element, and an actuation portion, and at least one slot defined within one end of the second grasping portion.<br><br>'470 Patent: a second part containing a grasping portion and tool head at one end of the grasping portion, where formed within and integral to the tool head is an opening concentric with an opening within one end of a first element, and an actuation portion, and at least one slot |

| Term | Construction |
|---|---|
| "actuation portion" | '579 Patent:  portion of second element that facilitates movement of the gripping element |
| "actuation portion" | '470 Patent:  portion of second element integral to and formed within the tool head of the second element that facilitates movement of the gripping element |
| "disposed on the first element operable to secure the first element and second element in a desired angular orientation" | positioned on the first element to maintain the first and second elements at a predetermined position |
| "circumferentially engage the workpiece" | make contact with the workpiece at points around its circumference |

Date: _____August 27, 2015_____

_____
JOHN W. DARRAH
United States District Court Judge