REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, | ) <br> ) <br> ) |
| Plaintiff, | ) Case No. 1:12-cv-09033 <br> ) |
| v. | ) Honorable John W. Darrah <br> ) Honorable Maria Valdez |
| SEARS HOLDINGS CORPORATION <br> and APEX TOOL GROUP, LLC, | ) <br> ) JURY TRIAL DEMANDED <br> ) |
| Defendants. | ) <br> ) <br> ) |

**DEFENDANT APEX'S MEMORANDUM OF LAW IN SUPPORT OF
ITS *DAUBERT* MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY
AND OPINION OF CHRISTOPHER BOKHART RELATING TO PATENT
<u>REASONABLE ROYALTY AND TRADE DRESS INFRINGEMENT DAMAGES</u>**

**REDACTED**

## TABLE OF CONTENTS

I. Introduction ...................................................................................................................1

II. Background ..................................................................................................................2

III. Legal Standard .............................................................................................................4

IV. Argument .....................................................................................................................5

    A. Mr. Bokhart's Reasonable Royalty Analysis Is Unsupported And Unreliable ..........................................................................................................5

        1. Mr. Bokhart Relies On Measures of Lost Profits He Is Unable To Quantify. ......................................................................................................5

        2. Mr. Bokhart's Evidence Does Not Support His Opinions. ..........................6

        3. Mr. Bokhart Improperly Includes Sears As A Party To The Hypothetical Negotiation In An Attempt To Further Inflate Damages .......................................................................................................9

    B. Mr. Bokhart Does Not Even Attempt To Calculate Trade Dress Damages, Thus The Court Should Preclude Mr. Bokhart From Offering Any Such Analysis At Trial .........................................................................................11

V. Conclusion .................................................................................................................12

**REDACTED**

## **TABLE OF AUTHORITIES**

**Cases**

*Cornell Univ. v. Hewlett-Packard Co.*,
 No. 01-CV-1974, 2008 WL 2222189 (N.D.N.Y. May 27, 2008).................................... 4, 9

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
 246 F.3d 1336 (Fed. Cir. 2001).......................................................................................... 6, 7

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
 185 F.3d 1341 (Fed. Cir. 1999).......................................................................................... 6, 8

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
 191 F.3d 813 (7th Cir, 1999) ............................................................................................. 11

*IP Innovation L.L.C. v. Red Hat, Inc.*,
 705 F. Supp. 2d 687 (E.D. Tex. 2010) ............................................................................... 5

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999)............................................................................................................ 5

*Lewis v. Citgo Petroleum Corp.*,
 561 F.3d 698 (7th Cir. 2009) ............................................................................................. 5

*Lucent Techs., Inc. v. Gateway, Inc.*,
 580 F.3d 1301 (Fed. Cir. 2009)......................................................................................... 8

*Micro Chem., Inc. v. Lextron, Inc.*,
 317 F.3d 1387 (Fed. Cir. 2003)......................................................................................... 5

*ResQNet.com, Inc. v. Lansa, Inc.*,
 549 F.3d 860 (Fed. Cir. 2010)........................................................................................... 4

*Riles v. Shell Exploration & Production Co.*,
 298 F.3d 1302 (Fed. Cir. 2002)......................................................................................... 8

*Sloan Valve Co. v. Zurn Indus., Inc.*,
 33 F. Supp. 3d 984 (N.D. Ill. 2014) ................................................................................... 5

*Stickle v. Heublein, Inc.*,
 716 F.2d 1550 (Fed. Cir. 1983)......................................................................................... 10

*SynQor, Inc. v. Artesyn Techs., Inc.*,
 709 F.3d 1365 (Fed. Cir. 2013)......................................................................................... 6

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
 No. 6:11-CV-455, 2014 WL 3419974 (E.D. Tex. June 21, 2014)..................................... 8

**REDACTED**

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ........................................................................................ 4

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) ............................................................................................ 8

**Statutes**

35 U.S.C. § 284 .................................................................................................................... 2

**Rules**

FED. R. CIV. P. 26(a)(2)(D) ................................................................................................. 12

FED. R. CIV. P. 37(c)(1) ...................................................................................................... 12

**REDACTED**

I. **INTRODUCTION**

Defendant Apex moves to preclude LoggerHead's proffered damages expert, Mr. Christopher Bokhart, from offering an unsubstantiated and grossly-inflated opinion of the "reasonable" royalty patent damages in this case. Mr. Bokhart admits that in his three decades of being a damages expert, including over 100 cases in which he has testified, he has ***never*** previously offered an opinion in which the reasonable royalty patent damages exceeded lost profits. Yet in this case, Mr. Bokhart seeks to present a "reasonable" royalty opinion that would provide LoggerHead a windfall of ***double*** LoggerHead's total calculated lost profits. Not surprisingly, the reasoning that Mr. Bokhart provides for his super-royalty opinion is not grounded in sound economic principles and should be excluded under *Daubert*.

To be clear, Apex is not asking the Court to preclude LoggerHead from offering any expert testimony in support of its claim for patent damages. While Mr. Bokhart's calculation of lost profits is flawed and exaggerates the possible damage associated with any patent infringement, his lost profits analysis is at least sufficiently connected to the facts and law to meet the minimum threshold under *Daubert*. Not so for Mr. Bokhart's "reasonable" royalty analysis, which attempts to take damages he admits are incalculable as forms of lost profits and transform them into justifications for his royalty opinion that amounts to over ▮% of Apex's total profits in selling the accused products and nearly double the amount LoggerHead would have made even if it had made ***every sale*** that Apex made. Mr. Bokhart's own research for comparable licenses turned up literature showing royalty rates in the hand tool industry to be 2-4%, yet he seeks to present an unsupportable super-royalty to the jury that is orders of magnitude higher. (*See* Ex. 1, 4/15/16 Expert Report of Christopher J. Bokhart ("Bokhart Rpt.") at Ex. 17.)

Section 284 of the Patent Act provides that upon a finding of infringement of a valid patent, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. Because LoggerHead's super-royalty damage calculation lacks sound economic bases and goes well beyond what could possibly be adequate to compensate LoggerHead for any infringement, this Court's gate-keeping function under *Daubert* requires that LoggerHead be precluded from presenting its reasonable royalty theory to the jury.[1]

## II. BACKGROUND

LoggerHead's claims focus on the Max Axess Locking Wrench ("MALW"), a hand tool designed and manufactured by Apex and sold to Sears in 6- and 8-inch sizes. (Dkt. 136.) Apex's MALW includes numerous advantages and its own inherent value, distinct from any alleged to derive from LoggerHead's patents or Bionic Wrench product, including the well-known Craftsman brand, Apex's own patented design, a locking feature, greater maximum torque, a fastener scale and cushioned dual-material handles. (Ex. 2, 11/11/15 E. Broadaway Dep. Tr. at 72-73, 134; Ex. 3, U.S. Patent No. 8,984,990; Dkt. 136, Second Amended Complaint ¶ 97.) Since the launch of the MALW during the 2012 holiday season, the retail price has averaged $▇▇▇ per unit for the 6-inch version and $▇▇▇ for the 8-inch model. (Ex. 4, 5/11/16 Expert Report of Louis G. Dudney, CPA, CFF ("Dudney Rebuttal Rpt.") at Ex. 4.)

On April 15, 2016, LoggerHead's damages expert, Mr. Christopher Bokhart, submitted an expert report in which he alleged lost profits from sales of the MALW at $▇▇▇▇▇▇. (Ex. 1,

---

[1] This motion seeks to exclude certain opinions of Mr. Bokhart relating to patent damages, and separately (in Section IV.B) relates to LoggerHead's product design and product packaging trade dress infringement claims. Defendants have separately moved for summary judgment on the patent and trade dress claims (Counts I-IV, XV, and XVI), which, if successful, would moot this *Daubert* motion.

Bokhart Rpt. at 53.) To reach this figure, Mr. Bokhart assumed that LoggerHead would have sold a Bionic Wrench unit for *every* MALW unit sold. (*Id.* at 44.)[2] Mr. Bokhart also postulated without analysis that LoggerHead may have suffered "other forms" of lost profits, including: lost or diminished profits on other LoggerHead customer sales; price erosion; excess manufacturing costs and "other manufacturing issues"; and loss of goodwill. (*Id.*) But he freely admits, as he must, that he cannot prove or quantify these alleged additional "other forms" of damages to any "reasonable probability." (Ex. 1, Bokhart Rpt. at 35-36, 43, 53-56.) As a result, Mr. Bokhart did not attempt to include them in his lost profits calculation. Instead, Mr. Bokhart sought to include these incalculable lost profit damages to artificially *double* the lower boundary of his reasonable royalty calculation. (*Id.* at 35.)

To reach his proffered royalty, Mr. Bokhart constructed a hypothetical negotiation between LoggerHead, Apex, and Sears in April 2012. (*Id.* at 17, 36; Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 14.) As the starting point, Mr. Bokhart presumed that the minimum LoggerHead would have been willing to license the asserted patents for would have been "some amount greater than" LoggerHead's average per-unit profit in 2012 for the Bionic Wrench, which Mr. Bokhart calculated as $■ per 6-inch product and $■ per 8-inch model. (Ex. 1, Bokhart Rpt. at 36-37.) Mr. Bokhart then relied upon the alleged additional lost profit categories *he could not calculate or otherwise articulate in calculating lost profits* to "increase the lower bound" of the

---

[2] Defendants' damages expert, Mr. Louis Dudney, issued a rebuttal report criticizing Mr. Bokhart's lost profits calculation on numerous grounds, each of which caused Mr. Bokhart to overstate LoggerHead's alleged lost profits. (Ex. 4, Dudney Rebuttal Rpt. at 20-32.) Mr. Dudney points out that Mr. Bokhart's assumption that but for the alleged infringement, every Apex sale would have a resulted in a LoggerHead sale is flawed. Sears would not have promoted the Bionic Wrench through DRTV advertising from the holiday 2012 season forward and it is undisputed that DRTV promotion drives significant demand for these products. (*Id.* at 21-23.) Notwithstanding these flaws, Mr. Bokhart's quantified analysis of LoggerHead's alleged lost profits is not the subject of this *Daubert* motion.

royalty range to which he claims the parties would have agreed. (Ex. 1, Bokhart Rpt. at 35.) This incorporation of the unreliable and indeterminate lost profits categories into his reasonable royalty analysis allows Mr. Bokhart to conclude that the royalty at which the parties would have agreed is, "*at a minimum*, $▇ per unit for the 6-inch wrench and $▇ per unit for the 8-inch wrench." (*Id.* at 37 (emphasis added).)

At $▇ and $▇ per unit, Mr. Bokhart's total royalty damages exceed $▇—more than double his $▇ lost profits figure. (*Id.*) Indeed, Mr. Bokhart offers those numbers *only as a minimum*. (Ex. 1, Bokhart Rpt. at Ex. 4.1; Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 170-74.) Mr. Bokhart provides no reasoning or analysis to explain how these additional forms of unquantified purported lost profits justify doubling the per-unit lost-profit figures.

Mr. Bokhart also purports to analyze LoggerHead's trade dress damages; however, the relevant section of Mr. Bokhart's report only sets out Apex's and Sears' respective revenues from each of their sales of the MALW. (Ex. 1, Bokhart Rpt. at 59-60.) Mr. Bokhart does not even attempt to provide any analysis or calculation regarding either of Defendant's profits attributable to the alleged trade dress infringement. (*Id.*; Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 184.)

### III. LEGAL STANDARD

LoggerHead bears the burden of proving damages. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). A damages award may not rest on "speculative and unreliable evidence divorced from proof of economic harm linked to the claimed invention." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010). "Where . . . sound economic and factual predicates are absent from a reasonable royalty analysis, a district court must exercise its discretion to exclude the proffered testimony." *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 WL 2222189, at *2 (N.D.N.Y. May 27, 2008) (Rader, C.J.,

4

sitting by designation); *accord IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687 (E.D. Tex. 2010) (Rader, C.J., sitting by designation).

This Court has a gatekeeper obligation under Federal Rule of Evidence 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). A district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003). The burden is on LoggerHead, as the proponent of the expert at issue, to prove the admissibility of the expert's opinions. *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

IV. ARGUMENT

    A. Mr. Bokhart's Reasonable Royalty Analysis Is Unsupported And Unreliable.

        1. Mr. Bokhart Relies On Measures of Lost Profits He Is Unable To Quantify.

Mr. Bokhart admits that he "cannot calculate[] to a reasonable probability" *any* of the unquantified lost profits categories he uses to inflate his minimum reasonable royalty. (Ex. 1, Bokhart Rpt. at 35-37, 53-56.) This reliance upon unquantifiable and unreliable measures of purported lost profits in *doubling* his minimum "reasonable" royalty is inherently flawed. *See Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 1000 (N.D. Ill. 2014) (excluding as unreliable reasonable royalty opinion and testimony where the court found the expert's analysis "attempt[ed] to cover what appears to be lost profits" where lost profits were not available.) Unable to present the factual record or expert analysis required to support—to any "reasonable probability"—the unquantified alleged additional lost profits in his "but for" lost profits analysis, Mr. Bokhart bakes these "other forms" of lost profits into his reasonable royalty calculation. In

5

so doing, Mr. Bokhart attempts to circumvent the requirement that such damages be quantified to a reasonable degree of certainty. Mr. Bokhart provides no explanation or analysis supporting his use of unreliable alleged damages to double the reasonable royalty floor (thereby doubling the minimum damages LoggerHead seeks) as no sound methodology exists to support his calculation.

### 2. Mr. Bokhart's Evidence Does Not Support His Opinions.

Mr. Bokhart fails to offer any analysis to determine, even generally, the extent of LoggerHead's purported harm from each of the alleged four other categories of lost profits that form the bases for his reasonable royalty calculation. To the contrary, his discussion of each is superficial, inconclusive, and without support.

*First*, with respect to purported lost or diminished profits on other LoggerHead customer sales, Mr. Bokhart does not offer any economic analysis of Sears' ability to impact the market for hand tools at other retailers. Instead, his sole basis for the existence of this type of alleged harm is ███████████████████████████████████████████████ ██████. (Ex. 1, Bokhart Rpt. at 53-54.)

*Second*, Mr. Bokhart's purported price erosion analysis is cursory and contradicted by other evidence in Mr. Bokhart's own report.[3] Even though Mr. Bokhart had LoggerHead's sales

---

[3]  To prove price erosion damages, a patent owner must prove "that 'but for' infringement, it would have sold its product at higher prices." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1381 (Fed. Cir. 2013) (quoting *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001)). In addition, "a credible but-for analysis must account for the 'effect of [a] higher price on demand for the product.'" *Id.* "Further, because 'a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether,' the analysis must consider the impact of such alternate technologies on the market as a whole." *Id.* (quoting *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999)). Further, "the patentee's price erosion theory must account for the nature, or definition, of the market, similarities between any benchmark market

data for all of its customers from 2005 to 2015, the sole focus of Mr. Bokhart's price erosion discussion is on the retail price of the MALW at Sears from 2011 to 2015. (Ex. 1, Bokhart Rpt. at 54-55 & Exs. 16.3, 16.6.) He does not perform any analysis of actual price erosion across LoggerHead's customers or its sales generally. And the Sears discussion relating to price erosion in fact shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 54-55.)

***Third***, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at 55-56); however, Mr. Bokhart admitted at deposition that he did not conduct any investigation or even seek the easily attainable information from LoggerHead's manufacturer to determine the cause of any cost increases (Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 102-03). Indeed, Mr. Bokhart's theory regarding excess manufacturing costs is a tautology, as he testified that he knows the MALW was the cause of LoggerHead's excess manufacturing costs *because* those costs went up. (*Id.* at 104-05.)

***Fourth***, regarding LoggerHead's alleged loss of goodwill, Mr. Bokhart admitted at deposition that this alleged unquantifiable harm would not have significantly impacted the royalty rate yet states in his report that this alleged loss would increase the lower bound. (*Id.* at 54; Ex. 1, Bokhart Rpt. at 35.) Mr. Bokhart also describes LoggerHead's alleged loss of goodwill as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

and the market in which price erosion is alleged, and the effect of the hypothetically increased price on the likely number of sales at that price in the market." *Crystal Semiconductor*, 246 F.3d at 1357. Mr. Bokhart's price erosion analysis does not even attempt to make these showings.

███, but this is the basis for Mr. Bokhart's first category of unquantifiable harm. (Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 87-88; Ex. 1, Bokhart Rpt. at 53-54.)

Lacking evidence and economic analysis to do so, Mr. Bokhart simply cannot quantify any of these alleged other forms of damages. The most he is able to offer is unsupported opinion that each allegedly drives the royalty rate higher by some unknown degree. (Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 52-54.) Yet this conjecture is his basis for ***doubling*** the royalty floor, yet he discloses no methodology, calculation or quantification to explain how so substantial a leap in the proffered royalty could be justified. This "black-box" methodology runs counter to Federal Circuit precedent prohibiting "superficial testimony" with "no analysis" to reach a royalty rate. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009). Indeed, Mr. Bokhart's reasonable royalty analysis has been excluded before for failing to disclose the methodology supporting his opinion. *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 WL 3419974, at *2 (E.D. Tex. June 21, 2014).

Without question, the Federal Circuit requires "explanation of both why and generally to what extent the particular factor impacts the royalty calculation," an analysis Mr. Bokhart fails to provide. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012). Even though consideration of the hypothetical is an essential aspect of computing reasonable royalty damages, the Federal Circuit "requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture" in all damages calculations. *Grain Processing Corp*, 185 F.3d at 1350. The allowance for "some approximation" in the reasonable royalty context does not negate the Federal Circuit's requirement of "sound economic and factual predicates" for that analysis. *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). "Where, as here, sound

**REDACTED**

economic and factual predicates are absent from a reasonable royalty analysis, a district court must exercise its discretion to exclude the proffered testimony." *Cornell Univ.*, 2008 WL 2222189, at *2.

### 3. Mr. Bokhart Improperly Includes Sears As A Party To The Hypothetical Negotiation In An Attempt To Further Inflate Damages.

Mr. Bokhart opines that both Apex and Sears would be present at the hypothetical negotiation. (Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 14.) The sole basis for Mr. Bokhart's inclusion of Sears in the negotiation is his "foundational assumption" that both Apex and Sears infringe LoggerHead's patents. (*Id.* at 15.) On its face, this is an insufficient basis to include Sears—Apex's (and LoggerHead's) downstream customer—at the hypothetical negotiation.

Mr. Bokhart concludes that both Apex and Sears would have been at the hypothetical negotiation, aware of the total combined revenue and profits of both Apex and Sears, and been willing to negotiate under those premises. According to Mr. Bokhart, the parties would then have apparently jointly agreed to a license, based on their combined revenues and profits and decided between themselves how to share the burden of the cost of the license. (Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 18-20.) Mr. Bokhart also stated that the license Apex and Sears would have jointly negotiated would have applied to Apex's sales to other retailers. (*Id.* at 22-23, 204-05.)

This analysis is fundamentally flawed for a number of reasons. ***First***, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ (*Id.* at 17-19; Ex. 6, APEX0000958-1003 at APEX0000983-84 (▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅).) But under Mr. Bokhart's assumption that Apex's retailer Sears would have been present as an alleged infringer, so too should these other retailers, but Mr. Bokhart fails to analyze these other parties'

9

economic conditions and the effect that would have had on the license. ***Second***, under Mr. Bokhart's analysis, Apex would be willing to negotiate certain license terms knowing that Sears had the economic ability and was willing to share in the cost of the license. But without the other retailers present, Apex would not have known their economic situation or whether they would even have been willing to bear any of the cost of the license. Moreover, to have jointly negotiated a license that applied to Apex selling product to other retailers would not have made economic sense. ***Third***, to the extent Mr. Bokhart suggests, counter to his deposition testimony, that the license negotiated between LoggerHead, Sears and Apex would somehow have been limited to just those parties, it would be unreasonable to expect Apex to renegotiate a new license with LoggerHead for each and every potential retailer each time Apex intended to sell MALWs to a new retailer.

In addition to these fundamental flaws, Mr. Bokhart's hypothetical negotiation analysis runs counter to Federal Circuit precedent that holds when damages are based on a reasonable royalty, the amount should not be separately calculated against each successive infringer. *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983). In other words, "[o]nce full recovery is obtained from one infringer with respect to a particular infringing device, at most nominal additional damages may be awarded against another with respect to the same device." *Id.* Where there are multiple, joint infringers of a particular device, as LoggerHead alleges here, the amount of recovery depends on what royalty reasonably would have resulted from negotiations where the willing licensor Apex was aware that another party, including any of Apex's potential retailers, would make or sell the device at issue. *Id.*

It is obvious why Mr. Bokhart includes both Apex and Sears at the negotiating table, to provide some cover for his exorbitant proposed royalties. For instance, Mr. Bokhart's royalty

10

range amounts to ▮▮▮▮▮ of Apex's revenues from the MALW, but that figure falls to between ▮▮▮▮▮ less but still exorbitant—when the rate is derived from Sears' retail prices to consumers. Again, this Court should exercise its discretion and preclude Mr. Bokhart from presenting a reasonable royalty artificially inflated through inappropriately including Sears at the negotiating table.

  **B. Mr. Bokhart Does Not Even Attempt To Calculate Trade Dress Damages, Thus The Court Should Preclude Mr. Bokhart From Offering Any Such Analysis At Trial.**

Counts XV and XVI of the Second Amended Complaint assert that Defendants Apex and Sears infringe LoggerHead's allegedly protectable product design and product packaging trade dress for the Bionic Wrench. (Dkt. 136 at 51-55.) In his report, Mr. Bokhart states Apex's and Sears' respective revenues from each companies' sale of the MALW; however, Mr. Bokhart's one-page section on trade dress damages makes no attempt whatsoever to calculate either Defendants' profits attributable to the alleged infringement. (Ex. 1, Bokhart Rpt. at 59-60;[4] Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 184.) Mr. Bokhart admitted as much at deposition:



(*Id.* at 184:14-24.) "[T]o recover money damages under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Hot*

---

[4]  Section 7 of Mr. Bokhart's report (at pages 59-60) relates to trade dress damages, while Section 8 (at pages 60-68) discusses certain "economic" factors associated with the trade dress infringement factors, such as calculations of LoggerHead's sales of, and advertising spend for, the Bionic Wrench. (Ex. 1, Bokhart Rpt. at 59-68; Ex. 5, 5/17/16 C. Bokhart Dep. Tr. at 182-84.)

*Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819-20 (7th Cir, 1999). Here, the only evidence Mr. Bokhart offers contradicts, rather than supports, a linkage between the alleged trade dress infringement and any profits or damages. Mr. Bokhart opines that "the features and functions covered by the patents-in-suit are the driving factors for [the Bionic Wrench's] success," ***not*** the "trade dress and design trademark." (Ex. 1, Bokhart Rpt. at 20 n.74.)

Because Mr. Bokhart has admittedly not attempted to perform any analysis of actual trade dress damages, he should be prohibited from presenting any such analysis at trial. Federal Rule of Civil Procedure 26(a)(2) sets out the requirements for what needs to be included in expert disclosures: any expert who is retained to present testimony at trial must issue a report containing, *inter alia*, "a *complete statement of all opinions the witness will express* and the basis and reasons for them," as well as "*the facts or data considered* by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i)-(ii) (emphasis added). The Federal Rules further require that expert disclosures be made "at the times and in the sequence that the court orders," FED. R. CIV. P. 26(a)(2)(D), meaning that LoggerHead's damages expert was required to provide his damages analysis by the April 15 or May 10, 2016 expert report deadlines, but certainly by no later than the May 20 close of expert discovery (Dkt. 242). Mr. Bokhart has made no such analysis, and thus should be precluded from offering testimony regarding the alleged trade dress damages at trial. *See* FED. R. CIV. P. 37(c)(1).

## V. CONCLUSION

For the foregoing reasons, Apex respectfully requests that the Court exclude Mr. Bokhart's reasonable royalty analysis for patent damages. Apex further requests that the Court preclude Mr. Bokhart from offering testimony regarding alleged trade dress damages at trial.

**REDACTED**

Respectfully submitted,

Dated: June 1, 2016 By: */s/ Ian J. Block*
Marcus E. Sernel, P.C.
Eric D. Hayes
Ian J. Block
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: msernel@kirkland.com
eric.hayes@kirkland.com
ian.block@kirkland.com

Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: gregory.arovas@kirkland.com

*Attorneys for Defendant Apex Tool Group, LLC*

**REDACTED**

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 1, 2016, the redacted public version of the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date. I further certify that, also on June 1, 2016, the complete sealed version of the foregoing document was served on the following counsel by electronic mail:

| | |
|---|---|
| George C. Lombardi | Paul J. Skiermont |
| James M. Hilmert | Sadaf Abdullah |
| Mark W. Lenihan | Sarah E. Spires |
| WINSTON & STRAWN LLP | Shellie Stephens |
| 35 West Wacker Dr. | Steven W. Hartsell |
| Chicago, Illinois 60601 | Steven J. Udick |
| Telephone: (312) 558-5600 | SKIERMONT DERBY LLP |
| Facsimile: (312) 558-5700 | 2200 Ross Avenue, Suite 4800W |
| Email:  glombardi@winston.com | Dallas, Texas 75201 |
| jhilmert@winston.com | Telephone: (214) 978-6600 |
| mlenihan@winston.com | Facsimile: (214) 978-6601 |
| | Email:  paul.skiermont@skiermontderby.com |
| | sadaf.abdullah@ skiermontderby.com |
| | sarah.spires@ skiermontderby.com |
| | shellie.stephens@ skiermontderby.com |
| | steven.hartsell@ skiermontderby.com |
| | steve.udick@ skiermontderby.com |

By: */s/ Ian J. Block*