REDACTED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LOGGERHEAD TOOLS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-09033 |
| | ) | |
| v. | ) | Honorable John W. Darrah |
| | ) | Honorable Maria Valdez |
| SEARS HOLDINGS CORPORATION | ) | |
| and APEX TOOL GROUP, LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS APEX AND SEARS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON
<u>PLAINTIFF LOGGERHEAD'S TRADE DRESS CLAIMS (COUNTS XV AND XVI)</u>**

## <u>TABLE OF CONTENTS</u>

I.      Introduction ...................................................................................................... 1

II.     Background ........................................................................................................ 2

III.    Legal Standards ................................................................................................ 4

    A.    Product Design And Product Packaging Trade Dress Infringement ....................... 4

    B.    Supplemental Trade Dress Registration ................................................................. 5

    C.    Summary Judgment .................................................................................................. 6

IV.     Argument .......................................................................................................... 6

    A.    No Reasonable Juror Could Find In Favor Of LoggerHead's Product Design
       Trade Dress Claim (Count XV). ............................................................................. 6

          1.    LoggerHead's Asserted Product Design Has Not Acquired The
              Requisite Distinctiveness. ............................................................................. 7

          2.    The Bionic Wrench Product Design Is Patented And Functional. .............. 8

          3.    There Is No Likelihood Of Confusion Between The Bionic Wrench
              And Max Axess Locking Wrench Products Designs. ................................ 12

    B.    LoggerHead's Product Packaging Trade Dress Claim (Count XVI) Fails, As
       The Overall Appearances Of The Packages Are Substantially Dissimilar. .......... 13

V.      Conclusion ....................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*,
    971 F.2d 6 (7th Cir. 1992)......................................................................................... 4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................... 6

*Aromatique, Inc. v. Gold Seal, Inc.*,
    28 F.3d 863 (8th Cir. 1994)....................................................................................... 14

*August Storck K.G. v. Nabisco, Inc.*,
    59 F.3d 616 (7th Cir. 1995)....................................................................................... 14

*Bodum USA, Inc. v. La Cafetiere, Inc.*,
    621 F.3d 624 (7th Cir. 2010)....................................................................................... 5

*Cable Elec. Prods. v. Genmark, Inc.*,
    586 F. Supp. 1505 (N.D. Cal. 1984) ....................................................................... 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................... 6

*Eldon Indus., Inc. v. Rubbermaid, Inc.*,
    735 F. Supp. 786 (N.D. Ill. 1990) .............................................................................. 5

*Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*,
    647 F.3d 723 (7th Cir. 2011)............................................................................. passim

*In re Bush Bros. & Co.*,
    884 F.2d 569 (Fed. Cir. 1989).................................................................................... 5

*In re Remington Prods., Inc.*,
    Serial No. 493,829, 1987 WL 124304 (T.T.A.B. Jan. 29, 1987)..................................... 15

*Incredible Techs. v. Virtual Techs.*,
    400 F. 3d 1007 (7th Cir. 2005).................................................................................... 4

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
    456 U.S. 844 (1982) ................................................................................................... 8

*Jay Franco & Sons, Inc. v. Franek*,
    615 F.3d 855 (7th Cir. 2010)............................................................................. passim

*Lavalais v. Village of Melrose Park*,
    734 F.3d 629 (7th Cir. 2013)...................................................................................... 2

*Power Controls Corp. v. Hybrinetics, Inc.*,
806 F.2d 234 (Fed. Cir. 1986) ....................................................................... 14

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
514 U.S. 159 (1995) .......................................................................................... 8

*Samuels v. Wilder*,
871 F.2d 1346 (7th Cir. 1989) .......................................................................... 6

*Specialized Seating, Inc. v. Greenwich Indus., LP*,
616 F.3d 722 (7th Cir. 2010) .................................................................. 8, 9, 12

*Top Tobacco, L.P. v. N. Atl. Operating Co.*,
509 F.3d 380 (7th Cir. 2007) ..................................................................... 14, 15

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
532 U.S. 23 (2001) ..................................................................................... 4, 9, 10

*Turtle Wax, Inc. v. First Brands Corp.*,
781 F. Supp. 1314 (N.D. Ill. 1991) ............................................................... 14

*Valu Eng'g Inc. v. Rexnord Corp.*,
278 F.3d 1268 (Fed. Cir. 2002) ...................................................................... 9

*Vaughan Mfg. Co. v. Brikam Int'l, Inc.*,
814 F.2d 346 (7th Cir. 1987) ........................................................................... 8

*Vulcan Golf, LLC v. Google Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008) ...................................................................... 5

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000) .................................................................................. 5, 6, 7

*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir. 2001) ............................................................................ 6

**Statutes**

15 U.S.C. § 1057(b) ............................................................................................ 5

15 U.S.C. § 1091(a) ............................................................................................ 5

15 U.S.C. § 1094 ............................................................................................ 5, 9

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................... 6

**Treatises**

1 McCarthy on Trademarks & Unfair Competition § 7:37 (4th ed. 2009) ................................... 14

3 McCarthy on Trademarks and Unfair Competition § 19.36 (4th ed. 2014)................................ 5

4A Callmann on Unfair Competition, Trademarks, and Monopolies § 26:13 (4th ed.) ................. 5

## I.      INTRODUCTION

Aside from its conclusory pleadings and the self-serving testimony of its president, LoggerHead has nothing to support its Product Design Trademark (Count XV) and Packaging Trade Dress (Count XVI) claims.  LoggerHead has proffered no expert opinion or consumer surveys to support these claims, and the limited factual evidence precludes rather than supports any finding of product design or packaging trade dress infringement.  Because no reasonable juror could find in LoggerHead's favor on these claims, summary judgment is warranted.

LoggerHead's product design claim is premised on its tool head design that it tried—but failed—to register for protection with the U.S. Patent and Trademark Office.  The PTO concluded that the design lacked the requisite distinctiveness and thus was ***not*** protectable.  Not only was the design found to lack distinctiveness, but LoggerHead argued to the PTO that the design was non-functional ***by pointing to Defendants' accused design as a distinct implementation*** (*i.e.*, different trade dress), the antithesis of what LoggerHead must prove to establish the required likelihood of confusion.  Further, the fact that LoggerHead has patented the feature that it now claims as protectable trade dress is strong evidence that the claimed design is functional, especially where the patents' central advance—a round wrench head with circumferentially and symmetrically arranged gripping elements—matches the alleged trade dress' essential feature, a round wrench head with six symmetrically arranged gripping element. In short, LoggerHead fails as a matter of law on not only one but all three of the threshold requirements to prove its product design infringement claim.  LoggerHead's failure to elicit any contrary expert or other reliable evidence to support its product design claim necessitates a grant of summary judgment.

LoggerHead's product packaging trade dress infringement claim is similarly defective because LoggerHead's Bionic Wrench and the accused Max Axess Locking Wrench packages

are so different that, as a matter of law, there can be no reasonable likelihood of confusion. A visual inspection puts this issue to rest—aside from similar functionality as gripping tool products, the products are different colors and shapes, with their respective trademarks, logos, and house colors prominently emblazoned on them to signify their different sources. LoggerHead defines its asserted packaging trade dress solely in terms of functional and descriptive elements, noticeably excluding from its allegations the packaging elements that identify source, such as registered word and logo marks and house colors. It is undisputed that there is no overlap between the accused Max Axess Locking Wrench product and packaging and that of LoggerHead's Bionic Wrench with respect to anything that is non-functional and actually protectable trade dress. To the contrary, the Max Axess Locking Wrench is conspicuously branded as a Craftsman product. No genuine issue of fact exists and no reasonable juror could find that the product packaging designs are confusingly similar.

LoggerHead was able to avoid dismissal of Counts XV and XVI at the pleadings stage when applying the dismissal standard with "all well-pleaded allegations . . . presumed to be true." (Dkt. 171 (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).) Now that fact and expert discovery are over, LoggerHead's failure to develop any evidence to create a genuine issue of fact on these claims necessitates summary judgment.

## II.    BACKGROUND

LoggerHead's Second Amended Complaint—filed two years after LoggerHead initiated this action—asserted product design and product packaging trade dress infringement claims against both Defendants based on their Craftsman MALW product. (SOF 7.)[1]  LoggerHead's

---

[1]    Citations to "SOF" refer the numbered paragraphs in Defendants' L.R. 56.1 Statement of Facts in support of this motion, filed concurrently herewith.

product design claim (Count XV) rests on LoggerHead's *supplemental* trademark registration for the Bionic Wrench's circular wrench head shown below:



(SOF 11-12.) The PTO issued U.S. Supplemental Trademark Registration No. 4,527,177 in May 2014, but only after LoggerHead's acquiescence to the PTO examiner's finding that the design lacks distinctiveness and LoggerHead's conversion of the application to the Supplemental Register. (SOF 13, 15-16, 21.) The registration describes the mark as follows: "The mark consists of a three-dimensional depiction of a wrench head. The wrench head consists of a cog-like design in the nature of a circle with six rectangular slots. The broken lines depicting the handles indicate placement of the mark on the goods and are not part of the mark." (SOF 14.)

LoggerHead's product packaging claim (Count XVI) rests on LoggerHead's purported trade dress, described in the complaint as follows: "packaging trade dress that (1) has a cardboard backing with a clear coating that shows the Bionic Wrench product with two handles and 6 jaws, (2) exposed handles, (3) a try me feature, (4) a lifetime warranty, and (5) an illustration that the product replaces multiple wrenches in one." (SOF 33.)

Both the accused Max Axess Locking Wrench product and its packaging are prominently branded with the Craftsman trademark and Craftsman's iconic red and black house colors. (SOF 8, 35-39.) By contrast, LoggerHead's Bionic Wrench offerings are branded with several of LoggerHead's word and logo marks—such as LOGGERHEAD, BIONIC WRENCH, and a turtle-head logo—and employ LoggerHead's green, yellow, and black house color scheme to identify LoggerHead as the source of these products. (SOF 9, 39-43.) A side-by-side

comparison of the two products in their packaging demonstrates the conspicuous branding, differences in appearance and source identification each conveys:



(SOF 10 (including larger reproductions of asserted and accused packages), 35-47.)

## III. LEGAL STANDARDS

### A. Product Design And Product Packaging Trade Dress Infringement

"Trade dress refers to a product's overall image, including its size, shape, color, graphics, packaging, and label, and receives protection against infringement under § 43(a)(1) [of the Lanham Act]." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 20 (7th Cir. 1992) (citations omitted). To prove its trade dress claims, LoggerHead is required to show that: (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) a likelihood of confusion exists between its trade dress and Defendants'. *Incredible Techs. v. Virtual Techs.*, 400 F. 3d 1007, 1015 (7th Cir. 2005). Trade dress is functional "if it is essential to the use or purpose of the [product] or if it affects the cost or quality of the [product]." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001). Put differently, "if a design enables a

product to operate, or improves on a substitute design in some way (such as by making the product cheaper, faster, lighter, or stronger), then the design cannot be trademarked; it is functional because consumers would pay to have it rather than be indifferent toward or pay to avoid it." *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010). Product design or configuration trade dress can never be inherently distinctive. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212-14 (2000). Trade dress acquires secondary meaning—also known as "distinctiveness"—when consumers associate the design with a particular manufacturer. *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 627 (7th Cir. 2010) (citation omitted).

### B.      Supplemental Trade Dress Registration

Although trade dress registrations on the PTO's Principal Register are entitled to rebuttable statutory presumptions of distinctiveness and non-functionality (*i.e.*, validity), 15 U.S.C. § 1057(b), marks and trade dress registered on the Supplemental Register are not entitled to any such presumptions, 15 U.S.C. § 1094. "Placement on the Supplemental Register creates no substantive rights in the registrant. He is not entitled to any presumptions of validity, ownership, [or] use." *Eldon Indus., Inc. v. Rubbermaid, Inc.*, 735 F. Supp. 786, 833-34 (N.D. Ill. 1990). As distinguished from the Principal Register, the Supplemental Register is the place where applicants register marks that have ***not*** acquired distinctiveness. *See* 15 U.S.C. § 1091(a); 4A Callmann on Unfair Competition, Trademarks, and Monopolies § 26:13 (4th ed.). "[A] mark that is ineligible for registration on the Principal Register because it is 'merely descriptive' of the goods or services may be registered on the Supplemental Register." *In re Bush Bros. & Co.*, 884 F.2d 569, 570 (Fed. Cir. 1989). Indeed, a mark's "very presence on the Supplemental Register indicates a preliminary determination that the mark is ***not*** distinctive." 3 McCarthy on Trademarks and Unfair Competition § 19.36 (4th ed. 2014) (emphasis added); *see Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 528 (N.D. Ill. 2008) (citing McCarthy).

### C.  Summary Judgment

Summary judgment is appropriate where the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Merely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of [LoggerHead's] position will be insufficient; there must be evidence on which the jury could reasonably find for [LoggerHead]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  ARGUMENT

The law requires LoggerHead to show that each of its asserted product design and packaging trade dress is nonfunctional, distinctive, and likely to be confused by the Max Axess Locking Wrench product and packaging. As a matter of law, LoggerHead cannot satisfy ***any*** of these requirements for its product design claim and, at a minimum, cannot demonstrate that a likelihood of confusion exists between the parties' starkly dissimilar package designs.

### A.  No Reasonable Juror Could Find In Favor Of LoggerHead's Product Design Trade Dress Claim (Count XV).

Courts exercise "particular caution" in extending trade dress protection to product designs, *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114-15 (2d Cir. 2001); *see Jay Franco*, 615 F.3d at 861, because "almost invariably, even the most unusual of product designs . . . is intended not to identify the source [of the product], but to render the product itself more useful or more appealing," *Wal-Mart*, 529 U.S. at 213.

This is precisely the case here: LoggerHead is attempting to assert "double protection" under both patent and trade dress for the circular wrench head configuration that constitutes the key thrust of its patents. Indeed, it is this very design that LoggerHead touts to consumers in its

advertising as the patented, utilitarian the Bionic Wrench offers, namely, the ability to grip all six flat sides of a hexagonal nut or bolt (as opposed to gripping fewer sides or the corners). In addition to being functional, the asserted wrench head design is barred from being inherently distinctive and has not acquired the requisite distinctiveness—as the PTO determined during the pendency of this litigation when it rejected LoggerHead's application to the Principal Register. And, even if the asserted product design somehow is both nonfunctional and distinctive (which it is not), there is no likelihood of confusion between the asserted design and the Craftsman Max Axess Locking Wrench, as LoggerHead identified the Defendants' design to the PTO as "alternative design" and the actual products are conspicuously branded with the parties' respective trademarks, logos, and house colors that undisputedly identify each source.

1. **LoggerHead's Asserted Product Design Has Not Acquired The Requisite Distinctiveness.**

LoggerHead has not met its burden to show that its purported trade dress in the Bionic Wrench tool head design that is the subject of a supplemental registration has the requisite distinctiveness to be enforceable. The Supreme Court has explained that product design trade dress is never inherently distinctive and thus must acquire distinctiveness (*i.e.*, secondary meaning) through exclusive use. *Wal-Mart*, 529 U.S. at 212-14. LoggerHead tried yet failed to convince the PTO that its product design was distinctive, and ultimately settled for registration on the Supplemental Register in 2014. Since then, the undisputed facts show that ████████████ ████████████████████████████████████████████████████████████████████████. (SOF 17.) The product design was not distinctive when LoggerHead converted its application to the Supplemental Register and it has not acquired distinctiveness since.

LoggerHead applied to register the Bionic Wrench design after having offered the product for nearly a decade, but the PTO examiner rejected the application because the product

design was non-distinctive.  (SOF 15, 20, 34.)  LoggerHead tried to overcome the rejection by submitting evidence of its use of the product design, but the examiner maintained her rejection. (SOF 16, 20.)   Rather than appeal and continue to argue that the design had acquired distinctiveness, in January 2014—after this lawsuit had already been pending for over a year— LoggerHead converted its application from one for the Principal Register to the Supplemental Register, and the supplemental registration issued in May 2014.  (SOF 13, 21.)

LoggerHead has not established any facts to suggest that its product design has acquired distinctiveness, either since it was first sold or in the two years since the supplemental registration issued.   Specifically, LoggerHead has not come forward with any evidence demonstrating that, "in the minds of the public, the primary significance of [the wrench design] is to identify the source of the product rather than the product itself." *Inwood Laboratories, Inc.* v. *Ives Laboratories, Inc.*, 456 U.S. 844, 851 & n.11 (1982).  Nor has LoggerHead offered any consumer surveys showing consumers' association of the product design with LoggerHead. And, besides depressed sales and advertising since the PTO deemed the design non-distinctive, LoggerHead has not identified any significant media exposure, awards, or other evidence to suggest that the product design acquired distinctiveness since the registration issued. Accordingly, as a matter of law, LoggerHead's wrench product design is not distinctive and its Count XV fails on this basis.

<strong>2.      The Bionic Wrench Product Design Is Patented And Functional.</strong>

This Court should also grant summary judgment on LoggerHead's product trade dress because LoggerHead cannot meet its burden to establish non-functionality.  The doctrine of functionality excludes useful product designs from trade dress protection because "patent law alone protects useful designs from mimicry." *Jay Franco*, 615 F.3d at 857; *see Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 164 (1995); *Specialized Seating*, 616 F.3d at 727.  In

other words, if LoggerHead's asserted product design is functional, it is by definition invalid and unprotectable as trade dress. *Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011) (affirming summary judgment of trade dress functionality).

The Seventh Circuit considers the following factors to determine whether a product design is functional:

> (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; (5) the effect of the design feature on an item's quality or cost.

*Id.* at 727-28 (citing *Valu Eng'g Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274 (Fed. Cir. 2002) (applying same factors to affirm finding of trade dress functionality)). Here, the undisputed facts confirm that all five factors support a finding that LoggerHead's product design is functional.[2]

***First***, LoggerHead's asserted product design—a round wrench head with gripping elements spaced symmetrically about the head's circumference—is precisely the focus of LoggerHead's asserted patent claims in this case. These patents "serve as excellent cheat sheets because any design claimed in a patent is supposed to be useful." *Jay Franco*, 615 F.3d at 857. Indeed, the Supreme Court has explained that "[a] utility patent is strong evidence that the features therein claimed are functional," and "adds great weight to the statutory presumption that features [claimed in a patent] are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix*, 532 U.S. at 29-30. "Specifically, if the 'central advance' claimed in the utility patent matches the 'essential feature' of the trademark, there is strong evidence that the design is functional." *Georgia-Pacific*, 647 F.3d at 728 (quoting *TrafFix*, 532

---

[2]    LoggerHead's supplemental registration does not save its claim because, again, supplemental trade dress registration is ***not*** evidence of non-functionality. 15 U.S.C. § 1094. Regardless, courts routinely find trade dress registered on the ***Principal*** Register functional at summary judgment. *Georgia-Pacific*, 647 F.3d at 727; *Specialized Seating*, 616 F.3d at 727-28; *Jay Franco*, 615 F.3d at 857.

U.S. at 30). Here, the "central advance" of the asserted patents is an adjustable gripping tool (*e.g.*, a wrench, crimper, etc.) that "symmetrically translates the force applied to the gripping tool onto the workpiece in a symmetrically balanced and mechanically advantaged and efficient way." (SOF 22-23, 28-29.) The essential feature of LoggerHead's purported product design trade dress is a round wrench head with gripping elements spaced symmetrically about the head's circumference. Critically, the patents state that "the gripping tool of the present invention *symmetrically* translates the force applied to the gripping tool onto the workpiece in a *symmetrically* balanced and mechanically advantaged and efficient way," which the patents proclaim is advantageous for transferring work forces "over the largest area of the workpiece," such as the six flat sides of a hexagonal nut or bolt. (*Id.*)

Oftentimes, courts finding trade dress functionality base their analyses on unasserted or expired patents, including third-party patents, but recognize that "more recent patents are often *better* evidence of functionality." *See Georgia-Pacific*, 647 F.3d at 728-30 (emphasis in original) (citing *Jay Franco*, 615 F.3d at 859). Here, LoggerHead has streamlined the analysis: it has asserted in this case the very patents that claim and describe the functionality that drive its purported product design. (Dkt. 136 ¶¶ 9-12, 99-118.) The designs are mirror images:

| '579 Patent, Figure 2 | Supplemental Trademark Reg. | Bionic Wrench Product |



(SOF 9, 12, 26.) Indeed, LoggerHead marks the Bionic Wrench with one of the two asserted patents. (SOF 27.) The patents' claims describe every component of the asserted wrench design that makes up the appearance of the asserted trade dress, including the first element, second element, gripping elements, guides, and the concentric openings that define the wrench's profile.

(SOF 24.) Other claims further call out the circular nature of the tool head. For example, Claim 9 of LoggerHead's asserted '579 patent adds the requirement that the adjustable gripping tool "***circumferentially engage***" the workpiece. (SOF 25.) LoggerHead's president admits that this circular, circumferential configuration claimed and described in the patents contributes to the function of the Bionic Wrench and reflects what LoggerHead believes to be the "novel" innovation of the asserted patents over wrenches that came before. (SOF 28-29.) Specifically, Mr. Brown agreed that ███████████████████████████████████████

████████████████████████████████████████████████████████

(*Id.*) These undisputed facts demonstrate that the asserted product design is defined and described by the patents LoggerHead asserts in this case. Accordingly, the "first factor weighs heavily in favor of finding functionality." *Georgia-Pacific*, 647 F.3d at 730.

**Second**, the next factor—the utilitarian properties of the item's unpatented design elements—is inapplicable here, as the purported trade dress in LoggerHead's wrench design does not include any design elements that are not described in LoggerHead's asserted patents. *See Georgia-Pacific*, 647 F.3d at 730. Therefore, this factor cannot counsel against functionality. *Id.*

**Third**, it is beyond dispute that LoggerHead's advertising promotes the design of the Bionic Wrench's head for the utilitarian benefits it purportedly confers. Indeed, LoggerHead touts *precisely* the aspects of the tool that both Mr. Brown and the asserted patents describe as the functional advantages that result from the gripping elements' circumferential engagement around the circular wrench head, repeatedly showing the round tool head and describing the Bionic Wrench as offering "the patented Bionic advantage" and a "patented six-sided grip" that enables the tool to grip all six flat sides of a hexagonal nut or bolt. (SOF 30-32 (representative advertisements).) As in *Georgia-Pacific*, where the plaintiff claimed trade dress in the quilting designs of its toilet paper products that also were patented for the designs' utilitarian benefits, so

too has LoggerHead directly related the design of the Bionic Wrench tool head to the advantages described and claimed in its asserted patents. *Georgia-Pacific*, 647 F.3d at 730; *see Jay Franco*, 615 F.3d at 859 (finding product's functionality bolstered by ads highlighting functional aspect of asserted round towel design). This factor also favors a finding of functionality.

**Fourth**, LoggerHead has not identified any alternatives to its circular wrench head design that is capable of gripping all six flat sides of a hexagonal nut or bolt—as touted in its advertising—that LoggerHead does not accuse of infringing its utility patents. The absence of available alternative designs is evidence that LoggerHead's circular wrench head design looks the way it does because function requires it. *Georgia-Pacific*, 647 F.3d at 731 (emphasis in original) (quoting *Specialized Seating*, 616 F.3d at 727) (internal quotations omitted).[3]

**Fifth**, LoggerHead does not dispute—indeed, it urges—that its wrench head design improves the tool's quality and cost. The '579 and '470 patents describe the supposed utilitarian advantages and "decreased costs" the design confers. (SOF 22-23, 28-29.) Mr. Brown agrees that the symmetrical, circumferential arrangement of six gripping elements in the circular wrench head reflects "an improvement on a substitute design for an adjustable hand wrench."[4] (*Id.*)

3. **There Is No Likelihood Of Confusion Between The Bionic Wrench And Max Axess Locking Wrench Products Designs.**

Even if the purported trade dress in the Bionic Wrench product design was both nonfunctional and distinctive—it is neither—the Court still should dispose of LoggerHead's

---

[3] Even if LoggerHead does come forward with purported alternative designs, such a showing would not render the design non-functional and incidental, because "[w]hat [a slightly different alternative design] says to us is that *all* of the designs are functional, in the sense that they represent different compromises along the axes of weight, strength, kind of material, . . . and so on." *Specialized Seating*, 616 F.3d at 727; *see Georgia-Pacific*, 647 F.3d at 731.

[4] LoggerHead's admissions track Seventh Circuit law finding product design trade dress functional at summary judgment. *Jay Franco*, 615 F.3d at 857 ("So if a design enables a product to operate, or improves on a substitute design in some way . . ., then the design cannot be trademarked; it is functional because consumers would pay to have it rather than be indifferent toward or pay to avoid it.").

product design claim as a matter of law because there is no likelihood of confusion with the Max Axess Locking Wrench product. LoggerHead admitted during the prosecution of its trade dress application that a wrench design nearly identical in appearance to the Max Axess Locking Wrench was an available "design alternative" to the asserted design because, like the Max Axess Locking Wrench, the gripping elements were covered by external plates and not readily visible, which, LoggerHead told the PTO, would distinguish the sources of such designs. (SOF 18-19.)

Furthermore, the Max Axess Locking Wrench includes other differences from the Bionic Wrench tool head, such as a locking mechanism that protrudes from the wrench head like a fin and a measuring scale, both of which LoggerHead admits are not present on its tool and are visible to consumers. (SOF 47.) And, to the extent LoggerHead is asserting trade dress in aspects of the Bionic Wrench beyond the registered tool head, it is undisputed that the Max Axess Locking Wrench's handles are Craftsman's well-known red and black and have the CRAFTSMAN trademark stamped in, while the Bionic Wrench's handles are black with green bands and have LoggerHead's BIONIC WRENCH mark printed. (SOF 35, 40.) These non-overlapping source-identifying branding elements further eliminate any likelihood of confusion. LoggerHead has not offered a consumer survey or any admissible evidence to the contrary.

**B.    LoggerHead's Product Packaging Trade Dress Claim (Count XVI) Fails, As The Overall Appearances Of The Packages Are Substantially Dissimilar.**

As an initial matter, a simple comparison of the Max Axess Locking Wrench and Bionic Wrench package designs shows that they are substantially dissimilar and no consumer would confuse one with the other. (SOF 10 (side-by-side images of packages).) This is particularly so when considering the source identifying elements of each package, which are ***conspicuous and entirely different***. (SOF 35-47.) The Court can take notice of these significant dissimilarities to determine that consumers are unlikely to be confused as to the source of either product based on

the overall appearances of the packages. *Top Tobacco, L.P. v. N. Atl. Operating Co.*, 509 F.3d 380, 381 (7th Cir. 2007) (affirming summary judgment of noninfringement based on differences in uses of asserted and accused marks, and explaining: "This case illustrates the power of pictures. One glance is enough to decide the appeal."); *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 620 (7th Cir. 1995) (courts assess "overall appearance" of trade dress for similarity).

As noted above, LoggerHead identifies five elements of its packaging as comprising its asserted trade dress: (1) cardboard backing with a clear coating so the Bionic Wrench product is visible; (2) exposed wrench handles; (3) a try me feature; (4) a lifetime warranty; and (5) an illustration of multiple standard wrenches. (SOF 33.) Yet none of these cherry-picked design elements identifies source. **First**, it is well established that clear packaging that allows consumers to view the product being offered is functional and not protectable. *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863 (8th Cir. 1994); *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234 (Fed. Cir. 1986) (clear packaging for dimmer switch found functional); *Cable Elec. Prods. v. Genmark, Inc.*, 586 F. Supp. 1505 (N.D. Cal. 1984), *aff'd in part and vacated in part, remanded*, 770 F.2d 1015 (Fed. Cir. 1985) (transparent "blister" plastic packaging held functional). **Second**, as discussed above in Section IV.A.2, the design of the Bionic Wrench product that LoggerHead asserts in Count XV is not protectable as trade dress because it is functional. "[I]f a product is functional and thus unregistrable . . . , then the accurate depiction of that product [on packaging] is also unregistrable." *Georgia-Pacific*, 647 F.3d at 731-32; *see* 1 McCarthy on Trademarks & Unfair Competition § 7:37 (4th ed. 2009). **Third**, the three remaining packaging elements LoggerHead identifies—a "try me" feature, a lifetime warranty, and a picture of the standard wrenches that the product replaces—are not source identifying, but instead are descriptive of the product itself and thus are functional on packaging. *See Turtle Wax, Inc. v. First Brands Corp.*, 781 F. Supp. 1314, 1347 (N.D. Ill. 1991); *In re Remington*

*Prods., Inc.*, Serial No. 493,829, 1987 WL 124304 (T.T.A.B. Jan. 29, 1987). Thus, none of the design elements LoggerHead claims comprise its trade dress is source identifying.

Instead, the undisputed facts demonstrate that the source identifying elements of each package—the trademarks, logos, and house colors—are admittedly distinct. A comparison of the the packages confirms that they are patently ***dissimilar*** in every respect consumers would be likely to attribute to source. The packages are branded prominently with each side's registered trademarks: CRAFTSMAN and MAX AXESS on the one hand and LOGGERHEAD TOOLS and BIONIC WRENCH on the other. (SOF 35-47.) The Bionic Wrench packaging also employs LoggerHead's cartoon turtle-head logo and "A Gripping Experience" tagline, both of which are registered and are not used on Defendants' packaging. (*Id.*) The color schemes of the packages also are entirely different: the Defendants' package employs the well-known red and black Craftsman house colors, while LoggerHead's packaging is green, yellow, and black. (*Id.*) LoggerHead admits that ████████████████████████████████████████████ ██████████████████████████████████████████ (*Id.*)

Where the admittedly source-identifying packaging elements diverge entirely, as is the case here, there can be no likelihood of confusion. *Top Tobacco*, 509 F.3d at 381. Courts routinely compare differences in parties' trademarks and trade dress to find such matter unlikely to cause confusion, and thus noninfringing at summary judgment. *Id.* This is particularly warranted here, as LoggerHead has not proffered a likelihood of confusion survey or offered admissible evidence of actual consumer confusion due to the package designs. As in *Top Tobacco*, "plaintiff "did not conduct a survey of consumers' reactions to the [packaging at issue] and did not produce an affidavit from even a single consumer or merchant demonstrating confusion." 509 F.3d at 382-83. As a matter of law, there is no likelihood of confusion.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court issue summary judgment in Defendants' favor on LoggerHead's trade dress infringement claims (Counts XV and XVI).

Respectfully submitted,

Dated:  June 1, 2016          By:  */s/ Ian J. Block*
                                   Marcus E. Sernel, P.C.
                                   Eric D. Hayes
                                   Ian J. Block
                                   KIRKLAND & ELLIS LLP
                                   300 North LaSalle
                                   Chicago, Illinois 60654
                                   Telephone: (312) 862-2000
                                   Facsimile: (312) 862-2200
                                   Email:  msernel@kirkland.com
                                           eric.hayes@kirkland.com
                                           ian.block@kirkland.com

                                   Gregory S. Arovas, P.C.
                                   KIRKLAND & ELLIS LLP
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone: (212) 446-4800
                                   Facsimile: (212) 446-4900
                                   Email:  gregory.arovas@kirkland.com

                                   *Attorneys for Defendant Apex Tool Group, LLC*

Dated:  June 1, 2016      By:  */s/ James M. Hilmert*
                                    George C. Lombardi
                                    James M. Hilmert
                                    Mark W. Lenihan
                                    WINSTON & STRAWN LLP
                                    35 West Wacker Dr.
                                    Chicago, Illinois 60601
                                    Telephone: (312) 558-5600
                                    Facsimile: (312) 558-5700
                                    Email:  glombardi@winston.com
                                                  jhilmert@winston.com
                                                mlenihan@winston.com

                                    *Attorneys for Defendant*
                                    *Sears Holdings Corporation*

REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that, on June 1, 2016, the redacted public version of the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date. I further certify that, also on June 1, 2016, the complete sealed version of the foregoing document was served on the following counsel by electronic mail:

George C. Lombardi
James M. Hilmert
Mark W. Lenihan
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: glombardi@winston.com
jhilmert@winston.com
mlenihan@winston.com

Paul J. Skiermont
Sadaf Abdullah
Sarah E. Spires
Shellie Stephens
Steven W. Hartsell
Steven J. Udick
SKIERMONT DERBY LLP
2200 Ross Avenue, Suite 4800W
Dallas, Texas 75201
Telephone: (214) 978-6600
Facsimile: (214) 978-6601
Email: paul.skiermont@skiermontderby.com
sadaf.abdullah@ skiermontderby.com
sarah.spires@ skiermontderby.com
shellie.stephens@ skiermontderby.com
steven.hartsell@ skiermontderby.com
steve.udick@ skiermontderby.com

By: */s/ Ian J. Block*