**REDACTED**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:12-cv-09033 |
| ) | |
| v. ) | Honorable John W. Darrah |
| ) | Honorable Maria Valdez |
| SEARS HOLDINGS CORPORATION ) | |
| and APEX TOOL GROUP, LLC, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS APEX AND SEARS' OPPOSITION TO PLAINTIFF LOGGERHEAD'S MOTION TO EXCLUDE PROF. FRONCZAK'S <u>OPINIONS ON WILLFUL INFRINGEMENT AND OBVIOUSNESS</u>**

**REDACTED**

**TABLE OF CONTENTS**

I. Introduction ..................................................................................................................... 1

II. Background ..................................................................................................................... 2

III. Legal Standard ................................................................................................................ 3

IV. Argument ........................................................................................................................ 4

    A. Prof. Fronczak's Opinions On Non-Willfulness Are Proper And Should Not Be Excluded. ................................................................................................ 4

        1. Prof. Fronczak's Willfulness Opinions Are Responsive To LoggerHead's Expert's Opinions On The Same Issue. ............................... 5

        2. Prof. Fronczak Is Qualified To Opine On Issues Relating To Willfulness, And The Evidence And Opinions He Will Present At Trial On These Points Will Be Helpful To The Jury. ................................ 6

        3. The Exclusion LoggerHead Requests Is Far Broader Than The Concern It Raises. .............................................................................. 8

    B. Prof. Fronczak's Opinions On Obviousness Are Proper And Should Not Be Excluded. ................................................................................................ 9

        1. Prof. Fronczak Identifies Specific Obviousness Combinations In His Report And The Reasons and Motivation To Make Those Combinations. ................................................................................. 9

        2. The Cases On Which LoggerHead Relies Present Significantly Different Facts. ................................................................................. 12

V. Conclusion .................................................................................................................... 14

REDACTED

## TABLE OF AUTHORITIES

**Cases**

*Allergan, Inc. v. Apotex Inc.*,
    754 F.3d 952 (Fed. Cir. 2014) ................................................................................................ 13

*Alza Corp. v. Mylan Labs., Inc.*,
    464 F.3d 1286 (Fed. Cir. 2006) .............................................................................................. 13

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964) ................................................................................................................. 4

*Bott v. Four Star Corp.*,
    807 F.2d 1567 (Fed. Cir. 1986) ................................................................................................ 4

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ............................................................................................................. 1, 3

*Gen-Probe Inc. v. Becton Dickinson & Co.*,
    No. 09-CV-2319 BEN NLS, 2012 WL 9335913 (S.D. Cal. Nov. 26, 2012) ........................... 7

*Halo Elecs. Inc. v. Pulse Elecs., Inc.*,
    No. 14-1513, 579 U.S. --- (June 13, 2016) ......................................................................... 4, 8

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) .................................................................................................. 3

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) (en banc) ................................................................................ 6

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ......................................................................................................... 13, 14

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004) ................................................................................... 7, 12

**Statutes**

35 U.S.C. § 284 ................................................................................................................................ 4

**Rules**

Fed. R. Evid. 702 ............................................................................................................................ 3

Fed. R. Evid. 704 ............................................................................................................................ 3

**REDACTED**

**I.     INTRODUCTION**

LoggerHead's *Daubert* motion distorts both the opinions of Defendants' technical expert and the issues on which they are presented. LoggerHead contests Prof. Frank Fronczak's opinions on (1) technical issues relating to the alleged willfulness of any patent infringement, and (2) certain aspects of Prof. Fronczak's obviousness analysis regarding the invalidity of LoggerHead's asserted patents. Contrary to LoggerHead's arguments, Defendants do not intend to elicit opinions from Prof. Fronczak beyond those set forth in his expert reports, and he is eminently qualified to offer the opinions he does on these subjects. LoggerHead may disagree with Prof. Fronczak and want the jury or Court to rely on the contrary opinions of its own expert, but that is not a basis to exclude Prof. Fronczak's well-supported opinions. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595-96 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [allegedly] shaky but admissible evidence.").

On the first issue, Prof. Fronczak provides factually-supported opinions within the scope of his expertise on the design process and alleged infringement of the accused product, invalidity of the asserted patents, and the reasonableness of these defenses as originally developed by Defendant Apex in consultation with patent counsel during the design process. Not only are Prof. Fronczak's opinions properly focused on technical subject matter that is well within his expertise, they are also offered as ***direct rebuttal*** to LoggerHead's own expert's opinions on this very same subject matter. LoggerHead denounces Prof. Fronczak's opinions as purportedly attempting to usurp the role of the jury, but LoggerHead's argument ignores that nearly every case involves technical experts offering opinions on issues tied to those that the jury will decide (as LoggerHead's own expert has here). The case law cited by LoggerHead, excluding ***legal***

**REDACTED**

experts from offering *legal* opinions on purely *legal* issues, are inapposite and do not justify striking Prof. Fronczak's technical opinions on the accused product design and design process.

As to the invalidity of the asserted patents, LoggerHead's request to exclude Prof. Fronczak's obviousness opinions are based on a mischaracterization of the work Prof. Fronczak has done in this case. Citing to deposition snippets out of context, LoggerHead attempts to paint a picture that Prof. Fronczak has provided no analysis whatsoever in support of his obviousness opinions. Nothing could be further from the truth. In reality, Prof. Fronczak provided extensive analysis of the prior art references and detailed explanation why any potentially missing elements were obvious design choices to a person of ordinary skill in the art. In addition, contrary to LoggerHead's mischaracterizations, Prof. Fronczak sets forth specific prior art combinations and identifies the specific reasons and motivation to make such combinations. Unlike LoggerHead's cited cases that pertain to combinations of art from "disparate fields," Prof. Fronczak's obviousness positions are based entirely on combinations of hand tool prior art—squarely within the field of the asserted patents in this case—for which ample reason and motivation exists to make such combinations. Finally, even if LoggerHead was right in attacking certain combinations of prior art (it is not), its request to preclude Prof. Fronczak from offering *any* obviousness opinion is a draconian remedy unsupported by the record or the law.

At best for LoggerHead, its arguments with respect to Prof. Fronczak's opinions go to the weight rather than the admissibility of this evidence, and LoggerHead's motion should be denied.

**II.    BACKGROUND**

Defendants' technical expert, Prof. Frank Fronczak, is an expert in the field of mechanical engineering design, including hand tool design. (Ex. 1, Fronczak Invalidity Rpt. ¶¶ 1, 6-22 & Appx. A (Fronczak qualifications and CV).) Among his engineering degrees, Prof.

2

**REDACTED**

Fronczak earned his Doctor of Engineering in engineering design in 1977. (*Id.* at ¶ 8.) Prof. Fronczak served as a professor of mechanical engineering at the University of Wisconsin-Madison for over 30 years, and is now professor emeritus. (*Id.* at ¶ 6 & Appx. A.) In addition to his decades of teaching, Prof. Fronczak has been involved in a variety of design-related research projects and is actively engaged with industry as a consultant and design advisor to engineering firms. (*Id.* ¶¶ 14-19.)

Prof. Fronczak issued an opening expert report on the invalidity of the asserted patents on April 15, 2016 and a rebuttal expert report that the accused MALW product does not infringe the asserted patents on May 10, 2016. (Ex. 1, Fronczak Invalidity Rpt.; Ex. 2, Fronczak Non-Infringement Rpt.) Relevant to LoggerHead's instant motion, Prof. Fronczak's reports include his opinions regarding Apex's design process, that any alleged infringement by Defendants is not willful (*see, e.g.*, Ex. 2, Fronczak Non-Infringement Rpt. ¶¶ 64-68, 154-58), and that LoggerHead's '579 and '470 patents are invalid as obvious (among other reasons) (Ex. 1, Fronczak Invalidity Rpt. ¶¶ 106-323).

### III. LEGAL STANDARD

Pursuant to the Rule of Evidence 702, expert testimony is admissible if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993). "Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011). Further, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Rule 704(a) was designed specifically to abolish the "ultimate issue" rule. Fed. R. Evid. 704 Advisory Committee Notes.

REDACTED

## IV. ARGUMENT

### A. Prof. Fronczak's Opinions On Non-Willfulness Are Proper And Should Not Be Excluded.

Section 284 of the Patent Act governs the award of damages in patent cases and permits a court in appropriate circumstances to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The Supreme Court has interpreted Section 284 as permitting recovery of enhanced damages only in a "case of willful or bad-faith infringement." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 508 (1964). The Supreme Court just this week clarified the appropriate standard governing awards of enhanced damages in *Halo Elecs. Inc. v. Pulse Elecs., Inc.*, No. 14-1513, 579 U.S. --- (June 13, 2016), confirming that such awards can only be granted in rare cases:

> Awards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.

Slip op at 8. While rejecting the Federal Circuit's two-part *Seagate* test, the Supreme Court confirmed that enhanced damages should be "reserved for egregious cases typified by willful misconduct." *Id.* at 11.

LoggerHead cannot satisfy this test for willful infringement because Apex's and Sears' defenses are reasonable and were developed in good faith contemporaneous with the development of the MALW. (*See* Dkt. 278, Def.'s MSJ of Patent Invalidity, Non-Infringement, and No Willfulness at 14-15.) Moreover, a finding of willful infringement should be negated by Defendants' further showing of their reliance on a competent opinion of patent counsel. *See Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed. Cir. 1986). Apex and Sears have not been, and are not, the willful, wanton, malicious pirates that the Supreme Court's recent *Halo* decision

4

**REDACTED**

requires for a showing of enhanced damages. Indeed, their actions and defenses in this case show the opposite. Thus, LoggerHead's willfulness allegations should be rejected as a matter of law (Dkt. 278 at 14-15), rendering this aspect of LoggerHead's *Daubert* motion moot. In any event, Prof. Fronczak's opinions on these subjects more than meet the minimum *Daubert* threshold for admissibility and LoggerHead's motion should be denied.

> 1. **Prof. Fronczak's Willfulness Opinions Are Responsive To LoggerHead's Expert's Opinions On The Same Issue.**

LoggerHead's motion attacks opinions provided by Prof. Fronczak as ***direct rebuttal*** to similar opinions on the same subject matter offered by LoggerHead's expert Prof. Cagan. Both experts discuss the Apex design process and whether (in their expert opinions) facts suggest any intent to copy the asserted Brown patents, or rather an attempt to design around the patents in good faith. Indeed, LoggerHead's expert report contains a section ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" that offer opinions regarding Apex's design process and the opinion of counsel Apex obtained during and throughout that process. (Ex. 3, Cagan Infringement Rpt. ¶¶ 25-34, 138-42.) It would be manifestly unfair to allow LoggerHead's expert to testify on this subject matter while precluding Prof. Fronczak from responding to Prof. Cagan's opinions at trial, particularly where Prof. Cagan presents a misleading story to (wrongly) suggest that Apex did not rely on its patent counsel's opinion in good faith.

Undisputed facts demonstrate that Apex retained outside patent counsel to advise it throughout the MALW development process to ensure the commercial product would be clear of LoggerHead's patents. LoggerHead's Prof. Cagan omits from his description of the MALW development process the multiple occasions on which Apex's opinion counsel advised against certain designs to be certain the MALW avoided LoggerHead's patent claims—advice Apex

5

**REDACTED**

followed each time. (Ex. 4, APEX0018416-26; Ex. 5, APEX0016764-67; Ex. 2, Fronczak Non-Infringement Rpt. ¶¶ 65-66.) Furthermore, Prof. Cagan admitted at deposition that



. (Ex. 6, 5/30/16 J. Cagan Dep. Tr. at 117-21.)

(*Id.* at 128-35.) To the extent Prof. Cagan is allowed to testify on this subject matter, the law and fundamental fairness require that Prof. Fronczak be allowed to respond.

    **2. Prof. Fronczak Is Qualified To Opine On Issues Relating To Willfulness, And The Evidence And Opinions He Will Present At Trial On These Points Will Be Helpful To The Jury.**

  LoggerHead argues that Prof. Fronczak's willfulness opinions should be excluded because he does not have the requisite expertise to opine on the reasonableness of Apex's reliance on the advice of its opinion counsel, and/or because his testimony will not be helpful to the jury. (Dkt. 279-1, LH Brief at 3-5.) But, in making this argument, LoggerHead ignores the law and Prof. Fronczak's credentials. In *Seagate*, the *en banc* Federal Circuit indicated that the "standards of commerce" should guide the analysis of the subjective prong for willfulness. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 n.5 (Fed. Cir. 2007) (en banc) (citing *id.* at 1385 ("The standards of behavior by which a possible infringer evaluates adverse patents should be the

6

**REDACTED**

standards of fair commerce, including reasonableness of the actions taken in the particular circumstances.")).[1]

While Prof. Fronczak certainly will not be instructing the jury on the law or legal standards, he is perfectly situated to explain these "standards of commerce" as they relate to engineering and product development. As a practicing engineer, engineering consultant, and professor of engineering for over 30 years, Prof. Fronczak is well qualified to opine on the steps prudent engineering firms—such as Apex—may take to avoid infringement when developing a product. (Ex. 7, 5/20/16 F. Fronczak Dep Tr. at 243-44; Ex. 2, Fronczak Non-Infringement Rpt. ¶¶ 6-22 & Appx. A (Fronczak CV).) Even LoggerHead concedes, as it must, that Prof. Fronczak is an expert in "engineering and advising companies on mechanical engineering and design." (Dkt. 279-1, LH Brief at 5.) In his reports, Prof. Fronczak explains that reasonable engineering companies take the step of obtaining an opinion of counsel and incorporating the advice of counsel in the design process. (Ex. 2, Fronczak Non-Infringement Rpt. ¶ 155 ("Practicing the prior art, particularly under the guidance of counsel, is a prudent step for an engineer to take when developing a product.").) This is precisely what Defendants did when developing the MALW and is precisely the type of testimony that would aid the jury when considering whether the steps taken were reasonable, and thus whether any alleged infringement was willful.[2]

LoggerHead has not come forward with any evidence to show or suggest that either Defendant intended to infringe the asserted patents or that Defendants' conduct in any way rises

---

[1] Nothing in the Supreme Court's recent *Halo* decision calls this aspect of the *Seagate* opinion into question.

[2] Indeed, even the cases LoggerHead cites in its motion endorse experts testifying regarding "the standard of reasonable commercial behavior" in the context of the second willfulness prong. *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004); *see Gen-Probe Inc. v. Becton Dickinson & Co.*, No. 09-CV-2319 BEN NLS, 2012 WL 9335913, at *4 (S.D. Cal. Nov. 26, 2012) (allowing expert testimony regarding industry standards).

**REDACTED**

to the level that could support a finding of willfulness or a grant of enhanced damages. *Halo*, No. 14-1513, 579 U.S. ---, slip op. at 8 (enhanced damages are reserved only for "egregious infringement behavior," in other words infringement that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate"). If LoggerHead is allowed to maintain its claim of willful infringement, Defendants must be able to defend themselves and Prof. Fronczak's testimony regarding what a prudent engineering firm would do, and what Apex did, is relevant and admissible on this issue.

### 3. The Exclusion LoggerHead Requests Is Far Broader Than The Concern It Raises.

LoggerHead's arguments against Prof. Fronczak's willfulness opinions relate exclusively to opinions concerning Defendants' subjective intent, yet the relief it seeks is much broader. In both its memorandum in support of its motion and in its proposed order submitted to the Court, LoggerHead requests that the Court prohibit Prof. Fronczak from presenting ***any evidence or opinions on willfulness whatsoever***. (Dkt. 279-1, LH Brief at 2 (identifying every paragraph in Prof. Fronczak's reports relating in any way to willfulness); Ex. 8, LH's Proposed Order.) This is improper and unsupported. Even if the Court agrees with LoggerHead's arguments concerning Defendants' subjective intent, Prof. Fronczak's opinions regarding the reasonableness of the design-around effort are based on the same type of evidence reflecting the MALW development process on which LoggerHead's expert relies. For example, the evidence includes the opinions Apex received from its patent counsel relating to the now-asserted patents and Apex's extensive back-and-forth with its counsel throughout multiple iterations of the MALW design process. (*See, e.g.*, Ex. 2, Fronczak Non-Infringement Rpt. ¶¶ 64-66; Ex. 3, Cagan Infringement Rpt. ¶¶ 25-33.) To the extent LoggerHead wants to challenge specific testimony or inferences that it believes Prof. Fronczak may present at trial regarding subjective

**REDACTED**

intent, this is more properly the subject of a motion *in limine* than exclusion of the entirety of Prof. Fronczak's opinions under *Daubert*.

> **B.  Prof. Fronczak's Opinions On Obviousness Are Proper And Should Not Be Excluded.**

LoggerHead resorts to mischaracterizing Prof. Fronczak's analysis to fashion its *Daubert* argument to exclude his obviousness opinions. Contrary to LoggerHead's overstated arguments, Prof. Fronczak *did* disclose the required obviousness analysis, *did* conduct an element-by-element analysis, and *did* disclose motivation and reasons to combine different prior art combinations. With its supporting claim charts, Prof. Fronczak's invalidity report spans nearly 300 pages. LoggerHead focuses on a one-page summary table that merely recaps the extensive element-by-element obviousness analysis Prof. Fronczak performed over the 120 preceding pages, which LoggerHead seeks to brush aside as a mere "march" through prior art. (*See* Dkt. 279-1, LH Brief at 8, 10-11 (quoting Ex. 1, Fronczak Invalidity Rpt. ¶ 324).)

> **1.  Prof. Fronczak Identifies Specific Obviousness Combinations In His Report And The Reasons and Motivation To Make Those Combinations.**

As an initial matter, LoggerHead misconceives the organization and structure of Prof. Fronczak's obviousness analysis by ignoring the plain language of his invalidity report. The obviousness section of Prof. Fronczak's report (Section VIII.C) immediately follows the anticipation section (Section VIII.B), where Prof. Fronczak demonstrates that the asserted LoggerHead patents are invalid as anticipated by each of U.S. Patent Nos. 2,409,549 to Djidics and 2,787,925 to Buchanan. (Ex. 1, Fronczak Invalidity Rpt. ¶¶ 92-105 & Exs. 1-4.) LoggerHead does not challenge the reliability of Prof. Fronczak's anticipation analysis.

The paragraphs of Prof. Fronczak's obviousness analysis that immediately follow explain that, for each element of each asserted claim, if one of the two identified anticipation references

**REDACTED**

(Buchanan or Djidics) is found not to anticipate an element of an asserted claim, then either of those two anticipating references could be combined with the other specifically identified prior art references analyzed in the subsection corresponding to that claim element, and making such a combination would have been obvious at the time of LoggerHead's alleged invention. (*Id.* at ¶ 106 & n.9.)

Starting at paragraph 110 of his expert report, Prof. Fronczak performs a step-by-step, element-by-element Section 103 obviousness analysis of the asserted claims, including the reasons and motivation for one of skill in the art to make such 103 combinations. Beginning with the '579 patent claim 1 preamble, Prof. Fronczak states that:

> To the extent that a previously described 35 U.S.C. § 102 reference does not expressly or inherently disclose the preamble to claim 1, which reads "An adjustable gripping tool for engaging a workpiece to impart work thereto," and to the extent the preamble is considered a limitation at all, it would have been obvious to one of ordinary skill in the art to develop an adjustable gripping tool for engaging a workpiece. As discussed above, adjustable gripping tools have been well known in the art for over a century. Moreover, the Court rejected LoggerHead's attempts to narrow the scope of the prior art to only adjustable wrenches—as opposed to the various adjustable gripping tools referenced in the '579 patent—so the full scope of adjustable wrenches, adjustable crimpers, adjustable cutters, adjustable scorers, etc. that pre-dates LoggerHead's alleged 2004 priority are within the scope of the prior art. Regardless, even if LoggerHead's efforts to limit the prior art had been successful, as noted above, adjustable wrenches have been publicly available since at least the late 1800s.
>
> ***One would have reason and motivation to combine any one of the previously described references with any of the below references or another anticipating reference because all of these references involve adjustable gripping tools designed to impart work on a workpiece.***

(*Id.* at ¶¶ 110-11) (emphasis added). In the immediately following paragraphs, Prof. Fronczak goes on to identify specific prior art references to combine with Buchanan and/or Djidics as obviousness combinations. For example, in Paragraphs 112 of his report, Prof. Fronczak identifies and analyzes U.S. Patent No. 1,394,388 to Wisenberg; in Paragraphs 113-115 of his report, Prof. Fronczak identifies and analyzes U.S. Patent Nos. 599,837 to Harris, 877,773 to

**REDACTED**

Holm, 912,117 to Green, 1,450,641 to Ograbisz, 5,249,490 to Kennel, 2,467,012 to Deuschle, 2,753,742 to Buchanan, 3,173,322 to Fischer, and 5,261,263 to Whitesell. (*Id.* at ¶ 112-15.)

Indeed, in paragraph 117, contrary to LoggerHead's characterization of Prof. Fronczak's expert report, Prof. Fronczak identifies the specific motivation and or reason that one of skill in the art would make the above specifically identified combinations:

> Each of the secondary references discussed above regarding this claim element discloses adjustable gripping tools, and thus is from the same field and within the scope and content of the prior art. There is no question that one of skill in the art would have been aware of these references at the time of the alleged invention. To the extent a primary anticipatory reference does not show this claim element, each of the secondary references in this section discloses it. One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference at least because they are from the same field. The resulting combination thus discloses each and every requirement of this claim element.

(Ex. 1, Fronczak Invalidity Rpt. ¶ 117).) Prof. Fronczak then goes on to perform this same identification of specific references and analysis for each and every one of the claimed elements. (*Id.* at ¶¶ 118-323.) For example, with respect to the first element of claim 1 of the '579 patent, Prof. Fronczak identifies and analyzes the Wisenberg '388, Deuschle '012, Buchanan '742, Fischer '322, Kennel '490, and Whitesell '263 references again as secondary references to combine with the two anticipation references. (*Id.* at ¶¶ 120-25.) After identifying these specific references and identifying by number the aspects of each prior art reference that reads on the limitations of the asserted claim element, Prof. Fronczak again provides the specific motivation and reason to make such combinations:

> One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because connecting a first and second element for relative angular movement helps facilitate actuation in hand tools.

(*Id.* at ¶ 126).

11

REDACTED

### 2. The Cases On Which LoggerHead Relies Present Significantly Different Facts.

Prof. Fronczak specifically identifies, by number, the structures of each of the additional prior art references that would be obvious to combine with one of the other references to satisfy every limitation of each specific claim and claim element. (Ex. 1, Fronczak Invalidity Rpt. ¶¶ 273-77.) This is a far cry from the cases on which LoggerHead relies, in which there is no element-by-element analysis, but rather a general discussion of prior art references and a conclusion that they render asserted patents obvious. *Cf. Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 437-38 (D. Del. 2004).

As set forth in detail above, Prof. Fronczak also explains the motivation a person of ordinary skill in the art would have had to make the combination described for each claim element. (*See, e.g.*, Ex. 1, Fronczak Invalidity Rpt. ¶¶ 272, 278, 280.) For example, with respect to the claim element of the '470 patent relating to the alleged gripping element, Prof. Fronczak explains:

> One would have motivation to combine any one of the previously described references with any of the below references or another anticipating reference because all of these references involve adjustable gripping tools designed to make contact with and impart work upon a workpiece by using gripping elements that approach the workpiece when the first and second element are moved relative to one another (*e.g.*, squeezed). Thus, it would be favorable to adapt the body portion of the gripping elements to the application for which a specific adjustable gripping tool would be used (*e.g.*, crimping, cutting, twisting, scoring, etc.) and to direct the movement of those gripping elements as the first and second elements are moved.
>
> . . .
>
> Each of the secondary references discussed above regarding this claim element discloses adjustable gripping tools, and thus is from the same field and within the scope and content of the prior art. There is no question that one of skill in the art would have been aware of these references at the time of the alleged invention. To the extent a primary anticipatory reference does not show this claim element, each of the secondary references in this section discloses it. One of skill in the art would have had reason or motivation to combine a primary

**REDACTED**

> reference with the applicable secondary reference not only because they are from the same field, but also because using gripping elements configured to be driven towards a workpiece facilitates adjustability, thereby allowing the tool to be used on workpieces of various sizes. The resulting combination thus discloses each and every requirement of this claim element.

(*Id.* at ¶¶ 272, 280.) As noted, passages like this appear throughout Prof. Fronczak's invalidity report and belie LoggerHead's assertion that Prof. Fronczak fails to offer a basis for the existence of a motivation to combine. All of the prior art references Prof. Fronczak considers are in the same exact field as the asserted patents—adjustable hand tools—so these references and their teachings would be known to those of skill in the art. (*Id.*) At a minimum, the motivation to combine these references would be implicit to such a person of skill. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 964 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 956 (2015) ("A motivation to combine may be implicit in the prior art"); *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1291 (Fed. Cir. 2006) (rejecting the necessity of an express disclosure of motivation, noting "There is flexibility in our obviousness jurisprudence because a motivation may be found *implicitly* in the prior art.") (emphasis in original); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) (citing *Alza* favorably).[3] Indeed, the motivation to combine does not have to be explicitly stated in the prior art, and can be supported by testimony of an expert witness regarding knowledge of a person of skill in the art at the time of invention. *Alza*, 464 F.3d at 1294.

Prof. Fronczak offers opinions on the reasons and motivation to combine the specific prior art identified throughout his report, both at the outset of his discussion of obviousness and in his analysis of each claim element of the asserted patents. (*See, e.g.*, Ex. 1, Fronczak

---

[3] Moreover, the nonbinding district court decision in *Oxford Gene* on which LoggerHead relies pre-dates the Supreme Court's subsequent ruling in *KSR*, which significantly lowered the rigid standards required for showing a motivation to combine that reigned when *Oxford Gene* was decided. *See KSR*, 550 U.S. at 402-03 ("Rigid preventative rules that deny recourse to common sense are neither necessary under, nor consistent with, this Court's case law.").

**REDACTED**

Invalidity Rpt. ¶¶ 109, 119, 126, 128, 134, 136, 144, 146, 152, 154-55, 160 (non-exhaustive illustrative examples).) Moreover, to the extent the alleged invention solved any problem not already addressed by existing prior art (*see id.* at ¶¶ 57-58), such alleged inventions employ nothing "more than the predictable use of prior art elements according to their established functions," *KSR*, 550 U.S. at 401, and thus are obvious.

Because Prof. Fronczak's report discloses a complete and proper obviousness analysis, there is no disclosure shortcoming that requires excluding any of his opinions under Rule 26(a). (*Cf.* Dkt. 279-1, LH Brief at 13-14.) To the contrary, Prof. Fronczak's fulsome analysis sets out the bases for his obviousness opinions in over 120 pages of detailed, element-by-element discussion. (Ex. 1, Fronczak Invalidity Rpt. ¶¶ 106-323.)

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny LoggerHead's motion to exclude Prof. Fronczak's opinions on willfulness and obviousness.

\* \* \*

**REDACTED**

Respectfully submitted,

Dated: June 17, 2016      By: */s/ Ian J. Block*
Marcus E. Sernel, P.C.
Eric D. Hayes
Ian J. Block
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: msernel@kirkland.com
            eric.hayes@kirkland.com
            ian.block@kirkland.com

Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: gregory.arovas@kirkland.com

*Attorneys for Defendant Apex Tool Group, LLC*

Dated: June 17, 2016      By: */s/ James M. Hilmert*
George C. Lombardi
James M. Hilmert
Mark W. Lenihan
WINSTON & STRAWN LLP
35 West Wacker Prof.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: glombardi@winston.com
            jhilmert@winston.com
            mlenihan@winston.com

*Attorneys for Defendant*
*Sears Holdings Corporation*

**REDACTED**

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 17, 2016, the redacted public version of the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date. I further certify that, also on June 17, 2016, the complete sealed version of the foregoing document was served on the following counsel by electronic mail:

| | |
|---|---|
| George C. Lombardi | Paul J. Skiermont |
| James M. Hilmert | Sadaf Abdullah |
| Mark W. Lenihan | Sarah E. Spires |
| WINSTON & STRAWN LLP | Shellie Stephens |
| 35 West Wacker Prof. | Steven W. Hartsell |
| Chicago, Illinois 60601 | Steven J. Udick |
| Telephone: (312) 558-5600 | SKIERMONT DERBY LLP |
| Facsimile: (312) 558-5700 | 2200 Ross Avenue, Suite 4800W |
| Email:  glombardi@winston.com | Dallas, Texas 75201 |
|          jhilmert@winston.com | Telephone: (214) 978-6600 |
|          mlenihan@winston.com | Facsimile: (214) 978-6601 |
| | Email:  paul.skiermont@skiermontderby.com |
| | sadaf.abdullah@skiermontderby.com |
| | sarah.spires@skiermontderby.com |
| | shellie.stephens@skiermontderby.com |
| | steven.hartsell@skiermontderby.com |
| | steve.udick@skiermontderby.com |

By: */s/ Ian J. Block*