**REDACTED**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:12-cv-09033 |
| | ) |
| v. | ) Honorable John W. Darrah |
| | ) Honorable Maria Valdez |
| SEARS HOLDINGS CORPORATION | ) |
| and APEX TOOL GROUP, LLC, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT APEX'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION
TO EXCLUDE CERTAIN EXPERT TESTIMONY AND OPINION
OF CHRISTOPHER BOKHART RELATING TO PATENT REASONABLE
<u>ROYALTY AND TRADE DRESS INFRINGEMENT DAMAGES</u>**

**REDACTED**

**TABLE OF CONTENTS**

I. Introduction ...........................................................................................................................1

II. Argument ..............................................................................................................................1

    A. Mr. Bokhart's Reasonable Royalty Analysis Is Unsupported And Unreliable ...........................................................................................................1

        1. LoggerHead's Counsel In Its Opposition Brief Attempts To Quantify The Alleged Other Forms Of Lost Profits That Its Expert Admitted Could Not Be Done ........................................................................1

        2. For Price Erosion, LoggerHead's Counsel Again Does What Mr. Bokhart Failed To Do. ..................................................................................4

        3. LoggerHead's Support For The "Other Factors" Is 100% Attorney Argument, Not Evidence Or Even Mr. Bokhart's Opinion. ........................7

        4. [REDACTED] ..........8

    B. LoggerHead Again Does Not Address Apex's Arguments Regarding Mr. Bokhart's Failure To Calculate Trade Dress Damages ..........................................10

III. Conclusion .........................................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015) ................................................................................ 5, 6

*Cornell Univ. v. Hewlett-Packard Co.*,
    No. 01-CV-1974, 2008 WL 2222189 (N.D.N.Y. May 27, 2008) ...................................... 8

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
    246 F.3d 1336 (Fed. Cir. 2001) ....................................................................................... 6

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) .................................................................................................... 2, 6

*Garretson v. Clark*,
    111 U.S. 120 (1884) ......................................................................................................... 6

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
    185 F.3d 1341 (Fed. Cir. 1999) ....................................................................................... 8

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ........................................................................................... 6

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ....................................................................................... 8

*Riles v. Shell Exploration & Prod. Co.*,
    298 F.3d 1302, 1311 (Fed. Cir. 2002) ............................................................................ 8

*Sloan Valve Co. v. Zurn Indus., Inc.*,
    33 F. Supp. 3d 984 (N.D. Ill. 2014) ......................................................................... 2, 5, 7

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013) ....................................................................................... 6

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497-TJW-CE, 2011 U.S. Dist. LEXIS 91697 (E.D. Tex. Aug. 17,
    2011) .............................................................................................................................. 10

*Whitserve, LLC v. Comput. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) ........................................................................................... 8

**Rules**

F<small>ED</small>. R. C<small>IV</small>. P. 26(a) ..................................................................................................... 10, 11

**REDACTED**

FED. R. CIV. P. 37(c) ................................................................................................................ 11

**I.     INTRODUCTION**

To justify Mr. Bokhart's unprecedented request for a super-royalty that is double what he calculates LoggerHead to have actually lost in profits, LoggerHead attempts to back-fill the analysis and justification that appears nowhere in Mr. Bokhart's expert report. Numbers never seen before are casually presented in LoggerHead's opposition, as if they reflect calculations actually presented by Mr. Bokhart. The fact is that Mr. Bokhart provides no justification for using forms of "lost profits" that he concedes are neither calculable nor compensable as lost profits damages as a basis to seek a super royalty disconnected from the evidence or reality. The evidence and analysis in this case do not support the super royalty LoggerHead seeks, and Apex respectfully requests this Court not allow Mr. Bokhart to present his unreliable and unsupported royalty calculation to the jury.

**II.    ARGUMENT**

      **A.     Mr. Bokhart's Reasonable Royalty Analysis Is Unsupported And Unreliable.**

           **1.     LoggerHead's Counsel In Its Opposition Brief Attempts To Quantify The Alleged Other Forms Of Lost Profits That Its Expert Admitted Could Not Be Done.**

Contrary to the picture that LoggerHead attempts to paint in its opposition, Mr. Bokhart admitted in his expert report that ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████. (Ex. 1, 5/17/16 C. Bokhart Dep. Tr. at 3, 16, 35-36.)  Indeed, when asked at his deposition ████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████



(*Id.* at 100.)  Apex then moved this Court to not allow Mr. Bokhart to take these unquantifiable other forms of lost profits and inject them into his reasonable royalty analysis to present an improper super-royalty theory to the jury. (Dkt. 268, Apex *Daubert* Br.)

(Dkt. 300, LH Opp. at 9-10.)  But opposition to a *Daubert* challenge is neither the time nor the place to attempt to provide the analysis to justify an expert's otherwise unsupported opinions. *See Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 999 (N.D. Ill. 2014) (excluding "price effect" increase to reasonable royalty because expert "did not include any of this analysis in either of his two reports").

LoggerHead first attempts to play down the magnitude of the super-royalty calculation, rationalizing that LoggerHead's lost profits due to each sale of the MALW (Dkt. 300, LH Opp. at 2 (emphasis added).)  To be precise, the calculated lost profits due to each allegedly lost MALW sale—what LoggerHead claims it would have made "but for" the alleged infringement—equate to barely over of what Mr. Bokhart claims would be the reasonable royalty.

2

**REDACTED**

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████ (Ex. 1, 5/17/16 C. Bokhart Dep. Tr. at 165, 181, 187.) ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

(*Id.* at 99-100 (emphasis added) But LoggerHead's lawyers apparently know better than Mr. Bokhart, and provide numbers and calculations to attempt to quantify these previously incalculable forms of damage. (Dkt. 300, LH Opp. at 9-10 & n.9.) Remarkably, LoggerHead's lawyers now provide the specific incremental lost profit on a per-unit basis ████████ ████████████████████████████████████. Indeed, LoggerHead now contends that ████████████████████████████████████████████████████████████ ██████████████████████████████████████ (*Id.* at 9.) It is bad enough that LoggerHead's lawyers attempt to make that calculation for the first time in a *Daubert* opposition brief, ████████████████████████████████████████████████ ████████████████████████. (Dkt. 268, Ex. 1, Bokhart Rpt. at Ex. 7.) LoggerHead's

3

counsel then goes on to state that its new price erosion calculation ████████████ ████████████████████████████████████ (Dkt. 300, LH Opp. at 9-10.) Again, LoggerHead's lawyers attempt to backfill the specific per unit numbers that its damages expert ████████████████████████████████. ████████████████████████ ████████████████████████████████████████████████. (*Id.*) ████████████████████████████ ████████████████████████████████. This Court should thus not allow Mr. Bokhart to present his improper and unsupported theory to the jury.

    **2.    For Price Erosion, LoggerHead's Counsel Again Does What Mr. Bokhart Failed To Do.**

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ (Dkt. 300, LH Opp. at 9-10.) ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████ The discussion of this in LoggerHead's brief is entirely new and cannot possibly form the basis for saving Mr. Bokhart's opinion from exclusion. (Dkt. 300, LH Opp. at 9-10.) Moreover, LoggerHead's lawyers do not present any evidence that the alleged decrease in the retail price of the Bionic Wrench resulted from the alleged infringement, yet another reason they cannot be used to bootstrap the reasonableness of Mr. Bokhart's super-royalty. *See*

4

*Sloan Valve*, 33 F. Supp. 3d at 999-1000 (precluding expert from adding "price effect" to his reasonable royalty analysis due to unreliable methodology).

 But the cases to which LoggerHead cites do not support LoggerHead's misguided notion that price erosion may be accounted for in a reasonable royalty calculation without supporting evidence. To take price erosion into account, LoggerHead still must show that there is convincing evidence of why this situation would warrant such a staggering increase (indeed, a doubling) in reasonable royalty rate—

LoggerHead's citation of the *AstraZeneca* does not provide support for LoggerHead's doubling of the reasonable royalty rate. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015). In fact, the court in *AstraZeneca*, in affirming the proposed reasonable royalty, emphasized not price erosion but rather the fact that comparable negotiations between parties within the pharmaceutical industry supported the royalty, a benchmark that LoggerHead has emphatically stated is unavailable in the case at hand. *Id.* at 1336-37. Applying that same sanity check to the instant case, Mr. Bokhart's super-royalty of ▇% is way outside the typical rates in the hand tool industry of ▇% based on Mr. Bokhart's own information. (Dkt. 268, Ex. 1, Bokhart Rpt. at Ex. 17.0.). , *AstraZeneca* confirms the longstanding rule that a patentee "must in every case give evidence tending to separate or

5

apportion the defendant's profits and the patentee's damages between the patented feature and unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Id* at 1338 (quoting *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (itself quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).[1] ███

███

███

Without a doubt, the Federal Circuit has repeatedly affirmed the importance of actual evidence of price erosion due to infringement, which LoggerHead has not put forth. In *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365 (Fed. Cir. 2013), another decision on which LoggerHead relies, the Federal Circuit noted that plaintiff SynQor had the "burden . . . to show that 'but for' infringement, it would have sold its product at higher prices" to establish price erosion. 709 F.3d at 1381 (citing *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001)). Again, LoggerHead's expert Mr. Bokhart has not put forth such evidence or established any such facts. Thus, LoggerHead's counsel should not be allowed to make up its own calculations in its *Daubert* opposition to attempt to salvage after the fact its expert's unsupportable opinions.

---

[1] ███ 782 F.3d at 1337-39. The Federal Circuit is clear that a patentee is not entitled to a royalty on the entire selling price of the alleged infringing device unless the patentee shows that the patented feature is *the basis* for demand, which Mr. Bokhart has also failed to set forth. *Id*. ███

6

**REDACTED**

### 3. LoggerHead's Support For The "Other Factors" Is 100% Attorney Argument, Not Evidence Or Even Mr. Bokhart's Opinion.

█████ In light of these shortcomings, LoggerHead grasps for other reasons to explain the shortcoming. First, LoggerHead argues that courts routinely permit expert testimony based on conversations and testimony of others. (*Id.* at 5.) ████████████████████████ But Mr. Brown can come and testify about the facts for which he has knowledge. ████████

█████ (Dkt. 300, LH Opp. at 6.) Again, that kind of unsupported and unreliable opinion is the very kind that should and often is excluded. *See Sloan Valve*, 33 F. Supp. 3d at 1001-03. Remarkably, LoggerHead then attempts to conceal this fact by pointing the finger back at Apex for suggesting other possible causes for the alleged price increases besides the alleged infringement, claiming that these other potential explanations lack support in the record. (Dkt. 300, LH Opp. at 6.) But that completely misses the point, as LoggerHead and Mr. Bokhart

7

bear the burden to put forth supportable and reliable evidence and opinions on their outsized reasonable royalty patent damages, which they has not done.

LoggerHead then again attempts to switch attention away from the deficiencies by alleging that *Georgia-Pacific* does not require Mr. Bokhart to demonstrate that the claimed damages are correct with mathematical exactitude and may involve an element of approximation and uncertainty. (*Id.* at 10.) But that argument misses the point, Apex's criticism of Mr. Bokhart's super royalty is not that its inexact or an approximation, rather that it is not present at all because, as he stated, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Finally, LoggerHead attempts to distinguish the *Whitserve* and *Lucent* cases on the grounds of what again Mr. Bokhart did not do, analyze any comparable licenses. (Dkt. 300, LH Opp. at 11.) Indeed, there is no dispute that Mr. Bokhart presented no comparable licenses to support his super royalty. Apex cited the *Grain Processing*, *Cornell*, and *Riles* cases for the proposition that damages theories going to a jury require sound economic and factual predicates. In response, LoggerHead ignores those fundamental tenets and attempts to pivot away by calling attention to other remedy issues addressed in those cases but again not at issue here: non-infringing alternatives, entire market value rule, and injunctions. (*Id.*) But those responses simply do not make up for the lack of sound economic and factual predicates for the super royalty LoggerHead so desperately wants in this case.

**4.** 

**REDACTED**



### B. LoggerHead Again Does Not Address Apex's Arguments Regarding Mr. Bokhart's Failure To Calculate Trade Dress Damages.

LoggerHead's argument that for trade dress damages its initial burden is to show defendants' revenues does not moot the fact that Mr. Bokhart has failed to offer any opinions whatsoever regarding a proper accounting or a method of apportioning Defendants' profits from the alleged trade dress infringement. Therefore, Mr. Bokhart must be precluded from offering any such opinions at trial. Indeed, it is undisputed that Mr. Bokhart has not performed this analysis, and any opinions he might have in response to Apex's expert have not been disclosed.

LoggerHead fails to address Apex's assertion that Rule 26 prohibits undisclosed opinions. Indeed, LoggerHead does not cite a single case to contradict the preclusion that should be applied to Mr. Bokhart's calculation of defendants' incremental profits—which Mr. Bokhart has not attempted to calculate. To be sure, the deposition testimony on which LoggerHead relies does not relate to any attempt to make such a calculation. (Dkt. 300, LH Opp. at 14.) Rule 26(a)(2) sets out the requirements for what needs to be included in expert disclosures: any expert who is retained to present testimony at trial must issue a report containing, *inter alia*, "a *complete statement of all opinions the witness will express* and the basis and reasons for them," as well as "*the facts or data considered* by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i)-(ii) (emphasis added). The Federal Rules further require that expert disclosures

10

be made "at the times and in the sequence that the court orders," FED. R. CIV. P. 26(a)(2)(D), meaning that Mr. Bokhart was required to disclose any analysis he might offer. To date, Mr. Bokhart has presented no such analysis, and thus should be precluded from offering testimony regarding the alleged trade dress damages at trial. *See* FED. R. CIV. P. 37(c)(1).

## III. CONCLUSION

For the foregoing reasons, Apex respectfully requests that the Court exclude Mr. Bokhart's reasonable royalty analysis for patent damages. Apex further requests that the Court preclude Mr. Bokhart from offering testimony regarding alleged trade dress damages at trial.

Respectfully submitted,

Dated: June 24, 2016      By: */s/ Ian J. Block*
Marcus E. Sernel, P.C.
Eric D. Hayes
Ian J. Block
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email:  msernel@kirkland.com
            eric.hayes@kirkland.com
            ian.block@kirkland.com

Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:  gregory.arovas@kirkland.com

*Attorneys for Defendant Apex Tool Group, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 24, 2016, the redacted public version of the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date. I further certify that, also on June 24, 2016, the complete sealed version of the foregoing document was served on the following counsel by electronic mail:

| | |
|---|---|
| George C. Lombardi | Paul J. Skiermont |
| James M. Hilmert | Sadaf Abdullah |
| Mark W. Lenihan | Sarah E. Spires |
| WINSTON & STRAWN LLP | Shellie Stephens |
| 35 West Wacker Dr. | Steven W. Hartsell |
| Chicago, Illinois 60601 | Steven J. Udick |
| Telephone: (312) 558-5600 | SKIERMONT DERBY LLP |
| Facsimile: (312) 558-5700 | 2200 Ross Avenue, Suite 4800W |
| Email: glombardi@winston.com | Dallas, Texas 75201 |
| jhilmert@winston.com | Telephone: (214) 978-6600 |
| mlenihan@winston.com | Facsimile: (214) 978-6601 |
| | Email: paul.skiermont@skiermontderby.com |
| | sadaf.abdullah@skiermontderby.com |
| | sarah.spires@skiermontderby.com |
| | shellie.stephens@skiermontderby.com |
| | steven.hartsell@skiermontderby.com |
| | steve.udick@skiermontderby.com |

By: */s/ Ian J. Block*