UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SEARS HOLDINGS CORPORATION ) <br> and APEX TOOL GROUP, LLC, ) <br> ) <br> Defendants. ) | Case No. 12-cv-9033 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Loggerhead Tools, LLC, filed a Second Amended Complaint against Defendants, Sears Holdings Corporation and Apex Tool Group, LLC. The Second Amended Complaint alleges, among other claims, common law fraud in Count XI, fraud in the inducement in Count XII, and promissory fraud in Count XIII, against Sears. Defendant Sears filed a Motion for Summary Judgment on Loggerhead's Fraud Claims [261]. For the reasons set forth more fully below, Sears' Motion for Summary Judgment [261] is granted.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any

disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance.  Local Rule 56.1(b)(3)(B).  To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted.  *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005).  Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded.  *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).  Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Plaintiff is an Illinois limited-liability company with its principal place of business in Illinois.  (DSOF ¶ 1.)  Sears is a Delaware corporation with its principal place of business in Illinois.  (*Id.* ¶ 2.)  Beginning in 2009, Sears began retailing Plaintiff's Bionic Wrench.  (*Id.* ¶ 4.)  In 2009, Plaintiff signed a Universal Terms and Conditions ("UTC") Agreement as consideration for doing business with Sears.  (*Id.* ¶ 5.)  A second UTC Agreement was signed in 2011.  (PSOF ¶ 2.)  The UTC contained two provisions:  (1) a statement that product forecasts are for planning purposes and do not give rise to a commitment to purchase; and (2) a statement that a commitment to purchase will only arise after a Purchase Order has been placed.  (DSOF ¶ 6.)  Throughout 2009 and 2010, Sears retailed the Bionic Wrench.  (*Id.* ¶ 7.)

The parties entered into an agreement to sell the Bionic Wrench for the time period of February 1, 2011, to January 31, 2012.  (*Id.* ¶ 8.)  The agreement contained terms for the price of

the Bionic Wrench and for a promotional subsidy. (*Id.*) Sears promoted Plaintiff's wrench during the 2011 Christmas shopping season in a direct-to-consumer television ("DRTV") promotion. (*Id.* ¶ 9.)

Beginning in late 2011, Amanda Campana, Plaintiff's main point of contact with Sears, began contract discussions in order to forecast the 2012 fiscal year. (*Id.* ¶ 11.) Campana asked about Plaintiff's plans to partner with other retailers.[1] (*Id.*) In early 2012, Campana was replaced with a new individual, Stephanie Kaleta, who continued negotiations with Plaintiff. (*Id.* ¶ 12.) During the course of negotiations, Plaintiff and Sears disagreed over pricing and the quantity of wrenches to be supplied. (*Id.* ¶ 13.) On February 15, 2012, Sears sent Plaintiff a draft Supply Agreement, which detailed, among other things, proposed pricing and subsidy terms for the 2012 DRTV promotion. (*Id.* ¶ 16.) On February 16, 2012, Plaintiff responded to the proposed Supply Agreement, claiming that "[u]pon reviewing the contract extension that you have sent, LoggerHead cannot move forward." (*Id.* ¶ 18.)

Plaintiff also indicated that they would "be pursuing TV promotions with all other possible outlets for 2012." (*Id.*) On February 20, 2012, Plaintiff solicited Home Depot to purchase wrenches for the 2012 Christmas season; on May 8th, 2012, Home Depot responded: ". . . Have seen many times. No interest right now in this SKU." (*Id.* ¶¶ 20-21.) Between March and May 2012, Plaintiff solicited several other competitors including: Wal-Mart, Walgreens,

---

[1] Plaintiff's dispute that Sears inquired into Plaintiff's plans to work with other retailers in order to provide forecasts, claiming that Campana told Plaintiff that forecasts would be shifted down if Plaintiff sought out other retailers. Plaintiff also contends that representatives stated "assume the forecast that has been discussed so you can start building production." (PSOF ¶ 11.) However, Plaintiff stated in negotiations that "Ballpark estimates are great, but they are not commitments . . . ." (DSOF ¶ 11.)

and Menards.  (*Id.* ¶¶ 22-24.)  Plaintiff did not disclose these activities with other retailers to Sears.[2]  (*Id.* ¶ 25.)

On March 6, 2012, Plaintiff sent Sears a draft DRTV agreement.  (*Id.* ¶ 28.)  The following day, Plaintiff sent a revised DRTV draft to Sears, which included changing a clause that referenced a "commitment" for 300,000 units of the Bionic Wrench to "forecast."  (*Id.* ¶ 29.)  During the next three months, Plaintiff and Sears exchanged three more drafts of a DRTV agreement, none of which were executed.  (*Id.* ¶ 31.)  A provision limiting Plaintiff from retailing the Bionic Wrench with retailers other than Ace Hardware and QVC was in the last DRTV draft on April 27, 2012 .  (*Id.* ¶¶ 33-34.)  Plaintiff stated that they were unable to sign the fourth  draft agreement because they had agreed to sell limited quantities of the Bionic Wrench to Menards.  (*Id.* ¶ 36.)

Each DRTV agreement provided that "written forecasts [would be provided] 120 days prior to shipment" and purchase orders "90 days prior to shipment."  (*Id.* ¶ 37.)
On May 15, 2012, Sears provided Plaintiff with the 120-day forecast and provided notice that the "forecast is subject to change pending [F]ather's [D]ay performance and finalization of Q4 marketing assets."  (*Id.* ¶ 38.)  Two days later, on May 17, 2012, Plaintiff responded to the proposed DRTV agreement and expressed hope that Sears would assemble purchase orders soon, so that Plaintiff could finalize production.  (*Id.* ¶ 40.)  After the exchange of draft agreements, Sears received an email on May 17, 2012, that called into question Plaintiff's ability to meet production forecasts for the 2012 Father's Day DRTV promotion.  (*Id.* ¶ 41.)  Despite not having

---

[2] Plaintiff has disputed this fact, claiming that this conduct was for the purpose of "contact[ing] future customers and let[ing] them know what [LoggerHead is] doing." (Pl's Resp. to DSOF ¶ 25.)

4

a finalized agreement, Sears engaged in a DRTV promotion for the Bionic Wrench over Father's Day 2012.  (*Id.* ¶ 42.)

Beginning in February 2012, Sears began negotiations with Apex Tool Group to develop a "backup plan" in response to negotiations with Plaintiff.  (*Id.* ¶ 44.)  Sears did not receive a prototype of Apex's product until April 17, 2012.  (*Id.* ¶ 47.)  By April 26, 2012, it was unclear what the business relationship between Sears and Apex would be.[3]  (*Id.* ¶ 48.)  On May 22, 2012, Kaleta sent an email to her point of contact at Apex, Jill Lowe, confirming forecasts for over 300,000 units from Apex.  (PSOF ¶ 26.)  However, in mid-May 2012, Sears had still not finalized a purchase order with Apex due to continued modifications to the design of the Apex wrench.  (DSOF ¶ 49.)  By May 23, 2012, Sears received notice that Apex Tool Group would be able to produce enough product for Sars to run a DRTV promotion.  (*Id.* ¶ 53.)  On the same day, Kaleta called Plaintiff to inform them that Sears would no longer be pursuing a DRTV agreement with them.  (*Id.* ¶¶ 54-55.)  Following the phone call between Kaleta and Plaintiff, no DRTV agreement was signed.  (*Id.* ¶ 56.)  On June 20, 2012, Sears sent an updated forecast which lowered the forecast.  (*Id.* ¶ 57.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A genuine dispute as to any material fact exists if "the

---

[3] Apex employees noted "[Sears] was considering limited quantities of the Apex product in 2012 . . . [b]ased on what they are buying from LoggerHead." (DSOF ¶ 48) (internal quotes omitted).

5

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

### *Common Law Fraud*

In Counts XI and XII, Plaintiff alleges that Sears defrauded Plaintiff through a scheme intended to prevent Plaintiff from soliciting other retailers. Specifically, Plaintiff alleges that Sears intentionally continued negotiations, provided false forecasting projections, and guaranteed purchases of over 300,000 units, while Sears had already decided to pursue a relationship with Apex Tool Group. Under Illinois Law, "a plaintiff alleging fraud must prove by clear and convincing evidence that (1) the defendant made a false statement of material fact; (2) the defendant knew that the statement was false; (3) the defendant intended that the statement induce plaintiff to act; (4) the plaintiff justifiably relied upon the statement's truth; and (5) the plaintiff suffered damages as a result of relying on the statement." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009) (quoting *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 881-82 (7th Cir. 2005)). Additionally, a failure to disclose a material fact may constitute

6

fraud in limited circumstances. *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013).

Duty to Disclose

To prevail in a fraud claim where the defendant conceals a material fact rather than making a false representation, a plaintiff must prove that the defendant had a duty to disclose the material fact. *Cohen*, 735 F.3d at 613. Under Illinois Law, "a duty to disclose arises only when the parties have a special or fiduciary relationship, which would raise a duty to speak." *Greenberger v. GEICO General Ins. Co*, 631 F.3d 392, 401 (7th Cir. 2011) (quoting *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh. v. Arbor*, 692 N.E.2d 812, 817 (Ill. App. Ct. 1998) (internal quotes omitted). Generally, "parties to a contract are not each other's fiduciaries." *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992). "The relevant factors in determining whether a fiduciary relationship exists include: the degree of kinship between the parties; the disparity in age, health, and mental condition, education, and business experience between the parties . . . ." *State Sec. Ins. Co. v. Frank B. Hall & Co*., 630 N.E.2d 940, 947 (Ill. App. Ct. 1994).

Plaintiff's business relationship with Sears began in 2009 and lasted for approximately three years. Plaintiff's President, Dan Brown Sr., was a sophisticated business man, holding a master's degree in business administration from Northwestern University, with years of business experience. (DSOF ¶ 60.) During their business relationship, Plaintiff did not manage their business based on Sears' conduct, and Sears did not control Plaintiff's business operations. (*Id.* ¶¶ 20, 22-24.) Plaintiff also did not disclose discussions it was having with other potential vendors. (DSOF ¶ 25.) "A duty to disclose arises only when the parties have a special fiduciary relationship . . . ." *Greenberger*, 631 F.3d at 401. Plaintiff has not provided sufficient evidence

that there was a special fiduciary relationship between Plaintiff and Sears. The relationship did not give rise to a duty to disclose.

### Intent to Defraud

To succeed on a claim for actual fraud, a plaintiff must show "that defendants, with the intent to induce plaintiffs to act, made a false statement of material fact which defendants knew or believed to be false." *Assoc. Ben. Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 852 (7th Cir. 2007) (quoting *Williams v. Chicago Osteopathic Health Sys.*, 654 N.E. 613, 619 (Ill. App. Ct. 1995)). "Illinois law does not allow [] plaintiffs to proceed on a fraud claim when the evidence of intent to defraud consists of nothing more than unfulfilled promises and allegations made in hindsight." *Id.* at 853.

Plaintiff argues that several facts show Sears intended to defraud Plaintiff. Sears told Plaintiff that they wanted to enter into an agreement to promote the Bionic Wrench in 2012. (PSOF ¶ 15.) Sears began discussing development of a wrench with Apex as early as February 2012. (DSOF ¶ 44.) However, the Apex wrench was not finalized until May 25, 2012. (*Id.* ¶ 53.) Sears negotiated for months, exchanging four draft agreements, and Sears ran a DRTV for the Bionic Wrench during the 2012 Father's Day period. The record shows that Sears planned for contingencies in case negotiations with Plaintiff fell through. Viewing the record in the light most favorable to the Plaintiff, Plaintiff has not presented facts showing that Sears intended to defraud Plaintiff.

### Reliance

The final element that Plaintiff must prove in a claim for common law fraud is that "the plaintiff justifiably relied on the statement's truth." *Trade Fin. Partners*, 573 F.3d at 413. "Justifiable reliance must be shown by clear and convincing evidence." *Teamsters Local 282*

*Pension Trust Fund v. Angelos*, 839 F.2d 366, 369 (7th Cir. 1988) (citing *National Republic Bank v. National Homes Constr. Corp.*, 381 N.E.2d 15, 18 (Ill. App. Ct. 1978)). "In determining whether reliance was reasonable, all of the facts which plaintiff had actual knowledge of, as well as all of those it might have learned if it had used ordinary prudence, must be taken into account . . . ." *Id*. at 370.

Plaintiff argues that they relied on Sears' false statements, causing them to forego soliciting competitor retailers. (PSOF ¶ 29.) However, Plaintiff solicited Home Depot, Wal-Mart, Walgreens, and Menards to purchase wrenches for the 2012 Christmas season. (DSOF ¶¶ 20-21, 22-24.) Plaintiff also contends that they requested forecasts from Sears and that those forecasts were a guarantee of an eventual purchase order from the Sears.[4] (PSOF ¶ 27.) In 2009, Plaintiff and Sears, signed a UTC Agreement. (DSOF ¶ 5.) The UTC specifically provided that "All estimates of forecasts . . . are for planning purposes only and shall not in any way represent a commitment . . ." (DSOF ¶ 6.) The UTC Agreement plainly stated that forecasts were not commitments. Additionally, in emails between Plaintiff and Sears regarding the 2011 forecasts, Plaintiff wrote: "Ballpark estimates are great, but they are not commitments . . . ." (DSOF ¶ 11). Plaintiff knew that forecasts were not commitments and indicated that in emails. Plaintiff's reliance on Sears' forecast for 2012 was not justified.

Plaintiff has not shown a question regarding a material fact as to their common-law fraud claims. Sears' Motion for Summary Judgment [261] is granted as to Counts XI and XII.

*Promissory Fraud*

In Count XIII, Plaintiff alleges, in the alternative, a claim for promissory fraud. Specifically, Plaintiff alleges that Sears engaged in a scheme to defraud by making promises to

---

[4] In 2011, Sears provided Plaintiff with a forecast for a DRTV promotion that translated into a Purchase Order. (PSOF ¶ 11).

9

purchase Bionic Wrenches, while at the same time having already made arrangements to purchase the Max Access Locking Wrench. "Promissory fraud is generally not actionable in Illinois unless the plaintiff also proves that the act was part of a scheme to defraud." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012) (internal quotes omitted). For the scheme exception to apply, the plaintiff must show that the defendant did not intend to fulfill a promise at *the time the promise was made*. *Id.* (emphasis added). The defendant must also intend for the plaintiff to rely on the promise. *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992). "Promissory fraud is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove . . . [and] the burden on a plaintiff . . . is deliberately high." *Bower*, 978 F.2d at 1012 (internal citations omitted).

Scheme to Defraud

"[P]romissory fraud is actionable only if it either is particularly egregious or . . . it is embedded in a larger pattern of deceptions . . . that reasonably induces reliance and [is] against which the law ought to provide a remedy." *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (holding that the plaintiff, a successful entrepreneur, should expect journalism business practices to include breaking promises and therefore should have planned accordingly).

Despite the above-quoted language in the UTC Agreement, Plaintiff contends that Sears' forecasts were commitments to purchase approximately 300,000 wrenches. Plaintiff further assert that Sears' forecasts were a part of a larger plan to prevent Plaintiff from soliciting other retailers to compete with the new Max Access Wrench. As discussed above, the evidence indicates that the forecasts were, in fact, estimates. In emails exchanged on

March 6 and 7, 2012, the language of the proposed draft agreement between the parties changed from "commitment" to "forecast" with the intention that the provided numbers were estimates. (DSOF ¶¶ 28-29.) Further, as set out above, Plaintiff referred to previous forecasts as "[b]allpark estimates" and recognized that "they are not commitments . . . ." (*Id.* ¶ 11). Additionally, when the 2012 Q4 forecasts were provided to Plaintiff, there is no evidence that Sears believed or knew that the forecasts were inaccurate *at the time they were made*. Plaintiff has not shown that there was a scheme to defraud.

Reasonable Reliance

The second element in promissory fraud is reasonable reliance. "[R]easonable reliance can be a question of law, appropriately decided on a motion for summary judgment, where no reasonable jury could find that it was reasonable for a plaintiff to rely upon the statements of the defendant." *Glass v. Kemper Corp.*, 949 F. Supp. 1341, 1350 (N.D. Ill. 1997). Nevertheless, the burden remains on the plaintiff to present evidence that he relied on the defendant's actions by producing evidence that defendant acted with an intent to defraud. *Bower*, 978 F.2d at 1012.

Plaintiff argues that reliance on Sears' forecasts was reasonable based on past conduct. Sears suggested that the Plaintiff rely on the June 2011 forecasts in order to build production for the holiday season that year. (PSOF ¶ 11.) The purchase order signed on April 19, 2011, was retroactive to February 1, 2011. (PSOF ¶ 10.) Plaintiff argues that Sears communicated commitments through both purchase orders and forecasts, and relying on forecasts was reasonable. Finally, Plaintiff claims that the signed UTC agreement should not absolve Sears of liability. All vendors doing business with the Sears were required to sign a UTC Agreement. (PSOF ¶ 1.) As such, Plaintiff argues that the UTC should not bind the parties because it is a contract of adhesion.

Plaintiff argues that reliance on forecasts was reasonable based on prior conduct, specifically a retroactive purchase order and testimony that commitments were communicated through forecasts. However, the UTC Agreement between the parties expressly states that forecasts are for planning purposes and do not represent a commitment. Even if the UTC Agreement is not binding, it still provides notice that forecasts should not be considered commitments to purchase. Additionally, as cited above, Plaintiff wrote in an email regarding the inaccuracy of the 2011 forecasts: "Ballpark estimates are great, but they are not commitments . . . ." (DSOF ¶ 11). Other e-mails also acknowledged that Plaintiff understood the difference between forecasts and purchase orders. (*Id.* ¶ 40.) Further, the forecast was expressly contingent on sales over Father's Day and finalization of the fourth quarter marketing agreement, including an agreement on DRTV. (*Id.* ¶ 38). Plaintiff knew that the forecasts were not commitments for purchase orders and could not reasonably rely on those forecasts.

Sears' Motion for Summary Judgment [261] is granted as to Count XIII.

## CONCLUSION

For the reasons discussed above, Sears' Motion for Summary Judgment on Loggerhead's Fraud Claims [261] is granted. Judgment is entered for Sears on Counts XI, XII, and XIII.

Date:      September 20, 2016           /s/ _____
                                              JOHN W. DARRAH
                                              United States District Court Judge