UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOGGERHEAD TOOLS, LLC,      )
             )
      Plaintiff,      )
             )
      v.      )      Case No. 12-cv-9033
             )
SEARS HOLDING CORPORATION      )      Judge John W. Darrah
and APEX TOOL GROUP, LLC,      )
             )
      Defendants.      )

## MEMORANDUM OPINION AND ORDER

Plaintiff LoggerHead Tools, LLC filed a Second Amended Complaint against Defendants

Sears Holding Corporation and Apex Tool Group, LLC, alleging, *inter alia*, trade dress

infringement claims against Defendants based on product design, Count XV, and product

packaging, Count XVI. Defendants filed a Motion for Summary Judgment [270] on Counts XV

and XVI. For the reasons set forth more fully below, Defendants' Motion for Summary

Judgment [270] is granted.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts

as to which the party contends there is no genuine issue for trial." *Ammons v.*

*Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the

nonmoving party to admit or deny every factual statement proffered by the moving party and to

concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v.*

*Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere

disagreement with the movant's asserted facts is inadequate if made without reference to specific

supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any

disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance.  Local Rule 56.1(b)(3)(B).  To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted.  *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005).  Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded.  *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).  Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

## BACKGROUND

 The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Plaintiff LoggerHead Tools, LLC ("LoggerHead") is an Illinois limited-liability company with its principal place of business in Palos Park, Illinois.  (DSOF ¶ 1.)  Defendant Sears Holding Corporation ("Sears") is a Delaware corporation with its principal place of business in Hoffman Estates, Illinois.  (*Id.* ¶ 2.)  Defendant Apex Tool Group, LLC ("Apex") is a Delaware limited-liability company with its principal place of business in Sparks, Maryland. (*Id.* ¶ 3.) LoggerHead asserts two patents in this case, U.S Patent Nos. 6,889,579 ("the '579 Patent") and 7,992,470 (the "'470 Patent").  (*Id.* ¶ 22)  Those patents describe the claimed device as an adjustable gripping tool.  (*Id.* ¶ 23.)  LoggerHead started selling the Bionic Wrench in 2005.  (*Id.* ¶ 34.)  The Bionic Wrench is stamped with the trademark LOGGERHEAD TOOLS and the trademark BIONIC WRENCH.  (*Id.*  ¶ 40.)  The Bionic Wrench has black handles and green

horizontal ribbing at the top of each handle.  (*Id.*)  In the packaging, the 8-inch version of the

Bionic Wrench appears as follows:

 

(*Id.* ¶ 9.)  The packaging for the Bionic Wrench has the trademark LOGGERHEAD and the

trademark BIONIC WRENCH.  (*Id.* ¶ 41.)  The packaging also includes a turtle-head logo, "A

Gripping Experience" tagline, and a green, yellow, and black color scheme.  (*Id.*)  The packaging

includes an image and text of multiple wrenches being replaced by a single wrench and a "Try

Me" sign ad.  (*Id.* ¶ 41.)  LOGGERHEAD, BIONIC WRENCH, a turtle-head logo and "A

Gripping Experience" are registered trademarks owned by LoggerHead, are used for goods

including wrenches, and serve as source identifiers.  (*Id.* ¶¶ 42-43.)

On May 6, 2014, LoggerHead received Supplemental Trademark Registration No.

4,527,177 from the United States Patent and Trademark Office ("USPTO") for claim of the

following design in solid lines:



(*Id.* ¶¶ 11-13.) The Supplemental Trademark Registration says that "[t]he mark consists of

three-dimensional depiction of a wrench head. The wrench head consists of a cog-like design in

the nature of a circle with six rectangular slots. The broken lines depicting the handles indicate

placement of the mark on the goods and are not part of the mark." (*Id.* ¶ 14.) In the prosecution

of application for the supplemental trademark registration, the USPTO found that the applied-

for-design was functional and lacked distinctiveness, which Plaintiff disputed. (*Id.* ¶¶ 15-16.)

The Max Axess Locking Wrench ("MALW") has red and black handles and is stamped

with the CRAFTSMAN trademark. (*Id.* ¶ 35.) It includes a measuring scale and a locking

mechanism that protrudes from the wrench head like a fin. (*Id.* ¶ 47.) In the packaging, the 8-

inch version of the MALW appears as follows:




(*Id.* ¶ 8.)  CRAFTSMAN and MAX AXESS are registered Sears trademarks for goods including

wrenches.  (*Id.* ¶ 37.)  CRAFTSMAN is a source identifier for Sears.  (*Id.* ¶ 38.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56.  Courts deciding summary judgment motions must view facts "in the light most

favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007).  A genuine dispute as to any material fact exists if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the initial

burden of establishing that there is no genuine dispute as to any material fact.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, "[t]he nonmoving

party must point to specific facts showing that there is a genuine issue for trial."  *Stephens v.*

5

*Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).   Factual disputes do "not preclude summary

judgment when the dispute does not involve a material fact."  *Burton v. Downey*, 805 F.3d 776,

783 (7th Cir. 2015).  The evidence must be such "that a reasonable jury could return a verdict for

the nonmoving party."  *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

Plaintiff alleges two counts of trade dress infringement.  "'Trade dress' refers to the 'total

image of a product, including size, shape, color combinations, graphics, packaging and label.'"

*Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994).  To prevail on a trade

dress claim, a plaintiff "must establish that its trade dress is nonfunctional, that it has acquired

secondary meaning, and that a likelihood of confusion exists between the trade dress of the two

games."  *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005)

(citing *Computer Care v. Service Sys. Enters., Inc.*, 982 F.2d 1063 (7th Cir. 1992)).

*Count XV – Product Design Trademark Infringement*

Count XV alleges trademark infringement on the basis of product design.  Trade dress

protection for product designs is unusual, as "almost invariably, even the most unusual of

product designs − such as a cocktail shaker shaped like a penguin − is intended not to identify the

source, but to render the product itself more useful or more appealing."  *Wal-Mart Stores, Inc. v.*

*Samara Bros., Inc.,* 529 U.S. 205, 213 (2000).

<u>Secondary Meaning or Distinctiveness</u>

Defendants argue that Plaintiff has not met its burden to show that the Bionic Wrench

design has acquired secondary meaning.  A secondary meaning is acquired when "[t]he design or

packaging of a product [acquires] a distinctiveness which serves to identify the product with its

manufacturer or source." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001).

"Proof of secondary meaning can be established through direct consumer testimony, consumer

surveys, length and manner of use, amount and manner of advertising, volume of sales, place in

the market, and evidence of intentional copying." *Packman v. Chicago Trib. Co.*, 267 F.3d 628,

641 (7th Cir. 2001).

Plaintiff asserts that Defendants intentionally copied the Bionic Wrench when developing

the MALW.   LoggerHead presents evidence that Defendants reverse engineered or replicated

the design of the Bionic Wrench.  (PSOF ¶¶ 1-2.)  Further, during development, Defendants

called the MALW the "Bionic Wrench 2.0" and tested the Bionic Wrench in the development

process.  (PSOF ¶¶ 3-10).  However, "[c]opying is only evidence of secondary meaning if the

defendant's intent in copying is to confuse consumers and pass off his product as the plaintiff's."

*Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 663 (7th Cir. 1995).  Plaintiff has

presented no facts showing Defendants intended to confuse consumers.

Plaintiff also asserts that its product has established secondary meaning through:  the

length and manner of use, volume of sales, the place of the Bionic Wrench in the market, and the

advertising of its product design.  According to Dan Brown, inventor and President of

LoggerHead, "[s]ince [its] introduction, the sales of products including the features in the

[Product Design] total $22.5 million that includes approximately 1.75 million units."  (PSOF

¶ 13.)  The Bionic Wrench has been and is "sold in mass merchant retailers such as Amazon,

Sears, QVC, Walmart, Menards, Canadian Tire, Ace Hardware, TruValue Hardware, and

Harrington" along with numerous other outlets.  (*Id.*)  Further, Brown claims that the advertising

and marketing have reached approximately $1 million with printed advertisements.  (*Id.* ¶ 14.)

There has also been trade show promotion and at least $850,000 in television promotions.  (*Id.*)

Brown also claims that "well-known and widely distributed magazines and publications such as Popular Mechanics, the Wall Street Journal, the New York Times, Business Week, Better Homes and Gardens, and This Old House have recognized [the Bionic Wrench's] distinctive and unique identity of the tool design." (PSOF ¶ 15.) Plaintiff has also submitted consumer recognition evidence. [1] (*Id.* ¶ 17.)

Defendants argue this evidence was rejected by the USPTO during the attempted trademark registration, which led Plaintiff to seek registration on the supplemental register. However, by statute, "[r]egistration of a mark on the supplemental register shall not constitute an admission that the mark has not acquired distinctiveness." 15 U.S.C. § 1095. There is some evidence that the design has acquired secondary meaning or distinctiveness.

Functionality

A design is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix*, 532 U.S. at 32. Five factors are used in determining functionality:

> (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; (5) the effect of the design feature on an item's quality or cost.

---

[1] Defendants argue that these affidavits are hearsay statements. They argue that Plaintiff never identified any of these consumers as witnesses and that, therefore, they would be unable to testify at trial. Hearsay statements cannot be used to defeat summary judgment. *Eisenstadt*, 113 F.3d 742.

*Georgia-Pacific. Consumer Products LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727-28 (7th Cir. 2011) (citing *Specialized Seating, Inc. v. Greenwich Industries, L.P.*, 472 F. Supp. 2d 999, 1011 (N.D. Ill. 2007)). [2]

Plaintiff's utility patent explicitly describes functionality. Patents "serve as excellent cheat sheets because any design claimed in a patent is supposed to be useful." *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010). "[I]f the 'central advance' claimed in the utility patent matches the 'essential feature' of the trademark, there is strong evidence that the design is functional." *Georgia-Pacific*, 647 F.3d at 728 (citing *TrafFix*, 532 U.S. at 30). The essential feature of Plaintiff's product design claim is a round wrench head with gripping elements with symmetrical spacing around the circumference. The patent states that the "central advance" of the patent is the wrench head that "symmetrically translates the force applied to the gripping tool onto the workpiece in a symmetrically balanced and mechanically advantaged and efficient way." (DSOF ¶¶ 22-23). "[S]tatements in a patent's specification illuminating the purpose served by a design may constitute equally strong evidence of functionality." *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1375 (Fed. Cir. 2012); *see also TrafFix*, 532 U.S. at 32 ("statements made in the patent applications and in the course of procuring the patents [may] demonstrate the functionality of the design.").

The '579 Patent is very similar to the supplemental trademark registration and the actual Bionic wrench:

---

[2] The second factor is not applicable to this case as the utilitarian advantages of LoggerHead's patents are not tied to LoggerHead's product design.

| '579 Patent, Figure 2 | Supplemental Trademark Reg. | Bionic Wrench Product |
|---|---|---|
|  |  |  |

(DSOF ¶¶ 9, 12, 26).  LoggerHead's patent claims describe the asserted product design.

Specifically, Brown admitted that the "design of six symmetrically laid-out jaws about the

circumference of the Bionic Wrench's wrench head contributes to the function of the product.

(*Id.* ¶¶ 28-29.)   Additionally, Plaintiff's advertising promotes the utilitarian benefits of the

design of the Bionic Wrench's head and its functionality.  Plaintiff promotes "the patented

Bionic advantage" and a "patented six-sided grip" in written and video advertisements.   (DSOF

¶¶ 30-32.)

Plaintiff provides pictures from the '579 Patent prosecution as possible design

alternatives:



(PSOF ¶ 25.)  However, Plaintiff's expert asserted there are no available alternatives to the

Bionic Wrench.  (Dkt. 268 Ex. 1, Bokhart Expert Rpt. ¶¶ 54, 95; Ex. 7, 5/17/16 C. Bokhart Dep.

Tr. at 160.)  As to quality and cost, the '579 and '470 patents include statements that the design

decreases costs.  (DSOF ¶¶ 22-23, 28-29.)  Additionally, Brown stated that the six gripping

elements are "an improvement on a substitute design for an adjustable hand wrench."  *Id.*  The

product design improves the tool's quality and cost.  *See Jay Franco*, 615 F.3d at 857 ("if a

design enables a product to operate, or improves on a substitute design in some way . . . , then

the design cannot be trademarked; it is functional because consumers would pay to have it rather

than be indifferent toward or pay to avoid it.")

The undisputed facts clearly show that the design is functional, which precludes trade

dress protection.

Likelihood of Confusion

For trade dress protection, Plaintiff "is not required to show actual consumer confusion."

*Computer Care*, 982 F.2d at 1070. One factor to be considered is "[t]he close similarity between

the parties' trade dresses in side-by-side comparison . . . .'" *Id.* Additionally, if a company

deliberately copies a trade dress, this could be an "an important factor bearing on the likelihood

of confusion."[3] *Id.* As discussed above, Plaintiff presents evidence that Defendants reverse

engineered or replicated the design of the Bionic Wrench. (PSOF ¶¶ 1-2). Further, Defendants

even called the MALW while in development the "Bionic Wrench 2.0" and tested the Bionic

Wrench in the development process. (PSOF ¶¶ 3-10.) There is some evidence that there may be

consumer confusion.

While there is some evidence of distinctiveness and consumer confusion, Plaintiff's

product design trademark infringement claim fails because the design is functional. Defendants'

Motion for Summary Judgment [270] is granted as to Count XV.

---

[3] Defendants assert that "deliberate copying" is considered only when there is intent to confuse consumers as in *Thomas*. However, *Thomas* discussed intentional copying only within the factor of acquiring distinctiveness or secondary meaning. *Thomas & Betts Corp.*, 65 F.3d at 663 (7th Cir. 1995). When separately evaluating the likelihood of confusion, deliberate copying is a factor, regardless of intent.

*Count XVI – Packaging Trade Dress Infringement*

Count XVI is a trade dress infringement claim based on product packaging. Plaintiff claims several similarities in the MALW and Bionic Wrench packaging: "(1) a cardboard backing with a clear coating that shows the Bionic Wrench product with two handles and 6 jaws, (2) exposed handles, (3) a try-me feature, (4) a lifetime warranty, and (5) an illustration that the product replaces multiple wrenches in one." (DSOF ¶ 33.)

Defendants argue that their trade dress does not cause confusion. "Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to 'palm off' his product as that of another." *Packman*, 267 F.3d at 643. "If we know for sure that consumers are not confused about a product's origin, there is no need to consult even a single proxy." *Top Tobacco, L.P. v. N. A. Operating Co., Inc.*, 509 F.3d 380, 383 (7th Cir. 2007).[4]

The undisputed facts show dissimilar, source-identifying elements in the trademarks, logos, and colors. Both packages are clearly branded. (DSOF ¶¶ 35-47.) The Bionic Wrench is stamped with LOGGERHEAD TOOLS and BIONIC WRENCH, while the MALW is stamped with CRAFTSMAN and MAX AXESS. (*Id.*) The packaging for the Bionic Wrench has LoggerHead's turtle-head logo and "A Gripping Experience" tagline. (*Id.*) The Bionic Wrench's packaging is green, yellow and black, while the MALW is black and red. (*Id.*)

---

[4] Plaintiff incorrectly asserts that *Top Tobacco* is not controlling because it only concerns word trademarks. On the contrary, *Top Tobacco* analyzed the appearance of both tobacco cans in deciding that the factor test is inapplicable. The court determined that no one could reasonably be confused by who makes what can, similar to how a consumer would look to the packaging of both wrenches and have no confusion as to who makes what wrench.



(*Id.* ¶ 10.)

Plaintiff points to the deliberate copying of the design of the Bionic Wrench, as well as similarity in product design, a low price point, and the five previously listed fundamental similarities to support their packaging infringement claim. However, these isolated factors do not overcome the overall difference in appearances of the two packages. *See August Storck K.G. v. Nabisco, Inc.* 59 F.3d 616, 620 (7th Cir. 1995) ("overall appearance is what matters . . . [and] [d]issecting a product or package into components can cause a court to miss an overall similarity.") Further, LoggerHead cannot claim that the product design is part of the packaging design; as previously discussed, the product design is functional and precluded from protection. *See Georgia-Pacific*, 647 F.3d at 731-732. The overall appearance of the packaging design is very different, and there is no likelihood of confusion. *See Top Tobacco*, 509 F.3d at 381 (7th Cir. 2007) ("This case illustrates the power of pictures. One glance is enough to decide . . . .") Defendants' Motion for Summary Judgment [270] is granted as to Count XVI.

## CONCLUSION

Defendants' Motion for Summary Judgment [270] is granted as to Counts XV and XVI.

Judgment is entered in favor of the Defendants on Counts XV and XVI.

Date: _____September 20, 2016_____      /s/ _____

JOHN W. DARRAH
United States District Court Judge