UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGGERHEAD TOOLS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-9033 |
| v. ) | |
| ) | Judge John W. Darrah |
| SEARS HOLDINGS CORPORATION ) | |
| and APEX TOOL GROUP, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff LoggerHead Tools, LLC ("LoggerHead") filed a Second Amended Complaint ("SAC") against Defendants Sears Holdings Corporation ("Sears") and Apex Tool Group, LLC ("Apex") (collectively, the "Defendants"), alleging, *inter alia*, various patent and trademark violations associated with United States Patents No. 6,889,579 (the "'579 Patent") and No. 7,992,470 (the "'470 Patent"). Plaintiff has filed a Motion to Exclude Dr. Frank Fronczak's Opinions on Willful Infringement and Obviousness [279]. For the reasons set for more fully below, Plaintiff's Motion [279] is granted in part and denied in part.

BACKGROUND

Dan Brown was awarded the '579 Patent in 2005 and the '470 Patent in 2011 and is the founder and President of LoggerHead. (SAC, ¶¶ 10, 11, 13.) Brown founded LoggerHead in 2005 and began selling the Bionic Wrench. (*Id.* at ¶ 17.) In 2009, Sears placed an order for 15,000 Bionic Wrench units for sale over the Christmas season. (*Id.* at ¶ 38.) In 2010, Sears ordered 75,000 Bionic Wrench units. (*Id.* at ¶ 39.) Sears and LoggerHead entered into a one-year supply agreement, which had an effective start date of February 1, 2011, and expired February 1, 2012. (*Id.* at ¶ 40.) Sears represented that they would purchase more Bionic Wrench

units in 2012. (*Id.* at ¶ 47.) In September 2012, Sears announced the "Max Axess Locking Wrench" ("MALW") and began retailing the MALW in their stores. (*Id.* at ¶ 62.) Defendants submitted an expert report by Dr. Frank Fronczak, who is an expert in the field of mechanical engineering design, on the invalidity of the patents at issue.

## LEGAL STANDARD

Under the Federal Rule of Evidence 702, trial courts must determine, as a precondition to admissibility, whether expert evidence rests on a reliable foundation and is relevant. *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). "Expert testimony is admissible when the testimony is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue in a case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702; *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993)). The party seeking to introduce expert testimony bears the burden of demonstrating that the proposed testimony satisfies this standard by a preponderance of the evidence. *Id.* However, "the rule on expert testimony [is] notably liberal." *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 298 (7th Cir. 1990).

## ANALYSIS

In assessing the admissibility of proposed expert testimony, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. A court must "make the following inquiries before admitting expert testimony: first, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and

methods to the facts of the case." *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013). There is no bright-line reliability test, and the reliability inquiry should be "flexible." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 139 (1999).

*Willfulness*

Plaintiff first seeks to exclude Dr. Fronczak's expert opinions regarding willfulness as it is not relevant, and Dr. Fronczak has no particular expertise in this area. In patent cases, willfulness must be proven by clear and convincing evidence. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1440 (Fed. Cir. 1988). The Supreme Court has recently held that, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). The Supreme Court instructed that "courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Id.* Enhanced damages based on willfulness "should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1934.

"[E]xpert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person." *Davis v. Duran*, 276 F.R.D. 227, 231 (N.D. Ill. 2011). "Unless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting undue influence on the jury . . . ." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996). "[E]xpert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." *Aponte v. City of Chicago*, No. 09 C 8082,

2011 WL 1838773, at *2 (N.D.Ill. May 12, 2011). Here, Dr. Fronczak's testimony on willfulness is not helpful to the jury, as it does not concern a matter beyond the understanding of the average person. There is no reason why the finder of fact could not evaluate any evidence and decide whether Defendants' conduct was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or − indeed − characteristic of a pirate." *Halo Elecs., Inc.*, 136 S. Ct. at 1932. Because Dr. Fronczak's opinion on whether Defendants' conduct was willful would not assist the trier of fact, it is not relevant.[1] Further, there is no reason to believe that Dr. Fronczak has any particular qualifications above and beyond that of a layperson to determine the state of mind of another.

Defendants argue that Dr. Fronczak's opinion is a direct rebuttal to Plaintiff's own expert witness's opinions on willfulness. No expert witness should opine on willfulness. Whether or not Sears and Apex's actions constituted willful infringement and what weight should be given to outside counsel's opinions on infringement is the province of the fact finder. Plaintiff's Motion to Exclude [279] is granted as to any opinions or testimony on willfulness.

*Obviousness*

Plaintiff also argues that Dr. Fronczak's opinions on obviousness are not proper. Specifically, Plaintiff argues that Dr. Fronczak did not conduct a legally sufficient obviousness analysis. "A party seeking to invalidate a patent as obvious must demonstrate by clear and

---

[1] Defendants argue that "standards of commerce" should guide the analysis of the subjective prong for willfulness. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1385 (Fed. Cir. 2007) *abrogated by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) ("The standards of behavior by which a possible infringer evaluates adverse patents should be the standards of fair commerce, including reasonableness of the actions taken in the particular circumstances."). However, it was precisely these types of objective measures that the Supreme Court overturned in *Halo*. *See Halo Elecs.*, 136 S. Ct. at 1932 ("… it is not clear why an independent showing of objective recklessness − by clear and convincing evidence, no less − should be a prerequisite to enhanced damages.").

4

convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068-69 (Fed. Cir. 2012) (internal citations and quotations omitted). The mere fact that an invention is "a combination of elements that were known in the art at the time of the invention" is not enough for obviousness. *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999). "The question is not whether the combination was obvious to the patentee but whether the combination was obvious to a person with ordinary skill in the art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007). Additionally, it is important "to guard against slipping into use of hindsight, . . . , and to resist the temptation to read into the prior art the teachings of the invention in issue." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 36 (1966) (internal quotation and citation omitted).

Plaintiff argues that Dr. Fronczak had to engage in an element-by-element comparison to determine obviousness. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436 (D. Del. 2004) ("The second step in evaluating the validity of a patent is to perform an element-by-element comparison of each claim to each prior reference.") However, the Supreme Court has cautioned that "the overall obviousness inquiry must be expansive and flexible." *In re Cyclobenzaprine*, 676 F.3d at 1069 (citing *KSR*, 550 U.S. at 415, 419). Nevertheless, Dr. Fronczak went through each claim and discussed specific references in the prior art. For each, Dr. Fronczak states that certain elements of any of several referenced patents could be combined to create elements of the patents at issue.

5

Plaintiff further argues that Dr. Fronczak did not give a reason for combining prior art references. "A reason for combining disparate prior art references is a critical component of an obviousness analysis; 'this analysis should be made explicit'." *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1351 (Fed. Cir. 2014) (quoting *KSR*, 550 U.S. at 418). Dr. Fronczak analyzed the obviousness of each asserted claim of the '579 patent and gave a reason for combining the disparate prior art:

> Adjustable gripping tool ('579 Patent - Claim 1): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference at least because they are from the same field." (Fronczak Rpt., ¶ 117.)
>
> Angular movement ('579 Patent - Claim 1): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because connecting a first and second element for relative angular movement helps facilitate actuation in hand tools." (Fronczak Rpt., ¶ 126.)
>
> First element including a guide to direct the gripping elements ('579 Patent - Claim 1): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because there are benefits to passing a workpiece through a central opening to engage it from various points." (Fronczak Rpt., ¶ 134.)
>
> Gripping element ('579 Patent - Claim 1): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because using gripping elements configured to be driven towards a workpiece facilitates adjustability, thereby allowing the tool to be used on workpieces of various sizes." (Fronczak Rpt., ¶ 144.)
>
> Actuation portion ('579 Patent - Claim 1): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because there are benefits to passing a workpiece through a central opening to engage it from various points and using gripping elements configured to be driven towards a workpiece facilitates adjustability, thereby allowing the tool to be used on workpieces of various sizes." (Fronczak Rpt., ¶ 152.)

Lock mechanism ('579 Patent - Claim 2): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because employing a locking mechanism that fixes the sizing of the tool in place facilitates easier use (such as when turning a bolt), as the user does not need to both maintain pressure to keep the tool engaged on the workpiece while applying work to it (*e.g.*, turning a nut, securing a connection with a crimper, etc.)." (Fronczak Rpt., ¶ 160.)

Plurality of studs ('579 Patent - Claim 6): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because studs help secure the components of the tool." (Fronczak Rpt., ¶ 166.)

Circumferentially engage ('579 Patent - Claim 9): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because engaging the workpiece from points about the tool's circumference facilitate contact with the workpiece at various points to distribute force." (Fronczak Rpt., ¶ 173.)

Plurality of gripping elements ('579 Patent - Claim 11): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because engaging the workpiece from points about the tool's circumference facilitate contact with the workpiece at various points to distribute force." (Fronczak Rpt., ¶ 181.)

Adjustable gripping tool ('579 Patent - Claim 16): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference at least because they are from the same field."

Angular movement ('579 Patent - Claim 16): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because connecting a first and second element for relative angular movement helps facilitate actuation in hand tools." (Fronczak Rpt., ¶ 198.)

First element including a guide to direct the gripping elements ('579 Patent - Claim 16): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because there are benefits to passing a workpiece through a central opening to engage it from various points." (Fronczak Rpt., ¶ 206.)

Gripping element ('579 Patent - Claim 16): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because using gripping elements configured to be driven towards a workpiece facilitates adjustability, thereby allowing the tool to be used on workpieces of various sizes." (Fronczak Rpt., ¶ 216.)

Actuation portion ('579 Patent - Claim 16): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because there are benefits to passing a workpiece through a central opening to engage it from various points and using gripping elements configured to be driven towards a workpiece facilitates adjustability, thereby allowing the tool to be used on workpieces of various sizes." (Fronczak Rpt., ¶ 224.)

Curvilinear ('579 Patent - Claim 16): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference because they are from the same field." (Fronczak Rpt., ¶ 228.)

Plurality of guides ('579 Patent - Claim 17): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because there are benefits to configuring a tool to engage a workpiece from various points, which multiple guides facilitate since they direct the corresponding gripping elements." (Fronczak Rpt., ¶ 236.)

Radial guide ('579 Patent - Claim 18): "One of skill in the art would have had reason or motivation to combine a primary reference with the applicable secondary reference not only because they are from the same field, but also because there are benefits to passing a workpiece through a central opening to engage it from various points, which is facilitated by radial guides." (Fronczak Rpt., ¶ 244.)

Similar explanations are given for the elements of the '470 Patent. *See* (Fronczak Rpt., ¶¶ 252, 261, 269, 280, 287, 293, 297, 305, 312, 316, 323.) Dr. Fronczak's reason or motivation for combining elements are explicitly stated for each asserted claim.[2]

---

[2] To the extent that the reason or motivation is simply that the prior art is in the same field, that is not a sufficient reason as it lacks any analysis as to the benefits of combining prior art.

To the extent that Plaintiff is arguing that Dr. Fronczak's analysis focuses on the specific elements in hindsight rather than the totality of the circumstances, that argument goes to weight, not admissibility. *See Davis v. Duran*, 277 F.R.D. 362, 366 (N.D. Ill. 2011) ("Vigorous cross examination, presentation of contrary evidence and careful jury instructions, . . . , are the traditional and appropriate means of attacking shaky but admissible evidence."). Plaintiff's Motion to Exclude [279] is denied as to Dr. Fronczak's obviousness analysis.

## **CONCLUSION**

Plaintiff's Motion to Exclude Dr. Frank Fronczak's Opinions on Willful Infringement and Obviousness [279] is granted in part and denied in part.

Date:     September 20, 2016         /s/ _____
                                         JOHN W. DARRAH
                                         United States District Court Judge