**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LOGGERHEAD TOOLS, LLC,    )
    )
    )
    Plaintiff,    )
    )   Case No. 1:12-cv-09033
    )
    v.    )
    )   Hon. Judge Rebecca R. Pallmeyer
    )
SEARS HOLDING CORPORATION and    )
APEX TOOL GROUP, LLC,    )   JURY TRIAL DEMANDED
    )
    Defendants.    )
    )

**DEFENDANTS' APEX AND SEARS' MOTION
FOR JUDGMENT AS A MATTER OF LAW ON DAMAGES,
FOR REMITTITUR, OR FOR A NEW TRIAL ON DAMAGES**

# TABLE OF CONTENTS

**Page**

I.     **BACKGROUND** ........................................................................................................ **3**

       A.     Mr. Bokhart's Expert Report Relied On Unsupportable Theories To Increase His Damages Opinion Above LoggerHead's Maximum Lost Profits. ........................................................................................................ 3

       B.     The Court Excluded Substantial Portions Of Mr. Bokhart's Opinion. ................... 5

       C.     Damages-Related Motion *In Limine* And Pre-Trial Hearing Matters. ................... 8

       D.     Damages-Related Trial Testimony And Argument. ............................................... 9

II.     **LEGAL STANDARD** .......................................................................................... **10**

III.     **JUDGMENT AS A MATTER OF LAW ON DAMAGES IS WARRANTED.** ........ **12**

IV.     **ALTERNATIVELY, THE COURT SHOULD REMIT THE DAMAGES AWARD.** .............................................................................................................. **15**

V.     **AT A MINIMUM, A NEW TRIAL ON DAMAGES IS WARRANTED.** ................. **20**

VI.     **CONCLUSION** ..................................................................................................... **20**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
    377 U.S. 476 (1964) ............................................................................ 10, 16

*Asetek Danmark A/S v. CMI USA Inc.,*
    852 F.3d 1352 (Fed. Cir. 2017) ......................................................... 2, 13, 17

*Baier v. Rorh-Mont Motors, Inc.,*
    175 F. Supp. 3d 1000 (N.D. Ill. 2016) .............................................. 15, 16

*DeBiasio v. Ill. Cent. R.R.,*
    52 F.3d 678 (7th Cir. 1995) ................................................................... 12

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.,*
    394 F.3d 1368 (Fed. Cir. 2005) ............................................................ 14

*Glenayre Electronics, Inc. v. Jackson,*
    Case No. 02-C-0256, 2003 WL 21639116 (N.D. Ill. July 9, 2003) ......................... 20

*Liu v. Price Waterhouse LLP,*
    302 F.3d 749 (7th Cir. 2002) ............................................................ 12, 16

*Lucent Techs., Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009) ..................................................... passim

*Mathur v. Board of Trustees of S. Ill. Univ.,*
    207 F.3d 938 (7th Cir. 2000) ................................................................. 11

*Oiness v. Walgreen Co.,*
    88 F.3d 1025 (Fed. Cir. 1996) .............................................. 11, 12, 16, 20

*Pall Corp. v. Micron Separations, Inc.,*
    66 F.3d 1211 (Fed. Cir. 1995) .............................................. 1, 11, 16

*Ramsey v. American Air Filter Co., Inc.,*
    772 F.2d 1303 (7th Cir. 1985) ............................................................... 16

*ResQNet.com, Inc. v. Lansa, Inc.,*
    594 F.3d 860 (Fed. Cir. 2010) ............................................................. 19

*Rite-Hite Corp. v. Kelley Co., Inc.,*
    56 F.3d 1538 (Fed. Cir. 1995) ............................................................. 11

*Scaggs v. Consolidated Rail Corp.*,
6 F.3d 1290 (7th Cir. 1993) ................................................................ 12

*Thomas v. Stalter*,
20 F.3d 298 (7th Cir. 1994) ................................................................ 12

*Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*,
69 F.3d 512 (Fed. Cir. 1995) ................................................ 13, 15, 18, 19

*Virnetx, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ............................................................ 14

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ................................................ 14, 15, 19

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ............................................................ 11

*Yale Lock Mfg. Co. v. Sargent*,
117 U.S. 536 (1886) ............................................................................ 11

**Statutes**

35 U.S.C. § 284 ................................................................ 1, 11, 19

**Rules**

Fed. R. Civ. P. 50(a) ................................................ 11, 12, 14

The jury's damages verdict in this case is excessive, has no rational connection to the evidence, and—as a matter of law—is not supported by any patent damages theory permitted under Federal Circuit precedent. Defendants Apex and Sears respectfully request judgment as a matter of law under Federal Rule of Civil Procedure 50(b) to reduce the damages to an amount that is supported by the law and evidence. In the alternative, Defendants respectfully request remittitur or a new trial on damages pursuant to Federal Rule of Civil Procedure 59.

Damages in a patent case are intended—and constrained under the law—to reasonably compensate a patent owner for infringement. 35 U.S.C. § 284; *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1223 (Fed. Cir. 1995). In this case, however, LoggerHead sought at every turn to urge a damages award that would not merely compensate it for infringement, but would instead punish Defendants and grant LoggerHead a windfall. Defendants won a *Daubert* motion against LoggerHead's damages expert Christopher Bokhart that prohibited him from relying on unsupportable theories to justify an inflated royalty rate, yet LoggerHead still advocated for, and the jury awarded, damages ***in excess*** of the royalty rate LoggerHead unsuccessfully attempted to justify in its *Daubert* opposition. Indeed, the jury's award exceeds even the highest numbers put forth by Mr. Bokhart at trial. LoggerHead's inciting of the jury to go beyond even the (unsupported) opinions of its own damages expert and make "a statement that this is wrong," Tr. 374,[1] led the jury to an irrational damages award that is disconnected from the evidence and governing case law, and which cannot stand.

To put the jury's excessive award in some context, it is approximately 250% higher than LoggerHead's own calculation of the total lost profits on lost sales it allegedly suffered. Patentees that sell their own products typically hope to obtain a damages award accounting for

---

[1] Citations to "Tr." refer to the trial transcript, the cited excerpts of which are attached at Appendix 1.

100% of their lost profits, which is viewed as the best means by which the patentee can be made whole. *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1363 (Fed. Cir. 2017). To this end, Mr. Bokhart calculated that "but for" infringement, LoggerHead would have earned profits of $2.88 per 6-inch wrench and $3.22 per 8-inch wrench for every wrench sold by Defendants. These profit calculations were premised on the most pro-LoggerHead assumptions possible: that LoggerHead would have replaced every single MALW sale with a Bionic Wrench sale (totaling several hundred thousand wrenches), and would have made each of those sales at the maximum profit margin it ever obtained (charging prices 55% higher than its "prosperous" 2011 price). An award based on these best-case assumptions would thus have made LoggerHead whole by placing it in the best financial position it would have been in if the MALW had never come on the market, and is the highest rational award a reasonable jury could or should have found.

Not satisfied, LoggerHead sought a royalty significantly in excess of this amount. In his expert report, Mr. Bokhart opined that there were "other lost profits"—lost sales to third parties, price erosion, increased manufacturing costs, and loss of goodwill—that he could not calculate, but which nevertheless could be relied on to justify a higher royalty. In its opposition to Defendants' *Daubert* motion, LoggerHead identified the specific amount that each of these "other lost profits" contributed to increase the royalty from Mr. Bokhart's maximum hypothetical per-unit lost profits calculation to a royalty of $5 per 6-inch wrench and $6 per 8-inch wrench. The Court, however, properly granted Defendants' *Daubert* motion and prohibited LoggerHead from relying on these "other lost profits" to contribute to its royalty calculation.

Despite the Court's *Daubert* ruling, LoggerHead persisted as if nothing had changed, presenting royalty numbers at trial that were virtually unaltered from those it unsuccessfully sought to justify in its *Daubert* opposition, but without the now-stricken support that had

supposedly justified those numbers in the first place. LoggerHead even published a demonstrative to the jury that contained a calculation based on royalties of a dollar per unit more than it had previously tried to justify. Compounding these errors, LoggerHead then invited the jury to go beyond even the unsupported calculations of Mr. Bokhart and award damages based on the emotionally charged testimony of Mr. Brown. But Mr. Brown's brief testimony about what he would have demanded if "forced to license" to a "Chinese manufacturer" as an *unwilling* licensor cannot provide the basis for a reasonable royalty damages calculation that must assume a "willing licensor" engages in the hypothetical negotiation (uninfluenced by the jingoistic feelings espoused by Mr. Brown).

The jury's damages verdict equated to a royalty of $7 per 6-inch wrench and $8 per 8-inch wrench, apparently splitting the difference between Mr. Bokhart's unjustified highest royalty and Mr. Brown's unreliable testimony. LoggerHead's presentation of its damages case made a mockery of the *Daubert* process and Federal Circuit precedent on the appropriate means of calculating patent damages. Ultimately, a damages award must be based on both reliable evidence and a theory supportable under established case law. The jury's damages award satisfied neither requirement. The Court should grant either judgment as a matter of law or remittitur to reduce the damages award to an amount that finds support in the evidence and law.

## I. BACKGROUND

### A. Mr. Bokhart's Expert Report Relied On Unsupportable Theories To Increase His Damages Opinion Above LoggerHead's Maximum Lost Profits.

In his report, LoggerHead's expert Mr. Bokhart calculated the profits LoggerHead would have earned each year "but for" the alleged patent infringement. Dkt. 269, Ex. 1 (Bokhart Rpt.) ¶¶ 120-46. He built this calculation based on the assumption that LoggerHead would have sold one of its Bionic Wrenches for every single MALW ever sold, and that each of those Bionic

Wrench sales would have been made at the maximum price LoggerHead started charging Sears in February 2012 (which was 55% higher than the effective 2011 price), to arrive at a "gross revenue" figure. *Id*. ¶¶ 133-34. After determining the costs LoggerHead would have incurred to sell these additional Bionic Wrenches, Mr. Bokhart arrived at an incremental profitability percentage, which he multiplied by his calculation of LoggerHead's lost net revenue to arrive at a "lost profits" figure. *Id*. ¶¶ 135-45. Dividing the yearly "lost profits" by the number of MALW sold each year gave Mr. Bokhart "lost profits" on a per-unit, per-year basis ranging from $2.16 to $2.88 for the 6-inch wrench and $2.43 to $3.22 for the 8-inch wrench. *Id*. ¶¶ 145-46.

These "lost profits" reflect the position LoggerHead would have been in "but for" the introduction of the MALW to the market. Apparently unhappy with these "lost profits" damages, however, Mr. Bokhart opted to calculate damages in the form of a reasonable royalty "because of difficulties in quantifying the magnitude" of LoggerHead's alleged losses due to "other lost profits"—lost sales to third parties, price erosion, excess manufacturing costs, and loss of goodwill. *Id*. ¶ 46. Mr. Bokhart discussed each of these categories of "other lost profits" in his report, but admitted that he was "unable to calculate the amount of damage to a reasonable probability" for any of these categories. *Id*. ¶¶ 147-58. Mr. Bokhart opined that, in a hypothetical negotiation, LoggerHead would be unwilling to accept a royalty of less than the profits it could expect to make if it did not grant a license, and therefore the lower bound[2] of the range in which the parties would be negotiating a reasonable royalty would be "greater than"

---

[2] This "lower bound" used the inflated profit margin that LoggerHead only achieved after its February 2012 price increase, which it imposed as a posture when negotiating a deal with Sears. Ex. A, DTX 177; Tr. 404 (Mr. Brown acknowledging price increase was part of negotiation and "we negotiated from our standard price back down"). Sears was "very shocked" by this increase, and it made no "business or financial sense" to buy significant quantities from LoggerHead at the inflated price. Tr. 714-15. Indeed, LoggerHead itself had offered much better pricing (and thus lower profit margins for LoggerHead) only days before, on terms Sears refused. Ex. B, DTX 173. Thus, Mr. Bokhart's assumption that the inflated profit margin would apply across all sales is dubious at best.

$2.88 per 6-inch unit and $3.22 per 8-inch unit, to account for the "other lost profits" he alleged could not be quantified.  Dkt. 269, Ex. 1 (Bokhart Rpt.) ¶¶ 58, 62.

However, Mr. Bokhart did not only account for the "other lost profits" by placing the lower bound of the royalty range as "greater than" his calculated maximum hypothetical per-unit lost profits.  He also identified lost sales to third parties, price erosion, excess manufacturing costs, and loss of goodwill as factors that would have led the parties to agree to a royalty rate higher than this lower bound.  *Id.* ¶ 100.  Mr. Bokhart concluded that, in his opinion, "[t]he appropriate reasonable royalty that the parties would have agreed to would be, at a minimum, $5 per unit for the 6-inch wrench and $6 per unit for the 8-inch wrench." *Id.* ¶ 101.  Although he qualified his opinion as being "at a minimum," Mr. Bokhart did not identify any other reasonable royalty to which the parties would have agreed.  At Exhibit 4.1 to his report, Mr. Bokhart provided the raw math applying royalty rates of $6-11 for the 6-inch wrench and $7-12 for the 8-inch wrench to the total royalty base, but he never cited Exhibit 4.1 in his report proper, let alone explained or attempted to justify the royalties presented therein.  *Id.* Ex. 4.1.

At his deposition, Mr. Bokhart testified the "other lost profits" would "have an upward effect on the negotiation for a reasonable royalty rate" to justify a royalty greater than LoggerHead's total lost profits on lost sales.  Ex. C (Bokhart Dep.) 46-47; *see also id.* 40-42, 52-54, 176-77.  Mr. Bokhart also testified that he would be presenting LoggerHead's damages to the jury in the form of a reasonable royalty negotiated in a hypothetical negotiation, and that the highest specific royalty he would present to the jury would be $5 per 6-inch wrench and $6 per 8-inch wrench.  *Id.* 167-74.

### B.    The Court Excluded Substantial Portions Of Mr. Bokhart's Opinion.

Defendants moved under *Daubert* to exclude Mr. Bokhart's reasonable royalty opinions, including his opinion that LoggerHead's alleged lost sales, price erosion, excess manufacturing

costs, and loss of goodwill would increase the reasonable royalty to which the parties would have agreed at a hypothetical negotiation. For purposes of the motion, Defendants did not dispute Mr. Bokhart's calculation of per-unit lost profits of $2.88 per 6-inch wrench and $3.22 per 8-inch wrench.[3] Dkt. 269 at 3. They only challenged Mr. Bokhart's opinions regarding the "other lost profits," arguing "Mr. Bokhart provides no reasoning or analysis to explain how these additional forms of unquantified purported lost profits justify doubling the per-unit lost-profit figures." *Id.* at 4. Defendants set forth how each of these categories of purported lost profits were unsupported, and in some instances contradicted, by Mr. Bokhart's analysis. *Id.* at 6-8.

In its opposition, LoggerHead noted that Mr. Bokhart's $2.88 per 6-inch wrench and $3.22 per 8-inch wrench "lost profits" calculation accounts "for the majority" of his minimum reasonable royalty. Dkt. 300 at 2. "The remaining reasonable royalty damages arise from the sum of other factors Mr. Bokhart considered, including price erosion, manufacturing costs, and diminution of goodwill." *Id*. After arguing that Mr. Bokhart's opinion regarding these other factors was reliable, *id.* at 3-6, LoggerHead proceeded to place dollar values on each factor:



---

3   That calculation suffers from several flaws, such as assuming that LoggerHead would have sold a Bionic Wrench for each MALW sold, despite other features of the MALW that may have driven demand, and assuming that LoggerHead would have sold its Bionic Wrench at the maximum price it charged for a Bionic Wrench, when that price reflected a 55% increase over the 2011 price.

*Id.* at 9-10 (annotations added).  In other words, LoggerHead did not merely provide an example of how the "other lost profits" could have resulted in a $5 per 6-inch wrench and $6 per 8-inch wrench reasonable royalty, but calculated specific amounts attributable to those "other lost profits," based on information in Mr. Bokhart's report about changes to LoggerHead's manufacturing costs and retail pricing after the alleged infringement began:

|   |   | 6-Inch | 8-Inch |
|---|---|---|---|
| 1 | Lost Sales/Lost Profits | $2.88 | $3.22 |
| 2 | Manufacturing Costs | $0.37 | $0.42 |
| 3 | Price Erosion | $1.57 | $1.75 |
| 4 | Lost Third-Party Sales and Good Will | $0.18 | $0.61 |
|   | **Total** | **$5.00/unit** | **$6.00/unit** |

LoggerHead did not attempt to justify (or even identify) any reasonable royalties other than $5 per 6-inch wrench and $6 per 8-inch wrench, which it described as Mr. Bokhart's "reasonably certain" analysis of damages.  *Id.* at 9.

The Court's *Daubert* order precluded Mr. Bokhart from relying on "other lost profits" as a means to justify an increased royalty rate.  Dkt. 373.  The Court understood Mr. Bokhart's opinion to be that the parties would have agreed to reasonable royalties of $5 per 6-inch wrench and $6 per 8-inch wrench, and that those royalties were based on the "contested factors."  *Id.* at 5.  But the Court went on to exclude reliance on many of these factors.  The Court held that Mr. Bokhart "cannot include" increased manufacturing costs or loss of goodwill "in his reasonable royalty analysis."  *Id.* at 6-8.  With regard to price erosion, the Court held that "using price erosion to add a quantitative amount to the reasonable royalty is impermissible."  *Id.* at 7.  Based on the figures ***presented by LoggerHead*** in its *Daubert* opposition, the remaining evidence after excluding the now-stricken "other lost profits" should have left LoggerHead to seek royalties of $2.88 per 6-inch wrench and $3.22 per 8-inch wrench.

| | 6-Inch | 8-Inch |
|---|---|---|
| ① Lost Sales/Lost Profits | $2.88 | $3.22 |
| ② Manufacturing Costs | ✕ | ✕ |
| ③ Price Erosion | ✕ | ✕ |
| ④ Lost Third-Party Sales and Good Will | ✕ | ✕ |
| **Total** | $2.88 + ✕/unit | $3.22 + ✕/unit |

## C. Damages-Related Motion *In Limine* And Pre-Trial Hearing Matters.

Defendants moved *in limine* to enforce the *Daubert* order, to ensure that the damages numbers LoggerHead presented to the jury appropriately accounted for the exclusion of the now-stricken "other lost profits" categories. Dkt. 404 at 6-10. LoggerHead argued in response to Defendants' motion that Mr. Bokhart's excluded opinions were discussed "only in the context" of why lost profits are not an appropriate measure of damages. Dkt. 415 at 10. Therefore, according to LoggerHead, their exclusion did not change Mr. Bokhart's reasonable royalty opinion "because they were never part of that analysis to begin with." *Id*. LoggerHead's arguments were directly contrary to Mr. Bokhart's report, deposition testimony, and LoggerHead's previous arguments in opposition to the *Daubert* motion.

During argument on the motion *in limine,* the Court asked whether LoggerHead was withdrawing the assertions in its *Daubert* opposition that the excluded "other lost profits" categories factored into Mr. Bokhart's reasonable royalty opinions, but LoggerHead would not confirm that it was doing so. Ex. D, 4/11/17 Hearing Tr. 82-84. The Court agreed with Defendants that "this is really problematic":

> You are right that you could say, look, we don't know precisely it was 37 cents, 42 cents, whatever. But these are ballpark figures that factor into a determination that a royalty of $5 or $6 is about right. I am looking at it. I can't read it any other way.
>
> Now, you are right that that's not the way the witness necessarily testifies, but it just seems like it's a meaningless victory for the defendants to have argued that these factors are not properly considered and have gotten a judge to say, you're right; and then for the plaintiffs to

come back and say, well, it doesn't make any difference, because the number is going to be the same. We don't care how it's calculated. There are other ways it could have been calculated. There are other considerations and factors that would go into this.

What was the point of this whole exercise at the *Daubert* stage if not to say, no, you are not going to be able to recover a reasonable royalty that's predicated on a number of factors that the judge says are not factors?

*Id.* 88-89. The Court continued to say that to leave Mr. Bokhart's opinion unmodified "is to make a mockery of the *Daubert* process," so it was taking LoggerHead "at its word" in its *Daubert* briefing as to how the excluded "other lost profits" accounted for a $5 per 6-inch wrench and $6 per 8-inch wrench reasonable royalty. *Id.* 96. The Court granted Defendants's motion *in limine*, and held "Mr. Bokhart will not be permitted to offer a royalty calculation that ignores or minimizes the impact of Judge Darrah's Daubert ruling." Dkt. 419 at 2.

### D. Damages-Related Trial Testimony And Argument.

LoggerHead's first witness at trial was the inventor of the patents-in-suit and President of LoggerHead, Dan Brown. Tr. 284. When asked if he would have licensed his patents to Sears or Apex in 2012, the date of the hypothetical negotiation, Mr. Brown responded "never." Tr. 365. However, if "forced to license" his patents, in particular for a product that was manufactured in China, Mr. Brown testified he would have charged "8 or 9, $10.00" per wrench. Tr. 366-67. Counsel for LoggerHead reminded the jury in closing that Mr. Brown would "hold out for something between 8 and 10" if forced to license his patents. Tr. 1398; *see also* Tr. 1446-48.

At trial, Mr. Bokhart testified that to determine a reasonable royalty, one determines the royalty range in which the parties would negotiate, and conducts a hypothetical negotiation to find the royalty to which the parties would agree. Tr. 594. He testified that he determined the floor of the range by considering the ways LoggerHead has been harmed, which include its lost profits, price erosion, and the loss of sales to other customers, because LoggerHead would not

agree to a royalty that would "make him any worse off than what he would be had Sears and Apex never introduced the product." Tr. 598-99. Mr. Bokhart then explained his calculation of LoggerHead's "lost profits per unit." Tr. 607-11. Mr. Bokhart's ultimate conclusion was that, "at a minimum," the parties would have agreed to a royalty of "a bit less than $5 a unit" for the 6-inch wrench and "a bit less than $6 for the 8-inch wrench." Tr. 627.

Defendants objected to Mr. Bokhart's demonstrative slide 34, and his testimony generally, as being contrary to the Court's *Daubert* ruling. Tr. 627-28. Over that objection, Mr. Bokhart presented demonstrative slide 34, which illustrated his calculations of damages at reasonable royalty rates of $4-6 per 6-inch wrench and $5-7 per 8-inch wrench. Tr. 627-28. Mr. Bokhart quantified the "a bit less than" of his reasonable royalty opinion as being no more than 10% less, leading to damages "in the neighborhood" of $4.0-4.1 million. Tr. 628-29. LoggerHead's counsel attempted to elicit testimony from Mr. Bokhart regarding the royalty Mr. Brown "would require if he was forced to license his patents," but an objection to that testimony was sustained, with the Court noting Mr. Brown's testimony was that "I wasn't going to license—you know, there is no amount of money you could pay me for this. That's essentially what he was saying, which is silly." Tr. 630. In closing, LoggerHead's counsel argued that damages "would be around 4.1, 4.2 million, if you come out exactly with Mr. Bokhart," but then further invited the jury to consider Mr. Brown's testimony. Tr. 1447-48.

The jury returned a verdict in favor of LoggerHead, awarding $5,979,616 in damages, which corresponds to a royalty rate of $7 per 6-inch wrench and $8 per 8-inch wrench. Dkt. 448.

## II.    LEGAL STANDARD

"The question to be asked in determining damages is ... 'had the Infringer not infringed, what would the Patent Holder-Licensee have made?'" *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (citations omitted). "[A]warding damages through

litigation attempts to assess 'the difference between [the patentee's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (quoting *Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536, 552 (1886)). Compensatory damages are to compensate the patentee for the infringement—to make the patentee whole—not to punish the infringer or grant the patentee a windfall. 35 U.S.C. § 284; *Pall*, 66 F.3d at 1223.

"The burden of proving damages falls on the patentee." *Lucent*, 580 F.3d at 1324. Patentees may be compensated based on either their lost profits or a reasonable royalty on infringing sales. *Id.* Lost profits are generally calculated based on the sales and profits the patentee would have made "but for" infringement. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The most common approach for determining a reasonable royalty is to determine what royalty rate a willing licensor and a willing licensee would have agreed to in a hypothetical negotiation occurring just before infringement began. *Lucent*, 580 F.3d at 1324.

Regional circuit law applies to procedural issues in patent cases involving damages, while Federal Circuit law applies to substantive and procedural issues pertaining to patent law. *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1318 (Fed. Cir. 2010). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). To make this determination, the trial court reviews whether the evidence presented, along with reasonable inferences permissibly drawn from that evidence, is sufficient to support the verdict. *Mathur v. Board of Trustees of S. Ill. Univ.*, 207 F.3d 938, 941 (7th Cir. 2000); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996).

Remittitur is appropriate when the award is excessive or "has 'no rational connection to the evidence.'" *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 756 (7th Cir. 2002) (quoting *DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 678, 687 (7th Cir. 1995)); *see also Oiness*, 88 F.3d at 1028. This Court may alternatively grant a new trial when "the clear weight of the evidence is against the jury verdict, the damages are excessive, or for some other reason the trial was not fair to the moving party." *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir. 1993). "In deciding whether to order a new trial, [the district court is] entitled to weigh the evidence for itself. In weighing the evidence, the court may assess the witnesses' credibility." *Thomas v. Stalter*, 20 F.3d 298, 304 (7th Cir. 1994); *see also Oiness*, 88 F.3d at 1028 (when considering a motion for remittitur or new trial, "a trial court must review the record to determine whether the jury's verdict contravenes the clear or great weight of the evidence.") (internal citation omitted).

## III. JUDGMENT AS A MATTER OF LAW ON DAMAGES IS WARRANTED.

No reasonable jury could have arrived at the nearly $6 million damages verdict in this case because there is not a legally sufficient evidentiary basis for that damages number. *See* Fed. R. Civ. P. 50(a). Therefore, this Court should grant judgment as a matter of law in favor of Defendants with regard to damages.

The totality of the evidence demonstrates that there was not a legally sufficient evidentiary basis for the jury to award a reasonable royalty **greater** than Mr. Bokhart's calculation of LoggerHead's maximum hypothetical lost profits on lost sales. The Court need look no further than LoggerHead's own *Daubert* opposition brief, Dkt. 300, to see that the Court's *Daubert* ruling left no "legally sufficient basis" for a royalty higher than that amount. Dkt. 373. In its *Daubert* opposition, LoggerHead walked through the categories of "other lost profits" and specifically quantified how each category justified increasing the reasonable royalty. Dkt. 300 at 9-10. When the Court precluded LoggerHead from relying on certain of those "other

lost profits" to boost the royalty calculation, it follows that LoggerHead no longer had a legally sufficient basis to seek a reasonable royalty that relied on those excluded "other lost profits." *See Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 518 (Fed. Cir. 1995) ("testimony based on the excluded [] theory was irrelevant and cannot support the jury's verdict").

Defendants are not arguing that a patent owner's actual lost profits necessarily serve as a cap on its damages in all cases. But Mr. Bokhart did not calculate LoggerHead's actual lost profits, he calculated the maximum profit margin for LoggerHead at the time of the hypothetical negotiation and then assumed this margin would apply across all sales made by Defendants. This calculation, particularly in light of the Court's *Daubert* ruling, reflects the highest royalty justifiable by the evidence in this case. Not only did the Court exclude the theories Mr. Bokhart relied on to justify a higher royalty, there is no basis in fact or law to grant LoggerHead a reasonable royalty based on an assumption that it would have "held out" for—and Defendants would have agreed to—a royalty that paid LoggerHead more for an infringing sale than it could expect to make if it made that sale itself. *See Asetek*, 852 F.3d at 1363 (patent owner would logically negotiate "for a per-unit payment equal to its per-unit profit," but hypothetical negotiation must also take into account infringer's willingness to pay). As a matter of law, the legally sufficient evidence only justified a damages award corresponding to Mr. Bokhart's calculation of LoggerHead's maximum hypothetical per-unit lost profits—$2.88 per 6-inch wrench and $3.22 per 8-inch wrench. A reasonable jury, relying on legally sufficient evidence, could not have arrived at anything higher.

Even if the Court were to ignore LoggerHead's prior admissions to this Court as to how the "other lost profits," all of which were stricken by the Court's *Daubert* ruling, justified a higher royalty rate, there was certainly no basis for a royalty any higher than what Mr. Bokhart

testified to at trial: "a bit less than" $5 per 6-inch wrench and $6 per 8-inch wrench, or approximately $4.1 million in damages. Tr. 627-629. As LoggerHead's own counsel argued in closing, damages "would be around 4.1, 4.2 million, if you come out exactly with Mr. Bokhart." Tr. 1447. Although these numbers were unsupported and grossly inflated,[4] they provide the absolute ceiling on the award. *See Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) (jury may choose an intermediate royalty between the royalties advocated for by the parties, but the royalty must be within the range encompassed by the record as a whole). Mr. Bokhart himself did not even try to justify a reasonable royalty higher than that.[5]

The only additional evidence presented that the jury could have used to reach its damages verdict was Mr. Brown's testimony, but Mr. Brown's testimony is not a "legally sufficient evidentiary basis" on which to base the jury's damages verdict. *See* Fed. R. Civ. P. 50(a). Quite the opposite—it ignored the construct required for a hypothetical negotiation altogether. The hypothetical negotiation assumes a ***willing*** licensor and a ***willing*** licensee. *Lucent,* 580 F.3d at 1324-25. As the Court itself noted, Mr. Brown's testimony reflected the very definition of an ***unwilling*** licensor. *See* Tr. 630. Mr. Brown testified that he would "never" license his patents, claiming "he wouldn't give somebody a gun to shoot me with in the marketplace," but "if forced to license" to someone manufacturing the product in China, "it's got to be 8 or 9 or $10.00." Tr.

---

[4]    For example, Mr. Bokhart's reasonable royalty analysis failed to apportion the royalty between the infringing features of the MALW and non-patented features, such as those covered by Apex's own patent. Tr. 665-667; *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) ("The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology.").

[5]    The fact Mr. Bokhart qualified his opinion as what the parties would agree to "at a minimum" does not change the analysis. No factual support was presented for any number higher than "a bit less than" $5 per 6-inch wrench and $6 per 8-inch wrench, and the jury's damages award must be with the range encompassed by the record and should be within the range advocated for by the parties. *See Fuji*, 394 F.3d at 1378. Furthermore, Mr. Bokhart's unbounded "at a minimum" testimony encouraged the jury to reach an inappropriate, wholly speculative verdict. *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31-32 (Fed. Cir. 2012).

366-367. Mr. Brown's testimony about the extortionate rate he would have demanded, because he was unwilling to license his patents (in particular to a company that manufactured products in China), cannot form the basis of reasonably royalty calculation. *See Whitserve*, 694 F.3d at 29-30 (evidentiary value of license proposals is limited because "patentees could artificially inflate the royalty rate by making outrageous offers"); *Unisplay,* 69 F.3d at 518-19 (evidence supporting reasonable royalty must reflect what the parties might have agreed to at the hypothetical negotiation, not just what one party would have expected). Additionally, the hypothetical negotiation takes place just before infringement begins. *Lucent*, 580 F.3d at 1324-25. Mr. Brown's testimony now, after more than four years of hard-fought litigation, about what he personally might have accepted in a negotiation five years ago, is purely speculative and legally irrelevant. *See Unisplay,* 69 F.3d at 518 (reasonable royalty determination "must relate to the time infringement occurred, and not be an after-the-fact assessment"). Mr. Brown's testimony is not evidence on which the jury's verdict can be sustained.

In sum, the Court should award judgment as a matter of law with regards to LoggerHead's damages, lowering the award to the maximum amount supported by the facts and applicable law. Defendants respectfully submit that the maximum supportable royalty is $2.88 per 6-inch wrench and $3.22 per 8-inch wrench, because that is the only royalty supported by legally sufficient evidence after the Court's *Daubert* ruling. Based upon the royalty base presented at trial, this royalty calculates to damages of $2,418,261.44. But even if the Court disagrees that LoggerHead's damages expert had no basis for advocating a higher royalty, no jury should have awarded more than the $4.1 million to which LoggerHead's expert testified.

## IV.    ALTERNATIVELY, THE COURT SHOULD REMIT THE DAMAGES AWARD.

"Federal Rule of Civil Procedure 59(e) allows for post-trial motions to alter or amend a judgment, including by way of remittitur." *Baier v. Rorh-Mont Motors, Inc.*, 175 F. Supp. 3d

1000, 1006-07 (N.D. Ill. 2016). Remittitur is appropriate when the damages verdict is excessive or is clearly not supported by the evidence. *Liu*, 302 F.3d at 756; *Oiness*, 88 F.3d at 1028. While deciding a motion for remittitur, this Court "must accord substantial deference to a jury's determination of compensatory damages," but "must also ensure that the award is supported by competent evidence." *Ramsey v. American Air Filter Co., Inc.*, 772 F.2d 1303, 1313 (7th Cir. 1985). "If the Court finds that damages are excessive, the proper remedy is remittitur rather than a new trial." *Baier*, 175 F. Supp. 3d at 1006-07.

The goal of patent damages is to compensate the patentee for the infringement—"not to punish the infringer, but to make the patentee whole." *Pall*, 66 F.3d at 1223. To determine how to make the patentee whole, courts ask what the patentee would have made "but for" the infringement. *Aro*, 377 U.S. at 507; *Lucent*, 580 F.3d at 1324. The jury's damages verdict went well beyond making LoggerHead whole and instead granted it a windfall, significantly exceeding even the highest, inflated rate offered by LoggerHead's damages expert—which was itself 8 to 10 times higher than the typical royalty rate in the hand tool industry.[6] Because the jury's damages verdict in this case was grossly excessive and bore no rational connection to the evidence, remittitur should be granted. *See Liu*, 302 F.3d at 756; *Oiness*, 88 F.3d at 1028.

Mr. Bokhart's calculation of LoggerHead's maximum hypothetical lost profits on lost sales—$2.88 per 6-inch wrench and $3.22 per 8-inch wrench—was his determination of what LoggerHead would have made "but for" Defendants' infringement. It assumed that LoggerHead would have sold one of its Bionic Wrenches for every single MALW ever sold, and that each of those Bionic Wrench sales would have been made at the maximum price LoggerHead started

---

6  Evidence presented at trial established that the average royalty rate in the energy, machines, and tools industry ranged from 4-6%, and that the median royalty rates in the machines and tools industry was 3-4%. Tr. 677-679. In comparison, Mr. Bokhart's reasonable royalty rate opinion was that Defendants would have agreed to a royalty of approximately 30%. Tr. 684.

charging Sears in February 2012, which was 55% higher than the effective 2011 price and even much higher than a price LoggerHead itself offered in 2012. Tr. 607-610; Dkt. 269, Ex. 1 (Bokhart Rpt.) ¶¶ 120-46; Ex. A, DTX 177; Ex. B, DTX 177. This hypothetical lost profits number alone would have made LoggerHead whole—indeed, more than whole, given that it is unlikely LoggerHead would have replaced every single sale or made its maximum profit margin on each sale—and any damages higher than that are excessive. Indeed, in over 100 cases in which he has testified, Mr. Bokhart could not recall a single prior instance in which he opined that reasonable royalty damages should be higher than the total lost profits.[7] Tr. 689. A verdict that is 250% greater than LoggerHead's best-case total lost profits easily qualifies as "monstrously excessive."

To further illustrate how allowing damages in excess of the lost profits is excessive and grants LoggerHead a windfall, consider lost sales to third parties. Mr. Bokhart testified that LoggerHead's loss of sales to third parties justified increasing the reasonable royalty rate upward from LoggerHead's maximum hypothetical per-unit lost profits. Tr. 590-593, 598-599, 610-612. But Mr. Bokhart's lost profits calculation assumes that LoggerHead would have sold a Bionic Wrench to *all* of the customers to whom a MALW was sold. In other words, LoggerHead is being compensated for that third party sale, whether the compensation is made by (1) assuming that it would have made the sale itself (lost profits) or (2) a royalty payment when someone else makes that sale (reasonable royalty). There is no justification to use these "lost sales" to increase the royalty rate *above* what LoggerHead would have earned if it had made the sale itself—to do so goes beyond the law's requirement that damages make LoggerHead whole and grants

---

[7] This is not surprising. Lost profits damages are generally higher than reasonable royalty damages because they do not require "discounting for the rational interests limiting willingness to pay on the infringer's side." *Asetek*, 852 F.3d at 1363.

LoggerHead a windfall. Similarly, Mr. Bokhart testified that the price erosion LoggerHead allegedly suffered would increase the reasonable royalty. Tr. 590-593, 598-599, 610-612. Mr. Bokhart's lost profits calculation, however, assumes that LoggerHead would have made all of the MALW sales at the highest price LoggerHead was selling the Bionic Wrench at the time infringement allegedly started—*i.e.*, a non-eroded, non-discounted price. To compensate LoggerHead for a sale at the non-eroded and non-discounted price, then add a premium to that price, unjustly rewards LoggerHead. Any damages verdict that awards LoggerHead more than its maximum hypothetical lost profits is excessive and unsupportable in law and fact.

Moreover, LoggerHead expressly admitted that it arrived at its reasonable royalty by adjusting its maximum hypothetical lost profits calculation upwards by amounts attributable to categories of "other lost profits," Dkt. 300 at 9-10, but those categories were subsequently excluded from Mr. Bokhart's damages testimony, Dkt. 373. To permit LoggerHead to obtain damages in excess of its maximum hypothetical lost profits calculation, after precluding any reliance on the factors LoggerHead relied on to justify a royalty higher than that figure, would "make a mockery of the *Daubert* process." Ex. D, 4/11/17 Hearing Tr. 96.

A jury does not need to select a royalty "specifically articulated by the parties during trial," but its royalty "must be within the range encompassed by the record as a whole." *Unisplay*, 69 F.3d at 519. In *Unisplay*, the patentee presented a chart that listed the total damages due if the jury chose various royalty rates, similar to what Mr. Bokhart presented in his demonstrative slide 34. *Id.* at 516. Even though the jury's verdict in *Unisplay* was identical to one displayed in the expert's chart, the Federal Circuit held it still was not supportable because the patentee "did not provide any evidence or testimony to show that the calculation in the exhibit reflected *what the parties might have agreed to,* at any time, particularly at the time the

infringement began." *Id.* at 518-19 (emphasis in original). The Federal Circuit vacated the jury's damages verdict and remanded the case for the district court to determine the amount to which the damages should be remitted. *Id.* at 519.

The jury's verdict here is even more excessive than that in *Unisplay*, going beyond even the highest amount displayed on Mr. Bokhart's demonstrative of royalty calculations. There is absolutely no evidence or testimony in the record that the jury's damages verdict, equating to $7 per 6-inch wrench and $8 per 8-inch wrench, reflects "what the parties might have agreed to" in a hypothetical negotiation. *See Unisplay*, 69 F.3d at 518-19. Nor can LoggerHead and Mr. Bokhart justify a nearly unbounded reasonable royalty range by simply qualifying Mr. Bokhart's opinion as the rate to which the parties would have agreed "at a minimum." The calculation of damages "necessarily involves an element of approximation and uncertainty," but there must be "some factual basis" for the reasonable royalty, supported by relevant evidence in the record. *Id.* at 517. By suggesting Mr. Bokhart's opinion was just a minimum, LoggerHead and Mr. Bokhart "encouraged the jury to reach a purely speculative judgment," which cannot stand. *See Whitserve*, 694 F.3d at 31-32.

Any argument that the jury's verdict simply compensated LoggerHead for "other damages" beyond Mr. Bokhart's testimony must also fail. "The burden of proving damages falls on the patentee." *Lucent*, 580 F.3d at 1324. Any "other damages" would be purely speculative, "the result of sheer surmise and conjecture, 'divorced from proof of economic harm linked to the claimed invention and ... inconsistent with sound damages jurisprudence.'" *Whitserve*, 694 F.3d at 33-34 (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010)).

Whether framed as LoggerHead's hypothetical lost profits or a reasonable royalty, $2.88 per 6-inch wrench and $3.22 per 8-inch wrench would fully compensate LoggerHead "for the

infringement," which is what is required by the law.  *See* 35 U.S.C. § 284.  The jury's damages verdict, approximately 250% higher than this amount, grants LoggerHead a windfall.  It is grossly excessive and should be remitted to LoggerHead's maximum hypothetical lost profits, for damages totaling $2,418,261.44.[8]

## V.  AT A MINIMUM, A NEW TRIAL ON DAMAGES IS WARRANTED.

LoggerHead encouraged the jury to reach an emotionally charged decision based on Mr. Brown's testimony about the royalty he would demand for a foreign-manufactured product and his plea for "a statement that this is wrong."  Tr. 366-67, 373-74; *see also* Tr. 629, 1397-98, 1446-48.  Remittitur is generally presented to the patentee as an option of accepting either remittitur or a new trial on damages.  *See Oiness*, 88 F.3d at 1030; *Glenayre Electronics, Inc. v. Jackson*, Case No. 02-C-0256, 2003 WL 21639116, at *5 (N.D. Ill. July 9, 2003).  Even if this Court denies Defendants' motion for remittitur, it should grant Defendants a new trial on damages for the same reasons that warrant remittitur, as well as these inflammatory statements.

## VI.  CONCLUSION

For the reasons stated above, Defendants request that the Court either grant them judgment as a matter of law that LoggerHead is only entitled to a royalty of $2.88 per 6-inch unit and $3.22 per 8-inch unit, for total damages of $2,418,261.44, or remit the damages award to that amount.  Alternatively, Defendants request that the Court grant them judgment as a matter of law that LoggerHead is only entitled to damages of $4.1 million, based on the highest royalty amount testified to by LoggerHead's damages expert Mr. Bokhart, or remit the damages award to that amount.  At a minimum, Defendants request a new trial on damages.

---

[8]  At most, LoggerHead's damages should be remitted to $4.1 million, based on a royalty "for the 6-inch wrench at something less than $5 a unit" and "a bit less than $6 for the 8-inch wrench."  Tr. 627-629.  LoggerHead cannot credibly claim damages greater than that amount, given that it is the only reasonable royalty LoggerHead attempted to justify in its opposition to *Daubert* and the only amount to which Mr. Bokhart testified.

Dated:  June 22, 2017

Respectfully submitted,

*/s/ Marcus E. Sernel*

Marcus E. Sernel, P.C.
Eric D. Hayes
Ian J. Block
Katherine E. Rhoades
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: msernel@kirkland.com
eric.hayes@kirkland.com
ian.block@kirkland.com
katherine.rhoades@kirkland.com

Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: gregory.arovas@kirkland.com

*Attorneys for Defendant Apex Tool Group, LLC and Sears Holdings Corporation*

Dated:  June 22, 2017

*/s/ James M. Hilmert*

James M. Hilmert
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: jhilmert@winston.com

*Attorney for Defendant Sears Holdings Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 22, 2017, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

By: ___*/s/ Marcus E. Sernel*___