**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LOGGERHEAD TOOLS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-09033 |
| | ) | |
| v. | ) | Honorable Rebecca R. Pallmeyer |
| | ) | Honorable Maria Valdez |
| SEARS HOLDINGS CORPORATION | ) | |
| and APEX TOOL GROUP, LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS APEX AND SEARS' MOTION**
**FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF CONTENTS

I.    Introduction ......................................................................................................1

II.   Legal Standard For Judgement As A Matter Of Law.....................................3

III.  Argument .........................................................................................................4

      A.    The Court Should Enter Judgment Of No Willfulness. ...........................4

            1.    The Court Has Already Granted And Reaffirmed Summary
                  Judgment Of No Willfulness. .......................................................6

            2.    No Reasonable Jury Could Find Willfulness Based On The
                  Evidence Presented At Trial. .......................................................8

      B.    The Court Should Grant JMOL Of Non-Infringement Based On A Correct
            Construction Of The "Arm Portion" Claim Term. .................................17

            1.    The Law Governing Claim Construction..................................18

            2.    The Court's Construction Of "Arm Portion" Conflicts With The
                  Claim Language And Basic Principles Of Claim Construction................20

            3.    The Current Construction Of "Arm Portion" Contradicts
                  LoggerHead's Statements To The PTO During Prosecution Of The
                  Asserted Patents. ......................................................................23

            4.    The Current Construction Of "Arm Portion" Is Contrary To The
                  Specifications Of The Asserted Patents....................................26

            5.    The Specifications And Intrinsic Record, As Well As The Ordinary
                  Meaning Of "Arm Portion," Necessitate A Construction Requiring
                  That The Arm Portion Project From The Body Portion. ..........................28

            6.    Upon Correcting The Construction Of "Arm Portion," The Court
                  Should Grant Defendants JMOL Of Non-Infringement. ..........................30

      C.    If The Court Does Not Grant JMOL Of Non-Infringement, It Should Grant
            JMOL Of Invalidity For All Of LoggerHead's Asserted Claims In Light
            Of The Prior Art Buchanan Reference.................................................33

IV.   Conclusion ....................................................................................................38

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
  566 F.3d 1282 (Fed. Cir. 2009) (en banc) .................................................. 34, 35

*Agilent Techs, Inc. v. Affymetrix, Inc.*,
  567 F.3d 1366 (Fed. Cir. 2009) ...................................................................... 22

*Alloc, Inc. v. Norman D. Lifton Co.*,
  653 F. Supp. 2d 469 (S.D.N.Y. 2009) ............................................................. 12

*Am. Original Corp. v. Jenkins Food Corp.*,
  774 F.2d 459 (Fed. Cir. 1985) ......................................................................... 16

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ....................................................................... 35

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ....................................................................... 22

*Bayer AG v. Elan Pharm. Research Corp.*,
  212 F.3d 1241 (Fed. Cir. 2000) ....................................................................... 31

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010) .................................................................. 20, 33

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
  262 F.3d 1258 (Fed. Cir. 2001) ....................................................................... 33

*Bicon, Inc. v. The Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006) ......................................................................... 22

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989) ......................................................................................... 10

*Bow Jax Inc. v. Sims Vibration Lab., Inc.*,
  No. 2:09-cv-0047-RMP, slip op. (E.D. Wash. June 22, 2010) ........................ 30

*Braun Inc. v. Dynamics Corp. of America*,
  975 F.2d 815 (Fed. Cir. 1992) ......................................................................... 11

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
  90 F.3d 1264 (7th Cir. 1996) ............................................................................. 7

*Canton Bio-Med., Inc. v. Integrated Liner Tech., Inc.*,
  216 F.3d 1367 (Fed. Cir. 2000) ....................................................................... 32

*CardSoft, LLC v. VeriFone, Inc.*,
807 F.3d 1346 (Fed. Cir. 2015)....................................................20

*Cement-Lock v. Gas Tech. Inst.*,
618 F. Supp. 2d 856 (N.D. Ill. 2009) .............................................3

*Cohesive Tech. Inc. v. Waters Corp.*,
543 F.3d 1351 (Fed. Cir. 2008)....................................................12

*Cordis Corp. v. Boston Scientific Corp.*,
658 F.3d 1347 (Fed. Cir. 2011)....................................................33

*Dayco Prods., Inc. v. Total Containment, Inc.*,
258 F.3d 1317 (Fed. Cir. 2001)....................................................36

*Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*,
508 F.3d 1366 (Fed. Cir. 2007)....................................................26

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
192 F.3d 973 (Fed. Cir. 1999)......................................................33

*Engel Indus., Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996)......................................................21

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
No. 2:15-CV-1202-WCB, 2017 WL 2190055 (E.D. Tex. May 18, 2017) ..............4, 9, 16

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
64 F.3d 1553 (Fed. Cir. 1995)......................................................22

*Fujisawa Pharm. Co., Ltd. v. Kapoor*,
115 F.3d 1332 (7th Cir. 1997) .......................................................8

*Gaus v. Conair Corp.*,
363 F.3d 1284 (Fed. Cir. 2004).................................................21, 33

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014)....................................................29

*Gemalto S.A. v. HTC Corp.*,
754 F.3d 1364 (Fed. Cir. 2014)....................................................36

*Greatbatch Ltd. v. AVX Corp.*,
No. 13-723-LPS, 2016 WL 7217625 (D. Del. Dec. 13, 2016) .........................9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016) ..........................................................passim

*Holden v. Deloitte and Touche LLP*,
 390 F. Supp. 2d 752 (N.D. Ill. 2005) ............................................................... 8

*Humanscale Corp. v. Mass Engineered Design, Inc.*,
 No. 1:13-cv-00535-CMH-IDD, slip op. (E.D. Va. Jan. 10, 2014) ................... 30

*In re Seagate Tech., LLC*,
 497 F.3d 1360 (Fed. Cir. 2007) (en banc) ...................................................... 11

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
 381 F.3d 1111 (Fed. Cir. 2004) ....................................................................... 18

*Kossman v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
 211 F.3d 1031 (7th Cir. 2000) ........................................................................... 4

*Mangosoft, Inc. v. Oracle Corp.*,
 525 F.3d 1327 (Fed. Cir. 2008) ....................................................................... 21

*Markman v. Westview Instruments, Inc.*,
 52 F.3d 967 (Fed. Cir. 1995) (en banc) .......................................................... 19

*Mass Engineered Design, Inc. v. Ergotron, Inc. et al.*,
 No. 2:06-cv-00272, slip op. (E.D. Tex. Mar. 13, 2008) ................................... 30

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
 764 F.3d 1392 (Fed. Cir. 2014) ................................................................. 20, 33

*Minch v. City of Chicago*,
 486 F.3d 294 (7th Cir. 2007) ............................................................................. 8

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*,
 415 F.3d 1335 (Fed. Cir. 2005) ....................................................................... 26

*Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*,
 847 F.2d 795 (Fed. Cir. 1988) ......................................................................... 16

*NTP, Inc. v. Research in Motion, Ltd.*,
 418 F.3d 1282 (Fed. Cir. 2005) ....................................................................... 36

*Omega Eng'g, Inc. v. Raytek Corp.*,
 334 F.3d 1314 (Fed. Cir. 2003) ....................................................................... 25

*Peters v. Active Mfg. Co.*,
 129 U.S. 530 (1889) ......................................................................................... 33

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
 429 F.3d 1364 (Fed. Cir. 2005) ................................................................... 2, 19

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc).................................... 18, 19, 28, 29

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*,
599 F.3d 1308 (Fed. Cir. 2010)........................................................ 19

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)..................................................... 11, 15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000).......................................................................... 4

*Renishaw PLC v. Marposs Societa' per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998)........................................................ 19

*Smith ex rel. Smith v. Cook County*,
No. 05 C 1264, 2009 WL 961234 (N.D. Ill. Apr. 8, 2009).............. 8

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*,
183 F.3d 1347 (Fed. Cir. 1999)........................................................ 34

*Springs Window Fashions LP v. Novo Indus., L.P.*,
323 F.3d 989 (Fed. Cir. 2003)............................................. 12, 25, 26

*State Indus. Inc. v. A.O. Smith Corp.*,
751 F.2d 1226 (Fed. Cir. 1985).................................................... 5, 10

*TGIP, Inc. v. AT&T Corp.*,
527 F. Supp. 2d 561 (E.D. Tex. 2007)........................................... 11

*Tincher v. Wal-Mart Stores, Inc.*,
118 F.3d 1125 (7th Cir. 1997) ......................................................... 4

*Toro Co. v. Ariens Co.*,
232 F.3d 915, 2000 WL 504209 (Fed. Cir. Apr. 27, 2000) ............ 11

*TorPharm, Inc. v. Ranbaxy Pharms., Inc.*,
336 F.3d 1322 (Fed. Cir. 2003)........................................................ 25

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
659 F.3d 1376 (Fed. Cir. 2011)........................................................ 25

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*,
425 F.3d 1366 (Fed. Cir. 2005)........................................................ 12

*Upsher-Smith Labs., Inc. v. Pamlab, LLC*,
412 F.3d 1319 (Fed. Cir. 2005)........................................................ 33

*Vederi, LLC v. Google, Inc.*,
    744 F.3d 1376 (Fed. Cir. 2014) ........................................................... 22

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................. 19

*Westvaco Corp. v. Int'l Paper Co.*,
    991 F.2d 735 (Fed. Cir. 1993) ....................................................... 10, 15

*Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc. et al.*,
    No. 2:12-cv-04052-RSWL-JCG, slip op. (C.D. Cal. Aug. 14, 2013) ............................ 30

## Rules

Fed. R. Civ. P. 50(a) ............................................................................... 1, 4

Fed. R. Civ. P. 50(b) ......................................................................... 1, 2, 3, 17

## I.     INTRODUCTION

Defendants Apex Tool Group, LLC and Sears Holdings Corporation respectfully submit this Motion for Judgment as a Matter of Law pursuant to Federal Rule 50(b) on issues relating to willfulness, infringement, and invalidity.[1]    Based on the evidence presented at trial, no reasonable juror applying the proper legal standards could have found: (1) Defendants' conduct rose to the level of the "egregious" and "intentional" misconduct necessary for willful infringement; (2) the Max Axess Locking Wrench infringed any properly-construed claim of the asserted patents; or (3) any patent claim to be both infringed and not invalid, if they applied the claims consistently to both the accused product and prior art.

First, JMOL should be granted on the issue of willfulness.  Every single witness who testified about Defendants' state of mind confirmed that the Defendants attempted to design around the patents, and subjectively believed that they had done so—the opposite of the kind of conduct the Supreme Court has identified as "willful."  Indeed, Defendants took every reasonable precaution to avoid infringement, including engaging outside counsel from the very beginning of the design process, and relying on LoggerHead's own explicit representations to the Patent Office during prosecution about the scope of its now-asserted claims.  There was no evidence to the contrary, which is precisely why Judge Darrah previously granted summary judgment in Defendants' favor on this issue and reaffirmed that ruling upon reconsideration.  Public policy and longstanding Federal Circuit precedent encourages companies to try to design around patents to spur further innovation, just as Defendants believed they did in developing the Max Axess Locking Wrench by adding new features that merited patent protection in their own right.  The

---

[1]     Defendants made their arguments pursuant to Rule 50(a) during trial.  (*E.g.*, Tr. 690-93, 1326-28, 1531-32.)  Defendants hereby renew those arguments with respect to liability and willfulness issues pursuant to Rule 50(b).  Issues relating to damages, including JMOL on damages, are addressed in a separate motion.

issue of willfulness should be governed by the existing summary judgment, and the Court should treat the jury's (at most advisory) verdict on this issue as a nullity; alternatively, Defendants are entitled to JMOL on this issue pursuant to Federal Rule 50(b) based on the "full record" presented during trial.

Second, the Court should grant Defendants JMOL on the underlying issue of patent infringement. As an initial matter, this issue should not have reached a jury, and would not have but for the Court's adoption of an erroneous construction for the claim term "arm portion" that effectively read the term out of the claims and was inconsistent with the express statements LoggerHead made during prosecution. The Court can and should correct this erroneous construction, even after trial, to enter a judgment that is consistent with established claim construction principles. *See Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) (a court may amend claim construction as "its understanding of the technology evolves" and appreciation of the evidence and arguments comes into focus). The Max Axess Locking Wrench does not contain an "arm portion" under the correct interpretation of that term—or, indeed, under *any* interpretation that gives it any structural meaning. Because no reasonable jury could find that the rectangular monolithic blocks in the Max Axess product have both an "arm portion" and "body portion," as required by every asserted claim, the Court should grant JMOL of non-infringement.

Third, the evidence established that no reasonable juror could find *both* infringement *and* validity of any asserted claim, regardless of the erroneous constructions. LoggerHead obtained its patents over the prior art by distinguishing the gripping elements of its claimed tool from Buchanan's solid, block-like elements. (*E.g.*, PTX 4 at LH-00001836-37 ("Applicant respectfully submits that Buchanan does not have an arm portion as claimed."); *id.* at LH-00001657-58 (same).) Having abandoned that distinction to allege patent infringement

against the Max Axess product in this case, LoggerHead has eviscerated the distinction it made to the Patent Office between its patent claims and the prior art, and LoggerHead did not provide a reasonable juror a sufficient evidentiary basis to distinguish the asserted claims from the prior art on any other grounds. Thus, if infringement is upheld under the instructions presented to the jury, then JMOL of invalidity should be entered.

At bottom, although the infringement claims in this case were run-of-the-mill, LoggerHead's trial presentation was anything but. LoggerHead presented an emotionally-charged case that focused more on irrelevant innuendo than actual facts relating to the alleged patent infringement. Indeed, the jury was boldly encouraged to make a "statement" that it was "wrong" to manufacture competitive products in a foreign country. (Tr. 373-74 (Dan Brown testifying that "I want -- I would love to have the win here and a statement that this is wrong.").)[2] That is no basis for sustaining a legally erroneous verdict. Given this inflammatory rhetoric, it is not surprising the jury would return a verdict that is inconsistent with a proper application of the law to the trial record. Defendants respectfully request judgment as a matter of law.

## II.     LEGAL STANDARD FOR JUDGEMENT AS A MATTER OF LAW

"Once the jury returns a verdict, the non-prevailing party may renew its Rule 50(a) motion for judgment as a matter of law and ask the court to enter judgment in its favor notwithstanding the verdict." *Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 862 (N.D. Ill. 2009) (citing Fed. R. Civ. P. 50(b)) (granting JMOL) (Pallmeyer, J.). Judgment as a matter of law is appropriate when a party has been fully heard on an issue and "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." *Kossman v.*

---

[2] Citations to "Tr." refer to the trial transcript, cited excerpts of which are included as Appendix 1 to this motion. Complete transcripts of the deposition videos played at trial are included as Appendix 2. Citations to "PTX" and "DTX" refer to Plaintiff's and Defendants' respective trial exhibits. Cited trial exhibits are included in numerical order in Appendices 3 and 4.

*Ne. Ill. Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1036 (7th Cir. 2000) (quoting Fed. R. Civ. P. 50) (internal quotation marks omitted) (alterations in original); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)). The court must determine whether the verdict is supported by sufficient evidence. *Id.*; *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1997).

## III.    ARGUMENT

### A.    The Court Should Enter Judgment Of No Willfulness.

This Court should reaffirm its summary judgment ruling by granting Defendants' judgment as a matter of law of no willfulness.  The Court has previously granted summary judgment of no willfulness, and denied a follow-up motion to reconsider this ruling, and to this day has neither unsettled these rulings nor identified a genuine issue of material fact to justify consideration of the issue by a jury.  In response to LoggerHead's *second* motion for reconsideration, the Court allowed LoggerHead to present its supposed willfulness case to the jury to develop a "full record" for appellate review, but without granting reconsideration. (Tr. 1532-33.)  Having now provided LoggerHead the opportunity to present its "full record" to the jury, that record confirms what the Court previously determined on summary judgment— Defendants' conduct fell far short of the egregious, bad-faith misconduct required for a finding of willful infringement, and non-willfulness should be found as a matter of law.

"The Supreme Court has made clear that an award of enhanced damages under section 284 is reserved for 'egregious cases.'"  *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 2190055, at *1 (E.D. Tex. May 18, 2017) (Bryson, J.) (granting Rule 50(a) motion for JMOL of no willfulness) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932, 1934 (2016)).  As the Supreme Court explained in *Halo*, awards of enhanced damages "are not to be meted out in a typical infringement case, but are

4

instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  136 S. Ct. at 1932.

The trial evidence demonstrated just the opposite of what is required for willfulness. Every single witness who offered testimony on the topic of alleged willful patent infringement—including Eric Broadaway, John Owen, Peng Li, Barry Pope, and Brian Reese—testified that Sears and Apex did *not* intend to infringe the LoggerHead patents.  (*E.g.*, Tr. 905, 908, 918-19, 1027, 1037, 1511, 1522-23, 1561-66; App'x 2.1, P. Li Liability Trial Video Tr. 2-3, 8-9; App'x 2.2, B. Pope Liability Trial Video Tr. 11; App'x 2.6, B. Reese Willfulness Trial Video Tr. 4-6, 8-11; App'x 2.8, P. Li Willfulness Trial Video Tr. 1, 7; App'x 2.10, B. Pope Willfulness Trial Video Tr. 3-4, 6-8.)  The overwhelming evidence of Defendants' good faith was further evidenced by the actions taken by Defendants in developing the product, which included: (1) consulting with experienced patent counsel from the outset of the design process; (2) attempting to design around LoggerHead's patents based on the advice of counsel; and (3) relying on LoggerHead's statements to the Patent Office about what its patents did *not* cover in developing its product design.  If a finding of willfulness is upheld under these facts, then no competitor will ever be able to attempt to design around patents in good faith, without the risk of a "willfulness" verdict.  That result would thwart the very incentive to innovate that the patent laws are supposed to uphold.  *See State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235-36 (Fed. Cir. 1985) ("designing new and possibly better or cheaper functional equivalents [of a competitor's product] is the stuff of which competition is made.").  This Court should enter judgment of no willfulness as a matter of law.

### 1. The Court Has Already Granted And Reaffirmed Summary Judgment Of No Willfulness.

As an initial matter, the Court already granted summary judgment of no willfulness in this case, finding as a matter of law under the current *Halo* standard that the "uncontested facts do not show that Defendants engaged in egregiously willful misconduct." (Dkt. 369 at 8-9.) That ruling still stands and should remain in place, and the Court should confirm the ruling under the JMOL legal standard. LoggerHead sought reconsideration, claiming it had not had a full opportunity to present evidence supposedly showing Defendants' alleged willfulness, but declining to actually present any new evidence to the Court. (Dkt. 379.) On November 16, 2016, the Court denied LoggerHead's motion, noting that "[t]here was simply no evidence that either of Defendants' conduct was egregious or willful misconduct," as *Halo* requires. (Dkt. 389 at 5 (citing *Halo*, 136 S. Ct. at 1934).) As in the original summary judgment ruling, the Court found "there is no genuine issue of material fact to be determined on the subject of willfulness." (Dkt. 389 at 5.)

In reaching these decisions, the Court considered undisputed evidence from the summary judgment record relating to the purported willfulness of Defendants' alleged patent infringement. This included Defendants' uncontested evidence that Apex sought and received immediate and ongoing advice from outside opinion counsel John Owen about how to design around the accused product to avoid infringement of the asserted patents. (Dkt. 369 at 8; Dkt. 389 at 4-5.) It also included evidence LoggerHead put into the record, such as: (1) an internal Apex email in which "Defendants asked for an Apex employee to 'please study this design and determine how difficult it may be to make a Craftsman version of this tool with similar or better performance ***that does not infringe upon LoggerHead's patents***'"; (2) deposition testimony from Apex's Eric Broadaway, a designer of the Max Axess Locking Wrench and a named inventor on Apex's corresponding patent over the tool, that reverse engineering is "taking a product apart and

redesigning it or replicating the design"; and (3) that "Apex conducted tests on the Bionic Wrench and noted things such as 'construction, operation, dimensions, max generated user torque on different hex mandrel sizes, for what size mandrels the jaws would rotate over the mandrel corners.'" (Dkt. 389 at 3-4 (emphasis in Court's opinion).) Having considered all this evidence, the Court found—not once, but twice—that summary judgment of no willfulness was warranted. Given that LoggerHead was obligated, as the party bearing the burden of proof on willfulness, to "wheel out all its artillery to defeat" Defendants' summary judgment motion, *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996) (internal citation omitted), the Court has already decided this issue upon review of LoggerHead's best evidence viewed in the light most favorable to LoggerHead.

Dissatisfied with the Court's rulings, LoggerHead sought to resurrect its meritless allegation a second time after this case was reassigned from Judge Darrah to Judge Pallmeyer, filing another motion for reconsideration on March 2, 2017. (Dkt. 394.) The motion did not raise any new facts or relevant new law; the decisions LoggerHead cited involved cases in which courts that had previously decided willfulness under the prior *Seagate* standard reevaluated the issue under the Supreme Court's 2016 *Halo* standard. (*Id.* at 13-15.) Those cases were inapposite because the parties here briefed summary judgment under *Halo* once it issued, and the Court's summary judgment and reconsideration rulings both were expressly decided under *Halo*. (Dkt. 369 at 8-9; Dkt. 389.) Nonetheless, in lieu of full briefing on the motion, this Court entered and continued LoggerHead's second motion for reconsideration and ordered a bifurcated trial where willfulness could be presented to a jury to create a "full record" in the event the appellate court ultimately disagreed with the decision to dispose of the issue on summary judgment. (Tr. 1532-33; Dkt. 396.)

At no point did the Court grant LoggerHead's motion for reconsideration, identify a dispute of material fact on willfulness, or reverse the summary judgment ruling rejecting LoggerHead's willfulness allegations. (Tr. 1532.) Summary judgment of no willfulness thus still stands, and was properly granted pursuant to the evidence and procedures provided by the Federal Rules. There is no "extraordinary circumstance" that justifies disregarding this established law of the case. *Holden v. Deloitte and Touche LLP*, 390 F. Supp. 2d 752, 758, 761 (N.D. Ill. 2005) (relying on law of the case, denying motion for reconsideration of ruling by different judge on same court for failing to satisfy requirements for overturning prior ruling) (*citing Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997) (the "second judge in a case in which there has been a reassignment [is] to abide by the rulings of the first judge unless some new development, such as a new appellate decision, convinces him that his predecessor's ruling was incorrect")); *Smith ex rel. Smith v. Cook County*, No. 05 C 1264, 2009 WL 961234, at *2-4 (N.D. Ill. Apr. 8, 2009) (noting presumption set by law of the case, denying motion for reconsideration where different judge on same court ruled on challenged issues prior to assignment) (quoting *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("In situations where a different member of the same court re-examines a prior ruling, the law of the case doctrine . . . reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one."). Accordingly, the Court should confirm the summary judgment of non-willfulness and find the jury verdict to be a nullity.

> ## 2. No Reasonable Jury Could Find Willfulness Based On The Evidence Presented At Trial.

In any event, the evidence that was presented at trial served to confirm the correctness of the Court's finding of no willfulness as a matter of law. Indeed, the evidence presented at trial affirmatively established a textbook case of ***no*** willfulness. From its very inception, the accused

Max Axess Locking Wrench product was designed and developed specifically ***not*** to infringe the asserted patents, based on the ongoing advice Apex sought, obtained, and followed from its outside opinion counsel throughout the design process. Both Defendants' internal documents and their witnesses' testimony are entirely consistent in their intention to avoid infringement of LoggerHead's patents. (***E.g.***, Tr. 905, 908, 918-19, 1027, 1037, 1511, 1522-23, 1561-66; DTX 1; DTX 2; DTX 3; DTX 24; PTX 157; PTX 467.) There was not a single line of testimony from any of the Defendants' witnesses that indicate anything other than that they subjectively intended to avoid LoggerHead's patents. In short, there is no legally sufficient basis to uphold the jury's finding of willfulness.

LoggerHead bears the burden of proving that Defendants' infringement was not just unlawful but egregious: "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *See Halo*, 136 S. Ct. at 1932, 1934. LoggerHead did not meet its burden or this high standard, and JMOL on this issue is warranted. To the contrary, if a jury can find willfulness based on the conduct at issue here, it is hard to imagine a case in which infringement would not be willful, despite the Supreme Court's clear direction otherwise. Unsurprisingly, courts applying the *Halo* standard have repeatedly found no willfulness in situations like the one presented here. *Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS, 2016 WL 7217625, at *3-6 (D. Del. Dec. 13, 2016) (applying *Halo*, denying motion to vacate summary judgment of no willfulness where defendant relied on opinion of counsel and, prior to litigation, designed accused products to avoid infringement); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 2190055, at *2 (E.D. Tex. May 18, 2017) (granting JMOL of no willfulness upon finding that, where both parties presented only circumstantial evidence for and against willfulness, plaintiff could not meet its burden) (Bryson, J.). While it was not Defendants' burden to disprove willfulness, the evidence of record

did just that, and in fact demonstrated that Defendants acted reasonably in accordance with the law and policy considerations underlying our patent system.

The law has long encouraged companies to follow the path that Defendant Apex did when designing the MALW. Our patent system and Federal Circuit precedent seek to promote, rather than punish, companies that attempt to design around the patents of their competitors in search of further innovation. *State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235-36 (Fed. Cir. 1985) ("designing new and possibly better or cheaper functional equivalents [of a competitor's product] is the stuff of which competition is made."); *Halo*, 136 S. Ct. at 1935 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989) (noting "importance of facilitating the 'imitation and refinement through imitation' that are 'necessary to invention itself and the very lifeblood of a competitive economy'")). And Apex did not just design around, but went further to develop an improved product that earned its own patent recognition reflecting its contribution to the market. (Tr. 926-28; DTX 74 (Apex patent for Max Axess Locking Wrench).)

The law is clear that such design-around efforts must not be discouraged by the threat of willful infringement liability, even if the efforts prove unsuccessful:

> One of the benefits of a patent system is its so-called "negative incentive" to "design around" a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace. It should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them. The world of competition is full of "fair fights" . . . .

*Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993) (quoting *State Indus.*, 751 F.2d at 1235-36) (reversing finding of willful infringement where design-around attempt was unsuccessful); *see also Toro Co. v. Ariens Co.*, 232 F.3d 915 (table, 2000 WL 504209 at *9)

(Fed. Cir. Apr. 27, 2000) (finding no willfulness as a matter of law where "Ariens worked closely with its counsel . . . in designing the accused device").

The undisputed evidence also established that Defendants tried to design around the patents according to the norms of prudent practice, involving experienced patent counsel from the outset to guide the process. (*E.g.*, Tr. 1013-18, 1536-38.) Courts have long held that bona fide attempts to design a competitive yet non-infringing product in consultation with counsel are not to be derided as "copying", but instead constitute pro-competitive activity that should be encouraged. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992) (despite fact that patentee's product "served as the starting point for Portec's efforts" and "the purpose of Portec's design efforts was to make a device which would compete with the [patentee's product]," the finding of willfulness was reversed because "Portec made specific changes deemed adequate by counsel to avoid infringement"); *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 578-79 (E.D. Tex. 2007) (granting infringer's JMOL motion overturning jury verdict finding willful infringement, where infringer relied upon opinion of counsel).

Although *Seagate*'s two-prong analysis has been overruled by *Halo*, its guidance regarding reliance on advice of counsel remains: "[a]lthough an infringer's reliance on favorable advice of counsel . . . is not dispositive of the willfulness inquiry, it is crucial to the analysis." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1369 (Fed. Cir. 2007) (en banc). "On-going consultation with a patent lawyer is highly probative evidence of good faith." *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 822-24 (Fed. Cir. 1992) (reversing jury verdict of willfulness where accused infringer had consulted opinion counsel during all stages of the design-around effort). Indeed, like the accused infringer in *Braun*, Apex's patent counsel rejected certain design options because "they looked too much like" LoggerHead's patented design, evidencing Defendants' good faith. *Id.* at 823; Tr. 989, 1564-65.

The Federal Circuit has also emphasized that competitors have a right to rely on statements made in prosecution to guide a design-around effort, and have cited reliance on such statements to establish non-willfulness. The public has a right to rely on, and design competitive products based on, statements made in prosecution regarding the scope of patent claims. *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003). Moreover, companies that reasonably attempt to review the public record and attempt to design around based on their understanding of the scope of a patent's claims, even if ultimately found to have been unsuccessful in doing so, are not guilty of willful infringement. *Cohesive Tech. Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008) (affirming finding of no willful infringement where defendant had "reasonable interpretation" of patent and prosecution history regarding scope of claims, despite finding defendants' interpretation was incorrect); *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1380-81 (Fed. Cir. 2005) (infringer did not engage in kind of egregious and reckless conduct necessary to justify finding of willfulness where infringer's chemist had read the patent and concluded that its process did not infringe, even though this conclusion was later found to be in error). Like Defendants' effort to design the product based on the expired prior art Buchanan design, courts have also found no willfulness as a matter of law where an accused infringer reasonably attempted to design around by basing its product on an expired patent. *See Alloc, Inc. v. Norman D. Lifton Co.*, 653 F. Supp. 2d 469, 475-76 (S.D.N.Y. 2009).

The evidence of record established that Defendants' conduct was squarely in line with this precedent finding no willfulness as a matter of law:

- Upon Sears' request that Apex develop a differentiated and non-infringing competitive product to the Bionic Wrench that Sears could commercialize under the Craftsman brand, Apex immediately involved patent counsel, John Owen, in the

design process to assess whether a non-infringing design could be developed. (Tr. 903-07, 1037, 1540-41; PTX 119; DTX 1; DTX 2; DTX 3.)

- Mr. Owen is a patent attorney with approximately 20 years of experience, who has rendered between 75 and 100 patent opinions analyzing infringement issues. (Tr. 1013-18, 1536-40, 1565-66.)

- Mr. Owen reviewed the patents and file history to render his opinion that Apex could develop a design based on the prior art Buchanan design LoggerHead distinguished during prosecution of its patents. (*E.g.*, Tr. 1017-22, 1542-44, 1549-50; DTX 2; DTX 3; PTX 157; PTX 175.)

- Throughout the Max Axess Locking Wrench design process, Apex sought and followed the advice of Mr. Owen, who recommended against certain intermediate designs that moved further from the armless Buchanan gripping element that LoggerHead distinguished during prosecution—advice Apex followed in every instance. (*E.g.*, Tr. 952, 989, 1021-32, 1516-17, 1553-65; DTX 1; DTX 2; DTX 3; DTX 5; DTX 7; DTX 8R; DTX 9R; DTX 11; DTX 24.)

- Apex kept Sears apprised through emails and at-least-weekly phone calls regarding its efforts to design around LoggerHead's patents. (Tr. 914-15, 1515-18; PTX 467; DTX 9.) For example, this included Apex sending Sears drawings depicting the difference that formed the basis of the design around relating to the gripping element that Apex's counsel advised:



(PTX 467.)

- Patent counsel Mr. Owen was involved from the beginning through the end of the design process, reviewing the final design drawings prior to Sears issuing any purchase orders to Apex or Apex shipping any Max Axess Locking Wrench units. (Tr. 903-07, 1031-32, 1037, 1518-20, 1540-41, 1553-65; PTX 119; DTX 1; DTX 2; DTX 3; DTX 23; DTX 24.)

There simply is no basis for a reasonable juror to have found willfulness on this record, and the Court should enter judgment as a matter of law of no willfulness.

LoggerHead offered only tangential, legally-insufficient innuendo in response to Defendants' substantial direct evidence of non-willfulness. LoggerHead's "evidence" of Defendants' alleged willfulness was the same at trial as it was at summary judgment: that Defendants were aware of LoggerHead's patents and Bionic Wrench product, and that they analyzed and tested the product to understand it and develop a functionally similar yet differentiated and non-infringing competitive Craftsman product. To the extent LoggerHead added any new scope to its willfulness "evidence" at trial, it consisted of nothing more than irrelevant documents and testimony that cannot contradict the direct evidence relating to the product design or Defendants' intent to develop a non-infringing product. All of LoggerHead's

innuendo about Apex's outside patent opinion counsel John Owen's analysis of non-final designs (Tr. 1615) is refuted by direct evidence that Mr. Owen in fact analyzed and signed off on the final design (*e.g.*, Tr. 1518-20; 1559-63; DTX 23; DTX 24). All of LoggerHead's innuendo suggesting that Defendants' consultation with Mr. Owen was all just a sham (Tr. 1614) is refuted by direct evidence that Mr. Owen specifically advised against certain designs and Defendants followed that advice (*e.g.*, Tr. 912-13, 989, 1564-65; DTX 8R; DTX 11R).

Moreover, LoggerHead's alleged "copying" evidence was legally irrelevant and insufficient to support the jury's verdict. Analysis of a competitive product for "reverse engineering" and "benchmarking" purposes is perfectly lawful, and was activity that LoggerHead itself engaged in when developing the alleged invention it now asserts. (Tr. 437-38.) Moreover, this design activity was done under the watchful eye of experienced patent counsel, and it is thus irrelevant that certain features might overlap when the overall design was deemed by counsel to be non-infringing. (Tr. 903-07, 1037, 1518-20, 1540-41, 1553-65; PTX 119; DTX 1; DTX 2; DTX 3; DTX 23; DTX 24.) Consistent with the Federal Circuit's caution that design-around efforts should not be mislabeled as willful "copying," *see Westvaco*, 991 F.2d at 745; *Read v. Portec*, 970 F.2d at 828, the Court already found this evidence insufficient to create an issue of fact on willfulness (Dkt. 389 at 3-4). Finally, contrary to the innuendo LoggerHead argued to the jury at trial, the allegedly "copied" features were either irrelevant to the patent claims or related to non-functional features of the product or packaging, or both.[3] (Tr. 231 (three gripping elements versus six); 1605 (handle width); 1608 ("They didn't just knock the wrench off, they

---

[3] LoggerHead's arguments that Defendants copied the trade dress of the Bionic Wrench product and its packaging were already disposed of on summary judgment (Dkt. 367), and cannot form the basis for a finding that Defendants intentionally ***infringed*** LoggerHead's ***patents***.

knocked off how to promote it."); PTX 503 (email regarding packaging design and bolt size range).)

LoggerHead's effort to suggest that Sears is somehow liable for willful infringement, because it relied on its manufacturing partner Apex to investigate and analyze the issues relating to LoggerHead's patents, also does not justify the jury's verdict. The law does not require each and every alleged member of a distribution chain to independently conduct its own patent analysis; to the contrary, the law is clear that obtaining advice of counsel is not even required at all. *See, e.g.*, *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (affirming finding of no willful infringement where accused infringer did not obtain an opinion of counsel); *Am. Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 465 (Fed. Cir. 1985) (same); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 2190055, at *2 (E.D. Tex. May 18, 2017) (granting JMOL of no willfulness where defendant did not present opinion of counsel) (Bryson, J.). Apex took responsibility for developing a non-infringing product and indemnified Sears in this regard. (Tr. 1521, 1523-24; App'x 2.6, B. Reese Willfulness Trial Video Tr. 8; App'x 2.7, T. Arvia Willfulness Trial Video Tr. 1-2.) Nevertheless, the undisputed evidence established that Sears was in frequent communication with Apex regarding the patent analysis, both orally and in writing, and was specifically apprised of the basis upon which the MALW had been designed-around LoggerHead's patents. (Tr. 914-15, 1515-18; PTX 467; DTX 9.) Consistent with these communications, Sears' witnesses reiterated that it was always the goal to develop a ***non***-infringing product to be sold under the Craftsman brand. (App'x 2.10, B. Pope Willfulness Trial Video Tr. 3-4, 6-8; App'x 2.7, T. Arvia Willfulness Trial Video Tr. 1-2; App'x 2.6, B. Reese Willfulness Trial Video Tr. 9-12.)

LoggerHead's effort to somehow suggest that Sears could be liable for willful infringement where Apex would not be has no basis in law or fact and must be rejected.[4]

For all of these reasons, the full trial record, even when viewed in the light most favorable to LoggerHead, cannot support the jury's finding of willful infringement. Defendants respectfully request that the Court grant JMOL of non-willfulness pursuant to Rule 50(b).

**B.    The Court Should Grant JMOL Of Non-Infringement Based On A Correct Construction Of The "Arm Portion" Claim Term.**

During claim construction, Defendants proposed that the claim term "arm portion" be construed as "portion of a gripping element that projects from the body portion and to which the force transfer element is connected." (Dkt. 147 at 1; *see* Dkt. 131 at 9-13; Dkt. 145 at 2-8; Dkt. 176 at 1-9.) That construction comes from the plain meaning of the claim language and is corroborated by the patents' specification and the representations that LoggerHead itself made to the Patent Office to overcome prior art (*e.g.*, PTX 4 at LH-00001657, LH-00001836-37). The Court, however, adopted LoggerHead's proposed construction, "portion of a gripping element(s) configured to engage one of the guides and contiguous with a force transfer element," which

---

[4] LoggerHead did not present any legally sufficient evidence that any Sears employee intentionally infringed the asserted patents. In the absence of evidence, LoggerHead's argument for Sears' putative "willful" infringement consisted of LoggerHead's attorney testifying in closing that Sears "doesn't care" (Tr. 1609) and making a spurious assertion that Sears issued a "false" press release about the litigation (*id.* at 1610). But such innuendo did not provide the jury a legally sufficient basis to find willfulness. The Court previously granted Sears summary judgment on the "false advertising" claim based on Sears' press release (Dkt. 361 at 10-11) and excluded any evidence about that topic *in limine* (Dkt. 419 at 2 (granting Defendants' MIL No. 7 regarding dismissed claims). The only other argument that LoggerHead presented to the jury was to question why the jury did not hear from Iqbal Singh, the former Sears engineer that reviewed the Apex design around. (Tr. 1606 ("So Pope points to Iqbal Singh. Where is Iqbal Singh? I don't know. He doesn't work for Sears anymore. We have never seen him. He is not here to tell you what he did to try to avoid infringement of the LoggerHead patents."), 1609 ("And the kind of pointing the fingers -- Reese says Pope. Pope says Singh. Where is Singh?").) LoggerHead knows the answer full well: Mr. Singh is a former employee of Sears, and LoggerHead failed to seek his deposition during discovery. LoggerHead bears the burden of proof on willfulness and cannot discharge that burden of proof by making insinuations premised on the fact that the relevant Sears employees no longer work for the company.

parroted back the surrounding claim language (including the word "portion"), thereby eliminating any meaning from the word "arm" in the term. (Dkt. 185 at 10.)

As demonstrated at trial, LoggerHead and its expert broadly applied the Court's construction to support their infringement read on the Max Axess Locking Wrench in a manner that flatly contradicted the public statements it made to the PTO during prosecution to overcome the PTO's rejection based on the Buchanan prior art reference.

Defendants appreciate that Your Honor took this case over shortly before trial and long after claim construction. However, having now presided over the trial and gained familiarity with the asserted patents, including LoggerHead's application of Judge Darrah's claim construction in a manner diametrically opposed to how LoggerHead applied the term during prosecution to obtain these patents in the first place (Tr. 1288-90; *compare* DTX 212 *with* DTX 213 (LoggerHead's contrary descriptions of Buchanan during prosecution and litigation)), Defendants respectfully request that the Court correct the construction and apply it here, which would compel JMOL of non-infringement for Defendants. As a matter of law, the Max Axess Locking Wrench's monolithic, block-like gripping element cannot satisfy the "arm portion" claim limitation under Defendants' construction (or any proper construction consistent with the plain meaning and LoggerHead's statements during prosecution).

### 1. The Law Governing Claim Construction

The construction for "arm portion" that was presented at trial is inconsistent with basic principles of claim construction set forth in Federal Circuit precedent. "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Therefore, courts begin their claim construction analysis with the words of the

claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The words of the claim are generally given their ordinary and customary meaning. *Id*. The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. The person of ordinary skill in the art views the claim term in the light of the entire intrinsic record. *See id*. Thus, the claims "must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). The specification is "always highly relevant to the claim construction analysis" and has been described as "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "'The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). In addition to the written description, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* at 1317.

The Federal Circuit has made clear that a district court may adopt an "evolving" or "rolling" claim construction, in which the court's construction of claims can be modified as the court better understands the technology and the patents at issue. *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) (trial testimony informed court to change claim construction); *Pfizer, Inc. v. Teva Pharms., USA, Inc.,* 429 F.3d 1364, 1377 (Fed. Cir. 2005) ("[D]istrict courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.");

*see Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1397-98 (Fed. Cir. 2014) (affirming claim construction clarification made after jury trial and affirming JMOL of non-infringement).

On appeal, the Federal Circuit will "review the district court's ultimate interpretation of patent claims de novo." *CardSoft, LLC v. VeriFone, Inc.*, 807 F.3d 1346, 1349-50 (Fed. Cir. 2015).

### 2. The Court's Construction Of "Arm Portion" Conflicts With The Claim Language And Basic Principles Of Claim Construction.

As a starting point, the Court's construction for "arm portion" was not faithful to the plain meaning of the words used and effectively read the term out of the asserted claims.

The construction ignores the plain meaning of the word "arm," and it affords no basis to distinguish between the arm portion and body portion on any kind of structural level.[5]  As a result, the construction allowed an arm portion and a body portion to be "found" in the same physical structure, which is how LoggerHead applied it at trial (that is, alleging a single rectangular block had both an "arm portion" and a "body portion").  (*See* Tr. 502; Cagan Trial Dem. Ex. 41.)  Besides the fact that this reading directly contradicts LoggerHead's repeated statements to the PTO—LoggerHead agreed at trial that Buchanan's gripping elements had arm portions, after all—courts routinely require that claimed component parts be at a minimum separately identifiable structures.  "Where a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010)

---

[5] To be clear, Defendants do not argue, and have never argued, that the "arm portion" and "body portion" must be entirely separate structures (*i.e.* formed or manufactured separately from each other in two standalone pieces).  Rather, Defendants have contended, consistent with the claim language and usage throughout the intrinsic evidence, that these two portions must be in some way separately *identifiable* from one another.  (Dkt. 145 at 2-3; Dkt. 176 at 4, 9.)

(quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)) (internal quotations omitted); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404-05 (Fed. Cir. 1996) (concluding that where a claim provides for two separate elements, a "second portion" and a "return portion," these two elements "logically cannot be one and the same").

Second, Judge Darrah's construction is erroneous because it simply repeats language that already appears in the claims, rendering the term "arm portion"—and the word "arm" in particular—entirely superfluous.[6]   The Federal Circuit has held that a claim construction is erroneous where it "ascribes no meaning to the term . . . not already implicit in the rest of the claim." *Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1330-31 (Fed. Cir. 2008).   Comparing the surrounding claim language in the independent claims asserted here to the current construction of "arm portion" shows that "arm" is being read out of the construction entirely:

> **Claim**: "an **arm portion** configured to engage one of said at least one guide and a force transfer element contiguous with the arm portion"

> **Construction**: ~~arm~~ "[a] **portion** of a gripping element(s) configured to engage one of the guides and contiguous with a force transfer element(s)"

This construction is even more erroneous than that in *Mangosoft*, as it replaces "arm portion" with words that already appear ***explicitly*** in the claim while simultaneously giving no meaning to (and thus reading out) the word "arm."

Moreover, replacing the "arm portion" term with its current construction (underlined below) in the asserted independent claims renders the claims circular and gives no meaning to the words "arm portion":

---

[6] The Court's construction of "body portion"—which also just repeated other claim language, effectively reading out the term—is similarly erroneous.  Although this term need not be corrected or clarified for the jury's infringement verdict to be overturned, the parties briefed the "arm portion" and "body portion" terms in tandem during claim construction and Defendants object to the Court's construction of both terms.

**Claim**: "each at least one gripping element including a body portion adapted for engaging the workpiece, an **arm portion** configured to engage one of said at least one guide and a force transfer element contiguous with the **arm portion**"

**Claim With Current "Arm Portion" Construction Inserted**: each at least one gripping element including a body portion adapted for engaging the workpiece, [a] <u>portion of gripping element configured to engage one of the guides and contiguous with a force transfer element(s)</u> configured to engage one of said at least one guide and a force transfer element contiguous with the <u>portion of gripping element configured to engage one of the guides and contiguous with a force transfer element(s)</u>

Thus, the construction of "arm portion" was wrong because it imparts no meaning to the structural limitation set forth in the claims and renders the actual "arm portion" claim language superfluous. It is well settled that "a claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1305 (Fed. Cir. 2014) (internal citation omitted); *see Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1383 (Fed. Cir. 2014) ("By effectively reading 'substantially' out of the claims, the district court erred."); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) ("We must give meaning to all the words in Exxon's claims."). The Federal Circuit has explained why:

> Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim.

*Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (quotations and citations omitted). Here, an "***arm*** portion" must mean something different from the rest of the phrase in which it appears; otherwise "arm" becomes superfluous. *Agilent Techs, Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1377-78 (Fed. Cir. 2009) (internal citation omitted) ("A '***closed*** chamber . . . adapted to retain a quantity of fluid' ***must mean something different*** than just a 'chamber . . . adapted to retain a quantity of fluid.' Otherwise, the word 'closed' becomes superfluous.")

(emphasis added). "Arm" is a meaningful word in the claim term "arm portion" that distinguishes this item from the "body portion," and the Court's construction read out this differentiating language.

### 3. The Current Construction Of "Arm Portion" Contradicts LoggerHead's Statements To The PTO During Prosecution Of The Asserted Patents.

Beyond the Court's construction conflicting with the plain meaning of "arm portion" and its usage in the claims itself, the construction is completely inconsistent with how LoggerHead used and applied the term to distinguish the prior art during prosecution.

Throughout the course of prosecution, the examiner twice rejected the claims of the '470 patent as anticipated by Buchanan. To overcome those rejections, LoggerHead distinguished the alleged invention from Buchanan based on the structure—rather than the function—of the "arm portion" and "body portion" limitations of the claimed gripping element. Specifically, LoggerHead argued to the Patent Office that "the force transfer element (i.e., pin 26) of Buchanan is directly attached to the body portion" of the plunger 24, and "*not an arm portion* because *Buchanan does not teach or suggest an arm portion*." (PTX 4 at LH-00001836-37.) By contrast, the claimed gripping element in the patents-in-suit includes an "arm portion" (36, shown in red) to which the force transfer element is connected and that projects from the body portion (34, shown in yellow):



**Buchanan**                              **Patents-in-Suit**

23

(*See id.* at LH-00001836 (highlighting added).) According to LoggerHead: "Buchanan's gripping element does ***not*** contain an arm portion. Instead, the force transfer element (i.e., pin 26) of Buchanan is directly attached to the ***body*** portion." (*Id.* at LH-00001837 (emphasis added).) In other words, according to LoggerHead during prosecution, Buchanan's gripping element is all body. Again and again during prosecution, LoggerHead made this distinction: "[t]he force transfer element 26 of Buchanan, as best understood, however, is contiguous ***with the body, not an arm portion because Buchanan does not teach or suggest an arm portion***. For this reason alone, the claims are in condition for allowance." (*Id.* at LH-00001657-58 (emphasis added).)

The construction used at trial was thus inconsistent with LoggerHead's own statements to the Patent Office, as an arm portion could be any "portion of [a] gripping element configured to engage one of the guides and contiguous with a force transfer element(s)." (Dkt. 185 at 22.) But under that function-only definition, Buchanan's supposedly "armless" gripping element would have had an "arm portion" after all, simply because its solid, block-like structure also functionally engages one of the guides and is contiguous with a force transfer element. Indeed, LoggerHead's own expert highlighted LoggerHead's complete change of position at trial, agreeing that under the Court's construction, the Buchanan gripping element satisfies the arm portion and body portion limitations by illustrating Buchanan's arm portion in yellow and body portion in blue:

| **Prosecution** | **Litigation** |
|:---:|:---:|
|  |  |

(DTX 212; DTX 213; Tr. 1290-91.)

By taking advantage of the illusory construction of "arm portion" that LoggerHead proposed and the Court adopted, LoggerHead effectively recaptured the same basic gripping element structure that it distinguished to obtain the '470 patent in the first place. This result is contrary to black letter law. *TorPharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1329 (Fed. Cir. 2003) ("A patentee of course may not recapture during litigation subject matter that was ultimately rejected as unpatentable during prosecution . . . ."); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003) ("the public's reliance on definitive statements made during prosecution" is protected by "precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution"). Patentees should be "bound by representations made and actions that were taken in order to obtain the patent." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011) (citations omitted). "The public notice function of a patent and its prosecution history *requires* that a patentee be held to what he declares during the prosecution of his patent." *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) (emphasis added). "A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later

sue a party who makes that same device for infringement." *Id.*; *see N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345 (Fed. Cir. 2005) (to avoid rejection, "applicant distinguished his invention from the Dechenne patent on the basis of the latter disclosing inner walls that are 'slightly concave.' The inescapable consequence of such an argument is that the scope of applicant's claims cannot cover inner walls that are 'slightly concave.'").[7]

The current construction allowed LoggerHead to do what the law unequivocally prohibits: distinguish block-like gripping elements as being beyond the scope of the claims' arm portion requirement during prosecution, and then assert those same claims against the Max Axess Locking Wrench's block-like gripping element in this litigation (and, indeed, fully flip-flop and now agree that even Buchanan's block-like gripping elements satisfy the limitation).

The construction of "arm portion" must be corrected to provide this term some meaning, and account for LoggerHead's statements to the Patent Office that are wholly inconsistent with the construction and how it was presented to the jury by LoggerHead at trial.

### 4. The Current Construction Of "Arm Portion" Is Contrary To The Specifications Of The Asserted Patents.

In addition to failing to account for LoggerHead's clear, repeated statements to the PTO during prosecution, the current construction also is incorrect as contrary to LoggerHead's description of the limitation in the specification. Every reference to an "arm portion" of a gripping element in the patents' specifications depicts a separately-identifiable structure that

---

[7] To be clear, Defendants do not believe a finding of prosecution disclaimer is necessary to arrive at its proposed construction. Prosecution disclaimer typically involves a situation where the prosecution history dictates a construction that is narrower than the plain meaning of the words used in the claims, *i.e.*, the patentee has "disclaimed" the broader meaning. *See, e.g.*, *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007). Here, the file history is consistent with the undisputed plain meaning of the claim term, and reinforces that an "arm portion" provides the term some structure. To the extent the Court would somehow find the plain meaning of the claim language dictates a broader scope, however, Defendants submit that the prosecution statements did clearly and unmistakably disclaim any construction that would define "arm portion" functionally without affording it some structural meaning to differentiate it from the body portion.

projects from the body portion.  (*E.g.*, PTX 1 at 3:51-4:23 & Figs. 1-2; PTX 3 at 4:60-5:47, 7:61-8:10 & Figs. 1-2; *id.* at 10:37-67 & Figs. 14-15; *id.* at 13:67-14:31 & Figs. 30-31; *id.* at 15:30-16:7 & Figs. 37-38.)  LoggerHead's efforts to confuse the jury at trial by referring to other embodiments in the specification only served to underscore the incorrectness of the Court's construction.  (*E.g.*, Tr. 988 (LoggerHead's counsel referencing embodiments depicted in Figures 11, 12, and 18 of the asserted patents).)

The patents' description of these embodiments expressly contradicts this construction of "arm portion."  Specifically, the embodiment described in Figures 10-12 of both asserted patents discloses an adjustable gripping tool with a solid, block-like gripping element that the specifications describe as having a force transfer element contiguous with the gripping element's ***body*** portion, ***not*** the arm portion:



*FIG. 11*

(PTX 1 at 7:42-8:18 & Fig. 11; PTX 3 at 9:47-10:14 & Fig. 11.)  The patents distinguish other embodiments that employ gripping elements with projecting arm portions contiguous with a force transfer element, explaining that in this Figure 10-12 embodiment, "rather than a U-shaped body, ***a force transfer element extends from each side of the body portion*** to engage the slots of the pair of elements 25a, 25b (25b in FIG. 11) which comprise the second element 24."  (PTX 1 at 8:14-18; PTX 3 at 10:11-14 (emphasis added).)  Nowhere in the figures or written description for this embodiment is an arm portion identified or considered for the simple reason that this

embodiment does not have one. (*See* PTX 1 at 7:42-8:18 & Figs. 10-12; PTX 3 at 9:37-10:14 & Figs. 10-12.)

When claims are limited to certain embodiments, "[t]he manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc). Here, LoggerHead's identification in the Figure 10-12 embodiment of a force transfer element that is contiguous with the body portion of the solid gripping element—and not an arm portion—supports the conclusion that a solid, block-like gripping element does not contain an arm portion. Thus, as a matter of claim construction law, the construction of "arm portion" cannot be so broad as to sweep the block-like gripping elements into its scope. Yet the current construction, particularly when stretched the way LoggerHead applied it, enabled just such an impossible result at trial.

None of (1) the Figure 10-12 embodiment in the asserted patents, (2) Buchanan as distinguished by LoggerHead during prosecution, or (3) the Max Axess Locking Wrench satisfy the arm portion limitation there is only a monolithic, block-like element to which the force transfer element is attached. LoggerHead has never even attempted to draw a distinction between these three gripping elements as it relates to the arm portion limitation, further confirming the impropriety of the current construction.

> **5. The Specifications And Intrinsic Record, As Well As The Ordinary Meaning Of "Arm Portion," Necessitate A Construction Requiring That The Arm Portion Project From The Body Portion.**

In light of the fact that the current construction of "arm portion" contradicts the patents' specifications and prosecution history, as well as multiple canons of claim construction, the Court should revisit this issue and adopt a construction for "arm portion" that is a "portion of gripping element that projects from the body portion and to which the force transfer element is

connected." This construction, proposed by Defendants during the *Markman* proceedings, is supported by the intrinsic record and can withstand scrutiny on appeal.

The claim construction process begins with the premise that "words of a claim are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (quotation omitted). The ordinary and customary meaning of "arm" *is* a structure that projects from or extends from another structure, a "body."[8] This is distinguishable from the current construction, which (as applied by LoggerHead) allowed for the arm and body portion limitations to be one and the same monolithic block. As Dr. Fronczak testified at trial, one of ordinary skill in the art would not understand a "simple block" to have both body and arm portions. (Tr. 1162.) Thus, Defendants' construction affords a reasonable plain meaning to the "arm" qualifier in the claim term, while also being consistent with the further description of the roles these "portions" play in the context of the claimed invention.

Defendants' proposed construction is likewise supported by the specifications and prosecution histories of the asserted patents. It provides the necessary distinction from the embodiment described in the patents' Figures 10-12, in which the force transfer element connects to the body portion. The construction also comports with all the embodiments described in the asserted patents as having both an arm portion and a body portion (*e.g.*, Figures 1-2 of both patents and Figures 14-15, 30-31, and 37-38 of the '470 patent), each of which identifies an arm

---

[8] It is entirely appropriate—but hardly necessary—for the Court to look to dictionaries to confirm the ordinary and customary meaning of an "arm." *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful."); *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014) (defining "plain meaning" of term "profile" by reference to Random House Webster's College Dictionary). In any event, the plain meaning of "arm portion" is effectively undisputed, as LoggerHead has never suggested an alternative definition. Thus, in the context of tools in particular, the Merriam-Webster dictionary defines "arm" as "a slender part of a structure, machine, or an instrument *projecting from a main part*, axis, or fulcrum." (Dkt. 131 Ex. 4 (emphasis added).)

portion that projects from the body portion and connects to the force transfer element. Moreover, while the Court's construction of "arm portion" cannot be reconciled with LoggerHead's usage of the term to distinguish Buchanan during prosecution, Defendants' proposed construction is entirely consistent with the prosecution history and makes sense of LoggerHead's distinction of the prior art.

Defendants' proposed construction also is consistent with other courts' understanding of these words when used in patent claims. Multiple courts have consistently construed an "arm" in the context of mechanical patents to constitute a "projection" from a central part:

- *Humanscale Corp. v. Mass Engineered Design, Inc.*, No. 1:13-cv-00535-CMH-IDD, slip op. at 2 (E.D. Va. Jan. 10, 2014) (construing "arm" as "similar to a human arm, such as the ***projection from*** a central support in a machine") (emphasis added);

- *Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc. et al.*, No. 2:12-cv-04052-RSWL-JCG, slip op. at 8-9 (C.D. Cal. Aug. 14, 2013) (construing "a pair of attachment arms" as "two structures ***projecting*** perpendicularly ***from*** the seat back capable of being received in the two corresponding receptacles for attachment") (emphasis added);

- *Bow Jax Inc. v. Sims Vibration Lab., Inc.*, No. 2:09-cv-0047-RMP, slip op. at 25 (E.D. Wash. June 22, 2010) (construing "first and second arms" as "both the first and second arms are parts of the silencer ***projecting outwardly from*** the center segment") (emphasis added); and

- *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.*, No. 2:06-cv-00272, slip op. at 7 (E.D. Tex. Mar. 13, 2008) (construing "arm assembly" as "a structure having one or more constituent parts connected to and ***projecting from*** the supporting means") (emphasis added).[9]

Accordingly, Defendants' proposed construction is well supported and should be adopted.

> **6.      Upon Correcting The Construction Of "Arm Portion," The Court Should Grant Defendants JMOL Of Non-Infringement.**

Under the proper construction of "arm portion," the Court should grant JMOL of non-infringement with respect to all five asserted patent claims, each of which requires a

---

[9] Copies of the cited claim construction orders are attached as Exhibits 6-9 to Dkt. 131.

gripping element with arm and body portions. Because the proper construction of "arm portion" requires that it project—and at least be a separately identifiable structure—from the body portion, it is beyond any factual dispute that the Max Axess Locking Wrench's alleged gripping element cannot meet this requirement and thus cannot infringe. "Patent infringement involves both claim construction and application of the claim to the accused product." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1345 (Fed. Cir. 2001) (citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1996)). "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

The evidence presented at trial established that the Max Axess Locking Wrench's gripping element is a monolithic block with a pin (which is the alleged force transfer element) pegged through it:[10]



---

[10] Multiple witnesses testified to this point at trial. (Tr. 1006 (Max Axess Locking Wrench inventor Eric Broadaway describing gripping element as "a solid block with a hole through it for the force transfer element."); *id.* at 1030, 1063, 1556 (opinion counsel John Owen testifying, "The Max Axess gripping element is basically a mostly rectangular block with a pin through it"; "the Max Axess gripping element, like the Buchanan plunger, is a basic block with a pin through it"; in "the final Max Axess product, the gripping elements . . . are the 'solid block with a pin through it' formation that we had discussed earlier."); *id.* at 1099-1100, 1112-13 (technical expert Professor Frank Fronczak testifying, "I'm looking at the Max Axess gripping element and I'm saying I know this block with the pin coming through it on the left doesn't have an arm").)

(PTX 13; PTX 51 at APEX0000019; Tr. 1030, 1032, 1063-64, 1187, 1556.)

It is indisputable that the Max Axess Locking Wrench's gripping element does not have any section, part, or portion that could be characterized as a "projection" to satisfy the arm portion limitation; rather, the accused gripping element is a monolithic block with a pin through it. Indeed, even LoggerHead's expert agreed that the infringement read he presented at trial requires a conceptual division of a single monolithic structure. Dr. Cagan theoretically sliced the Max Axess Locking Wrench's alleged gripping element, adding dashed lines of his own design in an attempt to divine the existence of a supposed arm portion within a solid, monolithic block:



(Cagan Trial Dem. Ex. 41 (dashed lines added to representation in LoggerHead's demonstrative exhibit, but not present in actual Max Axess Locking Wrench component); Tr. 502, 528-29.) There is no projection or separately identifiable structure in the Max Axess Locking Wrench gripping element that could satisfy the arm portion limitation as properly construed. At bottom, the Federal Circuit has explained: "[t]here can be no literal infringement where a claim requires two separate structures and one such structure is missing from an accused device."[11] *Becton*

---

[11] Likewise, LoggerHead is prohibited as a matter of law from using the doctrine of equivalents to argue that a monolithic block has both an arm portion and a body portion when it expressly distinguished the prior art on this basis during prosecution. *Canton Bio-Med., Inc. v. Integrated Liner Tech., Inc.*, 216 F.3d 1367, 1371 (Fed. Cir. 2000) (holding prosecution history estoppel barred infringement under the doctrine of equivalents because of arguments applicant made during prosecution history to overcome

*Dickinson*, 616 F.3d at 1255-56; *see Gaus*, 363 F.3d 1288-90. Accordingly, Defendants respectfully request that the Court grant JMOL of non-infringement.[12]

### C. If The Court Does Not Grant JMOL Of Non-Infringement, It Should Grant JMOL Of Invalidity For All Of LoggerHead's Asserted Claims In Light Of The Prior Art Buchanan Reference.

If the Court does not grant JMOL of non-infringement, then it should grant JMOL of invalidity because any distinctions between Buchanan and LoggerHead's asserted claims disappear when LoggerHead's claims are read to cover the Max Axess Locking Wrench, and must be applied to Buchanan in that same manner. *Upsher-Smith Labs., Inc. v. Pamlab, LLC*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("A century-old axiom of patent law holds that a product which would literally infringe if later in time anticipates if earlier."); *accord Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier."). As with infringement, "the first step in any validity analysis is to construe the claims of the invention

---

examiner's rejections based on prior art, rejecting plaintiff's argument that prosecution history estoppel was precluded because applicant had not amended claims during prosecution); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 978-79, 981 (Fed. Cir. 1999) (same). Further, allowing a gripping element with a monolithic block to infringe by equivalence would render the "arm portion" claim limitation a nullity, in violation of Federal Circuit precedent. *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1279-80 (Fed. Cir. 2001) ("[I]f a court determines that a finding of infringement under the doctrine of equivalents would entirely vitiate a particular claim element, then the court should rule that there is no infringement under the doctrine of equivalents," and affirming finding no infringement by equivalence on such basis) (internal quotation omitted).

[12] Alternatively, if the Court declines to go so far as to adopt Defendants' proposed construction of "arm portion," then it should simply clarify the construction to spell out what should already be inherent to it: the claimed arm portion cannot be part of a solid, block-like gripping element. *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1397-98 (Fed. Cir. 2014) (affirming post-trial clarification to claim construction and JMOL of non-infringement); *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1355-57 (Fed. Cir. 2011) (same). This clarification is supported by the ordinary meaning of the term to one of skill in the art. (Tr. 1162.) And, as discussed above in Sections III.B.3-4, it also comports with the prosecution history and specifications of the asserted patents by precluding gripping elements with force transfer elements that connect to the body portion from having an arm portion. Adopting this clarification similarly necessitates JMOL of non-infringement because, again, the Max Axess Locking Wrench's alleged gripping element is just a solid block with a pin through it. At most, the force transfer element (the pin) is contiguous with the alleged body portion and thus cannot satisfy the arm portion limitation every asserted claim requires.

to determine the subject matter for which patent protection is sought." *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999). "The claims, properly interpreted, define the scope of the invention and allow the trial court to determine whether the claimed invention would have been obvious in light of the prior art." *Id.* It is black letter law that claim terms must be applied consistently in the infringement and validity analyses. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1317-18 (Fed. Cir. 2009) (en banc) (collecting cases) ("It has been an inviolate rule that patent claims are construed the same way for validity and for infringement.").

In his trial testimony, Defendants' technical expert Dr. Frank Fronczak made Defendants' *prima facie* case for the invalidity of LoggerHead's five asserted claims. With the aid of a demonstrative slide deck to illustrate his analysis for the jury, Professor Fronczak presented his opinion that Buchanan satisfied all but two of the asserted claims' limitations, which Professor Fronczak denoted with green checkmarks. (Tr. 1122-53; App'x 5, Fronczak DDX 1-79; *see* DTX 75 (Buchanan patent).) For the two remaining limitations—"arm portion" and "wherein the first element includes at least one aligning element"—Dr. Fronczak explained that, if the Max Axess Locking Wrench was deemed to meet these limitations then Buchanan would satisfy them as well.[13]

This is because a finding of infringement would mean that the jury accepted LoggerHead's applications of these claim elements to the Max Axess Locking Wrench, such that:

---

[13] Even under LoggerHead's application of the current construction, the Max Axess Locking Wrench cannot satisfy the "arm portion" limitation as a matter of law. (*E.g.*, Tr. 1098-1102, 1113, 1164, 1177-81, 1188.) As Professor Fronczak testified, a person of skill in the art would not consider the Max Axess Locking Wrench's gripping elements as having an arm portion for multiple reasons, including that the tool's monolithic, block-like gripping elements are not "configured" to engage the guides. (*Id.*) Similarly, Professor Fronczak testified that the Max Axess Locking Wrench does not satisfy the "aligning element" limitation because the alleged aligning elements are not included on the first element as the patents require. (*E.g., id.* at 1102-08, 1114.)

(1) an arm portion could be found in a gripping element formed from a solid block with a pin through it; and (2) the aligning element could be "included" on the first element by merely passing through the first element. The Buchanan tool is designed the same as the Max Axess Locking Wrench in these two respects (Tr. 1129-30, 1151-54), so finding that the Max Axess Locking Wrench met these limitations for infringement logically would require Buchanan to satisfy them as well for invalidity. "It has been an inviolate rule that patent claims are construed the same way for validity and for infringement." *Abbott Labs.*, 566 F.3d at 1317-18 (collecting cases). "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement. Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (citations omitted). Accordingly, if the Max Axess Locking Wrench infringes, then Professor Fronczak demonstrated that Buchanan satisfies every element of the asserted claims, meaning these claims are invalid.

In rebuttal, LoggerHead's technical expert Jonathan Cagan did not dispute Professor Fronczak's opinions that Buchanan satisfied the asserted claims for the overwhelming majority of the limitations. Dr. Cagan raised only three aspects of the claims that he argued Buchanan did not satisfy; however, none of his argument unsettle Professor Fronczak's analysis or provide a sufficient legal basis to find anything other than invalidity (if the claims are also infringed).

First, Dr. Cagan argued that Buchanan's cam plates 27 and 28 could not be part of the claimed "second element" because these cam plates are "separate structure[s]" from the handle member 14. (Tr. 1244-45.) This argument misses the mark because the Court's construction of "second element" for the '579 patent does not include any requirement that the second element be formed from a single structure. (Dkt. 185 at 15-18 (*Markman* order).) This is particularly so

where, as is the case in Buchanan, the additional "structures" (here, cam plates) are fixed to and move in unison with the handle member. Accordingly, Dr. Cagan sought to read a limitation into the claims that is not there.

Second, Dr. Cagan asserted that Buchanan cannot satisfy the "second element" and "actuation portion" limitations of the '470 patent because Buchanan's cam plates are not a single structure and not "formed within and integral to the tool head."[14] (Tr. 1244-45, 1247-48.) As an initial matter, Dr. Cagan's opinions on infringement and invalidity were inconsistent, with Dr. Cagan offering infringement opinions that the second element components could be a "two-piece assembly" (Tr. 520-21) and then arguing that Buchanan did not meet this limitation because it arguably uses two pieces to accomplish the same function (Tr. 1244-45). Professor Fronczak explained that these limitations were met by Buchanan. (*E.g.*, Tr. 1144-47.) Moreover, even if not expressly taught by Buchanan, Professor Fronczak and Defendants further established proof of obviousness for this limitation, a point that LoggerHead did not even attempt to meaningfully address. Professor Fronczak testified that it would have been a matter of simple design choice for a person of ordinary skill in the art at the time of LoggerHead's invention to either weld the cam plates directly to the handle member or simply incorporate (*i.e.*, cut or drill) the cam plates' slots directly into the plates of the handle member. (Tr. 1147-50.) Dr. Cagan presented no

---

[14] The Court's construction of "second element" and "actuation portion" for the '470 patent were also erroneous, reading in limitations from certain additional embodiments in the '470 patent's specification that are found nowhere in the claims themselves. (Dkt. 145 at 13-14.) In particular, the fact that the Court construed these limitations more narrowly for the '470 patent than for the '579 patent, despite the fact that the '470 patent has a broader range of disclosure, finds no support in claim construction precedent. *See, e.g.*, *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1368-71 (Fed. Cir. 2014) (construing claim term in later patent the same as in the parent patent where later patent was a continuation of parent); *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1326 (Fed. Cir. 2001) (ruling district court erred in construing claim limitation differently for related patents, stating "we see no reason to construe the claims of the former two patents more narrowly than those of the latter two patents"); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) (reasoning that "patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.").

testimony or evidence to rebut this opinion. Indeed, Dr. Cagan's testimony about the equivalency of a one- versus two-piece assembly supports, rather than refutes, a finding of obviousness. (Tr. 521 (referring to two-piece assembly of alleged second element, noting that "in terms of overall functioning . . . you'll see that they are the same" as if performed by a single piece).)

Third, Dr. Cagan claimed that Professor Fronczak failed to present any evidence that the movement of Buchanan's gripping elements is "curvilinear," as Claim 16 of the '579 patent and Claim 9 of the '470 patent both require. (Tr. 1250-51.) This contention is flatly contradicted by the trial record. Dr. Cagan ignored Professor Fronczak's testimony that Buchanan's gripping elements simultaneously move inward and radially as the handles are squeezed:

> As the handles are moved together, just look at one of those spokes coming up that represents the -- or that show the gripping elements, the motion of the gripping elements. It starts off at a 1 o'clock position. As the handles are squeezed, it moves to a 12 o'clock position. Simultaneously, it moves radially inward as it is moving. So the motion is curvilinear.

(Tr. 1153.) Professor Fronczak is a professor emeritus in mechanical engineering and certainly was able to reach this opinion, as he testified, based on his review of Buchanan's drawings, which can be self-evident of how the tool would operate. Dr. Cagan offered no substantive response or evidence to contradict Professor Fronczak's testimony.

Professor Fronczak proved that, if the Max Axess Locking Wrench design is found to infringe, then Buchanan satisfies every limitation in those claims as well. Dr. Cagan's rebuttal validity arguments misapply the Court's constructions and ignore Professor Fronczak's actual testimony, and they cannot form a sufficient legal basis for LoggerHead to avoid a finding of invalidity if the Max Axess Locking Wrench infringement verdict is upheld.

In short, no reasonable jury could find the Max Axess Locking Wrench is covered by the claims but the Buchanan adjustable gripping tool is not. Thus, should the claim construction

remain unchanged and/or JMOL of non-infringement is denied, JMOL of invalidity must be granted.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court: (1) enter summary judgment of no willfulness for the alleged patent infringement or grant JMOL of that the purported patent infringement was not willful; (2) grant JMOL of non-infringement based on the correct constructions of "arm portion" and "body portion" present in every asserted claim; and (3) if the Court does not grant JMOL of non-infringement, then it should grant JMOL of invalidity because any distinctions between Buchanan and LoggerHead's asserted claims disappear when LoggerHead's claims are read to cover the Max Axess Locking Wrench and are applied consistently to Buchanan.

*     *     *

Respectfully submitted,

Dated:  June 22, 2017        By: */s/ Marcus E. Sernel, P.C.*             

                             Marcus E. Sernel, P.C.
Eric D. Hayes
Ian J. Block
Katherine E. Rhoades
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email:  msernel@kirkland.com
       eric.hayes@kirkland.com
       ian.block@kirkland.com
       katherine.rhoades@kirkland.com

Gregory S. Arovas, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:  gregory.arovas@kirkland.com

*Attorneys for Defendants Apex Tool Group, LLC and Sears Holdings Corporation*

Dated:  June 22, 2017        By: */s/ James M. Hilmert*                 

                             James M. Hilmert
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email:  jhilmert@winston.com

*Attorney for Defendant Sears Holdings Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2017, the foregoing document was filed electronically through the Court's Electronic Case Filing System.  Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.


By: */s/ Marcus E. Sernel, P.C.*