**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LOGGERHEAD TOOLS, LLC,

        Plaintiff,

    v.

SEARS HOLDINGS CORPORATION and
APEX TOOL GROUP, LLC,

        Defendants.

Case No. 1:12-cv-09033

Honorable Rebecca R. Pallmeyer

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION
AND REINSTATEMENT OF THE JURY'S VERDICT OR ALTERNATIVELY,
JUDGMENT OF INFRINGEMENT BASED ON POST-VERDICT CLAIM
<u>CONSTRUCTION AND REINSTATEMENT OF THE JURY'S VERDICT</u>**

## TABLE OF CONTENTS

I. THE POST-VERDICT CLAIM CONSTRUCTION CHANGE IS CLEARLY ERRONEOUS BECAUSE IT WAS INFLUENCED BY THE MALW ...............................1

II. THE POST-VERDICT CHANGE TO CLAIM CONSTRUCTION VIOLATES THE LAW OF THE CASE AND STANDARDS FOR RECONSIDERATION .....................................3

III. THE MALW INFRINGES AS A MATTER OF LAW UNDER THE REVISED POST-VERDICT CONSTRUCTION OF "ARM PORTION" .........................................................9

    A. THE "ARM PORTION" IS AN IDENTIFIABLE AND NOT ARBITRARY STRUCTURE..........................................................................................................10

    B. THE MALW ARM PORTION PROJECTS FROM THE BODY PORTION.................13

IV. THE REVISED CONSTRUCTION WOULD NOT ALTER THE TRIAL RESULT .........15

V. CONCLUSION ......................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams Arms, Inc. v. Sig Sauer, Inc.*,
  No. 8:10-CV-146-T-27, 2010 U.S. Dist. LEXIS 91807 (M.D. Fla. Aug. 2, 2010) ...... 10, 13-14

*Advanced Display Sys., Inc. v. Kent State Univ.*,
  212 F.3d 1272 (Fed. Cir. 2000) ................................................................ 16-17

*Aspex Eyewear, Inc., et al. v. Altair Eyewear, Inc.*,
  386 F. Supp. 2d 526 (S.D.N.Y. 2005) ......................................................... 14

*Avitia v. Metropolitan Club*,
  49 F.3d 1219 (7th Cir. 1995) ........................................................................ 5

*Best v. Shell Oil Co.*,
  107 F.3d 544 (7th Cir. 1997) ........................................................................ 4

*Biodex Corp. v. Loredan Biomed., Inc.*,
  946 F.2d 850 (Fed. Cir. 1991) ..................................................................... 17

*Brengettcy v. Horton*,
  423 F.3d 674 (7th Cir. 2005) ........................................................................ 5

*Broaddus v. Shields*,
  665 F.3d 846 (7th Cir. 2011) ........................................................................ 4

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
  418 F.3d 1225 (Fed. Cir. 2005) ................................................................ 6, 7

*Cytologix Corp. v. Ventana Med. Sys.*,
  424 F.3d 1168 (Fed. Cir. 2005) ................................................................... 16

*Depuy, Inc. v. Zimmer Holdings, Inc.*,
  276 F. Supp. 2d 910 (N.D. Ill. 2003) .......................................................... 12

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
  845 F.3d 1357 (Fed. Cir. 2017) ............................................................. 15, 16

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) .................................................................... 2

*GPNE Corp. v. Apple Inc.*,
  108 F. Supp. 3d 839 (N.D. Cal. 2015) ......................................................... 17

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ..................................................................... 20

*MarcTec, LLC v. Johnson & Johnson, et al.*,
  No. 07-cv-825, 2009 U.S. Dist. LEXIS 27011 (N.D. Ill., Mar. 31, 2009) ............... 13

*McNeil-PPC, Inc. v. Perrigo Co.*,
　2007 U.S. Dist. LEXIS 2937 (S.D.N.Y. Jan. 17, 2007) ............................................ 7

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
　287 F.3d 1062 (Fed. Cir. 2002) ............................................................................... 2

*Not Dead Yet Mfg. v. Pride Sols., LLC*,
　No. 13 C 3418, 2018 U.S. Dist. LEXIS 17246 (N.D. Ill. Feb. 2, 2018) ................... 3

*Oto v. Metro. Life Ins. Co.*,
　224 F.3d 601 (7th Cir. 2000) ................................................................................... 4

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
　695 F.3d 1285 (Fed. Cir. 2012) ............................................................................... 7

*PPG Indus. v. Guardian Indus. Corp.*,
　156 F.3d 1351 (Fed. Cir. 1998) ............................................................................. 18

*Pfizer, Inc. v. Teva Pharm. USA, Inc.*,
　429 F.3d 1364 (Fed. Cir. 2005) ...............................................................................6

*Pressure Prods. Med. Supplies v. Greatbatch Ltd.*,
　599 F.3d 1308 (Fed. Cir. 2010) ............................................................................... 6

*Ravo v. Ethicon Endo-Surgery, Inc.*,
　No. 04-617, 2005 U.S. Dist. LEXIS 28382 (W.D. Pa. Nov. 17, 2005) ............. 13, 14

*Rexnord Corp. v. Laitram Corp.*,
　274 F.3d 1336 (Fed. Cir. 2001) ............................................................................. 13

*SmithKline Beecham Corp. v. Apotex Corp.*,
　403 F.3d 1331 (Fed. Cir. 2005) ........................................................................... 2-3

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
　775 F.2d 1107 (Fed. Cir. 1985) ........................................................................ 2, 15

*Therasense, Inc. v. Becton, Dickinson & Co.*,
　560 F. Supp. 2d 835 (N.D. Cal. 2008) .................................................................... 7

*Tikalsky v. Chicago*,
　687 F.2d 175 (7th Cir. 1982) ...................................................................... 18-19, 20

*Toro Co. v. White Consol. Indus.*,
　383 F.3d 1326 (Fed. Cir. 2004) ........................................................................... 5-6

*United States v. Turtle Mountain Band of Chippewa Indians*,
　612 F.2d 517 (Ct. Cl. 1979) .................................................................................... 6

*Wesley Jessen Corp. v. Coopervision, Inc.*,
　No. 01-3678, 2002 U.S. Dist. LEXIS 5172 (C.D. Cal., Mar. 14, 2002) ................. 13

*Wi-LAN, Inc. v. Apple Inc.*,
    811 F.3d 455 (Fed. Cir. 2016) ............................................................................. 7, 8

*Williams v. Commissioner*,
    1 F.3d 502 (7th Cir. 1993) ................................................................................. 4

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
    442 F.3d 1322 (Fed. Cir. 2006) ........................................................................ 3

Plaintiff LoggerHead Tools, LLC, ("LH") moves for reconsideration of the Court's December 22, 2017 Memorandum Opinion and Order (Dkt. 492) granting a new trial ("New Trial Order" or "NTO"). Alternatively, LH moves for summary judgment of infringement against Defendants based on the Court's revised claim construction. LH seeks reinstatement of the jury's verdict based on either its motion for reconsideration or its motion for summary judgment of infringement. The New Trial Order changed the Court's construction of "arm portion" post-verdict and *sua sponte* ordered a new trial on infringement and willfulness.[1]

The Court clearly erred in changing the construction of "arm portion" post-verdict, in violation of established legal principles from both the Seventh and Federal Circuits. However, even under the Court's post-verdict claim construction, the Court erred in grantining a new trial because the Max Axess Locking Wrench ("MALW") infringes based on undisputed facts. The post-verdict claim construction does not require a new trial because the revised construction could not have changed the verdict, and thus any error in the jury instruction was harmless.

## I.     THE POST-VERDICT CLAIM CONSTRUCTION CHANGE IS CLEARLY ERRONEOUS BECAUSE IT WAS INFLUENCED BY THE MALW

The NTO clearly erred because its post-verdict change to the claim construction was influenced by the structure of the accused MALW device and in service of policy goals. For example, the NTO states, "[a]s shown at trial, the adopted construction of "arm portion blurred the boundaries between what counts as a 'body' and what counts as an 'arm.'" (NTO at 23.) Further,

---

[1] The NTO states that a new trial is required "on the issues of infringement and invalidity, as well as willfulness" (NTO at 2), but the Court never identified how the jury's "not invalid" verdict could change under the new claim construction. The NTO states that the *infringement* verdict could change as a result of the revised claim construction (*id*. at 35), but it does not make any findings that the *not invalid* verdict could have changed, nor could it. The Court denied Defendants' invalidity JMOL (*id*. at 19-21)—and the only impact the changed construction of "arm portion" could have on invalidity is to make it more difficult to prove, because if the Court's changed construction has any effect on the scope of the claims it makes them narrower and thus harder to invalidate. The NTO also errs stating Defendants "request a new trial on the issue of willfulness" (*id*. at 1), and it is granting "their alternative motion for a new trial" (*id*. at 2). Defendants did not seek a new trial except on damages. LH respectfully requests the errors be corrected.

the NTO asserted that "[d]rawing arbitrary lines [on the accused device] is exactly what LoggerHead's expert did at trial." (*Id.* at 29.) As a result, the NTO declared that "Judge Darrah's construction proved an unworkable standard"—and went on to explain that the construction of "arm portion" proved unworkable based on a discussion of LH's expert's infringement testimony directed to the accused MALW gripping element. (*Id.* at 29-30.)

The NTO also stated that while its post-verdict claim construction change "may appear harsh—even dispositive—on the question of infringement," the Court felt compelled to change the construction post-verdict because the "court's job is to define the metes and bounds of a patent's claims. This not only aids litigation, but ensures that competitors may 'rely on [a patent's] representations when determining a course of lawful conduct, such as launching a new product or designing-around a patented invention.'" (NTO at 30, citations omitted.) This was clear legal error based on long-standing Federal Circuit precedent forbidding the construction of claims by reference to the accused device. *See, e.g.*, *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) (holding a claim is not construed "in light of the accused device," because that "procedure would make infringement a matter of judicial whim" and that it "is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement.") (original emphasis); *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) (finding district court erred because it arrived at the construction of a claim term "by examining" the "accused device and, in effect, construing the claims to exclude it. It is well settled that claims may not be construed by reference to the accused device."); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1337-40 (Fed. Cir. 2003) (holding that the district court's claim construction "was in error" because "it was influenced by the structure and function of the alleged infringing device"); *SmithKline Beecham Corp. v. Apotex Corp.*, 403

2

F.3d 1331, 1341-42 (Fed. Cir. 2005) (holding district court construction erred in construing claim in light of accused product, stating "[w]hile these concerns [about the impact of claim construction on infringement] are certainly legitimate, claim construction, as noted before, proceeds independent of its policy implications."); *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co*., 442 F.3d 1322, 1330-31 (Fed. Cir. 2006) ("a court that a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language. Thus, the rule forbids a court from tailoring a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement. In other words, it forbids biasing the claim construction process to exclude or include specific features of the accused product or process.").

## II. THE POST-VERDICT CHANGE TO CLAIM CONSTRUCTION VIOLATES THE LAW OF THE CASE AND STANDARDS FOR RECONSIDERATION

The NTO's post-verdict change in claim construction based on reconsideration is clear legal error. This Court recently articulated the standard for reconsideration:

> [T]he moving party "must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). In this context, "manifest error" of law means "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* "It is well established that a motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011).

*Not Dead Yet Mfg. v. Pride Sols., LLC*, No. 13 C 3418, 2018 U.S. Dist. LEXIS 17246, at *4-5 (N.D. Ill. Feb. 2, 2018) (Pallmeyer, J.). The NTO satisfies none of these criteria. It does not identify (1) any change in the law (much less a "significant change"), (2) any significant new facts, (3) any decision made outside the adversarial issues presented, or (4) any misunderstanding or misapprehension of the parties' arguments. With respect to the construction of "arm portion,"

the arguments presented post-trial were the same arguments presented and considered during *Markman* and summary judgment. Judge Darrah specifically requested additional briefing during *Markman* (Dkts. 168, 175, 176), which addressed the construction of "arm portion" at length— right down to the red and green graphic discussed in the NTO. (*Compare* NTO at 28, *with* Dkt. 175 at 7.) During summary judgment, Judge Darrah also considered and rejected the same arguments addressed in the NTO with respect to Dr. Cagan's dotted line graphic. (*Compare* NTO at 29, *with* Dkt. 369 at 7; Dkt. 371 at 7, 8-9.)

The NTO fails to satisfy any of the criteria for reconsideration identified in *Not Dead Yet*. Instead, the NTO reconsidered Judge Darrah's Order because it is "flawed and needs to be revisited." (NTO at 22.) But a "flaw" in a prior order is not a basis for reconsideration. *See Not Dead Yet*, *4-5 (citing *Oto*, 224 F.3d at 606; *Broaddus*, 665 F.3d at 860). As *Not Yet Dead* recognized, reconsideration is rare and exceptional—even where there is a change in judge mid-case—because "[l]itigants have a right to expect that a change in judges will not mean going back to square one. The second judge may alter previous rulings if new information convinces [her] that they are incorrect, **but [she] is not free to do so even though the time for reconsideration has not expired, merely because [she] has a different view of the law or facts from the first judge**." *Williams v. Commissioner*, 1 F.3d 502, 503 (7th Cir. 1993) (emphasis added). "Instead, the presumption is that earlier rulings will stand, even though it can be overcome for compelling reasons (such as new controlling law or clear error)." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997). The NTO's reconsideration is based on clear / manifest error in Judge Darrah's *Markman* Order. But the NTO does not satisfy that standard for two reasons.

*First*, manifest error means "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606. Judge Darrah's *Markman* Order did not result from wholesale disregard, misapplication, or failure to recognize controlling precedent—and the NTO

does not make such findings. (NTO, *passim*.) Instead, the NTO examined the very same law and facts as Judge Darrah,[2] and disagreed only with his construction of "arm portion."

*Second*, for clear error reconsideration of a previous ruling by the same court (whether the same judge or a previous judge), reconsideration is justified only if the Court "has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm from the party that had benefited from it." *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1227 (7th Cir. 1995) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)). The NTO did not consider the undue harm inflicted upon LH by the Court's post-verdict change to claim construction. (NTO, *passim*.) The NTO issued over 5 years after LH its lawsuit, more than 20 months after the *Markman* Order issued, and over 7 months after prevailing in a two-week jury trial. It inflicts the gravest harm imaginable to a small, father/son operated business to vacate the jury's verdict based on a changed post-verdict construction and order a new trial that Defendants did not even request. If not corrected, the NTO will require the time and expense of redoing much of the work undertaken to date in reliance on Judge Darrah's construction (certain fact and expert depositions, expert reports, summary judgment briefing, and trial). It is not hyperbole that the harm to LH from the Court's post-verdict reconsideration of claim construction is precisely the kind of undue harm that motivates the policy rationale behind the law of the case doctrine and the federal judiciary's strict standards for reconsideration that make it the rare exception.

"The doctrine of law of the case was created to ensure judicial efficiency and to prevent the possibility of endless litigation." *Toro Co. v. White Consol. Indus.*, 383 F.3d 1326, 1335 (Fed. Cir.

---

[2] For this reason, the NTO's "Cf." citation to *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005) (NTO at 22 n. 5) is doubly misplaced. Not only did the parties' dispute over arm portion present "precisely the same question in precisely the same way" before Judge Darrah and this Court—in *Brengettcy* the appellate court ultimately held that *it was error* for Judge St. Eve to overturn Judge Bucklo's prior decision, *even though* Judge St. Eve was not presented with precisely the same question in the same way.

2004). If the doctrine "is to have any substance, it must sometimes require a judge to uphold a ruling on a question that the judge would decide the other way if it were presented for the first time." *Id.*; *see also id.*, citing *Roberts v. Cooper*, 61 U.S. 467, 481 (1857) ("There would be no end to a suit if every obstinate litigant could . . . compel a court to listen to criticisms on their opinions, or speculate of chances from changes of its members."); *United States v. Turtle Mountain Band of Chippewa Indians*, 612 F.2d 517, 520 (Ct. Cl. 1979) ("No litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time.").

The NTO cites the Federal Circuit's acceptance of "rolling" claim construction in certain circumstances as justification for its post-verdict change to the construction of "arm portion." (NTO at 16.) However, that authority actually supports reinstating the verdict, not granting a new trial. While the Federal Circuit has authorized revisiting and altering a claim construction in appropriate factual settings, none of the cited cases endorse modifications after a jury verdict—and in fact the cited authority establishes that such post-verdict changes are impermissible. In *Pressure Prods. Med. Supplies v. Greatbatch Ltd.*, the magistrate judge's initial claim construction was modified by the district judge at trial after cross-examination "revealed a dispute over the trial court's definition of the term 'score line'" to offer "clarification of claim terms **before the jury deliberates**." 599 F.3d 1308, 1315-16 (Fed. Cir. 2010). In *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, the court affirmed a claim construction that occurred in a preliminary injunction proceeding, and the Federal Circuit found it prudent to give guidance for the remand in recognition that it could change "upon the development of the record" beyond the preliminary injunction stage. 429 F.3d 1364, 1377 (Fed. Cir. 2005). *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1234 (Fed. Cir. 2005) did not involve a post-verdict change in claim construction at all; instead it addressed whether an invalidity counterclaim should be dismissed with or without prejudice in a "changing

6

claim construction environment." Notably, the holding of *CollegeNet* reversed a non-infringement JMOL and reinstated the jury's infringement verdict based in part on the district court's misinterpretation of the prosecution history. *Id*. at 1227, 1233.

It is thus beyond dispute that the NTO case citations do not justify the propriety of post-verdict claim construction changes. And the reality is that many—if not all—Federal Circuit cases on rolling constructions involve eve of trial or mid-trial changes to constructions involving complex technology, or occur in the context of preliminary injunctions, explicitly tentative rulings, or constructions entered by magistrate judges. *See, e.g.*, *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1302 (Fed. Cir. 2012) (citing *Guttman, Inc. v. Kopykake Enters*., 302 F.3d 1352, 1361 (Fed. Cir. 2002) (district courts can "engage in a rolling claim construction," where the issues involved are complex and construction at the preliminary injunction stage may evolve at later stages because "motions for a preliminary injunction may come for decision before significant discovery has occurred."); *Transonic Sys. v. Non-Invasive Med. Techs. Corp.,* 75 Fed. Appx. 765, 774 (Fed. Cir. 2003) (same); *McNeil-PPC, Inc. v. Perrigo Co.*, 2007 U.S. Dist. LEXIS 2937, at *6 (S.D.N.Y. Jan. 17, 2007) (declining to revisit construction "pursuant to the principle of 'rolling claim construction" which "is most often applied when the Court issues 'tentative' constructions when 'faced with construing highly technical claim language on an expedited basis,' such as on a preliminary injunction motion."); *Therasense, Inc. v. Becton, Dickinson & Co.*, 560 F. Supp. 2d 835, 844 (N.D. Cal. 2008) (rolling claim construction usually "involved avowedly tentative constructions arrived at in the preliminary injunction context.").

And as the NTO acknowledged, the "Federal Circuit has also warned that 'it is too late at the JMOL stage to argue for or adopt a more detailed interpretation of the claim language and test the jury verdict by that new and more detailed interpretation.'" (NTO at 17, citing *Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455, 466 (Fed. Cir. 2016). Indeed, in *Wi-LAN*, the court reversed the district

court's post-verdict claim construction addition. *Id*. The exception to this rule, whereby a court may elaborate on a construction post-trial (*see Wi-LAN* at 465), is not applicable here because the Court found requiring that the "gripping element must 'project' from the body portion" "does not 'merely elaborate' on the existing construction…" (NTO at 18.)

Despite acknowledging that the exception to the rule forbidding post-verdict changes to claim construction does not apply here, the NTO relies on rolling claim construction cases for authority supporting its post-verdict change in claim construction to vacate the jury's verdict and order a new trial. (NTO at 21.) Citing *Pressure Products*, the NTO asserts that the "key rationale" behind forbidding changing claim construction post-verdict—"the potential for surprise and prejudice"—is "less pertinent in the context" of a new trial order as compared to granting a JMOL based on such a change. (NTO at 21.) However, the NTO does not cite a single case that adopts or agrees with this reasoning. And the reason there is no authority for the NTO's grant of a new trial based on post-verdict claim construction is precisely because the NTO did exactly what the Federal Circuit forbids: it changed the claim construction post-verdict and vacated the jury's verdict—which eliminated the ability of the parties to have "an opportunity to consider the new construction and adjust [their] arguments to account for the change."

Indeed, it is hard to envision a set of facts where "surprise and prejudice" could be any more clear and dramatic than a post-verdict change to claim construction that results it a new trial order that no party requested. This is particularly so, given the Court informed the parties at the Pretrial Conference on the eve of trial, in the context of claim construction, that it was "not going to depart from the rulings that have already been made" because "I don't think either side is asking me to do that." Ex. A at 52:1-3. It is plain that the rationale for rolling constructions does not apply to post-verdict changes beyond clarifications, and therefore the Court's NTO is in conflict with Federal Circuit authority and should be corrected. Based on rolling claim construction

authority, the Court could have changed the construction of "arm portion" anytime between February 3, 3017, and May 11, 2017 when the jury was charged. No one asked the Court to change the claim construction, and the Court apparently did not see anything wrong with the claim construction after presiding over the pre-trial proceedings and the trial. Defendants' request post-trial to change the claim construction was too late, and it was legal error for the Court to do so in its New Trial Order. Because the Court did not revise claim construction prior to the jury getting the case, Federal Circuit precedent compels entry of judgment on the verdict.

Given the circumstances, judicial and party resources would be conserved by reinstating the verdict, ruling on the remaining post-trial motions, and allowing any appeal to proceed. If the Federal Circuit finds legal error with Judge Darrah's construction, they will correct it. There is no prejudice to Defendants from this result, because entry of judgment permits them to appeal the disputed claim construction issue. If the Federal Circuit affirms, the case ends. If the Federal Circuit reverses, it will either enter judgment or order a new trial. The current posture, on the other hand, contemplates at least two trials with the attendant expense and delay—and could even result in a third trial if on appeal from the second trial the Federal Circuit disagrees with both district court constructions and fashions its own. [3].

## III.    THE MALW INFRINGES AS A MATTER OF LAW UNDER THE REVISED POST-VERDICT CONSTRUCTION OF "ARM PORTION"

The MALW infringes under the revised construction requiring that the "arm portion" "must also be an identifiable structure that projects from the body portion of the gripping

---

[3] Entering judgment on the jury's verdict is particularly prudent here given the dispute centers on a disagreement between two district judge on claim construction. Because claim construction is an issue of law reviewed *de novo*, Federal Circuit reversals are not uncommon. *See, e.g.*, Ex. B, Jonas, et al., Informal Deference: A Historical, Empirical, and Normative Analysis of Patent Claim Construction, 108 Nw. U. L. Rev. 1 (2013-2014) (noting reversal rates in claim construction appeals range from 35% to 44% over the last several years).

element." (NTO at 34.) Uncontroverted trial evidence shows that the MALW's gripping element contains an arm portion that is (1) an identifiable structure that (2) projects from the body portion.

### A. The "arm portion" is an Identifiable and Not Arbitrary Structure

The Asserted Claims require that the gripping element include an "arm portion … configured to engage the guide." The construction of this term in the jury instructions requires the same. Contrary to the NTO's finding (NTO at 25), "configured to" does not define what an arm portion does—it defines what it is. This construction and limitation is not a functional limitation— it means an arm portion having a structure that enables it to engage the guide. *See, e.g., Adams Arms, Inc. v. Sig Sauer, Inc.*, No. 8:10-CV-146-T-27TGW, 2010 U.S. Dist. LEXIS 91807, at *13 (M.D. Fla. Aug. 2, 2010) ("'**[C]onfigured to** mount'…**means a bolt carrier key *having a structure* that enables it to be mounted to a separate bolt carrier**. This construction is required by the plain meaning of the claim language.") (emphasis added). Stating that the arm portion is *configured to engage the guide* (having a structure that enables it to engage the guide), is conceptually distinct from stating the arm portion engages the guide (function). When examined in context, the arm portion is the portion of the gripping element's structure configured to engage the guides. The limitation is structural. *See* Cagan Decl. ¶11.[4] And a POSA would under that this structural limitation is identified as an arm portion because it performs the arm-like function of extending from the body portion to align the gripping element within the guide. *Id.* ¶12.

Likewise, the arm portion that is configured to engage the guide, is necessarily an "identifiable structure." As Dr. Cagan testified and showed in his infringement demonstratives, the dotted lines are drawn to show where the MALW gripping element's arm portion *structure* physically engages the guide. The dotted lines corresponding with the body portion are similarly

---

[4] All references to "Cagan Decl." mean the Declaration of Jonathan Cagan in Support of LoggerHead's Motion for Summary Judgment of Infringement, submitted herewith.

structurally defined by the 3-dimensional portion that contacts the workpiece. (NTO at 14,

showing Cagan Demonstrative Exhibit 41.) Dr. Cagan testified as follows:

> Q. Can you describe what you have put together here for the jury on Cagan 41.
> A.  Well, on the left side, you will see the gripping element from the Max Axess. And what you will see in dashed lines is, there is a portion toward the front of what you are seeing, which is the body portion. That's the part that will engage and impart force onto the workpiece. What you see as dotted lines running along the gripping element and on both sides of that, that is the portion -- that's the arm portion. That's the portion that is engaged within the guide of the first element and also abuts the force transfer element, which you see there…



"arm portion"

"body portion"

SOF-27;[5] Ex. C at 502:1-12. And in fact, Dr. Cagan drew the same

lines for the arm portion at this deposition that correspond to his

dotted line trial graphic—and that was before the Court on summary

judgment. *See* Dkt. 369 at 7.



Fig. 4 (Arm Portion as Drawn at Dr. Cagan's Deposition)

The NTO contends in error that Dr. Cagan's dotted lines are

arbitrary. (NTO at 29, "Drawing arbitrary lines is exactly what LoggerHead's expert did at trial.")

This finding ignores Dr. Cagan's trial testimony—not cited or discussed in the NTO—that those

lines are drawn very precisely to correspond with the structural requirements of "arm portion" and

"body portion" present in the MALW as the claims require. On cross, Dr. Cagan testified:

> Q. Now, you would agree with me that the claims -- all of the asserted claims in this case require a gripping element with three things, an arm portion, a body portion and a force transfer element, correct?
> A  And to be clear, they have to have certain properties so the -- as laid out in the actual claim.
> Q  I agree with that.  But you would agree with me the gripping element as required by the claims must have an arm portion, a body portion and a force transfer element, correct?
> A  Correct.  One that has, again, the body portion engages with the workpiece, the arm portion has to align with the guides and abut the force transfer element and a force transfer element.

---

[5] All references to "SOF" are to the Statement of Undisputed Material Facts in Support of LoggerHead's Motion for Summary Judgment of Infringement, submitted herewith.

SOF-28; Ex. C at 526:8-20. For this reason, it is wrong as a matter of fact and law that "[a]ny future expert could draw these dotted lines differently…" (NTO at 30.) The arm portion and body portion are described with certainty and specificity in the claim language itself. SOF-8-12.

Additional evidence that the arm portion is an "identifiable structure that projects from the body portion" is *Defendants'* expert's trial testimony. During cross-examination, Dr. Fronczak testified about a physical exhibit of a gripping element from a MALW, depicted herein.

Dr. Fronczak admitted that this gripping element includes an *identifiable, visible* portion of the gripping element that engages the guide:

> Q. Whether you call them transfer marks or wear marks, where those marks exist on the gripping element that we're all looking at, is that about where the gripping element engages the guide of the Max Axess Locking Wrench?
> A. Yes, that looks like that's correct.



SOF-24-25; Ex. C at 1220:15-19.

Defendants and the NTO each concede that "arm portion" and "body portion" need not be entirely separate structures and could be a part of the same piece. *Compare* Dkt. 456 at 20 n.5 ("…Defendants do not argue, and have never argued, that the 'arm portion' and 'body portion' must be entirely separate structures…"), *with* NTO at 26 ("A 'portion' does indeed mean 'part of a whole,' quoting *Depuy, Inc. v. Zimmer Holdings, Inc*., 276 F. Supp. 2d 910, 916-17 (N.D. Ill. 2003)), but two portions may not be the *same part* with that whole. *See Engel Industries*, 96 F.3d at 1404-05.") And, as the testimony of both parties' experts confirms, the arm portion is identifiable in the MALW gripping element and it is not the same part of the gripping element as the body portion. *See* Cagan Decl. ¶¶15-17. Nor does the Court's revised construction require stand-alone structures. Indeed, the embodiment from the patents discussed in the NTO shows one piece, a part of which is the arm portion and a part of which is the body portion. Cagan Decl. ¶14.

The common usage of the word "portion" and case law interpreting it supports LH's position. "[S]o long as a 'portion' of an object is a 'part' of that object, it can connote either the quality of being 'separate' or of being 'integral.'" *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001) (rejecting district court construction holding that "portion" required the portions "to be separate from one another"); *see also Ravo v. Ethicon Endo-Surgery, Inc.*, No. 04-617, 2005 U.S. Dist. LEXIS 28382, at *19-20 (W.D. Pa. Nov. 17, 2005) (holding that "portion of the lumen" is a "segment of the lumen"); *MarcTec, LLC v. Johnson & Johnson, et al.,* No. 07-cv-825, 2009 U.S. Dist. LEXIS 27011, at *26 (N.D. Ill., Mar. 31, 2009) (holding that "an implant, at least a portion of which is expandable" means "a portion, but not all of the implant, is expandable"); *Wesley Jessen Corp. v. Coopervision, Inc*., No. 01-3678, 2002 U.S. Dist. LEXIS 5172, at *10-11 (C.D. Cal., Mar. 14, 2002) ("a first portion of the elements of said pattern are of a first shade and a second portion of the elements of said pattern are of a second shade different from said first shade" — "the specification does not require the complete absence of elements of the first shade from the second."). As a result, there can be no dispute that the MALW contains a gripping element with an identifiable arm portion.

### B. The MALW Arm Portion Projects from the Body Portion

As a matter of uncontroverted fact, the MALW also meets the additional requirement of having the "arm portion" of the gripping element *project from* the "body portion." A person of ordinary skill in the art would understand the plain and ordinary meaning of "project from" to be synonymous with "extending from." Cagan Decl. ¶20. Such an understanding is consistent with courts that have construed the meaning of "project." *See*, *e.g.*, *Metso Minerals, Inc. v. Powerscreen International Distribution Ltd., et al*., 2010 U.S. Dist. LEXIS 7099 (E.D.N.Y., Jan. 28, 2010) (construing claim term "does not *project* laterally beyond the chassis" as "does not *extend*, in any amount, laterally beyond the chassis.") (emphasis added); *180s, Inc., et al. v.*

*Gordini U.S.A., Inc.*, No. JFM-08-177, 2010 U.S. Dist. LEXIS 30766, at * 721 (D. Md., Mar. 30, 2010) (a "projection" is "something that extends outward from a surface"); *Aspex Eyewear, Inc., et al. v. Altair Eyewear, Inc*., 386 F. Supp. 2d 526, 537 (S.D.N.Y. 2005) (holding "projection" can be "any portion of the auxiliary bridge which extends toward the primary bridge for the purpose of going over and engaging with the primary bridge."); *Velcro Industries B.V., et al. v. Taiwan Paiho Ltd*., No. 04-242-JD, 2005 U.S. Dist. LEXIS 23593, at *16 (D.N.H., Oct. 13, 2005) ("projection" refers to "the entire portion of the elongate member that extends from the base portion of the member up to and including any free end portions.").

It is also not in dispute that the arm portion need not project from *the gripping element*— instead, the Court's revised construction requires that the arm portion project from *the body portion*. Cagan Decl. ¶22. Dr. Cagan confirms that from the perspective of a POSA, the arm portion in the MALW projects from the body portion. This testimony is also consistent with his trial testimony and dotted line graphic. Again, with reference to Dr. Cagan's demonstrative, the identifiable structure of the MALW that is configured to engage the guide clearly projects from the body portion. Cagan Decl. ¶23; SOF-34. Similarly, Dr. Fronczak's testimony regarding the physical demonstrative exhibit of the MALW gripping element confirms the projection of the arm portion from the body portion. That demonstrative shows how the wear marks project from the body portion of the MALW gripping element. Cagan Decl. ¶23; SOF-33.

Defendants also admitted as much during the *Markman* proceedings in this case. Defendants' counsel conceded that images 1, 2, and 3 below contain an infringing "arm portion that projects from the body portion." *See* Dkt. 175 at 8.



If that is true, then the same is obviously true of image 4. And the only difference between image 4 and 5 is that Figure 5 is a monolithic block—but the arm portion that engages the guide is the same. SOF-35-37; *see* Cagan Decl. ¶12. The NTO objects that "[t]his analogy goes to far." (NTO at 29.) But, here again, this graphic was not presented for the first time in post-trial briefing—it was created as a result of Defendants' admissions at *Markman*—and this exact graphic was before Judge Darrah during *Markman* (Dkt. 175 at 7), and summary judgment (Dkt. 371 at 7-8).

In addition, claim differentiation precludes a reading of "arm portion" that would require it be an arm as in Figs. 1-4 above. "It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement." *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F. 2d 1107, 1121-22 (Fed. Cir. 1985) (finding "error as a matter of law" where "district court read limitations into [the asserted claims] from other claims."). Specifically, claim 5 of the '579 patent is identical to asserted independent claim 1, except it adds a limitation: "wherein the **arm portion** of the gripping elements **further includes a pair of arms** disposed at opposite ends of the body portion such that the gripping elements are substantially U-shaped." SOF-18. Importantly, even if Judge Darrah's construction of "arm portion" is redundant because it uses adjacent claim language defining the structure of the arm portion ("configured to engage" the guides), the Court must pay heed to claim differentiation—which establishes arm portions need not be literal arms so long as its structure is configured to engage the guides. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1370-72 (Fed. Cir. 2017) ("[F]aced with an interpretation that would read redundancy into claim 1 and another that would violate the doctrine of claim differentiation, we hold that the claims here support the former result over the latter."). Therefore, even under the revised construction and based on uncontroverted facts, the MALW infringes as a matter of law.

## IV. THE REVISED CONSTRUCTION WOULD NOT ALTER THE TRIAL RESULT

The Court's order of a new trial based on its conclusion that the jury instruction was not harmless error should be vacated and the Court should enter judgment on the verdict.[6]

"'To warrant a new trial,' the erroneous instruction must 'in fact [have been] prejudicial. When the error in a jury instruction 'could not have changed the result, the erroneous instruction is harmless.''" (NTO at 34.) But the NTO addresses this critical issue in a single paragraph. (*Id*. at 35.) It did not address the jury instructions or the trial record as a whole. Based on the record as a whole, the Court's revised construction would have had *no* impact on the verdict. Defendants argued that the MALW gripping element did not have an arm portion because it was a monolithic block, which did not meet the requirements for arm portion because a POSA would not consider a monolithic block to be "configured to engage the guide" in view of the patent and prosecution history. This is precisely the same argument and evidence that would be at issue in the second trial. The NTO does not identify any additional evidence that either party could have presented that was excluded. Each party relied on the physical traits of the MALW gripping element—which are not in dispute—combined with expert testimony from each party. Under Seventh Circuit and Federal Circuit precedent, the Court cannot order a new trial where it would not change the result of the first trial. *See, e.g.*, *Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1173 (Fed. Cir. 2005) (sustaining verdict because "although the district court's claim construction was in error, the evidence requires a verdict of infringement under the correct claim construction").

The Court should not grant a new trial because the jury instructions were neither "legally erroneous" nor did any alleged error have a "prejudicial effect." *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000) (internal citations omitted) (to support

---

[6] As noted, the Court granted a new trial *sua sponte*, and it did so without notice or an opportunity to be heard by the parties. As a result, this portion of LoggerHead's motion is not a motion for reconsideration—it is LoggerHead's first opportunity to address the portion of the order granting a new trial.

grounds for a new trial, party must show that "(1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error."). Nor does the NTO explain how the alternative jury instruction would have remedied the alleged error.

To determine whether any alleged error was prejudicial or harmless, the jury instructions must be viewed as a whole. *Biodex Corp. v. Loredan Biomed., Inc*., 946 F.2d 850, 853-54 (Fed. Cir. 1991) (court "must look to the entire jury charge . . . to determine whether the instructions fairly stated the legal principles to be applied by the jury") (internal citations omitted). Here, the Court's instructions included Judge Darrah's construction of "arm portion," but refused to instruct the jury that the arm portion does not have to be a separate structure. LH requested that the Court add this additional statement to the claim construction in the jury instructions based on Judge Darrah's rulings on summary judgment, but the Court rejected LH's request to add that statement to the jury instructions. Ex. C at 1309:14-1312:25. Therefore, the jury was instructed that an arm portion must be "configured to engage" the guide, and left the understanding of what that construction (and claim term) meant to the jury based on the plain and ordinary meaning to a POSA. *See GPNE Corp. v. Apple Inc.*, 108 F. Supp. 3d 839, 860 (N.D. Cal. 2015) (denying JMOL and new trial motion despite holding claim construction erroneous because "read as whole in the context of the entire trial" no prejudice resulted from not defining the meaning of a construction).

Judge Darrah's construction was not dispositive on infringement. LH's MSJ on infringement was denied in part because there were issues of fact as to whether the MALW's arm portion was "configured to engage to guide." (Dkt. 371 at 8-9.) As is often the case, Judge Darrah's claim construction did not resolve infringement—it was left to the jury to apply the claims and their constructions to the accused device to determine infringement. "[A] court, under the rubric of claim construction, may [not] give a claim whatever additional precision or

17

specificity is necessary to facilitate a comparison between the claim and the accused product.

Rather, after the court has defined the claim with whatever specificity and precision is warranted

by the language of the claim and the evidence bearing on the proper construction, the task of

determining whether the construed claim reads on the accused product is for the finder of fact."

*PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354-55 (Fed. Cir. 1998).

And during trial, Defendants entire case focused on their argument that a POSA that

viewed all of the evidence, including the prosecution history, would not conclude that the

MALW's arm portion was configured to engage the guide precisely because a POSA would not

view it as an identifiable structure that projects from the body portion. Dr. Fronczak testified:

> Q. How did you apply that construction to the Max Axess Locking Wrench
> gripping element when you were trying to identify whether there was an arm portion?
> A. I looked at it. I looked at the words, and I say, okay, a "portion of a gripping
> element configured" -- **"configured" means it's given a certain form** -- "to engage one
> of the guides and contiguous with a force transfer element." I look at it and say, **I don't see
> anything here that's** configured to look like -- anything that is **configured to be an arm
> portion**. [… ]
> Q. Why isn't that an arm portion?
> A. It's not an arm portion. One of ordinary skill in the art would say there is nothing
> there that is configured – **no portion of this block is configured to engage the guide**. It
> has a surface that is in contact with the guide. But there is **nothing here that takes the
> shape**, is configured to engage the guide. That's why it's not an arm portion.

Ex. C at 1164:14-23, 1177:25-1178:5 (emphases added); *see also id.* at 1113:8-14; 1084:15-

1085:11; 1092:9-1093:5; 1094:2-1096:3; 1098:1-1102:13; 1129:4-1130:8; 1136:11-1137:10;

1156:19-24; 1161:25-1163:71164:4-8; 1165:13-24; 1179:20-24; 1180:21-13. Thus, Defendants

presented exactly the same evidence and arguments relating to non-infringement based on "arm

portion" that they would under the revised construction. And LH would respond with the same

evidence and argument it presented at trial. "Alleged errors in jury instructions are considered in

the light, not only of the instructions as a whole, but of the allegations of the complaint, the

opening statement, the evidence, and the closing arguments." *Tikalsky v. Chicago,* 687 F.2d 175,

180-82 (7th Cir. 1982) (reinstating jury verdict where no relevant evidence was excluded and the jury instructions as a whole were reasonable).

Further, Defendants' Opening revealed their central trial theme that the MALW gripping element did not have an "arm portion," and that argument was based on the prosecution history. Ex. C at 264:19-267:8. Defendants' closing relied on Dr. Fronczak's testimony that a POSA would not consider a block to be configured to engage the guide. Ex. C at 1417:14-1432:7.

The Court permitted the jury—over LH's objections (*see, e.g.*, Ex. C at 185:20-188:22)—to hear argument and evidence about the prosecution history that formed the basis of Dr. Fronczak's opinion that a POSA would not consider the MALW to have an arm portion because the block is not configured to engage the guide. Dr. Fronczak stated that his infringement analysis included "looking at the prosecution history" and LH's statements to the Examiner about the lack of an arm portion in the Buchanan reference. Ex. C at 1098:1-22. He testified that based on his analysis—informed by the inventor's statements to the Examiner relating to Buchanan—a POSA would conclude that the MALW did not have an arm portion: "But that's for you to decide if this has arms or not. I don't think it does. Okay? But if it doesn't, then the Max Axess wrench, also, gripping element doesn't have arms." Ex. C at 1129:25-1130:3. He further testified that he reviewed the Buchanan reference and the prosecution history "[i]n order to understand the claim construction…[t]o shed light on understanding…how one of ordinary skill in the art would understand these." Ex. C at 1160:6-1161:4. When LH's counsel attempted to confront Dr. Fronczak with the Court's claim construction ruling on "arm portion," Defendants objected and the Court sustained the objection. Ex. C at 1210:11-1212:1.

The actual trial record shows that the jury has already considered—and rejected—Defendants' arguments that the MALW does not infringe because it does not have an identifiable "arm portion" that projects from the "body portion." Dr. Fronczak testified that the Court's claim

construction—configure to engage the guide—would mean to a POSA that the gripping element cannot be a monolithic block with a pin through it because such a structure is not configured to engage the guide. *See*, *e.g.*, Ex. C at 1177:25-1178:5. There is no argument or evidence that the jury was not permitted to see, and therefore it is implausible that the jury would have found differently in light of the revised construction.[7] *See Tikalsky*, ("We consider all that the jury heard and…decide not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.") (internal citations omitted); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 841 (Fed. Cir. 2010) ("We will not reverse if, considering the record as a whole, the erroneous instruction could not have affected the outcome of the case.") (internal citations omitted). It is simply not enough to order a new trial because the jury instruction that defined a claim term with adjacent claim language "was erroneous because the claim construction on which it was based was erroneous." NTO at 35. The Seventh Circuit is clear:

> [N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict…unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*Tikalsky*, 687 F.2d at 178 n.3. The trial record shows the requirements for a new trial are not met.

## V. CONCLUSION

LH respectfully requests that the Court vacate its post-verdict changed claim construction and enter judgment on the jury's verdict. In the alternative, LH requests that the Court vacate its New Trial Order and enter judgment on the jury's verdict based on harmless error.

---

[7] The "arm portion" of the Asserted Claims are ***not*** "the heart of what differentiates the Patents from the prior art." NTO at 33-34. There is no trial testimony cited to support it, and Dr. Cagan described the novelty of the invention based on the structure of the wrench as a whole. Ex. C 1244:8- 1246:2, 1247:5-1248:19, 1250:22-1251:14.

Dated:  February 20, 2018

Respectfully submitted,

*/s/ Paul J. Skiermont*
Paul J. Skiermont
N.D. Ill. Bar No. 6278464
Sarah Spires
Admitted *pro hac vice*
Sadaf Abdullah
Admitted *pro hac vice*
Steven Hartsell
N.D. Ill. Bar No. 24040199
Steve Udick
Admitted *pro hac vice*
Skiermont Derby LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
(214) 978-6600 (Telephone)
(214) 978-6601 (Facsimile)
pskiermont@skiermontderby.com
sspires@skiermontderby.com
sabdullah@skiermontderby.com
shartsell@skiermontderby.com
sudick@skiermontderby.com

Jason L. Peltz
Asha L.I. Spencer
Jean Tinkham
Bartlit Beck Herman
Palenchar & Scott, LLP
Courthouse Place
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
(312) 494-4400 (Telephone)
(312) 494-4440 (Facsimile)
jason.peltz@bartlit-beck.com
asha.spencer@bartlit-beck.com
jean.tinkham@bartlit-beck.com

*Counsel for Plaintiff*
*LoggerHead Tools, LLC*

21

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2018, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.


By: */s/ Paul J. Skiermont*