LOGGERHEAD TOOLS, LLC,     )
    )
    Plaintiff,     )
    )
    v.     )     No. 12 C 9033
    )
SEARS HOLDING CORPORATION and     )     Judge Rebecca R. Pallmeyer
APEX TOOL GROUP, LLC,     )
    )
    Defendants.     )

## MEMORANDUM OPINION AND ORDER

This long-running patent dispute proceeded to trial a year ago. Plaintiff LoggerHead Tools, LLC prevailed, winning a jury verdict and a large damages award against Defendants Sears Holdings Corp. and Apex Tool Group, LLC, on claims that by selling the "Max Axess Locking Wrench," Defendants infringed LoggerHead's patent for an "Adjustable Gripping Tool." This court concluded, however, that the jury instructions were infected by an inaccurate claim construction. The court therefore vacated the jury's verdict, revisited the claim construction performed by Judge Darrah (to whom this case was previously assigned), and ordered a new trial. *See LoggerHead Tools, LLC v. Sears Holding Corp.*, No. 12 C 9033, 2017 WL 6569629 (N.D. Ill. Dec. 22, 2017). Plaintiff now asks the court to reconsider its decision and reinstate the verdict. In the alterative, Plaintiff seeks summary judgment in its favor under the court's revised claim construction. For their part, Defendants Sears and Apex contend that the revised claim construction dictates summary judgment in their favor. For the reasons explained here, the court agrees. Plaintiff's motions are denied and Defendants' motion for summary judgment is granted.

## BACKGROUND

Most of the relevant facts of this case are undisputed.[1] Plaintiff LoggerHead Tools, LLC, is the assignee of United States Patents No. 6,889,579 (hereafter "'579 patent") and No. 7,992,470 (hereafter "'470 patent"). Both patents are titled "Adjustable Gripping Tool" and both

---

[1] The full history of this case is long and complicated. The court recounts only those facts that are relevant to the currently pending motions. For additional background, *see LoggerHead Tools, LLC v. Sears Holding Corp.*, No. 12 C 9033, 2017 WL 6569629 (N.D. Ill. Dec. 22, 2017).

describe several wrench-like hand-tools designed to "impart work upon a workpiece." (Defs.' L.R. 56.1 Statement of Facts (hereafter "DSOF") [504], at ¶¶ 10-11.) Two embodiments of such a tool appear below. Squeezing the tool's handles together causes several tooth-like "gripping elements" (labeled 26 in the images below) to close in on, and grip, a lug nut or other workpiece.



('579 Patent, Ex. 1 to DSOF, Figs. 2, 4.)

These "gripping elements" are at the center of this litigation. The claims LoggerHead now asserts against Defendants[2] require "at least one gripping element." Each gripping element, in turn, must include a "body portion" (34), an "arm portion" (36), and a "force transfer element" (38). The arm portion must be "configured to engage" certain other components of the tool (called "guides"); the body portion must be "adapted for engaging the work piece"; and the force transfer

---

[2] Loggerhead asserts claims 1, 9, and 16 of the '579 patent, and claims 1 and 9 of the '470 patent. (Pl.'s L.R. 56.1 Statement of Facts (hereafter "PSOF") [501-2], at ¶ 7.) The '470 patent is a continuation-in-part of the '579 patent. See '470 patent col. 1 ll. 5-6. The language pertaining to gripping elements is identical in each asserted claim. See '579 patent col. 8 ll. 58-62, col. 10 ll. 17-19, col. 11 ll. 54-58; '470 patent col. 18 ll. 43-47, col. 19 ll. 17-18.

element must be "contiguous with the arm portion." (DSOF ¶ 13.) Two images of a set of gripping

elements satisfying all these requirements appear below:



('579 Patent, Fig. 1.; Pl.'s Tr. Demonst. Ex., Fig. 1.)

The parties agree that a gripping element need not be U-shaped, like those depicted

above, to satisfy all the applicable requirements in the asserted claims. (*See* Pl.'s Statement of

Add'l Material Facts (hereafter "PSAMF") [507-2], at ¶ 2; Defs.' Resp. to PSAMF [515], at ¶ 2.)

The key question in this case is whether a gripping element that is a solid rectangle—like the one

in Defendants' accused product, discussed in greater detail below—includes the requisite "arm

portion."

## I.    Prosecution History

The prosecution history of the '470 patent shows why the inclusion of an arm portion in

LoggerHead's claims is significant. During prosecution, LoggerHead[3] distinguished its claims

from the prior art by arguing that the prior art did not include an arm portion. The company made

this argument in response to the U.S. Patent Office's rejection of certain claims on the grounds

---

[3]    LoggerHead did not apply for the '470 patent, and the statements described here were made by the patent's assignor, Daniel Brown. Nevertheless, the court refers to the applicant as "LoggerHead" in this opinion to avoid confusion.

that they were anticipated by United States Patent No. 2,787,925 (hereafter "Buchanan patent" or "Buchanan").[4]  (PSAMF ¶ 26.)

LoggerHead first applied for the '470 patent on April 11, 2005.  *See* '470 patent, at [22]. The patent examiner rejected LoggerHead's claims as anticipated by Buchanan on April 16, 2008. The examiner stated, *inter alia*, that a feature of the Buchanan patent referred to as a "plunger" satisfies LoggerHead's proposed claims involving a gripping element,[5] because the plunger "includ[es] a body portion (24) adapted for engaging the work piece, an arm portion configured to engage one at least one guide and a force transfer element (26) contiguous with the arm portion." (PSAMF ¶ 25.)

LoggerHead raised several arguments in response to this rejection.  The company argued, for example, that "Buchanan does not show the elements united in the same way as disclosed in Applicant's claims."  (*Id.* at ¶ 27.)  The company also argued that Buchanan's "plunger" does not disclose both a body portion and an arm portion.  LoggerHead attached the following images to its response to illustrate the differences between Buchanan's plunger and the gripping element LoggerHead claimed:





**Buchanan's Plunger**          **Applicant's Gripping Element**

(LoggerHead Response of July 16, 2008, Ex. 3 to PSAMF, at LH-00001657.)  The company noted that "[t]he Examiner does not specify where Buchanan teaches an arm portion."  (*Id.*)  In fact,

---

4      As explained in this court's previous opinion, the Buchanan patent is dated April 9, 1957, and describes a "multifunctional tool, more especially adapted for use in the insulated electrical wire art."  It claims, *inter alia*, "a wireworking tool having a plurality of centrally converging crimping plungers."  *LoggerHead*, 2017 WL 6569629, at *2.

5      As far as the court can tell, the proposed gripping element in LoggerHead's application was identical to the gripping element included in the '470 patent.

4

LoggerHead asserted, "Buchanan's gripping element does not contain an arm portion. Instead, the force transfer element (i.e., pin 26) of Buchanan is directly attached to the body portion." (*Id.*) Buchanan's force transfer element, LoggerHead continued, "is contiguous with the body, not an arm portion because Buchanan does not teach or suggest an arm portion." (PSAMF ¶ 27.) LoggerHead concluded that the claims in its patent thus differed from Buchanan and should be allowed. "For this reason alone," LoggerHead asserted, referring to the absence of an arm portion in the Buchanan patent, LoggerHead's "claims are in condition for allowance." (*Id.*) The company did not submit any claim amendments with this response. (*Id.* at ¶ 28.) On November 3, 2008, the Patent Office concluded that LoggerHeads' "arguments . . . are persuasive," and therefore withdrew the April 2008 rejection. (PSAMF ¶ 29.)

The Patent Office nevertheless did not immediately allow LoggerHead's proposed claims. Instead, the Office rejected the claims several more times based on "art other than Buchanan." (*Id.* at ¶ 32.) On at least one such occasion, on January 26, 2010, LoggerHead chose to amend its proposed claims instead of contesting the rejection.[6] (*Id.* at ¶ 31.)

For reasons that are not clear from the record, the patent examiner subsequently turned his attention back to the Buchanan patent. On October 13, 2010, the examiner again rejected several of LoggerHead's proposed claims as anticipated by Buchanan. (*Id.* at ¶ 33.) Like the April 2008 rejection, the October 2010 rejection asserted that Buchanan discloses a gripping element that includes a "body portion (24) adapted for engaging the work piece," an "arm portion . . . configured to engage one the at least one guide," and "a force transfer element (26)

---

[6]    This rejection was premised on anticipation by U.S. Patent No. 5,894,768, which and issued on April 20, 1999, and is titled "Tool Having Jaws for Gripping Hexagonally Shaped Objects." After rejecting LoggerHead's independent claim 1 as anticipated by the '768 patent, the Patent Office advised LoggerHead that "Claims 4-6 are objected to as being dependent on a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." (PSAMF ¶ 31; Ex. 3 to PSAMF, at LH-00001747-54.) LoggerHead responded by amending claim 1 to include the limitations in claim 4. (PSAMF ¶ 31.) It appears to the court that this involved adding the following limitation to claim 1(d), which described the "actuation portion" of the tool: "wherein the first element further includes at least one aligning element such that each said at least one aligning element is disposed between an adjacent pair of guides and extends parallel to the force transfer elements." (Ex. 3 to PSAMF, at LH-00001771-72.)

contiguous with the arm portion." (*Id.*) Unlike the April 2008 rejection, however, which did not identify exactly where or how Buchanan's plunger discloses an arm portion, the October 2010 rejection identified the purported arm portion as being "adj. 25"—that is, adjacent to the indentation in the plunger identified by the number 25 in the image labeled "Buchanan's Plunger" above. (*Id.*)

In response to the October 2010 rejection, LoggerHead again argued that "Buchanan does not show all the elements united in the same way as disclosed in Applicant's claims." (*Id.* at ¶ 34.) LoggerHead also attached the same two images contrasting Buchanan's plunger with LoggerHead's gripping element that it had attached to its response to the April 2008 rejection. The company urged that, contrary to the patent examiner's assertion that an arm portion is "adj[acent]" to the indentation in Buchanan's gripping element, "[n]o structure is adjacent to the crimping portion 25 of Buchanan except for the pin 26." (*Id.*) LoggerHead then repeated its earlier contentions that "Buchanan's gripping element does not contain an arm portion," and that Buchanan's force transfer element "is contiguous with the body, not an arm portion because Buchanan does not teach or suggest an arm portion." (*Id.*) LoggerHead again declined to amend its claims in response to the October 2010 rejection, and, on April 25, 2011, the Patent Office again withdrew its rejection, this time noting that "[a]pplicant's arguments . . . have been fully considered and are persuasive." (*Id.* at ¶ 36.) In its ensuing Notice of Allowability, the Office explained that:

> [t]he art of record considered as a whole, alone, or in part, fails to provide, *inter alia*, at least one gripping element including ***a body portion . . ., an arm portion*** configured to engage on said at least one guide ***and a force transfer element*** contiguous with the body portion[.]

(*Id.* (emphasis and ellipses in original).) The '470 patent issued on August 9, 2011, as a continuation-in-part of the '579 patent. '470 patent, at [22, 63].

## II.      The Max Axess Locking Wrench

Defendant Sears Holdings Corporation began retailing Loggerhead's "Bionic Wrench" in 2009. *See LoggerHead*, 2017 WL 6569629, at *3. As described in this court's previous opinion,

however, LoggerHead's business relationship with Sears soured in early 2012. *Id.* Around the same time, Sears began working with Defendant Apex Tool Group to develop and market another adjustable gripping tool as part of Sears' "Craftsman" product line. *Id.* Both Apex and Sears were aware of LoggerHead's patents during the development of this new adjustable gripping tool. *Id.* at *4. At various points during the design process, Apex consulted with outside patent counsel John Owen about the possibility of an infringement action. (*Id.*; DSOF ¶ 25.) On at least one occasion, Owen suggested that Apex likely could avoid such a charge if it were to mimic certain design features from the Buchanan patent. *Id.* In a letter dated March 8, 2012, for example, Owen explained that LoggerHead had "argued multiple times during prosecution . . . that <u>Buchanan's plungers do not have an arm portion</u>." *LoggerHead*, 2017 WL 6569629, at *4 (emphasis in original). "This means," Owen wrote, "that [LoggerHead] is very likely precluded from now asserting that a flat body structure like Buchanan's 'plungers' falls within the scope of [LoggerHead's] claims that require an arm portion on the gripping element." *Id.*

Sears began retailing Apex's tool, the "Max Axess Locking Wrench" ("Max Axess" or "MALW"), in September 2012. *Id.* Unlike the U-shaped gripping element depicted in LoggerHead's patents, the MALW's gripping element is a solid, block-like structure with a pin (that is, the force transfer element) driven through one end. (DSOF ¶ 28.) Images of the MALW's gripping element appear below:



(*Id.* at ¶ 29.)

The central dispute in this case is whether the MALW's gripping element includes the "arm portion" necessary for infringement of LoggerHead's patents. LoggerHead's expert witness, Dr. Jonathan Cagan, has testified that the MALW's gripping element does include an arm portion, which he distinguishes from the body portion using the image below:



(Pl.'s Statement of Material Facts (hereafter "PSOF") [501-2], at ¶ 26.) According to Cagan, the "body portion" of the gripping element is simply the "face" that "contacts the workpiece," plus "enough substance to be able to impart force." (*Id.* at ¶ 32.) Neither Cagan nor LoggerHead suggests that the pin is an arm portion. Rather, they argue that the arm portion is the area of the rectangular block outside the superimposed dotted lines in the image above. (*Id.* at ¶ 27.) Significantly, these dotted lines do not appear on the MALW gripping element itself. According to Cagan, however, they correspond to "the portion [of the gripping element] that is engaged within the guide . . . and that abuts the force transfer element." (*Id.* at ¶ 27.) LoggerHead points to the following image, showing what the company describes as "wear marks" running along the sides of a MALW gripping element, to support its contention that Cagan's superimposed lines correspond to the portion of the gripping element that engages the tool's guide, and thus are fairly characterized as an "arm portion."



(*Id.* at ¶ 29 (circles added).)  LoggerHead offers no evidence of any structural variation within the gripping element, or on the surface of the gripping element, that corresponds to the areas where the gripping element engages the guide.  But Cagan nevertheless asserts that a person of ordinary skill in the art "would understand that the structure configured to engage the guide is called an 'arm portion' because it performs an arm-like function by extending from the body portion to align the gripping element within the guide."  (Cagan Decl. (I), Ex. 3 to Pl.'s Resp. Br. [507-3], at ¶ 12.)

Defendants challenge this interpretation and insist that the MALW's gripping element does not contain an arm portion.  They contend—and their expert witness, Dr. Frank Fronczak, has emphasized—that the MALW's gripping element is "a unitary, monolithic block that is not susceptible to being parsed into portions."  (Fronczak Decl. ¶ 13, Ex. 6 to DSOF.)  According to Fronczak, a person of ordinary skill in the art (POSITA) "would understand that a monolithic mass (such as a solid block) could not satisfy the 'arm portion' limitation because a POSITA would not parse it into portions and because the block would not have any portions that project (*i.e.*, protrude or jut out) from any other portions."  (*Id.* at ¶ 11.)  Although Defendants concede that the wear marks in the image above "roughly correspond to the areas of the surface of the MALW gripping element where that piece can touch the guides," they deny that Cagan's superimposed lines correspond to the wear marks.  (Defs.' Resp. to PSOF [506], at ¶¶ 29, 31.)  Defendants note that the wear marks run the full length of the gripping element, while Cagan's alleged "arm portion" is cut off at the point where the alleged "body portion" begins.  (*Id.* at ¶ 31; Fronczak Decl. ¶ 13.)

## III.    Procedural history

Plaintiff filed this lawsuit in November 2012, alleging willful infringement of both the '579 patent and the '470 patent, as well as common law fraud, unfair competition, and several other claims. (*See* Second Am. Compl. [136].) Judge Darrah construed the terms of the patents in August 2015, concluding, *inter alia*, that "arm portion" means "portion of a gripping element(s) configured to engage one of the guides and contiguous with a force transfer element." *LoggerHead Tools, LLC v. Sears Holding Corp.*, No. 12 C 9033, 2015 WL 5118063, at *5 (N.D. Ill. Aug. 27, 2015). Judge Darrah subsequently granted summary judgment for Defendants on each of Plaintiff's claims except those alleging patent infringement. *See LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12 C 9033, 2016 WL 5110683 (N.D. Ill. Sept. 20, 2016); *LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12- C 9033, 2016 WL 5110683 (N.D. Ill. Sept. 20, 2016); *LoggerHead Tools, LLC v. Sears Holding Corp.*, No. 12 C 9033, 2016 WL 5112020 (N.D. Ill. Sept. 20, 2016); *LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12 C 9033, 2016 WL 5080028 (N.D. Ill. Sept. 20, 2016); *LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12 C 9033, 2016 WL 5111573 (N.D. Ill. Sept. 20, 2016); *LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12 C 9033, 2016 WL 5112017 (N.D. Ill. Sept. 20, 2016).

The Executive Committee of the Northern District of Illinois reassigned the litigation to this court in February 2017, and this court presided over a two-week jury trial in early May 2017. The court's jury instructions included Judge Darrah's construction of "arm portion," among other claim terms, and told the jurors that they "must" rely on these constructions to determine whether the MALW infringes LoggerHead's patents. (*See* Final Jury Instr. [449], at 27.) The jury returned a verdict of willful infringement and awarded Plaintiff $5,979,616 in damages before trebling. (*See* Verdict Form [450]; Verdict Form [451].)

Defendants timely filed a post-trial motion, asking the court to revise Judge Darrah's construction of "arm portion" and then issue a judgment of non-infringement as a matter of law based on the revised construction. In the alternative, Defendants moved for judgment as a matter of law on the issue of willfulness. In a lengthy opinion, the court explained that Judge Darrah's construction of "arm portion" was erroneous, and therefore re-construed the term as "identifiable

structure that projects from the body portion of the gripping element." *See LoggerHead*, 2017 WL 6569629, at *10-16. But the court also concluded that measuring the evidence presented at trial against this revised construction would deprive Plaintiff of the opportunity to be fully heard on the issue of infringement. *Id.* at *6-9. It therefore ordered a new trial instead of deciding the merits of Defendants' motion for judgment of non-infringement as a matter of law. *Id.* at *16-17.

Both sides seek further analysis. Plaintiff asks the court to reconsider its decisions to reconstrue the term "arm portion" and order a new trial. In the alternative, Plaintiff contends that there are no disputes of fact and that it is entitled to summary judgment of infringement under the revised construction. Defendant has filed a cross-motion for summary judgment of non-infringement.

## DISCUSSION

### I.    Reconsideration

LoggerHead has moved for reconsideration of the court's December 22, 2017, Memorandum Opinion and Order [492]. As noted, in that decision the court reconstrued the claim term "arm portion" as "identifiable structure that projects from the body portion of the gripping element." *See LoggerHead*, 2017 WL 6569629, at *16. The court also ordered a new trial because its jury instruction included Judge Darrah's earlier construction of arm portion, and thus constituted prejudicial legal error. *Id.* at *16-17. Plaintiff objects to both of these rulings, as well as the substance of the court's revised construction.

#### A.    Propriety of revisiting claim construction

LoggerHead first suggests that the court committed "clear legal error" by revising Judge Darrah's construction of arm portion in the absence of any intervening change in the law or the discovery of significant new facts. To support this argument, LoggerHead cites several cases describing the variant of the law-of-the-case doctrine that governs reconsideration by one district judge of rulings by another district judge in the same litigation. The case law recognizes that "[l]itigants have a right to expect that a change in judges will not mean going back to square one. The second judge may alter previous rulings if new information convinces him that they are

incorrect, but he is not free to do so . . . merely because he has a different view of the law or facts from the first judge." *Williams v. Comm'r of Internal Revenue*, 1 F.3d 502, 503 (7th Cir. 1993). Rather, there is "a presumption that prior rulings will stand." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997). Indeed, the law-of-the-case doctrine "has greater force . . . when there is a change of judges during the litigation and the new judge is asked to revisit the rulings of his predecessor," because "[r]eluctance to admit one's own errors discourages casual reconsideration of one's own rulings—but not of another judge's rulings." *HK Systems, Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009).

Defendants urge that this court was not bound by these limits on reconsideration when it revised Judge Darrah's construction of "arm portion." The law-of-the-case doctrine is "no more than a presumption, one whose strength varies with the circumstances," *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012), and the circumstances here include the fact that it was a claim-construction ruling that the court reconsidered. The Federal Circuit has repeatedly endorsed "rolling claim construction" by district courts—that is, the practice of "revisit[ing] and alter[ing]" the court's "interpretation of the claim terms as its understanding of the technology evolves." *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) (citing cases). Multiple courts in this district have concluded that the law-of-the-case doctrine's "presumption is weak when it comes to motions to reconsider claim constructions." *Cascades Streaming Techs., LLC v. Big Ten Network, LLC*, No. 13 C 1455, 2016 WL 3612108, at *2 (N.D. Ill. 2016) (Feinerman, J.); *Itex, Inc. v. Mount Vernon Mills, Inc.*, Nos. 08 C 1224 and 05 C 6110, 2011 WL 2470343, at *2 (N.D. Ill. June 20, 2011) (Pallmeyer, J.) (noting different standard for revising claim construction rulings); *Pinpoint, Inc. v. Amazon.com, Inc.*, 369 F. Supp. 2d 995, 998 (N.D. Ill. 2005) (Posner, J., sitting by designation) (revising previous judge's claim construction despite absence of intervening change in the law or significant new evidence).[7]

---

[7] Courts in other districts have also distinguished claim construction rulings from other interlocutory rulings for purposes of the law-of-the-case doctrine. *See, e.g.*, *Kroy IP Holdings, LLC v. Autozone, Inc.*, No. 2:13-cv-888-WCB, 2015 WL 557123, at *2 (E.D. Tex. Feb. 10, 2015) (declining to apply ordinary reconsideration standard to motion to reconsider claim

Regardless of whether the standard for reconsidering a claim construction ruling is, in fact, more lenient than the standard for reconsidering other interlocutory rulings, this court concludes that it had the authority to reconstrue the claim term "arm portion." The presumption against altering the rulings of a different judge in the same litigation is rebuttable not only where there has been an intervening change in the law or the available evidence, but also where "the court is convinced that [the prior decision] is clearly erroneous," *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) (quotation marks omitted), and "rescinding it would not cause undue harm to the party that had benefited from it," *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995). Both prerequisites are satisfied here.

The court explained in its previous opinion that Judge Darrah's construction of "arm portion" was erroneous because it effectively "eliminated the word 'arm' from the claims" and "ignore[d] the essential characteristics that comprise an arm." *LoggerHead*, 2017 WL 6569629, at *12. The court also concluded that altering the claim construction and ordering a new trial, while obviously regrettable, would not cause LoggerHead undue harm, because LoggerHead would have ample opportunity to revise its arguments and present evidence to support those revised arguments. *Id.* at *9. Indeed, the court declined to consider Defendants' motion for judgment as a matter of law precisely because the court concluded that measuring the evidence LoggerHead presented at trial against the revised claim construction would deprive LoggerHead of such an opportunity. *Id.* at *6-8.

LoggerHead now argues that it will be unduly harmed by the expense involved in re-tooling its arguments and presenting evidence that the MALW infringes under the revised construction. But this is not the type of harm that either the Seventh Circuit or the Federal Circuit has suggested might preclude reconsideration. Both those courts have focused on the risk of depriving a party

---

construction); *Wright Asphalt Prod. Co., LLC v. Pelican Ref. Co., LLC*, No. H-09-1145, 2012 WL 1936416, at *12 (S.D. Tex. May 29, 2012) ("The Federal Circuit . . . appears to suggest that these demanding standards for reconsideration do not apply when a party is seeking reconsideration of a claim-construction opinion. Instead, a district court is free to revise its claim construction if its 'evolved' understanding of the technology makes it appropriate.").

of a fair opportunity to present his or her case. *See Avitia*, 49 F.3d at 1227-28 (expressing concern that district court's late-trial "about face" on an issue prevented a party from presenting arguments on the reconsidered issue); *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 710 (7th Cir. 2013) (same); *Best*, 107 F.3d at 547 (noting that reconsideration "meant complete defeat in the lawsuit . . . rather than an opportunity to convince the jury of the merits"); *Pressure Prods.*, 599 F.3d at 1316 (finding mid-trial revision of claim construction to be permissible because trial court "made the adjustment early enough in the trial to give [the harmed party] an opportunity to consider the new construction and adjust its arguments to account for the change"); *CollegeNet, Inc. v. ApplyYourself, Inc.,* 418 F.3d 1225, 1234 (Fed. Cir. 2005) (district court made reasonable determination of "whether a party has had an adequate opportunity to present . . . arguments in the changing claim construction environment"). LoggerHead has not satisfied the court that reconsideration of Judge Darrah's claim construction deprived LoggerHead of a fair opportunity to present its case. The court was prepared to conduct a new trial, at which LoggerHead would be free to present revised arguments and additional evidence. As LoggerHead now argues that summary judgment is appropriate, the court will address those revised arguments and additional evidence that LoggerHead seeks to present.

It is true, as LoggerHead points out, that none of the cases cited above involved a *post-trial* reconsideration of an earlier ruling, like this case does. LoggerHead maintains—as it did in its opposition to Defendants' post-trial motion—that Federal Circuit case law categorically prohibits post-trial revisions to an earlier claim-construction ruling. But the cases LoggerHead cites prohibit revising a claim construction ruling after trial *and then granting judgment as a matter of law based on the revised construction*, without any further evidentiary proceeding or briefing. *See Wi-LAN, Inc. v. Apple, Inc.*, 811 F.3d 455, 466 (Fed. Cir. 2016); *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1397-98 (Fed. Cir. 2014); *LoggerHead*, 2017 WL 6569629, at *6-8. That is not what this court did. The court instead ordered a new trial and has not deprived LoggerHead (which now seeks summary judgment rather than a new trial) of a

reasonable opportunity to present its case. The court therefore rejects LoggerHead's arguments that it was procedurally improper to revise the construction of "arm portion."

### B. Substance of revised claim construction

LoggerHead's only substantive objection to the court's revised construction of "arm portion" is that it was "influenced by the MALW." (Pl.'s Mot. 1-3; Reply Br. 1-3.) Under Federal Circuit law, a claim must be "construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device." *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985). *See also NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be construed by reference to the accused device."). But passing references to the accused device do not taint an otherwise valid claim construction. *See NeoMagic*, 287 F.3d at 1074 ("[T]he error is harmless if the court's construction is correct."). "[T]he rule forbids a court from tailoring a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or non-infringement," but it "does not forbid awareness of the accused product or process to supply the parameters and scope of the infringement analysis, including its claim construction component." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006). *See also Typhoon Touch Technologies, Inc. v. Dell, Inc.*, 659 F.3d 1376, 1383 (Fed. Cir. 2011) ("It is not inappropriate for a court to consider the accused devices when construing claim terms, for the purpose of 'claim construction' is to resolve issues of infringement.").

This court did mention the MALW during its claim construction analysis, but its construction was not tailored to the MALW or to reach a preconceived judgment on the issue of infringement. The vast majority of the court's analysis focused on the plain and ordinary meaning of "arm portion" and the prosecution history of the '470 patent. *See LoggerHead*, 2017 WL 6569629, at *10-16. The court began by observing that Judge Darrah's construction of "arm portion" "simply repeat[ed] the words that already follow the word 'portion' in the text of the claim," and therefore assigned "no independent meaning" to the word arm. *Id.* at *11. The court then

noted that the patents' specifications do not define "arm portion," and proceeded to consider how a person of ordinary skill in the art would understand the term. In doing so, the court consulted the claim language surrounding the term, *id.* at *11, 13; the patent specifications, *id.* at *13; prior case law construing the words "portion," "arm," and "arm portion," *id.* at *12, 12 n.8; dictionary definitions of "arm," *id.* at *13; and the prosecution history of the '470 patent, *id.* at *15. Based on these sources, the court concluded that an arm portion must be "an identifiable structure that projects from the body portion of the gripping element." *Id.* at *16.

The court referred to the MALW only in passing. *See id.* at *13-14. It did so to illustrate how a person of ordinary skill in the art would describe gripping elements of various shapes, *see id.* at *13 ("A POSITA would almost certainly refer to the entire structure [of a block-like gripping element resembling the MALW's] as one body, not a body with arms."), and to explain the difference between the court's revised construction and the one it replaced, *see id.* at *13-14 (noting, with reference to a depiction of the MALW, the objective difference between a gripping element that is merely "configured to engage the guide" and a gripping element with a separately identifiable, projecting portion that is "configured to engage the guide"). The court would have been wise to use an example other than the MALW to illustrate these points. But even if the court erred by referring to the MALW, the remainder of its claim-construction analysis is sound. None of that analysis depended in any way on the court's discussion of the MALW. The court did not tailor its construction of "arm portion" to reach a preconceived judgment on the issue of infringement, and its passing references to the MALW were, at most, harmless error.

## C. New trial order

Nor did the court commit reversible error by concluding that a new trial may be necessary.[8]
"An erroneous instruction regarding claim interpretation that affects the jury's decision on

---

[8] LoggerHead suggests that the portion of its motion addressed to the court's new trial order is not a motion for reconsideration, because the court granted a new trial *sua sponte*, pursuant to Rule 59, based on grounds not stated in Defendant's alternative motion for a new trial. (Pl.'s Mot. for Summ. J. [501-1], at 16 n.6.) LoggerHead does not explain what its motion *is*, if not a motion for reconsideration. Regardless, the court need not decide precisely how to

infringement is grounds for a new trial." *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir. 2002). The instructions this court gave to the jury included Judge Darrah's legally erroneous definition of arm portion. (*See* Final Jury Instr. [449], at 27.) The instructions also advised the jurors that they were required to use this definition to reach their decision on the question of infringement. (*Id.* at 25, 27.) This instruction "affect[ed] the jury's decision on infringement" because there was sufficient evidence presented at trial to support a finding that the MALW's gripping element does not include an identifiable structure that projects from the body portion and that is configured to engage the MALW's guides, and therefore does not include the requisite arm portion. *See LoggerHead*, 2017 WL 6569629, at *16; *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1174 (Fed. Cir. 2005) ("Prejudicial error only exists if 'there was sufficient evidence at trial to support a finding of [non-] infringement under the correct construction.'").

LoggerHead now argues that the instruction as a whole provided the jury with a fair statement of the law, even if the definition of arm portion is deemed erroneous. *See Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 853 (Fed. Cir. 1991) ("There is no dispute among the circuits . . . that we must 'look to the entire jury charge . . . to determine whether the instructions fairly stated the legal principles to be applied by the jury.'") (citation omitted). LoggerHead analogizes this case to *GPNE Corp. v. Apple, Inc.*, where a court concluded that it did not commit prejudicial error by failing to instruct the jury "to apply plain and ordinary meaning [of the claim term 'node'] after reading the entire patent and file history." 108 F. Supp. 3d 839, 860 (N.D. Cal. 2015). It was sufficient, that court concluded, to instruct the jury that "the claim language's plain and ordinary meaning to a person of ordinary skill in the art at the time of the invention applies," because the law governing claim construction did not actually require the jury to "read the entire patent and file history" in order to determine the plain meaning of "node." *Id.*

---

classify this part of LoggerHead's motion, because the company has not persuaded the court that it committed any error in granting a new trial, let alone the clear error required for reconsideration.

The analogy to *GPNE* is not persuasive. In *GPNE*, the court adopted a plain-meaning construction of the claim term at issue, and then instructed the jury that "the claim language's plain and ordinary meaning to a person of ordinary skill in the art at the time of the invention applies." These instructions included all of the essential elements of the construction. In this case, by contrast, LoggerHead has not pointed to any language in the instruction that even hints at two essential elements of an "arm portion"—i.e., (1) an identifiable structure that (2) projects from the body portion of the gripping element.

LoggerHead next observes that "Judge Darrah's construction was not dispositive on infringement," because "there were issues of fact as to whether the MALW's arm portion was 'configured to engage the guide'" and "it was left to the jury to apply the claims and their constructions to the accused device to determine infringement." (Pl.'s Mot. 17-18.) As best the court comprehends this part of LoggerHead's argument, it is premised on a basic misunderstanding of the legal standard for ordering a new trial. It is irrelevant whether a reasonable jury could have concluded from the evidence presented at trial that the accused product satisfies a legally erroneous construction of LoggerHead's claims. What matters is whether "there was sufficient evidence at trial to support a finding of [non-] infringement *under the correct construction.*" *CytoLogix*, 424 F.3d at 1174 (emphasis added).

Nor would it make a difference if, as LoggerHead also argues, "Defendants presented exactly the same evidence and arguments relating to non-infringement based on 'arm portion' that they would under the revised construction." (Pl.'s Mot. 18.) If a reasonable jury could apply this same evidence to the correct construction of arm portion and return a verdict of non-infringement, that means the court's erroneous jury instruction was sufficiently prejudicial to warrant a new trial. LoggerHead has offered no reason to doubt the court's previous conclusion that Defendants did, in fact, present sufficient evidence at trial to support a verdict of non-infringement under the correct construction. *See LoggerHead*, 2017 WL 6569629, at *16.

Finally, LoggerHead suggests that Defendants waived any argument about the sufficiency of the jury instruction by failing to object to that instruction at trial. "Rule 51 generally requires a

party to object to an error in a jury instruction before the jury retires in order to preserve the claim of error on appeal." *Ecolab*, 285 F.3d at 1369. But there is an exception to this general rule where "plain error . . . affects substantial rights." FED. R. CIV. P. 51(d)(2); *Higbee v. Sentry Ins. Co.*, 440 F.3d 408, 409 (7th Cir. 2006). There is also an exception where "the district court is aware of the party's position and it is plain that further objection would be futile." *Ecolab*, 285 F.3d at 1370 (citation and internal quotation marks omitted).

The jury instruction in this case was plainly erroneous, as the court has already explained. That error affected Defendants' substantial rights because it required the jury to use an incorrect definition of an important claim term, and the jury could have returned a verdict of non-infringement if it had been instructed on the correct definition of that claim term. What's more, the court was aware of Defendants' position on how "arm portion" should be construed, as that position was evident from Judge Darrah's claim construction opinion. Nevertheless, in its ruling on several pre-trial motions *in limine*, this court indicated to Defendants (wrongly, in hindsight) that it would be futile to reassert their objection to Judge Darrah's construction of "arm portion." *See* Order [419], at 2 (granting Plaintiff's motion [409] to preclude Defendants from introducing evidence or argument for purpose of contradicting Judge Darrah's construction of "arm portion," among other rulings). Defendants' failure to object to the inclusion of Judge Darrah's construction of "arm portion" in the jury instruction cannot be held against them in these circumstances.

Because the court did not err by reconstruing "arm portion" or by ordering a new trial, LoggerHead's motion to reconsider is denied.

## II.    Cross-Motions for Summary Judgment

Under the court's recent ruling, LoggerHead is entitled to a new trial at which it would be free to argue that the Max Axess wrench infringes the patents under the court's revised construction. But LoggerHead instead seeks summary judgment. Defendant has filed a motion for summary judgment on the issue of infringement as well.[9]

---

[9] The court recognizes that there is some tension between its previous conclusion that it would be improper to consider Defendants' motion for judgment as a matter of law under

To prevail on such a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When presented with cross-motions for summary judgment, the court is required to adopt a 'Janus-like perspective,' viewing the facts for purposes of each motion through the lens most favorable to the non-moving party." *Moore v. Watson*, 738 F. Supp. 2d 817, 827 (N.D. Ill. 2010) (Gottschall, J.) (quoting *Buttitta v. City of Chicago*, 803 F. Supp. 213, 217 (N.D. Ill. 1992) (Shadur, J.), *aff'd*, 9 F.3d 1198 (7th Cir. 1993)).

A determination of patent infringement involves a two-step inquiry. "The court must first interpret the claims to determine their scope and meaning. It must then compare the properly construed claims to the allegedly infringing device." *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004) (citation omitted). The first step of this inquiry is a legal determination. The second step is primarily factual, though to support a verdict of infringement the accused device must satisfy every limitation in the asserted claims, either literally or under the doctrine of equivalents. *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1356 (Fed. Cir. 2005).

## A.      Literal infringement

The cross-motions for summary judgment now before the court present only one disputed question of fact that is material to the question of literal infringement: whether the MALW's gripping element has an arm portion. If this dispute is "genuine," both motions must be denied.

This court has already determined that an arm portion is an "identifiable structure that projects from the body portion of the gripping element." *LoggerHead*, 2017 WL 6569629, at *16. LoggerHead's claims require that this identifiable, projecting structure also be "configured to engage" the tool's guide. The parties do not dispute that the MALW's *gripping element* is

---

the revised claim construction, and its current decision to consider the parties' cross motions for summary judgment under the revised construction. The fact that both parties now ask the court for summary judgment under the revised construction satisfies the court that the parties have "had an adequate opportunity to present . . . [their] arguments in the changing claim construction environment." *CollegeNet,* 418 F.3d at 1234.

"configured to engage" the MALW's guide. They dispute whether the MALW's gripping element includes an *identifiable, projecting structure*—that is, an arm portion—that is configured to engage the tool's guide.

Defendants present evidence that the MALW's gripping element does not include an identifiable, projecting structure that is configured to engage the guide. Defendants' expert witness has testified that the MALW gripping element is a "solid," "monolithic block" with a "unitary structure." (Fronczak Decl. ¶¶ 13, 21.) Images confirm that the MALW gripping element is substantially rectangular. (*See* DSOF ¶ 29.) The pin—that is, the force transfer element—is the only part of the MALW gripping element that resembles an identifiable, projecting structure, but LoggerHead does not suggest that the pin is an arm portion.

LoggerHead characterizes the "arm portion" identified by Dr. Cagan as an "identifiable structure," but none of the company's evidence supports this. Cagan asserts that "[t]he MALW gripping element includes an identifiable structure for the arm portion and for the body portion." (Cagan Decl. (I) at ¶ 15.) But Cagan has not identified any structural feature of the MALW's gripping element that distinguishes the supposed arm portion from the body portion. Rather, he draws an imaginary line on the surface of a solid, rectangular block and declares the area outside of that line to be an "identifiable structure." Conclusory statements like this are insufficient to establish a triable issue of fact. *See King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017).

LoggerHead suggests that Cagan's purported arm portion is "identifiable" because its surface area corresponds to wear marks that appear on the surface of the MALW's gripping element. But even if this surface area does correspond to the wear marks, it does not follow that this surface area corresponds to a distinct "structure"[10]—let alone a structure that "projects" from

_____

[10]    LoggerHead argues that an "identifiable" structure need not be a "separate" structure, and that the term "arm portion" is simply shorthand for anything associated with the gripping element that is configured to engage the guide. (*See* Pl.'s Reply Br. 8-12, 9 n.6.) As this court already explained, the arm and body portions of the gripping element must be "separately identifiable structures" because Plaintiff's claims separately identify those portions. *LoggerHead*, 2017 WL 6569629, at *11. LoggerHead analogizes this case to *Despoir, Inc v. Nike USA, Inc.*, No. 03 C 8817, 2005 WL 659199 (N.D. Ill. Feb. 9, 2005), where another court in this district held that the "sole" of the claimed golf club need not be distinguishable from the "sole portion" of the

the body portion. The purportedly identifiable structure here would be indistinguishable from the rest of the gripping element but for the fact that its surface makes contact with the MALW's guide. The fact that an otherwise indistinguishable part of the gripping element's surface contacts the guide means that the *gripping element* is "configured to engage" the guide. It does not mean that an identifiable structure that projects from the gripping element—an arm portion—is configured to engage the guide.

Neither the wear marks nor Dr. Cagan's testimony is sufficient to establish a triable issue of fact regarding the existence of an identifiable, projecting structure that is configured to engage the MALW's guide. Because this is the only evidence LoggerHead presents on this question, the court concludes that there is no genuine dispute about whether the MALW's gripping element includes an arm portion. It does not, and Defendants therefore are entitled to summary judgment on the issue of literal infringement.

### B.    Doctrine of equivalents

The MALW could still infringe the asserted claims under the doctrine of equivalents, even though it lacks a literal arm portion. The doctrine of equivalents can support a verdict of infringement where there are "differences between the claimed invention and the accused product," but those differences are "insubstantial." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013). Generally, a party alleging infringement under the doctrine of equivalents can prevail by "show[ing], for each claim limitation, that the accused product

---

club on any basis other than its status as the part of the club that normally makes contact with the ground when a user prepares to swing the club on a flat surface. *Id.* at *10-15. LoggerHead suggests that a gripping element's "arm portion" also need not be distinguishable on any basis other than its status as the part of the gripping element's surface that makes contact with the guide. The *Despoir* court's construction, however, was based on factors such as a dictionary definition of "sole" as "the bottom surface of the head of a golf club," and a statement in the patent's specifications that the sole is "the portion of the sole plate which is designed to contact the ground as the club lies at rest." *Id.* at *10-11. LoggerHead does not point to any comparable support for its position in this case. The fact that courts may consider the function performed by a claim element when defining that element, *see, e.g.*, *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999) ("[T]he functional language tells us something about the structural requirements of the attachment . . . ."), does not mean that anything serving that function is, *ipso facto*, the claim element. Nor does it suggest that claim elements must *always* and *only* be defined according to their functions.

'performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product.'" *Id.* (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)). But the doctrine of equivalents may not be used to "entirely vitiate" a claim limitation. *Freedman Seating*, 420 F.3d at 1358. Nor may a party use the doctrine of equivalents to "recapture . . . subject matter surrendered during prosecution of a patent." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995). It is a question of law whether these restrictions on the doctrine of equivalents apply in a particular case. *See Freedman Seating*, 420 F.3d at 1358; *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005).

As LoggerHead sees things, the differences between the MALW's gripping element and LoggerHead's claims are insubstantial because the MALW's "block-shaped" gripping element is simply "a U-shaped gripping element without empty space between the arm portions." (Pl.'s Resp. Br. 7.) Like LoggerHead's U-shaped gripping element, Plaintiff contends, the MALW's block-shaped gripping element is "configured to engage" the tool's guide and "performs substantially the same functions of engaging the guide and engaging the workpiece as a literally infringing gripping element." (Cagan Decl. (II) ¶ 14, Ex. 4 to Pl.'s Resp. Br.)

Whatever the merits of this argument, it is barred by the doctrine of prosecution history estoppel. Prosecution history estoppel "limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent." *Southwall Techs.*, 54 F.3d at 1579. Where, as here, the purported estoppel arises from arguments the patentee made during prosecution, rather than the voluntary amendment of a claim, "the prosecution history must evince a clear and unmistakable surrender of subject matter." *Conoco, Inc. v. Energy & Environmental Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006). "The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998), *abrogated on other grounds by Teva Pharmaceuticals, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1339 (Fed. Cir. 2015)).

LoggerHead's statements to the patent examiner during prosecution of the '470 patent satisfy the prerequisites for prosecution history estoppel. When the patent examiner rejected LoggerHead's proposed claims as anticipated by Buchanan, LoggerHead responded by arguing that "Buchanan does not teach or suggest an arm portion," and that "[f]or this reason alone, [LoggerHead's] claims are in condition for allowance." (*See* PSAMF ¶ 29.) This statement clearly and unmistakably surrendered LoggerHead's claim to a gripping element that lacks an arm portion. *See Ekchian v. Home Depot, Inc*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[B]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover.").

LoggerHead now argues that it did not clearly and unmistakably disclaim "non-projecting 'arm portions,'" because "no mention of 'project from' or any variant of that phrase ever appears in the relevant portions of the file history." (Pl.'s Resp. Br. 9, 12.) But this mischaracterizes the subject matter LoggerHead claims under the doctrine of equivalents. The MALW does not have a "non-projecting arm portion," if such a term has any useful meaning. It lacks any arm portion at all. LoggerHead's argument under the doctrine of equivalents is that the MALW's arm-portion-less gripping element is equivalent to a gripping element that does have an arm portion. The relevant question for the court's analysis of prosecution history estoppel is whether LoggerHead clearly and unmistakably disclaimed a gripping element that lacks an "arm portion," not a "non-projecting arm portion."

LoggerHead next suggests that it did not clearly and unmistakably disclaim gripping elements without arm portions because the company simply "point[ed] out that the Examiner failed to explicitly disclose where or how Buchanan taught the claimed 'arm portion.'" (Pl.'s Resp. Br. 11-12.) It is true that in responding to the patent examiner's concerns, LoggerHead stated that "[t]he Examiner does not specify where Buchanan teaches an arm portion, as claimed." (PSAMF ¶ 29.) But the company did not stop there. It proceeded to assert that "Buchanan does not teach or suggest an arm portion," and that "[f]or this reason alone, [LoggerHead's] claims are in condition for allowance." *Id.* It is difficult to see how this statement can be interpreted as anything

other than a disclaimer of gripping elements that lack an arm portion. The examiner rejected LoggerHead's claims on the grounds that they were anticipated by Buchanan. The company then responded to this rejection by arguing that its claims were *not* anticipated by Buchanan precisely because those claims require an arm portion and Buchanan's do not. A competitor of ordinary skill in the art would almost certainly conclude from this exchange that LoggerHead was surrendering its claim to gripping elements that lack an arm portion. It is not surprising that two of LoggerHead's competitors—the Defendants in this case—*did* conclude from this exchange that LoggerHead had disclaimed gripping elements without arm portions.

Nothing in the prosecution history casts doubt on the meaning of LoggerHead's attempts to distinguish its proposed claims from the prior art. The company's disclaimer was not a mere "isolated assertion," as it now suggests. Unlike the patentee in *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1343 (Fed. Cir. 2009), who "never repeated the allegedly disclaiming statements and instead offered alternative reasons to overcome the . . . prior art," LoggerHead repeated its disclaiming statements to the patent examiner two years later, with only minor changes in wording.[11] Nor would a competitor reading the prosecution history doubt the meaning or significance of LoggerHead's disclaiming statements merely because the company also presented other arguments in response to the patent examiner's rejections. Under well-established Federal Circuit law, "an applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) (quoting *Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007)). *See also Southwall Techs.*, 54 F.3d at 1583 ("Clear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim, may . . . create an estoppel."). Even if this were not the law, a competitor

---

[11] Indeed, LoggerHead's suggestion in 2010 that Buchanan lacks an arm portion because "no *structure* is adjacent to the crimping portion" (PSAMF ¶ 33) (emphasis added) makes it clear that an arm portion is an identifiable structure, rather than an indistinguishable part of a solid rectangle.

reading the prosecution history in this case would note that the patent examiner *did* cite Buchanan's lack of an arm portion as a reason for allowing LoggerHead's claims. (*See* PSAMF ¶ 36.)

Finally, LoggerHead suggests that Judge Darrah's conclusion that prosecution history estoppel did not apply at the claim-construction stage necessarily precludes this court from reaching the opposite conclusion now. According to LoggerHead, this court's disagreement with Judge Darrah would prove that LoggerHead's statements are susceptible to multiple meanings—and thus are not clear and unmistakable. But Judge Darrah does not appear to have considered the language from the prosecution history that this court finds to be clear and unmistakable. Rather, the only language he discussed was LoggerHead's statement pointing out that the examiner failed to identify Buchanan's arm portion. *See LoggerHead*, 2015 WL 5118063, at *4. Nor did Judge Darrah consider, as this court does now, whether LoggerHead disclaimed a gripping element without any arm portion at all. Rather, he considered whether LoggerHead disclaimed a "nonprojecting" arm portion. *Id.* His conclusion—that LoggerHead's statement about the examiner's failure to identify Buchanan's arm portion did *not* clearly and unmistakably disclaim a gripping element with a "nonprojecting" arm portion (whatever that may be)—is not necessarily inconsistent with this court's conclusion that LoggerHead *did* clearly and unmistakably disclaim a gripping element without any arm portion at all.

A competitor would reasonably conclude from the prosecution history of the '470 patent that LoggerHead clearly and unmistakably disclaimed gripping elements without arm portions. LoggerHead is estopped from reclaiming that subject matter under the doctrine of equivalents.

## CONCLUSION

Plaintiff's motion to reconsider is denied because the court did not commit clear error by revising the construction of "arm portion" or by ordering a new trial. Plaintiff's motion for summary judgment [501] is denied—and Defendant's cross-motion for summary judgment [502] is granted—because no reasonable jury could conclude that the MALW infringes Plaintiff's patents, either literally or under the doctrine of equivalents.

ENTER:

Dated: July 20, 2018

_____
REBECCA R. PALLMEYER
United States District Judge